UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                    :

         - v. -                          :              12 Cr. 876 (ALC)

PAUL CEGLIA,                                :

               Defendant.                 :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT CEGLIA'S MOTION TO TRANSFER VENUE


PREET BHARARA
United States Attorney
for the Southern District of New York
Attorney for the United States of America


Janis M. Echenberg
Christopher D. Frey
Assistant United States Attorneys
   - Of Counsel -

**TABLE OF CONTENTS**

<u>PAGE</u>

STATEMENT OF FACTS ............................................................................1

ARGUMENT ...........................................................................................4

    A.    Applicable Legal Standards .................................................................4

    B.    A Transfer of Venue is Not in the Interest of Justice ................................. 6

        1.    Residence of the Defendant .......................................................7

        2.    Location of Witnesses............................................................ 8

        3.    Location of Events .............................................................11

        4.    Location of Relevant Documents and Records ............................. 12

        5.    Disruption of the Defendant's Business .................................... 12

        6.    Expenses to the Parties ....................................................... 13

        7.    Location of Counsel .......................................................... 15

        8.    Relative Accessibility ........................................................ 15

        9.    Docket Conditions ........................................................... 15

CONCLUSION ...................................................................... 16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA            :

      - v. -                                     :            12 Cr. 876 (ALC)

PAUL CEGLIA,                                  :

                Defendant.       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT CEGLIA'S MOTION TO TRANSFER VENUE

The Government respectfully submits this memorandum of law in opposition to defendant Paul Ceglia's ("Ceglia" or the "Defendant") motion to transfer venue.

### STATEMENT OF FACTS

The Defendant was arrested on October 26, 2012, pursuant to a criminal complaint (the "Criminal Complaint") filed in this District on October 25, 2012.  The Criminal Complaint charged Ceglia with one count of mail fraud and one count of wire fraud in connection with the Defendant's participation in a scheme to defraud Facebook, Inc. and the Chief Executive Officer of that company, Mark Zuckerberg ("Zuckerberg"), and to corrupt the federal judicial process. A grand jury sitting in this District returned Indictment 12 Cr. 876 (ALC) (the "Indictment") on November 26, 2012, charging the Defendant with the same crimes as set forth in the Criminal Complaint.

As alleged by the Government in both the Criminal Complaint and the Indictment, on April 28, 2003, Ceglia entered into a contract with Zuckerberg, then a student at Harvard University, in which Zuckerberg agreed to perform certain programming work for Ceglia and

StreetFax.com, an online business operated by Ceglia that provided pictures and other

information related to street intersections throughout the country to insurance adjusters.  (Compl.

at ¶¶ 5, 6b(1)-(2); Ind. at ¶ 5).  In the contract they signed in Boston, Massachusetts in April

2003, Ceglia agreed to pay Zuckerberg a fee for his work on the StreetFax.com website.

(Compl. at ¶ 6b(4); Ind. at ¶ 5).

    More than seven years later, in June 2010, Ceglia initiated a lawsuit against Zuckerberg

and Facebook, Inc. (the "Civil Defendants") in the Supreme Court for the State of New York,

Allegany County.  Upon the Civil Defendants' motion, the case was subsequently removed to the

U.S. District Court for the Western District of New York.  In April 2011, Ceglia filed a 25-page

amended complaint, through his attorneys at the law firm of DLA Piper, LLP in New York, New

York.  See Ceglia v. Zuckerberg, et al., 10 Civ. 569 (RJA)(LGF).  In his amended complaint, the

Defendant claimed, among other things, that Zuckerberg, in the April 2003 contract, had

promised him at least a 50% interest in "The Face Book" project that ultimately became

Facebook, Inc.  In support of his claim, Ceglia attached a copy to his amended complaint of what

he alleged to be the two-page April 28, 2003 contract between himself and Zuckerberg (the

"Alleged Contract").  The first page of the Alleged Contract contained language giving Ceglia "a

half interest (50%) in the software, programming language and business interests" derived from

the expansion of "The Face Book" or "The Page Book."  The second page of the Alleged

