UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------X

**UNITED STATES OF AMERICA,**                    :

                                                 :

                         - v -                   :          **12 CRIM 876 (ALC)**

**PAUL CEGLIA,**                                 :

                         Defendant.              :

-------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CEGLIA'S MOTION TO
DISMISS THE INDICTMENT**


DAVID E. PATTON, ESQ.
YUANCHUNG LEE, ESQ.
ANNALISA MIRÓN, ESQ.
Federal Defenders of New York
Attorneys for Defendant
**Paul Ceglia**
52 Duane Street, 10th Floor
New York, New York 10007
(212) 417-8738

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------X

**UNITED STATES OF AMERICA,**          :

                                       :

              - v -                    :          **12 CRIM 876 (ALC)**

**PAUL CEGLIA,**                       :

                    Defendant.   :

-------------------------------X


### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CEGLIA'S MOTION TO DISMISS THE INDICTMENT

This Memorandum of Law is submitted on behalf of defendant Paul Ceglia in support of his motion to dismiss the indictment for (1) failing to state an offense pursuant to Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure, and (2) violating the First Amendment of the United States Constitution.

### SUMMARY OF ARGUMENT

The indictment alleges that Ceglia commenced a meritless lawsuit, intentionally made false claims in the suit, and mailed and electronically transmitted litigation-related documents while prosecuting that suit. Even assuming the truth of those factual allegations, three independent reasons require dismissal of the indictment for failing to state an offense:

- 2 -

(1) False claims in litigation documents cannot provide the basis for a prosecution for mail or wire fraud;

(2) There can be no "intent to deceive" – a necessary element of a fraud charge – where the purported victim and offender are both aware of the alleged misrepresentation; and

(3) the alleged mailings and transmissions at issue were not made "for the purpose of executing" the fraudulent scheme, as the plain language of the mail and wire fraud statutes require.

In addition to failing to state an offense, the indictment also violates Ceglia's First Amendment speech and petition rights.

First, the indictment must be dismissed because it is founded exclusively upon mailings or wire transmissions stemming from the civil lawsuit filed by Ceglia against Mark Zuckerberg and Facebook. Courts have refused to construe the federal fraud statutes as encompassing cases where the true cause of action is the tort of malicious prosecution, on the ground that there already exist sufficient mechanisms targeting groundless lawsuits and that "prosecuting litigation activities would tend to inhibit policies promoting access to the courts." United States v. Lee, 427 F.3d 881, 890 (11th Cir. 2005).

As a former judge of this Court (now a judge of the

Second Circuit) explained in rejecting a mail-fraud based RICO claim founded upon an allegation of malicious prosecution, "recharacteriz[ing] a malicious prosecution claim as a fraud claim" undermines "the principle of unhindered court access," is inconsistent "with the strong public policy of open access to the courts for all parties without fear of reprisal," and "would provide malicious prosecution plaintiffs with unprecedented access to federal court." Von Bulow v. Von Bulow, 657 F. Supp. 1134, 1139 & 1142-43 (S.D.N.Y. 1987) (Walker, J.); see also Nakahara v. Bal, 97 Civ. 2027, 1998 WL 35123 at *6-*8 (S.D.N.Y. Jan. 30, 1998) (Cote, J.) (following Von Bulow and dismissing complaint grounded upon "inchoate claims for malicious prosecution or abuse or process" recharacterized as mail and wire fraud violations).

Put simply, the Government has improperly dressed up a civil claim for malicious prosecution as a criminal fraud prosecution, with the Government standing in for civil litigants Zuckerberg and Facebook. Extending the federal fraud statutes to encompass the conduct alleged here stretches the laws far beyond their scope and is prohibited by sound policy and case law.

Second, the indictment must be dismissed because neither count of the two-count indictment sets forth facts establishing that Ceglia intended to defraud the purported victim, Mark

Zuckerberg and his company Facebook. According to the Government, the conduct constituting the "scheme to defraud" is as follows:  Ceglia "doctored or otherwise fraudulently converted a legitimate contract that he had with Mark Zuckerberg," concerning "programming work . . . to falsely make it appear as though he had entered into an agreement with Zuckerberg in which Zuckerberg agreed to provide [Ceglia] with at least a 50% interest in Facebook." Indictment at 2-3.

Even assuming these allegations are true, the indictment fails to state a case of mail or wire fraud against Ceglia. Where the offender is aware that his misrepresentations cannot possibly deceive the victim -- as is the case here, since (according to the Government's allegations) both offender and victim are aware that the "doctored or otherwise fraudulently converted" contract awarding ownership interest in Facebook to Ceglia does not actually exist -- there cannot be an intent to deceive. As the Ninth Circuit put the point long ago, "There can be no intent to deceive where it is known to the party making the representations that no deception can result." Norton v. United States, 92 F.2d 753, 755 (9th Cir. 1937); see Sosa v. Direct TV, Inc., 437 F.3d 923, 941 (9th Cir. 2006) ("[False statements in] letters cannot amount to mail fraud [] where the sender knows the recipient will not be deceived by the falsehoods.").

- 5 -

Where the alleged offender and the alleged victim both
know the truth behind the misrepresentations, there may be
other causes of action against the offender -- but there is no
deception necessary to sustain a mail or wire fraud
prosecution. <u>United States v. Pendergraft</u>, 297 F.3d 1198, 1209
(11th Cir. 2002) (dismissing mail fraud charge where
Government's proof showed that both victim and defendants knew
that defendants' misrepresentations were false).

