UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :

      - v. -                    :          12 Cr. 876 (ALC)

PAUL CEGLIA,                      :

         Defendant.       :

- - - - - - - - - - - - - - - x


**GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT CEGLIA'S MOTION TO DISMISS THE INDICTMENT**


PREET BHARARA
United States Attorney for the
Southern District of New York
Attorney for the United States
of America


Janis M. Echenberg
Christopher D. Frey
Assistant United States Attorneys
    - Of Counsel -

## TABLE OF CONTENTS

Page

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . .6

I.   The Indictment Properly States Violations of Federal
     Criminal Statutes . . . . . . . . . . . . . . . . . . 6

     A.   Applicable Law . . . . . . . . . . . . . . . . . 6

     B.   Ceglia's Criminal Acts Constitute Mail and Wire
          Fraud . . . . . . . . . . . . . . . . . . . . . .9

          1.   Ceglia's Use of Fraudulent Litigation
               Documents in Executing His Scheme to
               Defraud Is a Proper Basis for Mail and
               Wire Fraud Charges . . . . . . . . . . . . .9

          2.   The Indictment Alleges the Requisite Intent
               to Defraud by Ceglia . . . . . . . . . . . 16

          3.   The Indictment Alleges Facts Establishing
               Ceglia Used the Mails and Wire Transmissions
               "In Furtherance" of His Scheme to Defraud . . .19

II.  The Indictment Does Not Violate Ceglia's First
     Amendment Rights . . . . . . . . . . . . . . . . . . 22

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . .30

## TABLE OF AUTHORITIES

**Cases**

BE & K Constr. Co. v. N.L.R.B., 536 U.S. 516 (2002) .......... 26

Bill Johnson's Restaurants, Inc. v. N.L.R.B.,
    461 U.S. 731 (1983) ............................... 26, 27

California Motor Transport Co. v. Trucking Unlimited,
    404 U.S. 508 (1971) ............................... 26

Church of American Knights of the Ku Klux Klan v. Kerik,
    356 F.3d 197 (2d Cir. 2004) ....................... 24

Daddona v. Gaudio, 156 F. Supp. 2d 153 (D. Conn. 2000) ....... 14

Gertz v. Robert Welch, Inc., 418 U.S. 323 (1974) ............ 27

Giboney v. Empire Storage & Ice Co., 336 U.S. 490 (1949) ...... 26

Haig v. Agee, 453 U.S. 280 (1981) ........................... 22

Herbert v. Lando, 441 U.S. 153 (1979) ...................... 27

Illinois ex rel. Madigan v. Telemarketing Assocs., Inc.,
    538 U.S. 600 (2003) ............................... 24

Kennedy v. Mendoza-Martinez, 372 U.S. 144 (1963) ............ 23

NAACP v. Button, 371 U.S. 415 (1963) ....................... 26

Nakahara v. Bal, 1998 WL 35123 (S.D.N.Y. Jan. 30, 1998) ....... 14

Norton v. United States, 92 F.2d 753 (9th Cir. 1937) ......... 16

Prof'l Real Estate Investors, Inc. v. Columbia Pictures
    Indus., Inc., 508 U.S. 49 (1993) .................. 27

Schmuck v. United States, 489 U.S. 705 (1989) ............... 20

Sorrell v. IMS Health, Inc., 131 S. Ct. 2653 (2001) .......... 24

Suarez Corp. Indus. v. McGraw, 202 F.3d 676 (4th Cir. 2000) ... 23

United Mine Workers of America, Dist. 12 v. Illinois State
    Bar Ass'n, 389 U.S. 217 (1967) ............................26

United States v. Braunig, 553 F.2d 777 (2d Cir.), cert.
    denied, 431 U.S. 959 (1977) ...............................22

United States v. Christopher, 142 F.3d 46 (1st Cir. 1998) .....17

United States v. Coven, 662 F.2d 162 (2d Cir. 1981) .......17, 22

United States v. Covino, 837 F.2d 65 (2d Cir. 1988) ..........11

United States v. Eisen, 974 F.2d 246 (2d Cir. 1992) ......passim

United States v. Hernandez, 980 F.2d 868 (2d Cir. 1992) ........7

United States v. Kennedy, 64 F.3d 1465 (10th Cir. 1995) .......17

United States v. Konstantakakos, 2005 WL 348376
    (2d Cir. Feb. 11, 2005) ...................................24

United States v. Lee, 427 F.3d 881 (11th Cir. 2005) ...13, 21, 25

United States v. McMillan, 600 F.3d 434 (5th Cir. 2010) .......17

United States v. Mennuti, 639 F.2d 107 (2d Cir. 1981) .......8, 9

United States v. Pacione, 738 F.2d 567 (2d Cir. 1984) .......8, 9

United States v. Pendergraft, 297 F.3d 1198
    (11th Cir. 2002) ......................................13, 14

United States v. Perez, 575 F.3 164 (2d Cir. 2009) ............9

United States v. Phillip Morris USA, 566 F.3d 1095
    (D.C. Cir. 2009) ..........................................29

United States v. Rodolitz, 786 F.2d 77 (2d Cir.), cert.
    denied, 479 U.S. 826 (1986) ...............................17

