UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA        :

        - v. -                   :        12 Cr. 876 (ALC)

PAUL CEGLIA,                     :

        Defendant.               :

- - - - - - - - - - - - - - - x


**GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT CEGLIA'S MOTION FOR A BILL OF PARTICULARS**


                        PREET BHARARA
                        United States Attorney for the
                        Southern District of New York
                        Attorney for the United States
                            of America


Janis M. Echenberg
Christopher D. Frey
Assistant United States Attorneys
        - Of Counsel -

## TABLE OF CONTENTS

Page

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . 2

    The Criminal Complaint and Indictment . . . . . . . . . . 3

    The Discovery . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

I.   Ceglia's Motion for a Bill of Particulars Should
    Be Denied . . . . . . . . . . . . . . . . . . . . . . . . 8

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

<u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Cases</u>

<u>United States</u> v. <u>Bin Laden</u>, 92 F. Supp. 2d 225
    (S.D.N.Y. 2000) ......................................14

<u>United States</u> v. <u>Bortnovsky</u>, 820 F.2d 572 (2d Cir. 1987) ...8, 13

<u>United States</u> v. <u>Castro</u>, No. 08 Cr. 268 (NRB), 2008 WL
    5062724 (S.D.N.Y. Nov. 25, 2008) ......................10

<u>United States</u> v. <u>Conesa</u>, 899 F. Supp. 172 (S.D.N.Y. 1995) ....12

<u>United States</u> v. <u>Feng Ling Liu</u>, 2014 WL 101672 (S.D.N.Y.
    Jan. 10, 2014) .........................................9

<u>United States</u> v. <u>Feola</u>, 651 F. Supp. 1068 (S.D.N.Y. 1987) ....10

<u>United States</u> v. <u>Ferrarini</u>, 9 F. Supp. 2d 284
    (S.D.N.Y. 1998) ......................................10

<u>United States</u> v. <u>Leighton</u>, 265 F. Supp. 27 (S.D.N.Y. 1967) ....10

<u>United States</u> v. <u>Love</u>, 859 F. Supp. 725 (S.D.N.Y. 1994) ......10

<u>United States</u> v. <u>Mitlof</u>, 165 F. Supp. 2d 558 (S.D.N.Y. 2001) ...9

<u>United States</u> v. <u>Pacheco</u>, 902 F. Supp. 469 (S.D.N.Y. 1995) ....11

<u>United States</u> v. <u>Panza</u>, 750 F.2d 1141 (2d Cir. 1984) ..........8

<u>United States</u> v. <u>Payden</u>, 613 F. Supp. 800 (S.D.N.Y. 1985) ......9

<u>United States</u> v. <u>Reinhold</u>, 994 F. Supp. 194 (S.D.N.Y. 1998) ...11

<u>United States</u> v. <u>Sindone</u>, No. 01 Cr. 517 (MBM),
    2002 U.S. Dist. LEXIS 388 (S.D.N.Y. Jan. 14, 2002) .......13

<u>United States</u> v. <u>Torres</u>, 901 F.2d 205 (2d Cir. 1990) ....8, 9, 13

<u>United States</u> v. <u>Trippe</u>, 171 F.Supp.2d 230 (S.D.N.Y. 2001) ....10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :

      - v. -                    :          12 Cr. 876 (ALC)

PAUL CEGLIA,                      :

           Defendant.       :

- - - - - - - - - - - - - - x


### GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT CEGLIA'S MOTION FOR A BILL OF PARTICULARS

The Government respectfully submits this memorandum of law in opposition to the May 23, 2014 motion by defendant Paul Ceglia ("Ceglia" or the "Defendant") for a bill of particulars in this matter.  The Defendant claims that, despite the detailed "speaking" Indictment and Complaint, and the voluminous discovery, he needs a bill of particulars to (i) specify the ways in which contract at issue is fraudulent and to further define the fraudulent conduct; (ii) to identify the alleged doctored emails and attempts to destroy evidence; and (iii) to identify the source of every item produced in discovery.

