

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 10, 2014

**By ECF and Electronic Mail**

The Honorable Andrew L. Carter, Jr.
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Room 435
New York, New York 10007

Re:   **United States v. Ceglia,**
      **12 Cr. 876 (ALC)**

Dear Judge Carter:

The Government writes in response to the above-captioned defendant's June 9, 2014 letter seeking certain bail modifications, including that his pretrial supervision be changed from strict to regular supervision and that his curfew be removed. The Government opposes these modifications given the defendant's continuing significant risk of flight, especially in light of certain changes in the posture of his criminal case as well as his related civil case.

Because of the defendant's tremendous risk of flight, the Government sought detention at the defendant's presentment on October 26, 2012, in the Western District of New York. The Pretrial Services Office concurred, finding that there were no conditions that could reasonably assure the defendant's appearance in court.[1] After the Magistrate Judge in the Western District of New York set what the Government believed to be insufficient bail conditions, the Government appealed to The Honorable Colleen McMahon (sitting as Part I Judge), who imposed a significant bond secured by multiple co-signers and property, as well as home incarceration. The parties agreed to modify the conditions several months later to allow the

---

[1] Pretrial Services recommended detention, citing the following as risks of nonappearance:
- possession of two passports
- citizen of Ireland
- resident of Ireland
- unexplained assets
- access to large sums of cash
- providing inaccurate information to U.S. Probation regarding finances
- questions regarding finances
- no ties to wanting district

Honorable Andrew L. Carter, Jr.
June 10, 2014
Page 2

defendant to travel locally for work, during business hours (9:00 am to 7:00 pm), but required that he remain in an "inclusion" zone of counties near his home.

Ceglia now seeks to remove all restrictions on his movement (the electronic tracking bracelet, the curfew and the location limitations) essentially because time has passed, he would like to spend more time outside during the summer, and because the tracking bracelet is inconvenient. These reasons are insufficient to justify removing all restrictions for a defendant who continues to presents a significant flight risk given: (1) his incentive to flee, in light of the strength of the case against him – set to go to trial in the fall -- and the substantial penalties he faces; (2) the fact that his related civil case, through which he was seeking a large payout, has been dismissed, removing any incentive to remain to pursue that case; (3) he has significant ties to Ireland, including that he lived there from in or around April 2011 until a brief return to the United States at which time he was arrested; (4) he has the ability to enter and remain in Ireland even though he surrendered his United States and Irish passports; (5) his family will be traveling to Ireland this summer; (6) extradition from Ireland is virtually impossible; and (7) the defendant has the capability to manipulate documents, including identity documents.

### Incentive to Flee -- Strength of the Case and Severity of Potential Punishment

Given the severity of his alleged crimes, which carry a maximum sentence of 40 years' imprisonment, Ceglia has a tremendous incentive to flee, especially now that he has been unsuccessful in his effort to change venue and dismiss the Indictment, and a trial is looming. Based on the allegations in the Indictment, and a rough calculation under the United States Sentencing Guidelines (the "Guidelines,") if found guilty of either of the charged crimes, Ceglia's Guidelines offense level is 41, which yields a recommended sentence under the Guidelines of 324-405 months' imprisonment.[2] In addition, the proof supporting the Indictment allegations is strong. There is evidence on Ceglia's own electronic media (computer hard drives, disks and CD-Roms) demonstrating the manufacture of the fake contract that forms the basis for Ceglia's civil lawsuit claiming an ownership stake in Facebook. What appears to be the real 2003 contract between Mark Zuckerberg and Ceglia, for computer programming work, and not for any interest in Facebook, was also found on Ceglia's own hard drive. In addition, the emails Ceglia cites in his civil complaint, allegedly sent to him from Zuckerberg's Harvard email account, do not exist in the Harvard back up tapes made contemporaneously with when the emails were purportedly sent -- five years before he filed his civil complaint. And certain of his alleged conversations with Zuckerberg, including commentary on the Facebook website on February 4, 2004 -- the day Zuckerberg's website launched -- must be false because Ceglia, who was not a Harvard student, would not have had access to the Facebook webpage at the time it first launched. Further, there are several witnesses who will corroborate that Facebook did not exist, even as a concept, at the time the Ceglia allegedly purchased a 50% stake in the company for $1,000.

---

[2] This calculation assumes a base offense level of 7, an additional 30 points for an intended loss amount exceeding $400 million, and 2 points for engaging in activities that substantially jeopardized a public company or a company with more than 1,000 employees.

Honorable Andrew L. Carter, Jr.
June 10, 2014
Page 3

In addition, his civil case against Zuckerberg and Facebook was recently dismissed, removing any incentive he might have had to remain and pursue that case.

### Strong Ties to Ireland

The defendant has significant ties to Ireland. Ceglia has dual American and Irish citizenship. He lived in Ireland with his wife and two children from at least on or about April 26, 2011, shortly after he filed the Amended Complaint in his civil case, until he was arrested upon his return to the United States in October 2012. Between April 26, 2011 and his return on October 25, 2012, Ceglia came to the United States only twice, both times very briefly. On or about June 8, 2012, he traveled from Ireland to Philadelphia, Pennsylvania, returning to Ireland four days later, on June 12, 2012. On or about November 3, 2012, at the order of the Judge presiding over his civil case that he return to search for items responsive to certain expedited discovery, Ceglia returned, this time for two days, flying back to Ireland on November 5, 2011. Upon learning that he had returned to the country on October 24, 2012, and fearing he would leave again, the Government immediately sought a warrant for his arrest.

### Ability To Flee

Even though he has surrendered his passports, Ceglia could still travel to Ireland. The Government was advised by the U.S. Department of Homeland Security, Customs and Border Patrol that even without his American or Irish passports, Ceglia, who lives near the Canadian border, could enter Canada with a driver's license or other Government identification, go to the Irish consulate in Canada, and obtain travel documents. If he flees, it is extremely difficult, if not impossible, to extradite from Ireland.

Ceglia also has the capability to manipulate documents and could create new identification documents and/or passports. The instant case itself involves document manipulation by Ceglia. Furthermore, the Government's computer forensics expert found on Ceglia's electronic media evidence of an organized and systematic process of alteration and modification involving a New York State Driver's License and the generation of a counterfeit U.S. $100 note, as well as related research suggesting intent to implement and utilize the resultant products.

As set forth in Ceglia's request for a bail modification, his wife, mother, and possibly his children, intend to travel to Ireland imminently, giving him added incentive to flee to Ireland while his family is there.

Honorable Andrew L. Carter, Jr.
June 10, 2014
Page 4

     As set forth above, the evidence demonstrates that Ceglia continues to pose a significant flight risk.  Accordingly, his current bail conditions should remain in place to assure his continued attendance in Court.

Respectfully submitted,

PREET BHARARA
United States Attorney

By: _____
Janis M. Echenberg / Christopher D. Frey
Assistant United States Attorneys
(212) 637-2597 / 2270

cc:    David Patton, Esq. (by email)
       *Counsel for Paul Ceglia*