Contract contained the signatures of Ceglia and Zuckerberg.  Also in support of his claim, Ceglia

described and cited e-mails in his amended complaint that he alleged to have exchanged with

Zuckerberg between July 2003 and July 2004 via Zuckerberg's Harvard e-mail account (the

"Purported E-mails").  The Purported E-mails reflect conversations between Ceglia and

Zuckerberg about the design and functionality of "The Face Book" website, as well as ways to

generate income from its expansion.  The Purported E-mails also reflect conversations in which Zuckerberg offered Ceglia money to "repair [their] business relationship."  (Compl. at ¶ 6; Ind. at ¶¶ 6-7).

As alleged in the Criminal Complaint and the Indictment, however, Ceglia's claim to having a contractual right to 50% of Facebook, Inc. is entirely false.  Ceglia has doctored or otherwise manipulated the real contract that he had with Zuckerberg concerning programming work for StreetFax.com to make it appear as though Zuckerberg had agreed to provide Ceglia with an interest in Facebook, Inc.  Moreover, the Government alleges that Ceglia has doctored, fabricated and destroyed evidence to support his false claim, including manufacturing the communications in the Purported E-mails, none of which actually transpired.  In using his civil action to fraudulently demand a significant ownership stake in Facebook, Inc., Ceglia has caused various legal documents, including motions and declarations, to be transmitted both by mail and by e-mail from the Southern District of New York, among other places, to counsel for the Civil Defendants located in, among other places, Washington, D.C.  Similarly, at various times, Ceglia's attorneys located in California and Ohio have transmitted legal documents in furtherance of the Defendant's fraudulent scheme via e-mail to counsel for the Civil Defendants in Manhattan, New York.  (Compl. at ¶¶ 6-11; Ind. at ¶¶ 6, 8-9).

At various times throughout the pendency of the Defendant's civil action, Ceglia has been represented by a number of different attorneys, including his current counsel Paul Argentieri, Esq., who maintains an office in Hornell, New York but now lives in Sebastopol, California, and Dean Boland, Esq., in Lakewood, Ohio.  Additionally, at certain relevant times, Ceglia was also represented by counsel at DLA Piper, LLP; Kasowitz, Benson, Torres & Friedman LLP; and Milberg LLP in New York City; as well as Jeffrey Lake, Esq. in San Diego,

California.  Finally, during much of the time that Ceglia's civil action has been pending, the Defendant was living abroad in Ireland, a country to which he had relocated following the filing of his amended complaint.

On June 2, 2011, counsel for Zuckerberg and Facebook, Inc. moved for expedited discovery in the civil action pursuant to Federal Rule of Civil Procedure 26(d)(1), seeking, among other things, immediate production of the original signed version of the Alleged Contract. By orders dated July 1, 2011, the Honorable Leslie G. Foschio, United States Magistrate Judge for the Western District of New York ordered the parties in the civil action to engage in limited expedited discovery, including the gathering of electronic evidence, testing of the Alleged Contract, and depositions of various expert witnesses located throughout the country who were retained by both sides.  At the close of this discovery period, counsel for Zuckerberg and Facebook, Inc., filed a motion to dismissed Ceglia's amended complaint, which is still pending.

## ARGUMENT

### Ceglia's Motion to Transfer Venue Should Be Denied

As described below, Ceglia cannot satisfy his burden of showing that a transfer of this prosecution from the District in which it was brought is warranted.  Consequently, Ceglia's motion to transfer venue to the Western District of New York should be denied.

A.      **Applicable Legal Standards**

Rule 21(b) of the Federal Rules of Criminal Procedure provides that "for the convenience of parties and witnesses, and in the interest of justice, the court upon motion of the defendant may transfer the proceeding as to that defendant or any one or more of the counts thereof to another district."  Fed. R. Crim. P. 21(b).  The "burden is on the moving defendant to justify a transfer under Rule 21(b)."  United States v. Spy Factory, Inc., 951 F. Supp. 450, 464 (S.D.N.Y.