<u>Third</u>, the indictment should be dismissed because it fails
to allege facts establishing that Ceglia used the mails or wire
transmissions "for the purpose of executing" the fraudulent
scheme as required by the mail and wire fraud statutes. A mailing
or transmission can serve as the basis of a mail or wire fraud
prosecution only if it furthers – or was made "in furtherance of"
– that scheme. <u>See, e.g.</u>, <u>United States v. Slevin</u>, 106 F.3d 1086,
1089 (2d Cir. 1996); <u>see</u> <u>United States v. Litwok</u>, 678 F.3d 208,
213 (2d Cir. 2012).

A mailing or transmission that "places the defrauded
[party] on notice of the fraud, impedes the execution of the
fraud, or discloses the nature of the fraud, may not be said to
be in furtherance of a fraudulent scheme," and therefore cannot
serve as the basis for prosecution. <u>United States v. Tocco</u>, 135
F.3d 116, 125 (2d Cir. 1998); <u>accord</u> <u>United States v. Koen</u>, 982
F.2d 1101, 1107 (7th Cir. 1992) ("[A] mailing does not further

the illegal scheme, and is thus outside the statute, when it serves to put the defrauded person non notice of the fraud . . . or discloses the nature of the fraud.").

Accepting the allegations in the indictment as true, that is precisely what the mailings and transmissions at issue here do. Instead of furthering Ceglia's fraud, they disclose it to the purported victims. By informing Zuckerberg and Facebook of the existence of the (purportedly) concocted contract awarding 50 percent of Facebook to Ceglia, those mailings and transmissions put the civil defendants "on notice of the fraud" and "disclose[] the nature of the fraud." They therefore cannot also serve as the basis for a mail or wire fraud prosecution.  This clear mismatch between the factual allegations and the elements of mail and wire fraud make clear why claims made in litigation documents fall outside the scope of those fraud statutes.

Lastly, the  First Amendment prohibits this prosecution, because it impermissibly restricts both speech and the right to petition.  Content-based restrictions on speech -- such as those unquestionably at issue here -- are presumed unconstitutional violations of the First Amendment unless they are proven to withstand heightened scrutiny. See, e.g., Turner Broadcasting System, Inc. v. FCC, 512 U.S. 622, 641-52 (1989). In order for the government's action to withstand such scrutiny, the action must meet three conditions: that its action furthered a

- 7 -

substantial government interest, In re R. M. J., 455 U.S. 191, 203 (1982); that the restriction is proportional to the interest served, id.; and that the action is the least restrictive among effective alternatives. Ashcroft v. American Civil Liberties Union, 542 U.S. 656, 666 (2004).

Because of the substantial chilling effect on free and open access to the court system caused by the prosecution of this case, see, e.g., Pendergraft, 297 F.3d at 1198, the government action here is out of proportion to the interest served. Additionally, there exists a more effective, less restrictive mechanism to serve the government's interest: a civil action for malicious prosecution. See, e.g., Nakahara, 1998 WL 35123, at *7-*9; Von Bulow, 657 F. Supp. at 1145.

This prosecution also violates Ceglia's First Amendment right to petition. The right to petition protects access to the courts to petition for redress of grievances. Bill Johnson's Restaurants, Inc., v. NLRB, 461 U.S. 731 (1983)("access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances."). As this prosecution unconstitutionally restricts Ceglia's right to petition, it is prohibited by the First Amendment.

For all these reasons, the indictment must be dismissed.

## **FACTS**

1.   <u>The Civil Suit</u>

The following facts are alleged by the Government.  In June 2010, Paul Ceglia filed a lawsuit against Mark Zuckerberg and Facebook[1] in New York State Supreme Court, claiming that he held a substantial ownership interest in Facebook as a result of a contract between him and Zuckerberg, signed by both at a meeting in a Boston hotel on April 28, 2003. Complaint ¶¶ 6a & 6b. Defendants answered that the only contract between Ceglia and Zuckerberg concerned a matter unrelated to Facebook, and that the purported contract concerning Facebook was concocted by Ceglia. <u>See</u> Memorandum of Law in Support of Defendants' Motion to Dismiss, <u>Ceglia v. Zuckerberg et al.</u>, 10 Civ. 569 (RJA), (docket entry 28) (W.D.N.Y. 2010).

The suit was removed to federal court (specifically the U.S. District Court for the Western District of New York) and Ceglia filed an amended complaint in April 2011 based on the same allegations. <u>Id.</u>; Complaint at ¶ 6b.  Two months later, Ceglia filed a sworn declaration affirming the truth of those allegations.  <u>Id.</u>

---

[1] Zuckerberg is the founder, Chairman, and Chief Executive Officer of Facebook with a controlling ownership and voting interest in the company.  <u>See</u>, <u>e.g.</u>, Declaration of Mark Zuckerberg, <u>Ceglia v. Zuckerberg et al.</u>, 10 Civ. 569 (RJA), (Docket entry 29) (W.D.N.Y., filed Aug. 30, 2010).

Ceglia's amended complaint, sworn declaration, and other litigation-related documents were "served via electronic notification and by mail on various attorneys" for Zuckerberg and Facebook located in New York City, Buffalo, and Washington D.C. Complaint at 5 n.1.

The suit remains pending in the Western District. <u>See</u> Docket Sheet in <u>Ceglia v. Zuckerberg et al.</u>, W.D.N.Y. Docket No. 10-cv-569 (RJA).