United States v. Rowlee, 899 F.2d 1275 (2d Cir. 1990) ........24

United States v. Rybicki, 354 F.3d 124 (2d Cir. 2004) ........25

United States v. Sabbeth, 262 F.3d 207 (2d Cir. 2001) .........8

United States v. Schwartz, 924 F.2d 410 (2d Cir. 1991) ........11

United States v. Seidling, 737 F.3d 1155 (7th Cir. 2013) ..12, 20

United States v. Stavroulakis, 952 F.2d 686 (2d Cir. 1992) .....7

United States v. Tocco, 135 F.3d 116 (2d Cir. 1998) .......20, 21

United States v. Ulloa, 2013 WL 535776 (2d Cir.
    Feb. 14, 2013) ...........................................16

United States v. Wallach, 935 F.2d 445 (2d Cir. 1991) ........17

Von Bulow v. Von Bulow, 657 F. Supp. 1134 (S.D.N.Y. 1987) .....14

**Federal Rules**

Fed. R. Crim. P. 7(c) ........................................7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :

     - v. -                          :          12 Cr. 876 (ALC)

PAUL CEGLIA,                      :

           Defendant.       :

- - - - - - - - - - - - - - - x

### GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT CEGLIA'S MOTION TO DISMISS THE INDICTMENT

The Government respectfully submits this memorandum of law in opposition to the November 27, 2013 motion by defendant Paul Ceglia ("Ceglia" or the "Defendant") to dismiss the Indictment in this matter.  In sum, the Government's allegations charge the Defendant with mail and wire fraud for his creation and subsequent execution of an elaborate scheme to fraudulently obtain an ownership interest in Facebook, Inc. by forging a written contract, fabricating purported e-mail communication, destroying evidence contradictory to his claims, and pursuing a sham civil action in the ultimate attempt to con both a district court judge and civil jury into recognizing his false claim to at least a 50% stake in one of the most successful social networking companies in history.  Based on compelling precedent

in the Second Circuit and elsewhere, the Indictment is properly brought against the Defendant, and for all of the reasons set forth below, Ceglia's motion should be denied in its entirety.

## STATEMENT OF FACTS

The Defendant was arrested on October 26, 2012, pursuant to a criminal complaint (the "Criminal Complaint") filed in this District on October 25, 2012.  The Criminal Complaint charged Ceglia with one count of mail fraud and one count of wire fraud in connection with the Defendant's participation in a scheme to defraud Facebook, Inc. and the Chief Executive Officer of that company, Mark Zuckerberg ("Zuckerberg"), and to corrupt the federal judicial process.  A grand jury sitting in this District returned Indictment 12 Cr. 876 (ALC) (the "Indictment") on November 26, 2012, charging the Defendant with the same crimes as set forth in the Criminal Complaint.

As alleged by the Government in both the Criminal Complaint and the Indictment, on April 28, 2003, Ceglia entered into a contract with Zuckerberg, then a student at Harvard University, in which Zuckerberg agreed to perform certain programming work for Ceglia and StreetFax.com, an online business operated by Ceglia that provided pictures and other information related to street intersections throughout the country to insurance

adjusters.  (Indictment ¶ 5; <u>see</u> <u>also</u> Compl. at ¶¶ 5, 6b(1)-
(2)).  In the contract they signed in Boston, Massachusetts in
April 2003, Ceglia agreed to pay Zuckerberg a fee for his work
on the StreetFax.com website.  (Indictment at ¶ 5; <u>see</u> <u>also</u>
Compl. at ¶ 6b(4)).

The Indictment alleges that, sometime after 2003, as part
of his scheme to defraud, Ceglia doctored or otherwise
fraudulently converted the real contract that he had with
Zuckerberg concerning programming work for StreetFax.com to make
it appear as though Zuckerberg had agreed to provide Ceglia with
at least a 50% interest in Facebook (the "Alleged Contract").
(Indictment at ¶ 5).  The first page of the Alleged Contract
contained language giving Ceglia "a half interest (50%) in the
software, programming language and business interests" derived
from the expansion of "The Face Book" or "The Page Book."  The
second page of the Alleged Contract contained the signatures of
Ceglia and Zuckerberg.  Moreover, the Indictment charges, that
to further his scheme, Ceglia manufactured evidence to support
his false ownership claim, including creating e-mail
communications he purportedly had with Mark Zuckerberg between
July 2003 and July 2004 via Zuckerberg's Harvard e-mail account
(the "Purported E-mails").  Additionally, Ceglia destroyed

certain evidence that was inconsistent with his false claim. (Indictment at ¶ 7; see also Compl. at ¶ 6).

In connection with the above acts, and as a further part of his scheme to defraud, Ceglia then initiated a lawsuit against Zuckerberg and Facebook, Inc. (the "Civil Defendants") in the Supreme Court for the State of New York, Allegany County in June 2010, to enforce his rights under the Alleged Contract. The case was subsequently removed to the U.S. District Court for the Western District of New York. In April 2011, Ceglia filed a 25-page amended complaint, through his attorneys at the law firm of DLA Piper, LLP in New York, New York. See Ceglia v. Zuckerberg, et al., 10 Civ. 569 (RJA)(LGF) (the "Civil Action"). In his amended complaint, the Defendant claimed, among other things, that Zuckerberg, in the April 2003 contract, had promised him at least a 50% interest in "The Face Book" project that ultimately became Facebook, Inc. In support of his claim, Ceglia attached a copy to his amended complaint of the Alleged Contract. Also in support of his claim, Ceglia described and cited the Purported E-mails in the amended complaint. The Purported E-mails reflect conversations between Ceglia and Zuckerberg about the design and functionality of "The Face Book" website, as well as ways to generate income from its expansion. The Purported E-

mails also reflect conversations in which Zuckerberg offered Ceglia money to "repair [their] business relationship." (Indictment at ¶¶ 6-7; see Compl. at ¶ 6).