The Indictment charges the Defendant with mail and wire fraud for his creation and subsequent execution of an elaborate scheme to fraudulently obtain an ownership interest in Facebook, Inc. by forging a written contract, fabricating purported e-mail

communication, destroying evidence contradictory to his claims,
and pursuing a sham civil action in the ultimate attempt to con
both a district court judge and civil jury into recognizing his
false claim to at least a 50% stake in one of the most
successful social networking companies in history.  The clear
allegations of the Indictment, coupled with the voluminous
discovery material produced to date, more than amply advise the
Defendant of the specific acts against which he must defend.
Accordingly, for the reasons discussed more fully below,
Ceglia's motion should be denied in its entirety.

<u>STATEMENT OF FACTS</u>

The Defendant was arrested on October 26, 2012, pursuant to
a criminal complaint (the "Criminal Complaint") filed in this
District on October 25, 2012.  The Criminal Complaint charged
Ceglia with one count of mail fraud and one count of wire fraud
in connection with the Defendant's participation in a scheme to
defraud Facebook, Inc. and the Chief Executive Officer of that
company, Mark Zuckerberg ("Zuckerberg"), and to corrupt the
federal judicial process.  A grand jury sitting in this District
returned Indictment 12 Cr. 876 (ALC) (the "Indictment") on
November 26, 2012, charging the Defendant with the same crimes
as set forth in the Criminal Complaint.

## The Criminal Complaint and Indictment

The Criminal Complaint and the Indictment set forth detailed allegations of Ceglia's criminal conduct.  Both the Complaint and the Indictment allege that, on April 28, 2003, Ceglia entered into a contract with Zuckerberg, then a student at Harvard University, in which Zuckerberg agreed to perform certain programming work for Ceglia and StreetFax.com, an online business operated by Ceglia that provided pictures and other information related to street intersections throughout the country to insurance adjusters.  (Indictment ¶ 5; see also Compl. at ¶¶ 5, 6b(1)-(2)).  In the contract they signed in Boston, Massachusetts in April 2003, Ceglia agreed to pay Zuckerberg a fee for Zuckerberg's work on the StreetFax.com website.  (Indictment at ¶ 5; see also Compl. at ¶ 6b(4)).

The Indictment alleges that, sometime after 2003, as part of his scheme to defraud, Ceglia doctored or otherwise fraudulently converted the real contract that he had with Zuckerberg concerning programming work for StreetFax.com to make it appear as though Zuckerberg had agreed to provide Ceglia with at least a 50% interest in Facebook (the "Alleged Contract").  (Indictment at ¶ 5).  The first page of the Alleged Contract contained language giving Ceglia "a half interest (50%) in the software, programming language and business interests" derived

from the expansion of "The Face Book" or "The Page Book."  The second page of the Alleged Contract contained the signatures of Ceglia and Zuckerberg.  Moreover, the Indictment charges, that to further his scheme, Ceglia manufactured evidence to support his false ownership claim, including creating e-mail communications he purportedly had with Zuckerberg between July 2003 and July 2004 via Zuckerberg's Harvard e-mail account (the "Purported E-mails").  Additionally, Ceglia destroyed certain evidence that was inconsistent with his false claim. (Indictment at ¶ 7; see also Compl. at ¶ 6).

In connection with the above acts, and as a further part of his scheme to defraud, Ceglia then initiated a lawsuit against Zuckerberg and Facebook, Inc. (the "Civil Defendants") in the Supreme Court for the State of New York, Allegany County, on or about June 30, 2010, to enforce his rights under the Alleged Contract.  The case was subsequently removed to the U.S. District Court for the Western District of New York.

In April 2011, Ceglia filed a 25-page amended complaint, through his attorneys at the law firm of DLA Piper, LLP in New York, New York.  See Ceglia v. Zuckerberg, et al., 10 Civ. 569 (RJA)(LGF) (the "Civil Action").  In his amended complaint, the Defendant claimed, among other things, that Zuckerberg, in the April 2003 contract, had promised him at least a 50% interest in

-4-

"The Face Book" project that ultimately became Facebook, Inc. In support of his claim, Ceglia attached a copy of the Alleged Contract to his amended complaint. Also in support of his claim, Ceglia described and cited the Purported E-mails in the amended complaint. The Purported E-mails reflect conversations between Ceglia and Zuckerberg about the design and functionality of "The Face Book" website, as well as ways to generate income from its expansion. The Purported E-mails also reflect conversations in which Zuckerberg offered Ceglia money to "repair [their] business relationship." (Indictment at ¶¶ 6-7; see Compl. at ¶ 6).