1997) (citing United States v. Aronoff, 463 F. Supp. 454, 460 (S.D.N.Y. 1978)); see also United States v. Washington, 813 F. Supp. 269, 275 (D. Vt. 1993); United States v. Wheaton, 463 F. Supp. 1073 (S.D.N.Y. 1979).  Furthermore, the moving defendant must provide "factual substantiation" for his contentions that a transfer is in the interests of justice.  United States v. Williams, 437 F. Supp. 1047, 1051 (W.D.N.Y. 1977); see also United States v. Spy Factory, 951 F. Supp. at 456 ("the court must rely on 'concrete demonstrations'" of fact).

The decision whether to grant a motion for change of venue is "vested in the sound discretion of the district court."  United States v. Maldonado-Rivera, 922 F.2d 934, 966 (2d Cir. 1990).  "As a general rule a criminal prosecution should be retained in the original district" in which it was filed, unless a court finds it would not be in the interests of justice to do so.  United States v. United States Steel Corp., 233 F. Supp. 154, 157 (S.D.N.Y. 1964); see also United States v. Wilson, 2001 WL 798018, at *1 (S.D.N.Y. July 13, 2001) (citing United States v. Guastella, 90 F. Supp. 2d 335, 338 (S.D.N.Y. 2000)); Spy Factory, 951 F. Supp. at 464 (citing United States v. Posner, 549 F. Supp. 475, 477 (S.D.N.Y. 1982)).  Indeed, as Judge Weinfeld's oft-cited guidance makes clear:

> As a general rule a criminal prosecution should be retained in the original district.  To warrant a transfer from the district where an indictment was properly returned it should appear that a trial there would be so unduly burdensome that fairness requires transfer to another district of proper venue where a trial would be less burdensome . . . .

United States v. Posner, 549 F. Supp. 475, 477 (S.D.N.Y. 1982) (quoting United States v. United States Steel Corp., 233 F. Supp. 154, 157 (S.D.N.Y. 1964)).

In assessing a motion to transfer venue, the district court should weigh a variety of factors, including (1) the location of the defendant's residence; (2) the location of possible witnesses; (3) the location of events likely to be at issue; (4) the location of relevant documents

and records; (5) the potential for disruption of the defendant's business if transfer is denied; (6) expenses to be incurred by the parties; (7) the location of defense counsel; (8) the relative accessibility of the place of trial; (9) the docket conditions of each potential district; and (10) any other special circumstance that might bear on the desirability of the transfer.  See Platt v. Minnesota Mining Co., 376 U.S. 240, 244 (1964); Maldonado-Rivera, 922 F.2d at 966.  No single factor is dispositive in this analysis; rather, it is left to the district court to "strike a balance and determine which factors are of greatest importance."  Maldonado-Rivera, 922 F.2d at 966; see also United States v. Stephenson, 895 F.2d 867, 875 (2d Cir. 1990).

Generally speaking, the trend has been to deny such motions.  See United States v. Quinn, 401 F. Supp. 2d 80, 85-86 (D.D.C. 2005) (citing cases and treatises).  This trend recognizes that, since the time that Platt was decided in 1964, "the massive expansion of technology and the relative decline in costs for long-distance travel over the past few decades" have greatly reduced the circumstances where transfer is justified.  Id. at 86.

**B.    A Transfer of Venue Is Not in the Interests of Justice**

Analysis of each of the Platt factors makes clear that the Defendant has failed to meet his burden of demonstrating that this case should not be prosecuted in the Southern District of New York, the judicial district in which the Indictment against him was returned.  Indeed, as discussed more fully below, Ceglia has provided no compelling reason for this Court to grant the extraordinary and rare relief that he seeks.  Despite living in and pursuing his civil lawsuit to fraudulently obtain a stake in Facebook, Inc. from Ireland for almost an entire year prior to his arrest, Ceglia would have this Court believe that transfer to the Western District of New York is in the interests of justice.  The Defendant's argument that transfer is appropriate, despite the fact that the Government investigated him here, interviewed witnesses located here, ultimately

-6-

charged him here, and sought compulsory process here, is simply unavailing.  For these and the following reasons, Ceglia's motion to transfer venue should be denied.