2.    <u>The Criminal Prosecution</u>

Ceglia was arrested in October 2012 and charged in a two-count complaint with mail and wire fraud in the Southern District of New York. The complaint tracks the defendants' position in the civil suit: The only contract between Ceglia and Zuckerberg did not involve Facebook and the contract produced by Ceglia in connection with the lawsuit, purportedly providing him with ownership interest in Facebook, was concocted by Ceglia.

Ceglia was indicted the following month in a two-count indictment, again charging him with mail and wire fraud. Indictment No. 12 Cr. 876 (ALC). The indictment alleges that the "scheme to defraud" occurred from "in or about June 2010" -- when Ceglia first sued Zuckerberg -- to "in or about October 2012," when he was arrested. Indictment at 2. Once again, the core allegation mirrors the defendants' position in the civil suit:

> In furtherance of the scheme to defraud, PAUL CEGLIA
> [] doctored or otherwise fraudulently converted a

- 10 -

legitimate contract that he had with Mark Zuckerberg, dated April 28, 2003 -- in which Zuckerberg agreed to perform certain programming work for CEGLIA wholly unrelated to the Facebook website, in exchange for an agreed upon fee -- to falsely make it appear as though he had entered into an agreement with Zuckerberg in which Zuckerberg agreed to provide CEGLIA with at least a 50% interest in Facebook.

Indictment at 2-3. And "[a]s a further part of the scheme to defraud," the indictment continues,

on or about June 30, 2010, PAUL CEGLIA, the defendant, filed a civil lawsuit in the Supreme Court of the State of New York, Allegany County, against Mark Zuckerberg and Facebook, Inc., which was thereafter removed to the United States District Court for the Western District of New York, to falsely and fraudulently allege his ownership interest in Facebook.

Indictment at 3.

Count One charges Ceglia with mail fraud, in violation of 18 U.S.C. § 1341. Specifically, it accuses him of filing the fraudulent civil suit and in the process "caus[ing] legal pleadings and other items to be delivered by mail," in particular a mailing that occurred "on or about April 11, 2011":

[T]o wit, CEGLIA filed a civil lawsuit against Facebook, Inc. And that company's founder and Chief Executive Officer, Mark Zuckerberg, fraudulently demanding a significant ownership stake in Facebook, Inc., and caused legal pleadings and other items to be delivered by mail to Washington, D.C., among other places, from the Southern District of New York and elsewhere, including on or about April 11, 2011.

Indictment at 4. As the Complaint explains, Ceglia filed an amended complaint in the civil suit on April 11, 2011, and served

- 11 -

it by mail on counsel for Zuckerberg and Facebook. Complaint ¶ 6b & at 5 n.1.

Count Two charges Ceglia with wire fraud, in violation of 18 U.S.C. § 1343. Once again, it accuses him of filing the fraudulent civil suit and in the process "caus[ing] others to send interstate electronic communications in connection with that lawsuit," in particular electronic transmissions occurring "on or about July 14, 2011, November 1, 2011, and December 8, 2011":

> [T]o wit, CEGLIA filed a civil lawsuit against Facebook, Inc. And that company's founder and Chief Executive Officer, Mark Zuckerberg, fraudulently demanding a significant ownership stake in Facebook, Inc., and causing others to send interstate electronic communications in connection with that lawsuit, including on or about July 14, 2011, November 1, 2011, and December 8, 2011.

Indictment at 5. The complaint explains these dates: Ceglia filed a declaration electronically, and caused it to be served by email, on counsel for Zuckerberg and Facebook on July 22, 2011; and filed electronically a notice of motion, memorandum of law, and several declarations, among other items, and served them by email to opposing counsel on November 1 and December 8, 2011. Complaint at 5 n.1.

Characterizing the alleged conduct as causing "various legal documents, including motions and declarations, to be transmitted both by mail and e-mail," the Government acknowledges that the sole conduct charged in the indictment is the transmission of legal documents in support of Ceglia's civil

lawsuit. See Government's Memorandum of Law in Opposition to Motion to Transfer Venue at 3 (Docket entry 21)(Feb. 6, 2013).

### ARGUMENT

### Point I

**The Indictment Must Be Dismissed Because False Claims in Litigation Documents Cannot Form the Basis for Federal Mail and Wire Fraud Violations.**

This is a highly unusual case in which the Government has stepped into the shoes of a party in a pending civil lawsuit, and converted that party's inchoate cause of action for malicious prosecution into a federal indictment for mail and wire fraud against the opposing party. The indictment, based entirely and solely upon mailings and wire transmissions stemming from the civil lawsuit, extends federal fraud statutes well beyond their permitted reach and must therefore be dismissed.

"A number of courts have considered whether serving litigation documents by mail can constitute mail fraud, and all have rejected that possibility." United States v. Pendergraft, 297 F.3d 1198, 1208 (11th Cir. 2002). Although Pendergraft vacated the defendants' mail fraud convictions on another ground, see infra Point II, it explained that "such charges are merely artfully pleaded claims for malicious prosecution" and that "prosecuting litigation activities as federal crimes would

undermine the policies of access and finality that animate our legal system." Id.