At various times throughout the pendency of the Defendant's Civil Action, Ceglia has been represented by a number of different attorneys.  In using his Civil Action as part of his scheme to fraudulently enforce the Alleged Contract and to demand a significant ownership stake in Facebook, Inc., Ceglia has caused various legal documents, including motions and declarations, to be transmitted both by mail and by e-mail from the Southern District of New York, among other places, to counsel for the Civil Defendants located in, among other places, Washington, D.C.  Similarly, at various times, Ceglia's attorneys located in California and Ohio have transmitted legal documents in furtherance of the Defendant's fraudulent scheme via e-mail to counsel for the Civil Defendants in Manhattan, New York.  (Indictment at ¶¶ 6, 8-9; see also Compl. at ¶¶ 6-11).

## ARGUMENT

### Ceglia's Motion to Dismiss the Indictment Should Be Denied

## I. The Indictment Properly States Violations of Federal Criminal Statutes

The Indictment against Paul Ceglia alleges that the defendant devised and thereafter executed a scheme to defraud Facebook, Inc. and Mark Zuckerberg by (1) manipulating or otherwise crafting a fraudulent contract that purports to give him a sizeable ownership interest in Facebook, Inc.; (2) manufacturing evidence to support that false ownership claim; (3) destroying evidence inconsistent with his claim; (4) filing a civil lawsuit to enforce his purported rights under that fraudulent contract; and (5) by doing all of the foregoing, tricking a federal district court judge and/or civil jury into awarding him the ownership interest in Facebook, Inc. that he so seeks. As discussed below, Ceglia's scheme to defraud is properly charged as criminal violations of the federal mail and wire fraud statutes, and there is no legitimate basis upon which the Indictment should be dismissed.

### A. Applicable Law

The defendant seeks to dismiss all counts of the Indictment for failure to state a claim, pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B), because, as he asserts, the

-6-

facts alleged in the Indictment do not establish violations of the mail and wire fraud statutes.

Federal Rule of Criminal Procedure 7(c) sets forth the minimal "notice" pleading standards required in federal criminal cases.  Under Rule 7(c), an Indictment must (i) contain a "plain, concise, and definite written statement of the essential facts constituting the offense charged" and (ii) "give the official or customary citation of the statute . . . that the defendant is alleged to have violated."  Fed. R. Crim. P. 7(c). Rule 7(c) further provides that an Indictment may "allege that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means."  Id.  In determining whether a count of an Indictment sufficiently alleges an offense, each count of the Indictment should be read "in its entirety."  United States v. Hernandez, 980 F.2d 868, 871 (2d Cir. 1992).  Moreover, "an Indictment must be read to include facts which are necessarily implied by the specific allegations made."  United States v. Stavroulakis, 952 F.2d 686, 693 (2d Cir. 1992) (internal quotation marks and citation omitted).  In reading an indictment, "common sense and reason prevail over

technicalities." United States v. Sabbeth, 262 F.3d 207, 218 (2d Cir. 2001).

In the Second Circuit, courts may dismiss an Indictment where the Government's proposed proof would not establish an offense as a matter of statutory interpretation.  In United States v. Mennuti, 639 F.2d 107 (2d Cir. 1981), the Second Circuit affirmed a district court's dismissal of an Indictment that charged a violation of the Organized Crime Control Act of 1970, Title 18, United States Code, Section 844(i), because the Government's proposed proof did not satisfy the interstate commerce element of that statute as a matter of law.  Mennuti, 639 F.2d at 108-109, 113.  Likewise, in United States v. Pacione, 738 F.2d 567 (2d Cir. 1984), the Second Circuit affirmed a district court's decision to dismiss certain counts in an Indictment where the district court had found that "the totality of facts asserted by the government to be provable against [the defendant] do not establish a violation of the statute."  Pacione, 738 F.2d at 569.

In deciding motions to dismiss where the defendant claims the factual allegations are insufficient to support the offenses charged in the Indictment, courts may look to the facts alleged in the Indictment and to any additional facts proffered by the

-8-

Government.  United States v. Perez, 575 F.3 164, 166 (2d Cir.
2009) (holding that on a pretrial motion to dismiss, it is not
proper to weigh the sufficiency of the evidence underlying the
indictment, "'[u]nless the government has made what can fairly
be described as a full proffer of the evidence it intends to
present at trial.'") (quoting United States v. Alfonso, 143 F.3d
772, 776-77 (2d Cir. 1998)); see also Mennuti, 639 F.2d at 108
n.1 (accepting and reviewing a proffer of additional facts from
the Government prior to dismissing the Indictment because it did
not state an offense as a matter of statutory interpretation).[1]

## B.   Ceglia's Criminal Acts Constitute Mail and Wire Fraud

### 1.   Ceglia's Use of Fraudulent Litigation Documents in Executing His Scheme to Defraud Is a Proper Basis for Mail and Wire Fraud Charges

In seeking to dismiss the charges against him, Ceglia
argues incorrectly that the Indictment is based "entirely and
solely upon mailings and wire transmissions stemming" from the
Civil Action, and claims that the Government's allegations
amount to nothing more than an artfully pled malicious

_____

[1] It is unclear from the Second Circuit's opinion in Pacione
whether the district court looked just to the facts alleged in
the Indictment or to any other evidence proffered by the
Government before making its decision, although the latter is
strongly suggested by the district court's statement that "the
totality of facts asserted by the government to be provable
against [the defendant] do not establish a violation of the
statute."  Pacione, 738 F.2d at 569 (emphasis added).

prosecution claim.  (Br. at 13-18) (emphasis added).  Ceglia is

mistaken.  As an initial matter, the scheme to defraud that is

alleged in the Indictment involves much more than what can

fairly be described as "common litigation practices."  But even

if this Court were to accept that characterization and view the

totality of Ceglia's alleged criminal conduct in the context of

his pursuit of the Civil Action, the Indictment's mail and wire

fraud charges are still entirely proper under well-established

law.