At various times throughout the pendency of the Defendant's Civil Action, Ceglia has been represented by a number of different attorneys. In using his Civil Action as part of his scheme to fraudulently enforce the Alleged Contract and to demand a significant ownership stake in Facebook, Inc., Ceglia, on numerous occasions, including on or about April 11, 2011, caused various legal documents, including motions and declarations, to be transmitted both by mail and by e-mail from the Southern District of New York, among other places, to counsel for the Civil Defendants located in, among other places, Washington, D.C. Similarly, at various times, including on or about July 14, 2011, November 1, 2011 and December 8, 2011,

-5-

Ceglia's attorneys located in California and Ohio have transmitted legal documents in furtherance of the Defendant's fraudulent scheme via e-mail to counsel for the Civil Defendants in Manhattan, New York.  (Indictment at ¶¶ 6, 8-9; see also Compl. at ¶¶ 6-11).

### The Discovery

The Government began producing discovery material shortly after the Indictment was returned, and has since produced nearly 4,500 pages of discovery, accompanied by detailed cover letters which include brief descriptions of each item and, in most cases, the item's source.  The discovery produced in December 2012 included, among other things:[1]

- a copy of a contract dated April 28, 2003 (the same date as the Alleged Contract), signed by Ceglia and Zuckerberg, regarding work on StreetFax.com, with no reference to Facebook, "The Face Book," "The Page Book," or any similar terms (the "StreetFax Contract");

- contracts between Ceglia and others with a similar format as the StreetFax Contract;

- the Purported E-mails (identified as such);

---

[1]   A copy of the Government's December 24, 2012 discovery letter is attached for the Court's reference.

- emails from the relevant time period provided by Harvard University and by Karin Petersen, a former StreetFax.com employee;

- Ceglia's civil complaint and other civil filings;

- a document, found attached to an e-mail communication sent by Jason Holmberg, an associate of Ceglia's, entitled "Lawsuit Overview" which, among other things, describes two other lawsuits in which the plaintiffs in those actions claimed to have a financial stake in Facebook and obtained significant out-of-court settlements;

- contracts with, and records of payments from, individuals who assisted Ceglia with financing the Civil Action by purchasing an interest in its outcome; and

- forensic images of certain of Ceglia's computers and other electronic media, originally provided by the Defendant pursuant to court order in the Civil Action, with an accompanying search warrant affidavit describing how those items were obtained by the Government.

Additionally, since December 2012, the Government has also produced, among other things, documents provided by law firms who previously represented Ceglia in the Civil Action as well as the results of two forensic analyses - one of the Alleged Contract and one of the forensic images of Ceglia's electronic

-7-

devices – both of which set forth various indications of fraud and manipulation, including indications that Ceglia sought to delete and overwrite computer files.

<u>ARGUMENT</u>

<u>Ceglia's Motion for a Bill of Particulars Should Be Denied</u>

Rule 7(f) of the Federal Rules of Criminal Procedure permits a defendant to seek a bill of particulars where necessary to "prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." <u>United States</u> v. <u>Bortnovsky</u>, 820 F.2d 572, 574 (2d Cir. 1987). The decision of whether to grant a bill of particulars rests within the sound discretion of the District Court. <u>United States</u> v. <u>Panza</u>, 750 F.2d 1141, 1148 (2d Cir. 1984).