1.      **Residence of the Defendant**

While there is no dispute that Ceglia currently resides in Wellsville, New York, this fact alone does not justify transfer.  It is well established "that inconvenience of the defendant or his business is not, by itself, a sufficient basis for a transfer," United States v. Conner, 2001 U.S. Dist. LEXIS 1110, at *8 (S.D.N.Y. Feb. 9, 2001) (quoting United States v. Culoso, 461 F. Supp. 128, 136 (S.D.N.Y. 1978)); United States v. Antia, 1999 WL 294788, at *2 (E.D.N.Y. Mar. 22, 1999) (citing Wheaton, 463 F. Supp. at 1078), and that a defendant's residence should not be given "dispositive weight."  Spy Factory, 951 F. Supp. at 456.  In fact, the law is clear that "[a] Court should not give any factor preeminent weight . . . ."  Id. at 455 (citing Maldonado-Rivera, 922 F.2d at 966 ("No one of these considerations [the Platt factors] is dispositive")).  While it is true that courts should give consideration to trying defendants where they reside, United States v. Russell, 582 F. Supp. 600, 662 (S.D.N.Y. 1982), courts have noted that this "policy" of trying defendants in their district of residence is "in tension with the more general presumption that a criminal prosecution should be retained in the original district."  Spy Factory, 951 F. Supp. at 464.  Accordingly, a defendant's desires alone are insufficient to warrant transfer.  See United States v. Valdes, 2006 WL 738403, at *4 (S.D.N.Y. Mar. 21, 2006); United States v. Henley, 1995 WL 60019, *2 (S.D.N.Y. Feb. 10, 1995).  Such a rule recognizes that "a defendant would always like to be close to his loved ones," Valdes, 2006 WL 738403, at *4 (quoting United States v. Layne, 2005 WL 1009765, at *3 (S.D.N.Y. May 2, 2005), and that such a consideration must be counterbalanced against the presumption that a criminal case is to be tried where it is brought.

Additionally, whatever traction Ceglia's argument that transfer is warranted based on his current residence may have is undermined by the fact that the Defendant was living in Ireland for almost a year from at least November 2011 until mere days before his arrest on the instant charges.  In fact, Ceglia engaged in much of the charged fraudulent scheme from abroad, using his civil lawsuit to fraudulently demand a significant ownership stake in Facebook, Inc.  On this record, Ceglia's current residence does not counsel in favor of transfer.

Moreover, the duration of any disruption – which would occur regardless of where the defendant is tried – is not nearly so long as other cases where motions to transfer on the basis of the defendant's convenience have been denied.  The Government anticipates the trial in this matter to last approximately two to three weeks.  In United States v. Stein, 429 F. Supp. 2d 633 (S.D.N.Y. 2006), for example, Judge Kaplan denied a motion to transfer for the convenience of the defendants where trial was anticipated to last between six and eight months.  Id. at 645.

Accordingly, while the fact of the defendant's residence in Wellsville, New York means that this factor may weigh in favor of transfer, it does so only slightly.  See United States v. Coriarty, 2000 WL 1099920, at *2 (S.D.N.Y. Aug. 7, 2000) (finding factor weighed in favor of transfer only slightly where defendant lived in Florida with wife and three small children; application to transfer denied).

**2.     Location of Witnesses**

The location of witnesses who are likely to be called at trial is not a factor that weighs in favor of transfer.  Although Ceglia asserts that "the key witnesses are . . . in the Western District of New York," (Memo at 8), the vast majority of the witnesses who are central to resolving Ceglia's disputed ownership interest in Facebook, Inc. are located outside the State of New York altogether, including Mark Zuckerberg (California); Ceglia's business partner at StreetFax.com,

-8-

Karin Petersen (North Carolina); a former attorney for StreetFax.com, James Kole (Illinois); and Jeffrey Kazen (Connecticut), who helped Zuckerberg in 2003 and 2004 with programming work for StreetFax.com.  Additionally, expert witnesses who are in a position to offer relevant testimony are located throughout the country.  The reality is that, other than Ceglia and certain members of his family, no critical witness resides in the Western District of New York.