Courts have uniformly rejected efforts to convert a cause of action for malicious prosecution -- essentially a claim that a party filed a frivolous lawsuit without probable cause and in bad faith[2] -- into mail or wire fraud, where the allegations supporting the "fraud" claim derive entirely from the filing, mailing or transmitting of litigation documents. A key case is Von Bulow v. Von Bulow, 657 F. Supp. 1134 (S.D.N.Y. 1987), in which then-District Judge Walker dismissed a complaint filed by Claus von Bulow against Alexander Auersperg, the son of von Bulow's wife Martha von Bulow. Von Bulow initially sued for malicious prosecution, alleging that Auersperg, by making false statements and tampering with evidence, "instituted [an] ultimately unsuccessful criminal prosecution in Rhode Island [(where von Bulow was eventually acquitted of attempting to murder his wife)] and, failing in that forum, maliciously instituted [a] civil action against von Bulow." Id. at 1137. Von Bulow then moved to amend his complaint to add a cause of

_____

[2] Under New York law, a plaintiff must establish four elements to prevail in a malicious prosecution action: S/he must demonstrate that (1) defendant either commenced or continued a criminal or civil proceeding against him; (2) the earlier proceeding terminated in his/her favor; (3) there was no probable cause for the proceeding; and (4) the proceeding was instituted in actual malice. Russo v. New York, 672 F.2d 1014, 1018 (2d Cir. 1982), on rehearing, 721 F.2d 410 (2d Cir. 1983).

action arising under the federal RICO statute, claiming that Auersperg's activities in connection with both the Rhode Island criminal case and the civil suit also constituted fraud capable of serving as RICO predicates. Id.

The court dismissed the malicious prosecution complaint on statute of limitations grounds, 657 F. Supp. at 1137-39, and rejected von Bulow's attempt to amend his complaint as one claiming fraud on the ground that there was "a dearth of allegations of Auersperg's activities not directly related to bringing and prosecuting legal actions" and was thus essentially a claim of malicious prosecution. Id. at 1141 & 1142-46.

The court rejected von Bulow's attempt to recharacterize his malicious prosecution claim as one of fraud. There is a "strong public policy favoring open access to the courts," the court explained, and "all persons should freely resort to the courts for redress of wrongs." Id. at 1144 (quoting Burt v. Smith, 73 N.E. 495, 496 (N.Y. 1905). As a result, even malicious prosecution is "a cause of action not favored by the law," since its availability "may deter poor plaintiffs from asserting bona fides claims." Id.

Allowing what is at its core a malicious prosecution claim to proceed as a fraud claim capable of serving as a RICO predicate would improperly "provide malicious prosecution

plaintiffs with unprecedented access to federal courts" and allow them to seek treble damages. Id. at 1145. The court thus concluded that "a complaint based on nothing more than a party's filing of unjustified suits cannot" be converted into an action under the fraud statute. Id.

Other courts have followed Von Bulow, including the Honorable Denise Cote in this District in Nakahara v. Bal, Docket No. 97 Civ. 2027 (DLC), 1998 WL 35123 (S.D.N.Y. Jan. 30, 1998). There, the defendant moved to dismiss the complaint, claiming a civil RICO violation with mail and wire fraud predicates, on the ground that its purported allegations of "fraud" were based entirely on the filing or mailing of litigation-related documents -- and thus sounded in malicious prosecution and not fraud. Id. at 6. The court agreed and, following Von Bulow, dismissed the complaint. Id. at *7-*9. As the court remarked, "[t]he core conclusion in Von Bulow, that the threat of litigation or the initiation of unjustified lawsuits constituting malicious prosecution cannot alone form a predicate act for purposes of RICO, has been reached by numerous courts . . . in this jurisdiction and others." Id. at *7 n.7 (collecting cases). See Daddona v. Gaudio 156 F. Supp.2d 153, 162 (D. Conn. 2000) (dismissing plaintiff's mail and wire fraud claims, "where the only allegedly fraudulent conduct relates to the filing of documents in litigation");

<u>Auburn Medical Center, Inc. v. Andrus</u>, 9 F. Supp.2d 1291, 1297 (M.D. Ala. 1998) ("A number of courts have considered whether serving litigation documents by mail can constitute mail fraud, and all have rejected that possibility . . . on policy grounds, recognizing that such charges are merely 'artfully pleaded claims for malicious prosecution.'"); <u>Manax v. McNamara</u>, 660 F.Supp. 657 (W.D. Tex. 1987) (noting that initiation of lawsuits does not constitute scheme to defraud under mail or wife fraud statutes) <u>aff'd</u>, 842 F.2d 808 (5th Cir. 1988); <u>see also</u> <u>I.S. Joseph Co. v. J. Lauritzen A/S</u>, 751 F.2d 265, 267-68 (8th Cir. 1984) ("If a suit is groundless or filed in bad faith, the law of torts may provide a remedy. Resort to a federal criminal statute is unnecessary.").[3]

The mail and wire fraud claims advanced by Nakahara, the court explained, "seek[] to have this Court in effect decide the merits of lawsuits or proceedings that are already pending between these same parties in several other jurisdictions." <u>Nakahara</u>, 1998 WL 35123, at *9. Such claims of "fraud . . . can be asserted as effectively, if not more so, in each of those

---

[3] A corollary to the policy concerns related to charging criminal fraud is the judicial function exception to 18 U.S.C. § 1001 charges. See e.g., <u>United States v. Vreeland</u>, 684 F.3d 653, 665 (6th Cir. 2012) ("Allowing the criminal penalties of section 1001 to apply to statements made in the course of adversarial litigation would chill vigorous advocacy, thereby undermining the adversarial process.").

ongoing proceedings." Id. The court thus dismissed the complaint. Id. at *11.