     In United States v. Eisen, 974 F.2d 246 (2d Cir. 1992), the

Second Circuit affirmed the convictions of several attorneys as

well as certain investigators and an office administrator for a

law firm of various Racketeering Influenced Corrupt

Organizations Act ("RICO") charges -- including numerous

predicate acts of mail fraud -- in connection with the firm's

fraudulent conduct of civil litigation as plaintiff's counsel in

personal injury cases from which the firm earned millions of

dollars in contingency fees.  "The methods by which the frauds

were accomplished included pressuring accident witnesses to

testify falsely, paying individuals to testify falsely . . .,

paying unfavorable witnesses not to testify, and creating false

photographs, documents, and physical evidence . . . before and

-10-

during trial." Eisen, 974 F.2d at 251.  The Second Circuit
noted that misrepresentations in the pleadings and pretrial
submissions that were mailed were made in the hope of
fraudulently inducing a settlement before trial and, in cases
that ultimately went to trial, fraudulent representations
concerning the claims were directed at the civil defendants in
an effort to induce settlement before verdict.  In finding the
defendants' conduct to be a fraudulent scheme falling within the
scope of the federal mail fraud statute, the Second Circuit
observed that "[i]t is one thing to challenge the perception,
memory, or bias of an opponent's witnesses; it is quite another
for a party's lawyer and a witness to concoct testimony that
they know has been wholly fabricated." Id. at 253-54.  Given
the various methods employed by Ceglia in furthering his scheme
to defraud alleged in the Indictment, including making false
claims in litigation documents, the instant action is like that
brought by the Government in Eisen, and is properly charged
under the mail and wire fraud statutes.[2]

_____

[2] Because the federal mail and wire fraud statutes, 18 U.S.C. §
1341 and 1343, respectively, use the same relevant language,
they are analyzed in the same way. See, e.g., United States v.
Schwartz, 924 F.2d 410, 416 (2d Cir. 1991); United States v.
Covino, 837 F.2d 65, 71 (2d Cir. 1988).

Similarly, in United States v. Seidling, 737 F.3d 1155 (7th Cir. 2013), the Seventh Circuit affirmed the defendant's convictions for fifty counts of mail fraud based on a scheme to defraud in which the defendant knowingly mailed documents containing false information to various small claims courts in Wisconsin. The mail fraud convictions at issue in Seidling were premised on the precise conduct -- the filing of false and fraudulent litigation documents -- that Ceglia now urges this Court to reject as a basis for the charges against him. The Second Circuit's decision in Eisen and the Seventh Circuit's decision in Seidling are dispositive on this issue and make clear that the Indictment's charges are entirely proper.

Ceglia makes no attempt to discuss or distinguish these cases (including one that is controlling precedent in this Circuit), and instead urges this Court to dismiss the Indictment based principally on dicta in a case decided by the Eleventh Circuit, and by attempting to analogize the Government's allegations to unsuccessful efforts by civil plaintiffs to convert causes of action for malicious prosecution into allegations of mail and wire fraud predicates in civil RICO actions. (See Br. at 13-17). Ceglia's argument in this regard is wholly unpersuasive.

-12-

First, Ceglia's reliance upon <u>United States</u> v. <u>Pendergraft</u>, 297 F.3d 1198 (11th Cir. 2002), for the purported proposition that litigation documents served by mail cannot form the basis for a violation of the mail fraud statute, is misplaced.  As a subsequent decision by that same circuit court made clear, the <u>Pendergraft</u> panel's statements that "prosecuting litigation activities would tend to inhibit the policies promoting access to the courts" and "a malicious prosecution claim might be a more appropriate vehicle to deal with mailings made in the course of litigation" "were simply dicta."  <u>United States</u> v. <u>Lee</u>, 427 F.3d 881, 890 (11th Cir. 2005) (discussing and citing <u>Pendergraft</u>, 297 F.3d at 1208-09).  The Eleventh Circuit made clear in <u>Lee</u> that "[u]ltimately, it was due to the absence of an intent to deceive, and not upon any policy concerns relating to using the mails in connection with litigation, . . ." that the court found that the mail fraud Indictment at issue in <u>Pendergraft</u> failed to charge an offense as a matter of law. <u>Lee</u>, 427 F.3d at 891.

Second, the line of cases to which Ceglia points where courts in the Second Circuit have rejected efforts by civil litigants to convert causes of action for the tort of malicious prosecution into mail or wire fraud predicates in civil RICO

-13-

suits are wholly inapposite.  See, Von Bulow v. Von Bulow, 657
F. Supp. 1134 (S.D.N.Y. 1987); Nakahara v. Bal, 1998 WL 35123
(S.D.N.Y. Jan. 30, 1998); Daddona v. Gaudio, 156 F. Supp. 2d 153
(D. Conn. 2000).  While the Civil Defendants may very well have
standing to bring a malicious prosecution claim against Ceglia,
the Government does not.  See, e.g., Nakahara, 1998 WL 35123, at
*9 (finding the civil RICO claim at issue to be an artfully pled
claim of malicious prosecution as it related to the merits of
legal proceedings "between these same parties in several other
jurisdictions") (emphasis added).  This is because "an action
for malicious prosecution is a civil matter" and, thus, the
correct analysis is not whether Zuckerberg and Facebook, Inc.
may have a malicious prosecution claim against Ceglia (they
may), but whether the mail and wire fraud statutes criminalize
the conduct by Ceglia that the Government alleges in the
Indictment (they do).  See Pendergraft, 296 F.3d at 1205
(expressing the court's "reluctan[ce] to recharacterize the
criminal extortion charges . . . as actions for malicious
prosecution" and instead determining it was required to "analyze
the Hobbs Act to determine whether it criminalizes the bad-faith
threat to sue that [wa]s alleged.").