Because a bill of particulars cannot be used as a general investigative tool for the defense or a device to compel discovery, a bill of particulars is required "only when the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." <u>United States</u> v. <u>Torres</u>, 901 F.2d 205, 234 (2d Cir. 1990) (request for bill of particulars denied where indictment "adequately advised" defendants of acts of which they were accused and defendants provided with "a wealth of evidentiary

-8-

detail from the discovery,") (overruled on other grounds); see also United States v. Feng Ling Liu, 2014 WL 101672, at *13-15 (S.D.N.Y. Jan. 10, 2014) (bill of particulars not required where there was a fourteen-page "speaking" indictment and the Government identified 432 fraudulent asylum applications without identifying which aspects of each application were false).

In addition, when considering requests for a bill of particulars, courts "must be cognizant of the fact that a bill of particulars confines the government's evidence at trial to the particulars furnished, [and] [t]hus the court is required to balance restricting the government's proof against protecting defendants from surprise." United States v. Payden, 613 F. Supp. 800, 816 (S.D.N.Y. 1985).

"Acquisition of evidentiary detail is not the function of the bill of particulars." Torres, 901 F.2d at 234. In general, the Government cannot be compelled to provide a bill of particulars disclosing such things as the manner in which it will attempt to prove the charges, the precise manner in which the defendant committed the crimes charged, or a preview of the Government's evidence or legal theories that it intends to present at trial. See United States v. Mitlof, 165 F. Supp. 2d 558, 569 (S.D.N.Y. 2001) (collecting cases); see also United States v. Castro, No. 08 Cr. 268 (NRB), 2008 WL 5062724, at *2

-9-

(S.D.N.Y. Nov. 25, 2008) ("An indictment need not identify all alleged co-conspirators, nor specify the nature, time and place of every overt act the defendant or others allegedly took in furtherance of a conspiracy, nor must it set forth all the evidence the government intends to introduce."). "That the requested information would be useful to the defendant is not enough; if the defendant has been given adequate notice of the charges against him, the Government need not be required to disclose additional details about its case." United States v. Feola, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987). Accordingly, "the proper test in deciding whether a bill of particulars should be required of the Government is whether the bill of particulars is necessary for the defense, not whether it would aid the defendant in h[er] preparation." United States v. Trippe, 171 F.Supp.2d 230, 240 (S.D.N.Y. 2001). See also United States v. Love, 859 F. Supp. 725, 738 (S.D.N.Y. 1994); United States v. Leighton, 265 F. Supp. 27, 35 (S.D.N.Y. 1967). Where the Indictment describes in detail "the nature and goals" of the charged crime and "discloses sufficient information to inform the defendant[] adequately of the charges against [him]," a bill of particulars is not warranted. United States v. Ferrarini, 9 F. Supp. 2d 284, 299 (S.D.N.Y. 1998) (denying defendant's request that the Government delineate defendant's "specific

-10-

role" and specify exactly "what actions were taken" by defendant with respect to mail fraud counts, finding that lengthy indictment provided sufficient detail).

Not only are the Government's allegations and the discovery sufficient here, they, in fact, provide the very information Ceglia claims to be lacking.  There is little doubt as to the nature, methods, and goals of the Defendant's scheme, as they are described in detail in the Indictment.  (See Indictment at ¶¶ 4-7).  The Indictment specifies the contract and e-mails alleged to be fraudulent, and also identifies several dates during which the Government alleges the fraud was conducted and furthered.  (See Indictment at ¶¶ 6-9).  In addition, the Defendant has been provided with voluminous discovery relating to the allegations and the Government's evidence, with detailed cover letters identifying the source of most items and/or describing the items' relevance.  See, e.g., United States v. Reinhold, 994 F. Supp. 194, 201 (S.D.N.Y. 1998) (denying request for bill of particulars where "[t]he . . . indictment is detailed in its allegations" and "[the] defendants have had extensive discovery"); United States v. Pacheco, 902 F. Supp. 469, 475 (S.D.N.Y. 1995) (denying request for bill of particulars because "the charges are adequately set forth in the indictment, the criminal complaint, and in discovery"); United