A defendant claiming that the location of witnesses warrants a transfer of venue bears the burden of offering the Court "specific examples of witnesses' testimony and their <u>inability to testify</u> because of the location of trial."  <u>Spy Factory</u>, 951 F. Supp. at 456 (emphasis added).  The "naked allegation that witnesses will be inconvenienced by a trial in a distant forum will not suffice for transfer."  <u>Id</u>; <u>see also</u> <u>United States</u> v. <u>Juncal</u>, 1998 WL 473949, *5 (S.D.N.Y. Aug. 7, 1998) ("there is no basis to grant the motion to transfer" where defendant fails to make "a specific proffer of testimony from specific witnesses to allow the court to make an informed decision about the importance of these witnesses to [the defendant's] case").  Rather, "the court must rely on concrete demonstrations of the proposed testimony."  <u>Spy Factory</u>, 951 F. Supp. at 456 (quotations and citations omitted).  Moreover, "in this age of easy air travel, this factor is generally much less relevant than it was in 1964, when the Supreme Court decided <u>Platt</u>."  <u>United States</u> v. <u>Ebbers</u>, 2004 WL 2346154, at *1 (S.D.N.Y. 2004).

Here, in the place of specific examples of witnesses who would be unable to testify if this case were tried in Manhattan, Ceglia offers a list of persons interviewed in connection with the investigation and the general claim that an unspecified number of potential character defense witnesses reside in Wellsville, New York.  (Memo. at 8-9).  Ceglia baldly asserts that "a significant part of the defense case will be in the form of character testimony from his many

personal relations and business associates in Wellsville." (Memo at 8). However, the Defendant does not identify any specific individual he intends to call at trial.

Similarly, Ceglia fails to show that any potential defense witnesses would be <u>unable</u> to testify at a trial held in Manhattan. In such circumstances, courts in this District have repeatedly found that the location of witnesses in the defendant's home district did <u>not</u> weigh in favor of transfer. <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Brooks</u>, 2008 WL 2944626, at *2 (S.D.N.Y. July 31, 2008) ("bare assertion" of hardship was insufficient to tip this <u>Platt</u> factor in favor of transfer); <u>Stein</u>, 429 F. Supp. 2d at 645-46 (location of the witnesses did not support transfer where defendants failed to put forward any evidence that potential witnesses would be unable or unwilling to travel to the Southern District of New York); <u>Ebbers</u>, 2004 WL 2346154, at *1 (defendant did not allege that "witnesses would be unable to testify in New York, that he would be unable to call them, or that he would be financially incapable of paying such witness' expenses").

With respect to character witnesses in particular, Ceglia's claim is especially weak. Character witnesses by their nature usually provide short opinion or reputation testimony about a defendant's character (in this case, most likely truthfulness). This kind of testimony usually involves very few witnesses because such testimony can easily become cumulative and runs the risk of wasting the jury's time.

Although the Government has not determined its trial witnesses at this early stage in the litigation, Ceglia correctly anticipates that Mark Zuckerberg and Karin Petersen will likely be Government witnesses at trial. (Memo. at 8). Neither witness, however, will find a trial in Buffalo to be more convenient than a trial in Manhattan. In fact, given the plethora of transportation options in the New York City metropolitan area, both witnesses are likely to find

-10-

trial in the Southern District of New York far more convenient.  Thus, convenience to these central witnesses is not a factor supporting a transfer.

In short, because the Defendant has failed to provide a single "specific example[] of witnesses' testimony and . . . inability to testify because of the location of trial," Spy Factory, 951 F. Supp. at 456, he has simply failed to meet his burden of proving that the location of necessary and relevant defense witnesses compels a transfer to the Western District of New York.