The same principle calls for dismissal in this case. The indictment against Ceglia is based entirely on his civil suit against Zuckerberg. Its mail and wire fraud allegations are grounded exclusively upon the filing, mailing, and transmitting of allegedly false litigation documents. Essentially, the Government has stepped into Zuckerberg's shoes, and filed a malicious prosecution civil action under the guise of a mail and wire fraud criminal prosecution.

This the Government cannot do. If it is against the strong public policy in favor of access to the courts to allow a civil fraud claim based on the filing of litigation documents to proceed, it is far more so to allow the Government to prosecute someone for filing a lawsuit under the mail and wire fraud statutes.

### Point II

**The Indictment Must Be Dismissed Because It Fails to Allege that Ceglia Intended to Deceive Zuckerberg or Facebook.**

The elements of the federal mail and wire fraud offenses are well-established. Among other things, the defendant must have acted with the specific intent to deceive the victim. See United States v. Guadagna, 183 F.3d 122, 129 (2d Cir. 1999)("It

- 18 -

is not sufficient that defendant realizes that the scheme is fraudulent and that it has the capacity to cause harm to its victims. Instead, the proof must demonstrate that the defendant had a 'conscious knowing intent to defraud'"); Accord United States v. Walker, 191 F.3d 326, 334-35 (2d Cir. 1999) ("Proof of fraudulent intent, or the specific intent to harm or defraud the victims of the scheme, is an essential component of the 'scheme to defraud' element.") (internal citations omitted); 2 Leonard B. Sand et al., Modern Federal Jury Instructions, Inst. 44-5 (2013) ("'intent to defraud' means to act knowingly and with the specific intent to deceive...").

The indictment here must be dismissed because it fails to set forth facts establishing that Ceglia intended to deceive Zuckerberg. Where the purported offender and victim are both aware of the falsity of the offender's misrepresentations, there can be no deception necessary to sustain a mail or wire fraud prosecution.

The seminal case is Norton v. United States, 92 F.2d 753 (9th Cir. 1937). The indictment there, charging Norton with mail fraud, alleged that Norton wrote a letter to the actor Clark Gable claiming that a child had been born to her as a result of illicit relations between her and Gable in England in 1922 and demanding money for the child's care and support. The indictment further alleged that (1) Gable was not in England in

- 19 -

1922 and (2) in any event had never met Norton. Id. at 754. A jury convicted Norton, but the Ninth Circuit vacated her conviction on appeal.

The Court acknowledged that "[o]n its face the indictment appears to present a scheme to defraud Gable by falsely representing to him that he is the father of appellant's child." 92 F.2d at 754. However, "intent to defraud is an essential element of the offense" and "[t]he person devising the fraudulent scheme must intend in some manner to delude the person upon whom the scheme is [] practiced." Id. at 755. But, the Court concluded, "[t]here can be no intent to deceive where it is known to the party making the representations that no deception can result." Id.

That was the case in Norton, where "every circumstance upon which [the defendant] might have based a hope of perpetrating a deception is negatived in the indictment" itself. 92 F.2d at 755. As the Court pointed out, the indictment alleges that Gable had never met Norton and that "each was aware of that fact and each knew the other to be aware of it." Under such circumstances, the Court concluded:

> Humanly speaking, it is not possible to impute to
> the accused woman the purpose of inducing Gable to
> part with his money on the strength of her story,
> since she knew he could not be taken in by it.

Id. Thus, while Norton's "scheme" may sound in some other action, it was "not one to trick or deceive," as required for conviction under the mail fraud statute. Id.

The same concern led to the vacatur of mail fraud charges against the defendants in Pendergraft, 297 F.3d 1198 (11th Cir. 2002). Defendants were accused of filing a civil suit and mailing affidavits in which they falsely accused one Larry Cretul of threatening them in a telephone conversation. The conversation was recorded, and Cretul clearly made no threats. Id. at 1201-02. Defendants were indicted for and convicted of mail fraud based on the false affidavits.

On Appeal, the Eleventh Circuit explained that as in Norton, defendants "knew that Cretul would deny making these threats, and they knew that their affidavits would not trick Cretul into admitting otherwise." 297 F.3d at 1209. And "[i]f they knew that they could not deceive [Cretul or his municipal employer], then they could not have had an intent to deceive." Id. And "[s]ince there was no intent to deceive, there was no 'scheme to defraud.'" The Court thus vacated defendants' mail fraud convictions, holding that their "mailing of litigation documents, even perjurious ones, did not violate the mail-fraud statute." Id.; accord Sosa, 437 F.3d 923, 941 (9th Cir. 2005) (explaining that sending "letters [containing misrepresentations] cannot amount to mail fraud [] where the

sender knows the recipient will not be deceived by the falsehoods."); Levitan v. Patti, 2011 WL 1299947 at *15-*16 (N.D. Fla. 2011) (dismissing plaintiff's civil RICO claim based on mail and wire fraud predicates, explaining that "[b]ecause [plaintiff] knew that the [defendants'] allegations were false, [] 'deceit' is not at issue") (citing Pendergraft, 297 F.3d at 1209)).

The indictment against Ceglia is deficient in precisely the same manner. As in Norton, "every circumstance upon which [the defendant] might have based a hope of perpetrating a deception is negatived in the indictment" itself. 92 F.2d at 755.