Moreover, the underlying concern expressed in these cases with providing civil plaintiffs who ultimately had a state malicious prosecution claim with unprecedented access to federal courts and allowing those litigants to seek treble damages under the civil RICO statute is absent here.  The Government's criminal action vindicates its legitimate interests in deterring and punishing fraud as well as corruption of the judicial process.  Ceglia is alleged in the Indictment to have engaged in an elaborate ruse whereby he crafted a fraudulent contract that purports to give him a sizeable ownership interest in Facebook, Inc., manufactured and destroyed evidence bearing on that claim, and filed a baseless civil lawsuit in which he has repeatedly made fraudulent representations to the court in an attempt to enforce his purported rights to obtain the ownership interest he so desires.  In its totality, the Civil Action is but a part of Ceglia's broader fraudulent scheme.  It simply cannot be the case that the Government is powerless to act when an individual like the defendant uses the United States mails and interstate wire transmissions to execute a scheme to defraud simply because he does so in connection with pursuing litigation.

2.    The Indictment Alleges the Requisite Intent to Defraud by Ceglia

Ceglia's argument that the Indictment must be dismissed on the independent ground that it does not set forth facts establishing that the defendant acted with the intent to deceive Mark Zuckerberg, because Zuckerberg's awareness of the falsity of Ceglia's misrepresentations negates the deception needed to sustain a mail or wire fraud prosecution similarly fails.  (Br. at 18-23).

Whether Zuckerberg would or could be misled by Ceglia's scheme is of no moment.  What matters is whether Ceglia "intend[ed] to delude [those] upon whom the scheme" is employed. Norton v. United States, 92 F.2d 753, 755 (9th Cir. 1937).[3] Moreover, the Second Circuit has clearly held that "'the government is not required to show that the intended victim was actually defrauded'; it is sufficient to show 'that the defendant[  ] contemplated some actual harm or injury.'" United States v. Ulloa, 2013 WL 535776, at *1 (2d Cir. Feb. 14, 2013)

---

[3] Although Ceglia relies principally on Norton v. United States, 92 F.2d 753 (9th Cir. 1937), he seems to misapply it.  The Norton court clearly stated, "It is not, however, a necessary ingredient of the offense punishable by the statute that the one toward whom false representations are directed shall actually be misled by them.  The circumstances may be such as to render him immune to deception." Norton, 92 F.2d at 755 (citing Hill v. United States, 73 F.2d 223 (5th Cir. 1934)) (emphasis added).

-16-

(affirming the defendant's conviction on seven counts of mail fraud)(citing United States v. Wallach, 935 F.2d 445, 461 (2d Cir. 1991)).  The Second Circuit's holding in this regard is consistent with other circuits that have held that a defendant charged with mail or wire fraud need not intend to obtain money or property from the same persons he deceives in order to prove a scheme to defraud.[4]

Here, the Indictment alleges that Ceglia has sought to perpetrate and perpetuate an elaborate fraud upon various individuals and entities: (1) Facebook, Inc.; (2) Mark Zuckerberg; and (3) by corrupting the federal judicial process, the district court judge presiding over the Civil Action and/or a civil jury as well.[5]  (Indictment at ¶ 4).  In this way, the

---

[4] See, e.g., United States v. McMillan, 600 F.3d 434, 449-50 (5th Cir. 2010) ("The government was not required to prove that misrepresentations were made directly to any of the victims."); United States v. Christopher, 142 F.3d 46, 54 (1st Cir. 1998) ("We find no reason to read into the [fraud] statutes an invariable requirement that the person deceived be the same person deprived of the money and property by the fraud."); United States v. Kennedy, 64 F.3d 1465, 1475-76 (10th Cir. 1995) (holding it "neither necessary to allege nor prove that the false pretenses, representations, or promises were actually made to anyone, much less to each individual in the distinct mail fraud counts.").

[5] Courts in this Circuit have recognized that "false evidence at a civil trial works a fraud not only on the jury but on the opposing party as well."  United States v. Eisen, 974 F.2d 246, 253 (2d Cir. 1992) (citing United States v. Rodolitz, 786 F.2d 77, 80-81 (2d Cir.), cert. denied, 479 U.S. 826 (1986)).  See also United States v. Coven, 662 F.2d 162, 175-76 (2d Cir. 1981)

-17-

Government clearly alleges that Ceglia contemplated actual harm in the execution of his scheme to defraud.  Moreover, even assuming that Ceglia's intent to deceive Zuckerberg is negatived by Zuckerberg's awareness of the falsity of Ceglia's allegations, the same may not be said for the other intended victims of Ceglia's fraud -- namely,  Facebook, Inc., the district court judge in the Civil Action, or a civil jury.[6]  The veracity of the ownership interest in Facebook, Inc. that Ceglia seeks to enforce using the Alleged Contract via the Civil Action is not known to any of those parties.  As such, Ceglia possesses the requisite intent to deceive.  In fact, it is precisely those victims that Ceglia intends to trick -- Ceglia hopes to obtain a settlement in advance of trial from Facebook, Inc., hopes to deceive the district court judge so as to create a dispute as to an issue of material fact such that his case is permitted to go

---

(finding ample evidence in the record to support a finding that the defendant participated in a scheme to defraud a receiver and the district court).