-11-

States v. Conesa, 899 F. Supp. 172, 176 (S.D.N.Y. 1995) (denying request for bill of particulars because "[t]he Indictment sufficiently advises defendants of the specific acts of which they are accused" and "the Government . . . has made available to defense counsel extensive discovery that supplements the information provided in the . . . Indictment"). For example, among other things, the discovery (most of which was provided nearly eighteen months ago): (i) specifically references the Defendant's "purported e-mail communication with Mark Zuckerberg" (3476-3484)[2]; (ii) provides contemporaneously dated e-mails identified as sourced from Harvard University (740-2200) and from Karin Petersen, a former StreetFax.com employee (397-443), (iii) includes a forensic analysis of the Alleged Contract,[3] noting inconsistencies between pages 1 and 2 (431-432); (iv) identifies the two-page StreetFax Contract between Ceglia and Zuckerberg, dated the same day as the Alleged Contract, which contains no reference to Facebook, "The Face Book," or "The Page Book" (39-40); and (v) also includes a 74-page computer forensic analysis of some of Ceglia's computer hard drives and other electronic media, noting various indications of files being deleted and overwritten, and

---

[2] The numbers cited herein refer to the Bates-numbers assigned to various documents in the Government's discovery production.

[3] The Alleged Contract was obtained from Ceglia's civil counsel pursuant to subpoena.

-12-

identifying the location where a copy of the StreetFax Contract was found.

The level of detail in the Complaint, Indictment and in the discovery is more than enough to satisfy the requirement that the Defendant have adequate notice of the charges and the evidence to enable him to prepare for trial and avoid unfair surprise. See United States v. Bortnovsky, 820 F.2d at 574 (bill of particulars required where indictment did not have a single reference to dates or documents alleged to be fraudulent). In short, the instant request for a bill of particulars is a transparent attempt to obtain information to which Ceglia is not entitled. See Torres, 901 F.3d at 233, 234; United States v. Sindone, No. 01 Cr. 517 (MBM), 2002 U.S. Dist. LEXIS 388, at *3 (S.D.N.Y. Jan. 14, 2002) ("The stakes in a criminal case are high, and temptations of perjury, subornation and intimidation are ever present. Accordingly, the Government is not required to turn over information that will permit a defendant to preview the government's case and tempt him to tailor proof to explain it away, or see to it that the government's proof is not presented.")[4]; United States v. Bin

---

[4] Tampering with witnesses and/or other evidence is of particular concern here given numerous rulings regarding Ceglia's obstructive behavior in the Civil Action. See United States District Judge Richard J. Arcara's Order, dated March 24, 2014, dismissing the Civil Action because the "contract upon which the action is predicated is a fabrication and, alternatively, because of spoilation (sic) of evidence by, or on behalf of, plaintiff Paul D. Ceglia." (Emphasis

-13-

<u>Laden</u>, 92 F. Supp. 2d 225, 242 (S.D.N.Y. 2000) ("[R]equests, such as those made by the defendants here, for particulars as to when, where, how, and with whom each individual defendant joined an alleged conspiracy have almost uniformly been denied."). The Defendant's mere desire to receive additional information at this stage does not give rise to an entitlement to the requested bill of particulars. Accordingly, Ceglia's motion for a bill of particulars should be denied.

---

added.) <u>Ceglia</u> v. <u>Zuckerberg</u>, 10 Civ. 569 (RJA) (LGF) (W.D.N.Y), Docket No. 674 at 2. The spoliation of evidence is described in more detail in United States Magistrate Judge Leslie G. Foschio's March 26, 2013 Report and Recommendation, in a section entitled "Spoliation." Docket No. 651, at 120-144. Judge Foschio discusses, among other things, willful destruction and deletion of relevant files. Docket No. 651 at 136-137, 140. In a section entitled "Litigation Misconduct," Judge Foschio also notes that the defendant engaged in, among other things "stonewalling and obstructive discovery, filing false declarations under oath, and making frivolous assertions of privilege to conceal his wrongdoing." Docket No. 651 at 144.

<u>CONCLUSION</u>

For all of the reasons set forth above, the Defendant's

motion for a bill of particulars should be denied.