3.      **Location of Events**

Ceglia has similarly failed to demonstrate that the location of events in this case compels transfer.  The Defendant contends that the transfer is warranted because the "nerve center" of the charged fraud was in the Western District of New York.  (Memo. at 10).  This argument ignores critical facts, however.  Not only did the ongoing fraud continue in Manhattan when Ceglia's New York City-based attorneys served certain legal documents, including the amended complaint, on the Civil Defendant's counsel in, among other places, Washington, D.C., but each and every affirmative act in furtherance of the ongoing fraud was completed in New York when, among other things, counsel for the Civil Defendants were served by Ceglia's attorneys with the various legal documents that he has employed to further his fraudulent scheme to defraud California-based Zuckerberg and Facebook, Inc.

Title 18, United States Code, Section 3237(a) expressly provides that "any offense against the United States . . . committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed."  18 U.S.C. § 3237(a) (emphasis added).  Moreover, it has long been settled that in prosecution for mail fraud – as is the case here – trial may be held in the place of the mailing, the place of receipt of the

mail, and places through which the mailed matter passed.  Hagner v. United States, 285 U.S. 427 (1932); Salinger v. Loisel, 265 U.S. 224 (1924); see also 18 U.S.C. § 3237(a).  The reason for this is that "the purpose of the mail fraud statute is to protect against" the "use of the United States mails in furtherance of . . . [the] scheme" and "[i]t is entirely reasonable that under [the] statute trial should be had at the place where the primary evils at which the law is directed occur."  United States v. Cashin, 281 F.2d 669, 674 (2d Cir. 1960).

In many ways, this case is similar to that of United States v. Estrada, 2012 WL 3083477, at *3-4 (S.D.N.Y. July 20, 2012) and United States v. Spy Factory, Inc., 951 F. Supp. 450, 464 (S.D.N.Y. 1997), where the events at issue were located outside of the Southern District of New York but the respective courts nonetheless denied the defendants' venue transfer motions because the defendants had intentionally projected their fraud nationwide, including into this District.  The Government respectfully submits that those decisions are controlling here as well.

**4.      Location of Relevant Documents and Records**

As Ceglia concedes, "[g]iven the ease with which documentary evidence can be transported electronically," (Memo at 13), the location of the relevant documents and records is, if anything, a neutral factor.

**5.      Disruption of the Defendant's Business**

The Defendant next argues that venue should be transferred because he "lives and works in Wellsville, New York where he manages over a dozen residential rental properties. . . . During the time that he is gone, he is obviously unable to respond to the myriad issues that arise with his properties." (Memo. at 12).  The Government submits that this claim is not compelling.  Trial by its very nature is disruptive to the livelihood of those on trial.  Standing trial in the Western District of New York would require the defendant to be absent from his business during

-12-

normal business hours and, at best, would force him to have minimal contact with his clientele. That would be true regardless of where trial occurs. In addition, Ceglia's wife and parents have previously helped operate the business and could continue to do so during trial. Moreover, and tellingly, Ceglia managed his business from Ireland, where he was living for almost a year – from at least November 5, 2011 until October 24, 2012. In the modern era of telephones, e-mail, and fax machines, it is unclear how contact by these methods of communication would be insufficient to establish the minimal contact that would be available to Ceglia during lunch breaks and after court proceedings in Buffalo. See Spy Factory, 951 F. Supp. at 458-59 (defendant failed to demonstrate why telephone and fax communication would be insufficient to maintain contact with defendant's employer). Thus, the purported disruption to the Defendant's business is not a factor that favors transfer of this case.

6.      **Expenses to the Parties**

The Defendant further argues for a transfer of venue on the ground that he will face a "significant" financial burden if required to defend himself in Manhattan. (Memo. at 12-13). The Defendant's argument, however, ignores certain critical facts that, when considered, tip this factor strongly against transfer of the case to the Western District of New York.