Accepting the indictment's allegations as true, both Ceglia and Zuckerberg are aware of the falsity of Ceglia's allegations -- i.e., both knows that there is no contract between them awarding ownership interest in Facebook to Ceglia. On the face of the indictment, therefore, there is no possibility that Zuckerberg or Facebook could have been taken in or otherwise tricked by Ceglia's misrepresentations -- and Ceglia and the civil defendants would be well aware of that. But as Norton explained, "[t]here can be no intent to deceive where it is known to the party making the representations that no deception can result." 92 F.2d at 754. That is, "[i]f [Ceglia] knew that [he] could not deceive [Zuckerberg or

Facebook], then [he] could not have had an intent to deceive."
Pendergraft, 297 F.3d at 1209.

On this ground alone, the indictment must be dismissed.

### Point III

**The Indictment Must Be Dismissed Because It Fails to Allege that Ceglia Used the Mails or Wire Transmissions "in Furtherance" of the Fraud.**

The indictment also fails to state a wire or mail fraud offense because the alleged mailings and transmissions at issue were not made "for the purpose of executing" the fraudulent scheme, as the plain language of the mail and wire fraud statutes requires. A mailing or transmission can serve as the basis of a mail or wire fraud prosecution only if it furthers – or was made "in furtherance of" – that scheme. See, e.g., United States v. Slevin, 106 F.3d 1086, 1089 (2d Cir. 1996); see United States v. Litwok, 678 F.3d 208, 213 (2d Cir. 2012). A mailing or transmission that does not in some way advance, further, or help to carry out the contemplated scheme does not qualify.

A mailing or transmission that "places the defrauded [party] on notice of the fraud, impedes the execution of the fraud, or discloses the nature of the fraud, may not be said to be in furtherance of a fraudulent scheme," and therefore cannot serve as the basis for prosecution. United States v. Tocco, 135

- 23 -

F.3d 116, 125 (2d Cir. 1998); accord United States v. Leyden,
842 F.2d 1026, 1030 (8th Cir. 1988) ("As a general rule, it is
well recognized that mailings that serve to put the defrauded
on notice, or make the execution of the fraud less likely, are
not covered under [18 U.S.C.] § 1341."); United States v. Koen,
982 F.2d 1101, 1107 (7th Cir. 1992) ("[A] mailing does not
further the illegal scheme, and is thus outside the statute,
when it serves to put the defrauded person non notice of the
fraud . . . or discloses the nature of the fraud."). See
generally United States v. Maze, 414 U.S. 395, 402 & 405 (1974)
(vacating mail fraud conviction on ground that mailings caused
by defendant's fraud did not further his fraud but actually
"increased the probability that [he] would be detected and
apprehended"; "Congress could have drafted the mail fraud
statute so as to require only that the mails be in fact used as
a result of the fraudulent scheme. But it did not do this;
instead it required that the use of the mails be 'for the
purpose of executing such scheme or artifice.'").

Accepting the allegations in the indictment as true, that
is precisely what the mailings and transmissions at issue here
do. Instead of furthering Ceglia's fraud, they disclose it to
the purported victims. By informing Zuckerberg and Facebook of
the existence of the (purportedly) concocted contract awarding
50 percent of Facebook to Ceglia, those mailings and

- 24 -

transmissions put the civil defendants "on notice of the fraud" and "disclose[] the nature of the fraud." They therefore cannot serve as the basis for a mail or wire fraud prosecution.

## Point IV

### The Indictment Must Be Dismissed Because it Violates Ceglia's First Amendment Speech and Petition Rights.

Even if a statutory reading of the federal fraud statutes could be stretched to include the conduct alleged here, it would violate the First Amendment to do so. The criminal prosecution in this case is an impermissible restriction on the content of Mr. Ceglia's speech, and it also violates his right to petition the courts.

A.   Freedom of Speech

The criminal prosecution of a defendant based on allegedly false statements made by that defendant, in a court proceeding or otherwise, is unquestionably a content-based restriction of the defendant's speech. See, e.g., United States v. Alvarez, 132 S. Ct. 2537, 2543 (2012) (plurality opinion) (taking for granted that criminalizing the making of a false statement is a content-based restriction on speech); id. at 2552 (Breyer, J., concurring in the judgment) (same).

Content-based restrictions on speech are presumed unconstitutional and are only permitted if the government action withstands heightened scrutiny.  See id. at 2543 (2012)

(plurality opinion) ("When content-based speech regulation is in question . . . exacting scrutiny is required."); <u>Ashcroft v. American Civil Liberties Union</u>, 542 U.S. 656, 660 (2004)(the Constitution "demands that content-based restrictions on speech be presumed invalid . . . and that the Government bear the burden of showing their constitutionality."); <u>Ashcroft v. American Civil Liberties Union</u>, 535 U.S. 564, 573 (2002) (internal quotation marks omitted)("[A]s a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content.").

To surmount this high burden, the government must meet three criteria. First, the government must prove that the restriction furthers a "substantial interest." <u>In re R. M. J.</u>, 455 U.S. 191, 203 (1982). Second, the government must prove that "the interference with speech must be in proportion to the interest served," <u>id.</u>; <u>Board of Trustees v. Fox</u>, 492 U.S. 469, 480 (1989) (requiring a proportional "fit" between means and ends). And third, the government must prove that "the challenged regulation is the least restrictive means among available, effective alternatives." <u>Ashcroft</u>, 542 U.S. at 666. For the reasons explained below, the government cannot satisfy this test. On this basis alone, the indictment must be dismissed.