[6] For Facebook, Inc., this is particularly true in light of the fact that there have been prior claims that Zuckerberg owed a portion of his social networking platform to others he knew and worked with while a student at Harvard University.  See, e.g., http://www.nytimes.com/2011/04/12/technology/12facebook.html? r= 0 (last visited January 23, 2014).  Additionally, as neutral, disinterested parties, the district court judge and a civil jury have no independent knowledge that could negate this element of the scheme to defraud.

to trial, and ultimately hopes to convince a civil jury that Zuckerberg is lying about their contractual agreement.  Thus, the Indictment alleges the requisite intent to deceive and there is no basis on this ground for dismissing the charges against the Defendant.

    3.    <u>The Indictment Alleges Facts Establishing Ceglia Used the Mails and Wire Transmissions "In Furtherance" of His Scheme to Defraud</u>

Ceglia next argues that, instead of furthering his alleged fraud, as the relevant statutes require, the Indictment's allegations of mailings and wire transmissions merely disclosed the nature of the fraud to the putative victims.  As such, Ceglia contends the Indictment's allegations of mail and wire fraud are deficient.  (Br. at 23-25).  For the reasons discussed below, this argument should be rejected as well.

As an initial matter, the mailings and wire transmissions at issue here are no different than those involved in the mail fraud convictions that were affirmed by the Second and Seventh Circuits respectively in <u>United States</u> v. <u>Eisen</u> and <u>United States</u> v. <u>Seidling</u>.  <u>See</u>, <u>Eisen</u>, 974 F.2d 246 (2d Cir. 1992) (affirming mail fraud convictions where scheme was to deprive civil defendants of money by means of fraudulently conducted

lawsuits), and Seidling, 737 F.3d 1155 (7th Cir. 2013) (affirming mail fraud convictions where scheme to defraud was executed by knowingly mailing documents containing false information to small claims courts).

Moreover, the Second Circuit has clearly held that "a mailing is in furtherance of a fraudulent scheme when it is 'incident[al] to an essential part of the scheme' or 'a step in [the plot].'" United States v. Tocco, 135 F.3d 116, 124 (2d Cir. 1998) (internal citations omitted). "A fact-specific inquiry must be made to determine the intent, that is to say, 'whether the mailing is part of the execution of the scheme as conceived by the perpetrator at the time.'" Tocco, 135 F.3d at 124 (citing Schmuck v. United States, 489 U.S. 705, 711 (1989)).

Here, the charged scheme involves Ceglia's preparation of a fraudulent contract as well as the manufacture and destruction of evidence before (and during) the pendency of his lawsuit, all done in the hopes of ultimately tricking a civil jury into awarding him an ownership interest in a wildly successful company to which he is not entitled. The mailings and wire transmissions caused by Ceglia in pursuing litigation on the basis of the materials the Government alleges he fabricated most certainly further his aim of deceiving the district court judge

-20-

and ultimately conning a civil jury into awarding him an ownership interest in Facebook, Inc.  Those acts also seek to fraudulently induce a settlement from Facebook, Inc. prior to trial.  Cf. Eisen, 974 F.2d at 251-52 (noting that the defendants sought to extract settlements prior to trial in the course of their fraud).  In this way, Ceglia's mailings and wire transmissions in the Civil Action -- including not only the amended complaint which cited examples of fabricated e-mail communication with Zuckerberg and attached a copy of the Alleged Contract, but also various misrepresentations in certain declarations filed by Ceglia -- further the objective of his scheme to defraud.  See, e.g., Tocco, 135 F.3d at 125 (finding "[m]ailings relating to an insurance investigation that are part of the customary steps taken by an insurance carrier to decide whether to pay a claim under a policy" to be in furtherance of a fraudulent scheme under Section 1341); see also United States v. Lee, 427 F.3d at 889 (concluding that "[a] reasonable jury . . . could find that the Notice of Acceptance and motion to dismiss [in a foreclosure action] were mailed in furtherance of the scheme to defraud").  Here, the charged mailings and wire transmissions "were clearly central, not incidental, to the scheme to defraud."  United States v. Coven, 662 F.2d 162, 176

-21-

(2d Cir. 1981) (citing <u>United States</u> v. <u>Braunig</u>, 553 F.2d 777, 781-82 (2d Cir.), <u>cert. denied</u>, 431 U.S. 959 (1977)).

Because the mailings and wire transmissions alleged in the Indictment were among the various steps Ceglia took in his criminal plot, they are properly viewed as being "in furtherance" of his scheme to defraud and any argument to the contrary should be rejected.

## II.  The Indictment Does Not Violate Ceglia's First Amendment Rights

Ceglia argues that the criminal charges against him infringe upon two closely related rights under the First Amendment, as an independent basis for dismissing the Indictment.  He asserts, first, that the Government's prosecution of him is an impermissible restriction on the content of his speech, and, second, that the criminal charges violate his right to petition the courts.  (Br. at 25-34).  As discussed more fully below, however, Ceglia cannot hide behind the First Amendment to defend against the fraudulent conduct for which he is being prosecuted.