Dated: New York, New York
       June 6, 2014

                              Respectfully submitted,

                              PREET BHARARA
                              United States Attorney

              By: _____
                              Janis M. Echenberg
                              Christopher D. Frey
                              Assistant United States Attorneys
                              Telephone: (212) 637-2597/2270

## AFFIRMATION OF SERVICE

JANIS M. ECHENBERG hereby affirms pursuant to Section 1746 of Title 28, United States Code:

1.   I am an Assistant United States Attorney in the office of Preet Bharara, United States Attorney for the Southern District of New York.

2.   On June 6, 2014, I caused a true and correct copy of the foregoing Government's Memorandum of Law in Opposition to Defendant Ceglia's Motion for a Bill of Particulars, via the Court's Electronic Case Filing system on:

> David E. Patton, Esq.
> Federal Defenders of New York, Inc.
> 52 Duane Street, 10th Floor
> New York, New York 10007
> *Counsel for Paul Ceglia*

3.   I declare under penalty of perjury that the foregoing is true and correct.  28 U.S.C. § 1746.

Dated:  New York, New York
        June 6, 2014

_____
JANIS M. ECHENBERG

-1-

# EXHIBIT A



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 24, 2012

**BY HAND**

David Patton, Esq.
Federal Defenders of New York
52 Duane Street, 10th Floor
New York, New York 10007
Telephone: (212) 417-8738

Re:   <u>**United States v. Paul Ceglia,**</u>
      **12 Cr. 876 (ALC)**

Dear Mr. Patton:

This letter provides discovery pursuant to Rule 16(a) of the Federal Rules of Criminal Procedure ("Fed. R. Crim. P."), and seeks reciprocal discovery.

<u>Disclosure By the Government</u>

Based on your request for discovery in this case, we have enclosed a DVD that contains copies of the following materials, which are stamped with control numbers 1 through 4102:

1. the complaint, Indictment and arrest warrant in this case (1-23);

2. the defendant's criminal history report (24-34);

3. the U.S. Marshals intake forms, with arrest photograph, for the defendant (35-38);

4. a copy of the StreetFax contract between Paul Ceglia and Mark Zuckerberg (39-40);

5. a copy of the StreetFax back-end technical specification document (41-46);

6. a copy of the StreetFax contract between Paul Ceglia and Randy Kato (47-49);

7. various copies of the "Work For Hire" contract (50-75);

8. e-mail communication of Jason Holmberg together with a "Lawsuit Overview" document (77-140);

9. the defendant's civil complaint (141-154);

David Patton, Esq.
December 24, 2012

10. the defendant's civil amended complaint (155-179);

11. various purchase agreements related to the defendant's civil litigation (180-215);

12. materials provided to the Government by Luke Watson and Becky Chappel (216-387);

13. various bank documents (388-389; 390; 391; 709-739; 2261-3471; 3472-3475);

14. background materials concerning Facebook (392-396);

15. materials provided to the Government by Karin Petersen (397-443);

16. records provided to the Government by Google, Inc. (444-610);

17. records provided to the Government by Yahoo!, Inc. (611-626);

18. records provided to the Government by Time Warner Cable (627-628);

19. records provided to the Government by MSN Hotmail (629-661);

20. travel records related to the defendant (662-664);

21. search warrant to be executed at Stroz Friedberg LLC, and the underlying affidavit in support of the same (665-702);

22. curriculum vitae of Curtis W. Rose (703-708);

23. selected e-mails from the sets provided to the Government by Harvard University (740-2200);

24. the defendant's declarations in his civil litigation (2201-2260);

25. the defendant's purported e-mail communication with Mark Zuckerberg (3476-3484);

26. U.S. Postal Inspection Service Forensic Laboratory Services material (3485-3488); and

27. records provided to the Government by Verizon (3489-4102).

David Patton, Esq.
December 24, 2012

Please be advised that certain of the above-referenced material is being produced herewith subject to the Protective Order entered by the Court on December 3, 2012, and has been marked with the words "CONFIDENTIAL INFORMATION."

The Government also encloses a large sealed envelope bag containing two items: (1) a copy of a 2 TB hard drive; and (2) a copy of a DVD. These electronic media devices contain forensic images of materials obtained from Stroz Friedberg, LLC pursuant to a search warrant issued in the Southern District of New York. The devices are encrypted and protected with the following passwords: (1) 2 TB hard drive = 2*&v7474"8%Z*$1; and (2) DVD = j14BC7&1Ht$0)sg.