First and foremost, the Defendant completely ignores the tremendous expense that would be incurred by the Government which has investigated and charged him here, if the case were transferred to the Western District of New York. Were this case transferred to that judicial district, the Government would have to move two Assistant United States Attorneys, a paralegal, and at least one Postal Inspector to Buffalo in order to conduct the trial. Courts in this District have repeatedly denied transfer motions in part because the expense of transfer to the Government was too significant to warrant transfer. See, e.g., Ebbers, 2004 WL 2346154, at *2

-13-

("It would impose an enormous burden on the government to move the prosecutors, investigators, support staff, court staff, and others familiar with the case . . . to another jurisdiction"); United States v. Carey, 152 F. Supp. 2d 415, 422-23 (S.D.N.Y. 2001) (denying transfer motion on the basis that "if venue is transferred to the District of Columbia, the effect is merely to shift the economic burden to the government").

Tellingly, the Defendant does not claim that the expenses he will incur will prejudice his defense. As an initial matter, Ceglia has not retained any lawyers to defend against the criminal charges, but has instead had counsel appointed by the Court to represent him. The Federal Defenders Office will thus shoulder the expense of defending Ceglia, whether it be in Manhattan or in Buffalo.

In deciding whether to transfer a case for convenience, courts in this District focus on whether the expenses that the defendant will incur trying a case in Manhattan will affect his ability to mount a defense. Where courts have found that the expense of a trial in New York City, no matter how significant, will not prejudice the defendant's ability to defend himself, courts have denied transfer motions. See Spy Factory, 951 F. Supp. at 459 (holding that factor of expenses did not weigh in favor of the defendants where "defendants Kimball and Spy Factory, Inc. have not demonstrated that they are financially incapable of funding their defense"; motion for transfer denied); see, e.g., Wilson, 2001 WL 798018, at *2 (denying transfer motion where one defendant was paying for wife and two sons to relocate to New York); Aronoff, 463 F. Supp. at 460-61 (denying transfer motion where defendant "does not state that he would be financially unable to either return to Detroit periodically during trial, or to bring his family with him.").

Here, Ceglia offers nothing more than "a bald assertion that a trial out of a defendant's home district would be more expensive than if the trial were held in the defendant's home

district." <u>Valdes</u>, 2006 WL 738403, at *7.  The Defendant makes no showing of how the expense of a trial in the Southern District of New York might prejudice the quality of his defense.  In sum, while a trial in Manhattan will certainly be costly, Ceglia has not carried his burden of showing that the added expense of trying this case in this District warrants a transfer of this case in the interests of justice.

### 7.    Location of Counsel

The location of counsel favors New York City, as both the Government attorneys who will be trying the case as well as Ceglia's court-appointed counsel are located in Manhattan.

### 8.    Relative Accessibility

While Ceglia contends that Buffalo and Manhattan are of comparable accessibility, the Government would respectfully argue that Manhattan is far more accessible, whether it be by airplane, train, or bus.  Accordingly, this <u>Platt</u> factor is, if anything, neutral.  <u>See</u> <u>Layne</u>, 2005 WL 1009765, at *6; <u>Guastella</u>, 90 F. Supp. 2d at 341; <u>Spy Factory</u>, 951 F. Supp. at 460.

### 9.    Docket Conditions

The Defendant concedes that the relative docket conditions of the Southern and Western Districts of New York are "roughly equivalent."  (Memo. at 13).  Accordingly, this <u>Platt</u> factor does not favor transfer.

## CONCLUSION

In sum, the Defendant has failed to satisfy his burden of demonstrating by concrete illustrations of fact that a transfer of this case to the Western District of New York is required "in the interests of justice." Fed. R. Crim. P. 21(b). Simply put, Ceglia has not established anything beyond the ordinary inconvenience and interference with normal personal activities that occur whenever a defendant is standing trail for serious criminal charges. Accordingly, for all of the reasons set forth above, the Defendant's motion to transfer venue should be denied.

Dated: New York, New York
      February 6, 2013

                        Respectfully submitted,

                        PREET BHARARA
                        United States Attorney

By: _____
                        Janis M. Echenberg
                        Christopher D. Frey
                        Assistant United States Attorneys
                        Telephone: (212) 637-2597/2270