- 26 -

The prosecution of civil litigants for fraud based on nothing more than statements made in litigation documents imposes a chilling effect on legitimate speech that is out of proportion to the government interest to be served. The Supreme Court has recognized that content-based restrictions on false speech can result in a reticence that hinders the free exchange of ideas. See Gertz v. Robert Welch, Inc., 418 U.S. 323, 341 (1974) ("The First Amendment requires that we protect some falsehood in order to protect speech that matters."). Similarly, as discussed above, courts have recognized that "prosecuting litigation activities as federal crimes would undermine the policies of access and finality that animate our legal system." United States v. Pendergraft, 297 F.3d 1198, 1208 (11th Cir. 2009); see also Von Bulow v. Von Bulow, 657 F. Supp. 1134, 1144 (S.D.N.Y. 1987) (suggesting that bringing a claim of fraud for civil litigation activities is contrary to the "strong public policy favoring open access to the courts").

Given the recognized chilling effect of such prosecutions on the substantial interest in having a freely accessibly court system, the restriction at issue here is far out of proportion to the government interest served. This conclusion is compounded by the existence of a significantly less restrictive alternative that accomplishes the same governmental interest:

the availability of civil remedies such as attorneys' fees and a claim of malicious prosecution.

A content-based restriction on speech must be the "least restrictive means among available, effective alternatives." Ashcroft, 542 U.S. at 666. Numerous federal courts have refused to permit fraud cases to proceed because the tort of malicious prosecution already provides an effective mechanism to deter improper use of the court system. Auburn Medical Center, Inc. v. Andrus, 9 F. Supp. 2d 1291, 1299 (M.D. Ala. 1998); Nakahara v. Bal, 97 Civ. 2027, 1998 WL 35123, at *3-*9 (S.D.N.Y. Jan. 30, 1998); Von Bulow v. Von Bulow, 657 F. Supp. 1134 (S.D.N.Y. 1987).

In Andrus, an analogous action to the prosecution at issue in the instant case was brought in the Middle District of Alabama. Andrus, 9 F. Supp. 2d at 1299. The court held unfounded a prosecution under RICO based on alleged mail and wire fraud in the course of civil litigation. Id. According to the court, "if a lawsuit is filed in bad faith, the law of torts, rather than RICO, is best designed to provide a remedy." Id. In so finding, the court heavily relied on two Southern District of New York opinions: Von Bulow, 657 F. Supp. at 1137-45, and Nakahara, 1998 WL 35123, at *3-*9. Those cases similarly found that initiating a RICO action based on alleged mail and wire fraud was inappropriate. 1998 WL 35123, at *7-*9;

657 F. Supp. at 1145. Critically, in none of these three cases is there any evaluation of the mail or wire fraud charges themselves: the conclusion in all three is simply that the appropriate and effective mechanism in such circumstances to validate the rights of the parties and achieve legitimate governmental interests is through an action for malicious prosecution. 9 F. Supp. 2d at 1299; 1998 WL 35123, at *7-*9; 657 F. Supp. at 1145.

Animating the courts' decisions not to stretch the federal fraud statutes to encompass the sort of conduct at issue here was a concern about the First Amendment. As another court, commenting on the body of law, put it:

> The Court shares the worries regarding the First Amendment right to petition that all these courts mention, but does not reach that issue because the central holding is that the actions of the Defendants, however culpable, do not constitute fraud against Livingston Downs. Defendants did not have the intent to deceive Livingston Downs. Consequently, there was never a scheme to defraud and the mailings did not constitute mail fraud violations.

Livingston Downs Racing Ass'n v. Jefferson Downs Corp., 257 F.Supp. 2d 819 (M.D. La. 2002).

In other words, these courts did not address the First Amendment issue in analogous cases because they wisely avoided the constitutional question by properly limiting the scope of the federal fraud statutes.

Should this Court reach the constitutional issue, however, the prosecution cannot stand.  The restriction on content-based speech is not in proportion to the government interest served, and there is an effective, less-restrictive alternative to further that interest. On free speech grounds, this indictment must therefore be dismissed.

B.  The Right to Petition

Perhaps the most troubling aspect of this prosecution is the damage it does to the First Amendment right to petition. The very act of the prosecution – coming as it does during the pendency of a civil lawsuit – strikes directly at the heart of every citizen's ability to access the courts.  It threatens to chill resort to judicial resolution of disputes for would-be plaintiffs who sue well-heeled defendants with prosecutors standing by their side.

The Supreme Court has long held that "access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances." Bill Johnson's Restaurants, Inc., v. NLRB, 461 U.S. 731 (1983).  The right to petition does not depend on the ultimate validity of the underlying suit: "the text of the First Amendment [does not] speak in terms of successful petitioning – it speaks simply of 'the right of the people ... to petition the Government for a

- 30 -

redress of grievances.'" <u>BE&K Constr. Co. v. NLRB</u>, 536 U.S. 516, 532 (2002).

Under the so-called <u>Noerr-Pennington</u> doctrine,[4] the Supreme Court has long held that the Petition Clause of the First Amendment protects citizens access to the courts even in the face of possible statutory constraints (such as antitrust laws or labor laws that might otherwise prohibit certain litigation activities). As such, the doctrine provides immunity to private citizens from Government action restraining resort to the Courts. For instance, in the labor law context, the doctrine means that the NLRB may not prohibit an employer from suing an employee even where the lawsuit was filed as a means of retaliating against the employee for exercising protected labor organizing rights. <u>See Bill Johnson's</u>, 461 U.S. 731.