The Supreme Court has repeatedly cautioned that, "'[w]hile the Constitution protects against invasion of individual rights, it is not a suicide pact.'"  <u>Haig</u> v. <u>Agee</u>, 453 U.S. 280, 309-10 (1981) (quoting <u>Kennedy</u> v. <u>Mendoza-Martinez</u>, 372 U.S. 144, 160

-22-

(1963)).  This warning emphasizes the obvious: that all constitutional protections, including those safeguards contained in the First Amendment, must be applied thoughtfully and in context.  In other words, "not every reaction made [by government officials] in response to an individual's exercise of his First Amendment right to free speech is actionable."  Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000).

Here, the Indictment charges that Ceglia engaged in an elaborate and intricate fraud and that the Defendant has pursued civil litigation as one part of his scheme to obtain money and property to which he is not entitled.  Simply put, this is not -- as Ceglia would have this court believe -- the prosecution of a civil litigant for fraud based on "nothing more than statements made in litigation documents."  (Br. at 27).  The Government is not prosecuting Ceglia because it disagrees with the message he wishes to communicate; rather, the Defendant has been criminally charged for fabricating the evidentiary basis on which he has relied in asking a federal court to enforce his purported contractual rights and fraudulently obtain something of value from the Civil Defendants.[7]

_____

[7] To the extent that the Government's prosecution of Ceglia had an unintended and secondary impact on his speech rights -- and nothing in the record reflects that there has been such an impact (in fact, quite to the contrary, Ceglia has continued

-23-

More importantly, because it is well-established that the right to free speech is not absolute and deliberate falsehoods enjoy no First Amendment protection, the First Amendment does not shield Ceglia from prosecution for the fraud he is alleged to have committed in this District.  See, e.g., United States v. Konstantakakos, 2005 WL 348376, at *3 (2d Cir. Feb. 11, 2005) (noting that "it has long been established that the First Amendment does not shield knowingly false statements made as part of a scheme to defraud, see Illinois ex rel. Madigan v. Telemarketing Assocs., Inc., 538 U.S. 600, 611, 123 S.Ct. 1829, 155 L.Ed. 2d 793 (2003) (and cases cited therein to support the statement that, although the 'First Amendment protects the right to engage in charitable solicitation . . .[,] the First Amendment does not shield fraud'); see also United States v. Rowlee, 899 F.2d 1275, 1279 (2d Cir. 1990) (rejecting First

---

pursuing his Civil Action and has initiated a second civil lawsuit against certain Government officials, including the undersigned) -- the Second Circuit has rejected incidental-burden-on expression arguments similar to those advanced here. See, e.g., Church of American Knights of the Ku Klux Klan v. Kerik, 356 F.3d 197, 209 (2d Cir. 2004) (concluding that New York's anti-mask statute was a conduct-regulating statute of general application that imposed an incidental burden on the exercise of free speech rights and did not implicate the First Amendment).  Additionally, the Supreme Court has reiterated the more general point that "the First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech."  Sorrell v. IMS Health, Inc., 131 S. Ct. 2653, 2664-65 (2001).

Amendment challenge to making false statements in connection with fraudulent tax return)"); United States v. Rybicki, 354 F.3d 124, 151 (2d Cir. 2004) (en banc) (citing Illinois ex rel. Madigan v. Telemarketing Assocs., Inc., 538 U.S. 600, 611, 123 S. Ct. 1829, 1836, 155 L.Ed.2d 793 (2003), for the proposition that "fraud is not conduct protected by the First Amendment").

Moreover, the concern that certain courts have expressed with undermining the policy of open access to the judiciary is wholly lacking here. (Br. at 27-28). Indeed, the Eleventh Circuit noted in United States v. Lee, "[w]hile we must be mindful of the concerns for placing obstacles in the path of full access to our courts, we cannot countenance mailing false claims clothed in legalese . . ., with the intent of perpetrating or perpetuating a fraud, even where litigation is ongoing." 427 F.3d at 891. Similarly, in United States v. Eisen, the Second Circuit recognized that, "[l]itigants depend on the integrity of the conduct of participants in civil proceedings through disputing the validity of their opponents' claims to impose or resist civil liability." 974 F.2d at 253.

Ceglia is free to exercise his speech rights in the courts, but he bears the risk that doing so as an integral part of his attempts to commit fraud will have consequences. Indeed, it is

well settled that First Amendment rights are not immunized from regulation when they are used as an integral part of conduct which violates a valid statute.  Giboney v. Empire Storage & Ice Co., 336 U.S. 490 (1949).  Moreover, "First Amendment rights may not be used as the means or the pretext for achieving 'substantive evils' (see NAACP v. Button, 371 U.S. 415, 444, 83 S.Ct. 328, 343, 9 L.Ed.2d 405 (1963)) which the legislature has the power to control."  California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 614 (1971).