Please also be advised that the Government will be producing a small quantity of materials to you shortly under separate cover that may contain attorney-client privilege protected items. These materials have not been reviewed by the undersigned, and will be produced to you by an Assistant United States Attorney not involved in the prosecution of this matter.

Finally, pursuant to Rule 16(a)(1)(G), please be advised that the Government has retained Curtis W. Rose of Curtis W. Rose & Associates, LLC as a computer forensics expert. A copy of Mr. Rose's  curriculum vitae is produced at control numbers 703-708.

The Government recognizes its obligations under *Brady* v. *Maryland*, 373 U.S. 83 (1963), and its progeny. To date, the Government is unaware of any *Brady* material regarding your client, but will provide timely disclosure if any such material comes to light.

The Government will provide material under *Giglio* v. *United States*, 405 U.S. 150, 154 (1972), and its progeny, in a timely manner prior to trial.

<u>Disclosure By the Defendant</u>

In light of your request for the foregoing discovery, the Government hereby requests reciprocal discovery under Fed. R. Crim. P. 16(b). Specifically, we request that you allow inspection and copying of:  (1) any books, or copies or portions thereof, which are in the defendant's possession, custody or control, and which the defendant intends to introduce as evidence or otherwise rely on at trial; and (2) any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, or copies thereof, which are in the defendant's possession or control, and which the defendant intends to introduce as evidence or otherwise rely on at trial or which were prepared by a witness whom the defendant intends to call at trial.

David Patton, Esq.
December 24, 2012

The Government also requests that the defendant disclose prior statements of witnesses he will call to testify.  *See* Fed. R. Crim. P. 26.2; *United States v. Nobles*, 422 U.S. 225 (1975).  We request that such material be provided on the same basis upon which we agree to supply the defendant with 3500 material relating to Government witnesses.

We wish to remind you that Fed. R. Crim. P. 12.2 requires you to provide the Government with written notice if the defendant intends to rely on the defense of insanity at the time of the alleged crime or intends to introduce expert testimony relating to a mental disease, defect, or other condition bearing upon the issue of whether he had the mental state required for the offenses charged.

We also wish to remind you that Fed. R. Crim. P. 12.3(a) requires you to provide the Government with written notice if the defendant intends to claim a defense of actual or believed exercise of public authority on behalf of a law enforcement or Federal intelligence agency at the time of the alleged crime.

The Government requests a response to our Rule 12.2 and 12.3 demands within the time period allowed by the Court for the filing of motions.

## Sentence Reduction for Acceptance of Responsibility

Please be advised that this Office will oppose the additional one-point reduction under the Sentencing Guidelines available for defendants who plead prior to the Government's initiation of trial preparations pursuant to U.S.S.G. § 3E1.1(b), in the event your client has not entered a plea of guilty four weeks prior to trial.  We will follow this policy whether or not suppression or other pretrial motions remain outstanding after this date and even if the trial date has not been announced by the Court four weeks in advance of the trial.

4

David Patton, Esq.
December 24, 2012

Please contact us at your earliest convenience concerning the possible disposition of this matter or any further discovery which you may request.  Please be advised, however, that pursuant to the policy of the Office concerning plea offers, no plea offer is effective unless and until made in writing and signed by authorized representatives of the Office. In particular, discussions regarding the pretrial disposition of a matter that are not reduced to writing and signed by authorized representatives of the Office cannot and do not constitute a "formal offer" or a "plea offer," as those terms are used in *Lafler* v. *Cooper*, 566 U.S. —, 2012 WL 932019 (Mar. 21, 2012), and *Missouri* v. *Frye*, 566 U.S. —, 2012 WL 932020 (Mar. 21, 2012).

Very truly yours,

PREET BHARARA
United States Attorney

By: _Christopher D. Frey_
Janis M. Echenberg
Christopher D. Frey
Assistant United States Attorneys
(212) 637-2597/2270

Enclosures