The only exception to this immunity is for the regulation of "suits that [are] both objectively baseless and subjectively motivated by an unlawful purpose." <u>BE&K Constr. Co.</u>, 536 U.S. at 531. The bar for such a showing is set extremely high. As

---

[4] The <u>Noerr-Pennington</u> doctrine derives from two Supreme Court cases: <u>Eastern Railraod Presidents Conference v. Noerr Motor Freight, Inc.</u>, 365 U.S. 127 (1961) and <u>Mine Workers v. Pennington</u>, 381 U.S. 657 (1965). <u>See also California Motor Transport Co. V. Trucking Unlimited</u>, 404 U.S. 508, 511 (1972) (expanding the doctrine to cover situations where groups "use... agencies and courts to advocate their causes and points of view respecting their business and economic interests <i>vis-a-vis</i> their competitors.").

the Supreme Court has stated, "we have described a sham as 'evidenced by repetitive lawsuits carrying the hallmark of insubstantial claims.'" Professional Real Estate Investors, Inc. et al. v. Columbia Pictures Industries, Inc., 508 U.S. 49, 58 (1993). In making that determination, the Court has been emphatic that:

> recourse to agencies and courts should not be condemned as sham until a reviewing court has 'discerned and drawn' the 'difficult line' separating objectively reasonable claims from 'a pattern of baseless, repetitive claims... which leads the factfinder to conclude that the administrative and judicial processes have been abused.'

Id. Maintaining Noerr-Pennington immunity "requires no more than a 'reasonable belief that there is a chance that a claim may be held valid upon adjudication.'" Id. at 62-63 (emphasis added). In other words, there need not be a reasonable belief that a lawsuit will be held valid; only that there is a chance of its occurrence.

Here, the Government is prosecuting a plaintiff in an on-going civil action in a basic contract suit in which the parties dispute the facts. Zuckerberg and Facebook acknowledge that Ceglia entered into a contract with Zuckerberg for computer programming work in 2003 when Zuckerberg was a student at Harvard. Zuckerberg and Facebook claim, however, that Ceglia later altered the contract to include provisions about Facebook that were not in the original contract. The entirety

- 32 -

of the dispute in the civil lawsuit is whether the contract upon which Ceglia is suing is altered.  It is a straightforward factual dispute with a clear legal foundation: the law of contracts.  And there are equally clear legal remedies for Zuckerberg and Facebook to vindicate their rights: a motion to dismiss; a motion for summary judgment; attorneys fees; and a separate legal action for malicious prosecution.

To remove this case from the ordinary remedies available to any civil litigant and to permit criminal prosecution of Ceglia with its attendant restraint on his constitutional right to petition the courts, would require this Court to determine that the lawsuit is and was objectively and subjectively baseless; that from the outset of its filing there was "no chance" of it being held valid upon adjudication.  For that to happen, this Court would need to engage in significant fact-finding, and the Government would bear a heavy burden of showing that the immunity should be pierced.

The bar the Government must clear to pierce the immunity is set understandably high – it protects a foundational right, the right to petition the courts. It also highlights why courts should be reluctant to read statutes so broadly as to raise constitutional questions.  As discussed above, the federal fraud statutes were never meant to cover the conduct alleged in this case; indeed, courts have affirmatively held that they

- 33 -

cannot cover the conduct alleged here precisely to avoid constitutional questions.  See supra Points I-III.

The doctrines surrounding the First Amendment right to petition the courts stand for a "generic rule of statutory construction, applicable to any statutory interpretation that could implicate the rights protected by the Petition Clause," and they require courts to "construe federal statutes so as to avoid burdening conduct that implicates the protections afforded by the Petition Clause unless the statute clearly provides otherwise."  Sosa v. DirecTV, Inc., 437 F.3d 923, 931 (9th Cir. 2006).

This case is a textbook example of the danger of an impermissibly broad reading of federal criminal statutes.  The United States Attorney's Office has chosen to use its considerable power and resources to pick sides in a civil dispute.  And it has done so in the most selective of ways, reaching out to the Western District of New York to prosecute a plaintiff who has sued one of the world's richest corporations.

The Court should avoid the serious constitutional questions raised by this prosecution and dismiss it based on the statutory grounds enumerated above.  Should it decline to do so, however, the prosecution cannot pass muster under the First Amendment and must be dismissed on that ground alone.

- 34 -

## CONCLUSION

The Indictment fails to state an offense and unconstitutionally infringes upon the Defendant's First Amendment rights. Accordingly, the Court should dismiss the Indictment.

Dated:  New York, New York
        November 27, 2013

                        DAVID E. PATTON, ESQ.
                        YUANCHUNG LEE, ESQ.
                        ANNALISA MIRÓN, ESQ.
                        Federal Defenders of New York, Inc.
                        Attorneys for Defendant
                          **Paul Ceglia**
                        52 Duane Street, 10th Floor
                        New York, New York 10007
                        (212) 417-8738


TO:  **PREET BHARARA, ESQ.**
     United States Attorney
     Southern District of New York
     One St. Andrew's Plaza
     New York, New York 10007

Attn:    **CHRISTOPHER FREY, ESQ.**
         **JANIS ECHENBERG, ESQ.**