While the United States Supreme Court has recognized that the right to prosecute a meritorious action is a liberty interest safeguarded by the First Amendment, United Mine Workers of America, Dist. 12 v. Illinois State Bar Ass'n, 389 U.S. 217, 222 (1967), the Supreme Court has been equally clear that the same is not true of suits based on insubstantial claims, or suits that lack a "reasonable basis" in law or fact, which are not within the scope of First Amendment protection.  Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 743 (1983).  In fact, the Supreme Court has emphasized that not every lawsuit that is brought is entitled to First Amendment protection.  See, e.g., BE & K Constr. Co. v. N.L.R.B., 536 U.S. 516, 530-33 (2002) (noting that baseless litigation receives

less protection under the First Amendment).  "The First Amendment interests involved in private litigation, such as compensation for violated rights and interests, the psychological benefits of vindication, and public airing of disputed facts, are not advanced when the litigation is based on intentional falsehoods or on knowingly frivolous claims."  Bill Johnson's Restaurants, Inc., 461 U.S. at 743.   Furthermore, since "sham litigation" by definition does not involve a bona fide grievance, it does not come within the First Amendment right to petition the government.  Id.  Just as false statements are not immunized by the First Amendment right to freedom of speech, see Herbert v. Lando, 441 U.S. 153 (1979); Gertz v. Robert Welch, Inc., 418 U.S. 323, 340 (1974), vexatious or fraudulent litigation is not immunized by the First Amendment. Bill Johnson's Restaurants, 461 U.S. at 743.

Finally, while it is true that parties who maintain civil suits generally are entitled to immunity for doing so under the Noerr-Pennington doctrine of immunity, to be so cloaked the litigation must not be a "sham."  Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49 (1993). Ceglia is not being prosecuted for filing a lawsuit that a well-intentioned litigant could reasonably expect to result in

success on the merits; instead, he is charged with mail and wire
fraud in connection with his having fabricated evidence (and
destroyed contradictory evidence) before (and after) filing a
baseless lawsuit that is riddled with misrepresentations and
false statements.[8]  Neither Noerr-Pennington nor the First
Amendment immunizes such fraudulent conduct:

> Defendants' attempt to invoke Noerr-
> Pennington as protection fails because the
> doctrine does not protect deliberately false
> or misleading statements.  "[N]either the
> Noerr-Pennington doctrine nor the First
> Amendment more generally protects petitions
> predicated on fraud or deliberate
> misrepresentation."  Edmondson & Gallagher
> v. Alban Towers Tenants Ass'n, 48 F.3d 1260,
> 1267 (D.C. Cir. 1995) (describing the
> holding in Whelan v. Abell, 48 F.3d 1247
> (D.C. Cir. 1995)); see also McDonald v.
> Smith, 472 U.S. 479, 485, 105 S.Ct. 2787, 86
> L.Ed.2d 384 (1985) (finding the Petition
> Clause does not have "special First
> Amendment status" and that petitions are not
> entitled to "greater constitutional

---

[8] To the extent the Court has concerns with accepting the
Government's characterization of Ceglia's Civil Action in this
regard, the Government notes that the Honorable Leslie G.
Foschio, United States Magistrate Judge for the Western District
of New York, has issued a 155 page Report and Recommendation,
discussing in detail the reasons why he recommends dismissal of
Ceglia's lawsuit against the Civil Defendants.  After extensive
discovery was conducted, Judge Foschio concluded that "it is
highly probable and reasonable certain that the [Alleged
Contract] and the [Purported E-mails] were fabricated for the
express purpose of filing the instant action.  Plaintiff
[Ceglia's] arguments in opposition largely consist of self-
defeating inconsistencies, serving only to establish the
fraudulent nature of the [Alleged Contract] and [Purported E-
mails]."  See Civil Action, Docket No. 651, pp. 118-19.

-28-

protection" than "other First Amendment
expressions"); <u>Whelan</u>, 48 F.3d at 1255
("However broad the First Amendment right to
petition may be, it cannot be stretched to
cover petitions based on known
falsehoods."). The district court's valid
findings of fraud in this case take
Defendants' statements out of the <u>Noerr-
Pennington</u> context because they were clearly
and deliberately false.

. . .

Were these statements false, but not
deliberately so, Defendants would have a
better argument. But Defendants knew of
their falsity at the time and made the
statements with the intent to deceive.
Thus, we are not dealing with accidental
falsehoods, or sincere attempts to persuade;
Defendants' liability rests on deceits
perpetrated with knowledge of their falsity.
Where statements are deliberately false or
misleading, <u>Noerr-Pennington</u> does not apply.
<u>See</u> <u>Alban Towers</u>, 48 F.3d at 1267.

<u>United States</u> v. <u>Phillip Morris USA</u>, 566 F.3d 1095, 1123 (D.C.

Cir. 2009). Accordingly, Ceglia cannot use the First Amendment

either as a shield to defend himself from the criminal charges

or as a sword to have this Court dismiss outright the otherwise

valid Indictment against him.

## CONCLUSION

For all of the reasons set forth above, the Defendant's motion to dismiss the Indictment should be denied.

Dated: New York, New York
      January 24, 2014

               Respectfully submitted,

               PREET BHARARA
               United States Attorney

By: _____
               Janis M. Echenberg
               Christopher D. Frey
               Assistant United States Attorneys
               Telephone: (212) 637-2597/2270

-30-

<u>AFFIRMATION OF SERVICE</u>

CHRISTOPHER D. FREY hereby affirms pursuant to Section 1746 of Title 28, United States Code:

1.   I am an Assistant United States Attorney in the office of Preet Bharara, United States Attorney for the Southern District of New York.

2.   On January 24, 2014, I caused a true and correct copy of the foregoing Government's Memorandum of Law in Opposition to Defendant Ceglia's Motion to Dismiss the Indictment, via the Court's Electronic Case Filing system on:

> David E. Patton, Esq.
> Federal Defenders of New York, Inc.
> 52 Duane Street, 10th Floor
> New York, New York 10007
> *Counsel for Paul Ceglia*

3.   I declare under penalty of perjury that the foregoing is true and correct.  28 U.S.C. § 1746.

Dated:  New York, New York
        January 24, 2014


                          _____
                          CHRISTOPHER D. FREY