UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - x

UNITED STATES OF AMERICA         :

       - v. -                       :        12 Cr. 876 (ALC)

PAUL CEGLIA,                     :

          Defendant.        :

- - - - - - - - - - - - - - x


**GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT CEGLIA'S MOTION FOR SUBPOENAS PURSUANT TO FEDERAL RULE
OF CRIMINAL PROCEDURE 17(C)**


                                      PREET BHARARA
                                      United States Attorney for the
                                      Southern District of New York
                                      Attorney for the United States
                                         of America


Janis M. Echenberg
Christopher D. Frey
Assistant United States Attorneys
      - Of Counsel -

## Table of Contents

Background . . . . . . . . . . . . . . . . . . . . . . 2

    The Criminal Charges. . . . . . . . . . . . . . . . . 2

    The Subpoena Requests. . . . . . . . . . . . . . . . 3

    Discovery Relevant to the Subpoena Requests. . . . . . 4

Legal Standard . . . . . . . . . . . . . . . . . . . .6

    The Government's Standing to Challenge Third Party
    Subpoenas . . . . . . . . . . . . . . . . . . . . . 6

    Rule 17(c) and the Standard for Issuing Rule 17(c)
    Subpoenas. . . . . . . . . . . . . . . . . . . . . . 8

        Rule 17(c) . . . . . . . . . . . . . . . . . . 8

        The *Nixon* Standard for Evaluating Rule 17(c)
        Subpoenas . . . . . . . . . . . . . . . . . . 11

        The Defendant Must Demonstrate That The Objectionable
        Subpoena Requests Will Produce Admissible Evidence  13

        The Defendant Must Demonstrate That The Subpoenas Are
        Not Intended As A Fishing Expedition . . . . . . 16

Argument. . . . . . . . . . . . . . . . . . . . . . . 17

Conclusion. . . . . . . . . . . . . . . . . . . . . . 20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :

          - v. -                  :          12 Cr. 876 (ALC)

PAUL CEGLIA,                      :

               Defendant.         :

- - - - - - - - - - - - - - x


**GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT CEGLIA'S MOTION FOR SUBPOENAS
PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 17(C)**

The Government respectfully submits this memorandum of law in opposition to the June 9, 2014 letter-motion by defendant Paul Ceglia ("Ceglia" or the "Defendant") for the issuance of subpoenas to Mark Elliot Zuckerberg ("Zuckerberg"), Facebook, Inc. ("Facebook") and Harvard University ("Harvard") pursuant to Federal Rule of Criminal Procedure 17(c). The Defendant claims that his document requests are "neither unreasonable nor oppressive" and are necessary to prepare for trial, which is currently scheduled to begin on November 17, 2014. In fact, the Defendant's requests are overly broad, including seeking all emails sent or received by Zuckerberg or any employee, manager or owner of Facebook during 2003 and 2004, as well as Zuckerberg's and Facebook's computers, cell phones and bank

account records during that same time period.  This Court should
not authorize the issuance of the proposed subpoenas as they
seek documents outside of the rules of criminal discovery, to
which Ceglia is not otherwise entitled.

## Background

I.    The Criminal Charges

    The Indictment in this case charges the Defendant with one
count of mail fraud and one count of wire fraud in connection
with his participation in a scheme to defraud Facebook, Inc.
("Facebook") and the Chief Executive Officer of that company,
Mark Zuckerberg ("Zuckerberg"), and to corrupt the federal
judicial process.  In sum, as the Court is aware, the Indictment
alleges that sometime after 2003, as part of his scheme to
defraud, Ceglia doctored or otherwise fraudulently converted a
real April 2003 contract that he had with Zuckerberg concerning
programming work for StreetFax.com (Ceglia's online company
providing photographs of intersections to insurance adjusters)
to make it appear as though Zuckerberg had agreed to provide
Ceglia with at least a 50% interest in Facebook (the "Alleged
Contract").  The Indictment further alleges that Ceglia
manufactured evidence to support his false ownership claim,
including creating e-mail communications he purportedly had with
Mark Zuckerberg between July 2003 and July 2004 via Zuckerberg's
Harvard e-mail account (the "Purported E-mails") and that Ceglia

2

destroyed certain evidence that was inconsistent with his false claim.  In connection with the above acts, and as a further part of his scheme to defraud, the Indictment alleges that Ceglia then initiated a lawsuit against Zuckerberg and Facebook seeking to enforce the contract for an at least 50% stake in Facebook (the "Civil Case").

I.   The Subpoena Requests

Ceglia's June 9, 2014 letter-motion seeks the issuance of Rule 17(c) subpoenas to Zuckerberg, Facebook and Harvard.  The majority of the requests are overly broad, seeking documents far beyond the scope of Rule 16 discovery and to which Ceglia has no legitimate claim, particularly at this stage of the proceeding, including:

- From Zuckerberg and Facebook, Ceglia seeks copies of all cell phones, email accounts, computers, electronic storage devices and other electronic media devices owned or regularly used by Zuckerberg and Facebook (and any predecessor companies) during the years 2003 and 2004, as well as Zuckerberg's and Facebook's bank account records for those years.  These requests contain no limitation for documents relevant to the

3

criminal case.  (*See* Requests 3-6, Appendix A to Draft Subpoenas to Facebook and Zuckerberg).[1]

- From Harvard, Ceglia seeks:

  o <u>all</u> of Zuckerberg's email communications during 2003 and 2004, including all back-up copies, whether maintained on or off-site, again with no limitation for documents relevant to the criminal case.  (*See* Requests 1,3, Appendix A to Draft Subpoena to Harvard); and

  o all disciplinary records for to any unauthorized computer use or student privacy violation by Zuckerberg while at Harvard.  (*See* Request 4, Appendix A to Draft Subpoena to Harvard).[2]

## II.   Discovery Relevant to the Subpoena Requests

The Government began producing discovery in the criminal case shortly after the Indictment was returned, and has since produced nearly 4,500 pages of discovery, including, among other things:

---

[1] Ceglia also seeks all agreements, drafts and copies of agreements as well as all communications between Zuckerberg or Facebook, on the one hand, and Ceglia or companies he owned, on the other hand.  (See Requests 1-2, Appendix A to Draft Subpoenas to Facebook and Zuckerberg).  The Government has no objection to these requests.

[2] Ceglia also seeks documents setting forth Harvard's policies related to back up and storage of email from 2003 to the present.  (*See* Request 3, Appendix A to Draft Subpoena to Harvard).  The Government has no objection to this request.

- Ceglia's own computers and electronic devices from the relevant time period, which Ceglia made available pursuant to court order in the Civil Case; and

- approximately 1,460 pages of emails, provided by Harvard University, between Ceglia and his StreetFax.com employees, on the one hand, and Zuckerberg and another computer programmer with whom he was working, on the other hand, from the relevant time period.



**Legal Standard**

I.   <u>The Government's Standing to Challenge Third Party
     Subpoenas</u>

As an initial matter, the Government has standing to oppose
or move to quash improper Rule 17(c) subpoenas.  *United States
v. Giampa*, 1992 WL 296440 (S.D.N.Y. Oct. 7. 1992), at *1-2
(party to criminal case has standing to move to quash Rule 17(c)
subpoena to another if subpoena infringes on movant's
"legitimate interests"); *U.S. v. Chen De Yian*, 1995 WL 614563
(S.D.N.Y October 19, 1995), at *2; *see U.S. v. Binday*, 908 F.
Supp. 2d 485, 492 (S.D.N.Y. December 10, 2012); *United States v.
Nektalov*, 03 CR. 828(PKL), 2004 WL 1574721 (S.D.N.Y. July 14,
2004) (Government had standing to move to quash because of
Government's own interest in preventing undue harassment of its

witness and because the subpoenaed parties asked the Government to intervene on their behalf); *United States v. Reyes*, 162 F.R.D. 468, 470 (S.D.N.Y.1996); *but see United States v. Nachamie*, 91 F. Supp. 2d 552, 558 (S.D.N.Y. 2000) (holding Government lacked standing to quash subpoenas to potential witnesses to avoid undue lengthening of the trial, undue harassment of witnesses and any prejudicial over-emphasis on those witnesses' credibility).[5]

As the adverse party in the litigation in which an improper Rule 17(c) subpoena has been requested, the Government has standing to challenge any such request, as it has a "legitimate interest" in seeing that the parties to the case comply with applicable federal law.   Here, as described in more detail below, Ceglia is attempting to circumvent the rules of criminal discovery, as well as the limitations on the production of witness statements and impeachment and cross-examination

---

[5] *United States v. Nachamie* is one of two decisions regarding Rule 17(c) subpoenas (*see also*, *United States v. Tucker*, 249 F.R.D. 58 (S.D.N.Y. 2008) in which Judge Scheindlin addressed whether the Government has standing to challenge third party subpoenas. The holding in *Nachamie* is not only an outlier, it is also distinguishable.   In *Nachamie*, Judge Scheindlin focuses primarily on the fact that the government sought to quash subpoenas to *potential* witnesses, whereas here the documents requested relate directly to one of the Government's main expected witnesses at trial – Mark Zuckerberg.

material, to conduct a clear "fishing expedition," which is
expressly prohibited by the case law interpreting Rule 17(c).[6]

II.    Rule 17(c) and the Standard for Issuing Rule 17(c)
       Subpoenas

As set forth below, the case law is clear that Rule 17 may
not be used, as Ceglia is attempting to use it, to engage in a
fishing expedition for *Giglio* or *Jencks* Act material.

A. Rule 17(c)

Rule 17(c) governs the issuance of trial subpoenas that
seek the production of documents and other items in criminal
cases. *See* Fed. R. Crim. P. 17(c). Rule 17(c) does not provide
a means of gathering discovery. *See Bowman Dairy Co.* v. *United
States*, 341 U.S. 214, 220 (1951); *United States* v. *Cherry*, 876
F. Supp. 547, 552 (S.D.N.Y. 1995); *see also United States* v.
*Cuthbertson*, 651 F.2d 189, 192 (3d Cir. 1981) ("Rule 17(c) was
not intended to be a broad discovery device, and only materials
that are 'admissible as evidence' are subject to subpoena under

---

[6] Notably, even where courts have questioned whether the
Government had standing to move to quash a third party subpoena,
they have found it necessary to address the Government's
objections because of the Court's own responsibility to evaluate
the propriety of the subpoena. *See, e.g. United States v.
Weissman*, 01 Cr. 529, 2002 WL 31875410, at *1 n .1 (S.D.N.Y.
Dec. 26, 2002). In *Weissman*, even though the defendant asserted
that the Government lacked standing to move to quash, "the Court
[…] nonetheless address[ed] the Government's objection because
it is the Court's responsibility to ensure that the subpoena is
for a proper purpose and complies with the requirements of Rule
17(c). *Id; see also; United States v. Coriaty*, 99 CR. 1251
(DAB), 2000 WL 1099920 (S.D.N.Y. Aug. 7, 2000).

8

the rule."). Rather, Rule 17(c) may be used only to obtain evidentiary materials. *See United States* v. *Murray*, 297 F.2d 812, 821 (2d Cir. 1962) (subpoenaed materials must themselves be admissible evidence); *see also United States* v. *Hutchinson*, 1998 WL 1029228, at *1 (E.D.N.Y. December 23, 1998) ("[T]he purpose of the rule is not to facilitate discovery.").

The Supreme Court long ago held that "Rule 17(c) was not intended to provide an additional means of discovery," *Bowman Dairy,* 341 U.S. at 220, and since then courts have routinely held that Rule 17(c) cannot be utilized as a discovery device to circumvent the limited discovery scheme that Congress endorsed in Rule 16.[7] *See, e.g., United States* v. *Nixon,* 418 U.S. 683, 699-700 (1974) (following *Bowman Dairy*); *Murray*, 297 F.2d at 821 (same); *United States* v. *Brown,* 1995 WL 387698, at *9 (S.D.N.Y. June 30, 1995) ("Rule 17 (c) subpoenas cannot be used as a means of circumventing Rule 16's limits on discovery in criminal cases."). "Courts must be careful that Rule 17(c) is not turned into a broad discovery device, thereby undercutting the strict limitation of discovery in criminal cases found in [Rule 16]."

---

[7] Rule 16(a)(1) identifies five types of evidence the Government must disclose upon the defendant's request: defendants' statements; defendants' criminal records; documents and tangible objects that: (i) are material to the defense, (ii) the Government intends to use in their case-in-chief, or (iii) were obtained from the defendant; reports of examinations and tests; and expert witnesses' opinions. Fed. R. Crim. P. 16(a)(1)(A)-(E).

*Cherry*, 876 F. Supp. at 552 (quoting *Cuthbertson*, 630 F.2d at 146). The "discoverability of items under Rule 16 determines whether those items are subject to a Rule 17(c) subpoena," not vice versa. *United States* v. *Buck,* 1986 WL 14970, at *1 (S.D.N.Y. Dec. 15, 1986); *see United States* v. *Yian,* 1995 WL 614563, at *1 (S.D.N.Y. Oct. 19, 1995) ("Having received the benefits of Rule 16(a)(1), further discovery is barred by Rule 16(a)(2), and that bar cannot be circumvented by the service of a Rule 17(c) subpoena.").

Critically, Rule 17(c) subpoenas are also not to be used to obtain statements of prospective witnesses. *See* Fed. R. Crim. P. 17(h) ("No party may subpoena a statement of a witness or of a prospective witness under this rule."). Production of documents primarily containing statements of prospective witnesses are properly treated under 18 U.S.C. § 3500. *See generally* 18 U.S.C. § 3500(b) (production of witness statements); *cf.* 18 U.S.C. § 3500(a) ("[N]o statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case."); Fed. R. Crim. P. 16(a)(2) ("Nor does this rule authorize the discovery or inspection of statements made by prospective government

10

witnesses except as provided in 18 U.S.C. § 3500."); Fed. R. Crim. P. 26.2(a) (statements to be produced "after a witness other than the defendant has testified on direct examination").

B. The *Nixon* Standard for Evaluating Rule 17(c) Subpoenas

Because they are not a substitute for discovery, Rule 17(c) subpoenas, even where they may be utilized, are subject to strict limitations in terms of what they seek.  In *United States* v. *Nixon,* 418 U.S. 683 (1974), the Supreme Court explained that in order to require production of materials pursuant to Rule 17(c) the party seeking production must show:

> (1)  that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*Id.* at 699-700 (citing *United States* v. *Iozia,* 13 F.R.D. 335, 338 (S.D.N.Y. 1952)); *see United States* v. *Witt,* 542 F. Supp. 696, 697-98 (S.D.N.Y. 1982) (applying *Nixon), aff'd without opinion,* 697 F.2d 301 (2d Cir. 1982).  In short, the party seeking the documents "must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." *Nixon,* 418 U.S. at 700;

11

*see United States* v. *R. Enterprises, Inc.,* 498 U.S. 292, 296 (1991); *Witt,* 542 F. Supp. at 698.

The *Nixon* standard is the proper standard to apply to Ceglia's requested third-party subpoenas. Ceglia, relying on a footnote in *Nixon* and three decisions from this District, argues that a different standard ought to apply to pretrial Rule 17(c) subpoenas issued to third parties by a criminal defendant. (*See* Ceglia Motion at 2, citing *United States v. Nachamie*, 91 F. Supp. 2d 552, 561-63 (S.D.N.Y. 2000) (suggesting standard for Rule 17(c) subpoenas requested by defendant -- "whether the subpoena was: (1) reasonable, construed using the general discovery notion of 'material to the defense;' and (2) not unduly oppressive for the producing party to respond," but ultimately denying motion to quash under *Nixon* standard as well); *United States v. Tucker*, 249 F.R.D. 58, 66-67 (S.D.N.Y. 2008) (declining to apply *Nixon* standard where criminal defendant requested documents on the eve of trial, from a non-party, but defendant had "an articulable suspicion that the documents may be material to his defense," finding that Rule 17(c) subpoenas are not to be used as "broad discovery devices, but must be reasonably targeted to ensure the production of material evidence."); and *United States v. Rajaratnam*, 753 F. Supp. 2d 317, 319 (S.D.N.Y. 2011) (noting in footnote that Court was unaware of any decision other than *Tucker* applying a test

12

less restrictive than *Nixon* but suggesting that a "material to the defense" standard might be more appropriate)).  A similar argument regarding whether the *Nixon* standard applied, relying on the same cases, was raised on appeal by the defendants in *United States v. Anthony Cuti and William Tennant*, Docket Nos. 11-3756(L), 11-3831(CON), and was rejected by the Second Circuit, who relied on *Nixon* as the proper standard.  ("'Under Nixon, a party moving for a pretrial Rule 17(c) subpoena, 'must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity.' 418 U.S. at 700; *see also United States v. Stein*, 488 F. Supp. 2d 350, 15 364-65 (S.D.N.Y. 2007)." (June 26, 2013 Summary Order, Document 87, at 3)).  Significantly, however, even if *Tucker* were the relevant standard, Ceglia's motion would fail.  Ceglia has requested that the subpoenas be issued (and responses returned) more than four months before the November 17, 2014 trial date – with requests so broad they would be impermissible even under *Tucker*. *Id.* at 66 (noting that were defendant's 17(c) subpoena "request made six months before trial, the government's argument that it [was] a fishing expedition would [have been] much stronger.").

   C. <u>The Defendant Must Demonstrate That The Objectionable</u>
      <u>Subpoena Requests Will Produce Admissible Evidence</u>

   Under *Nixon* and its progeny, the defendant must demonstrate that the requested materials are admissible as evidence at

13

trial.  *See, e.g., R. Enterprises, Inc.*, 498 U.S. at 299 ( "a
party must make a reasonably specific request for information
that would be both relevant and admissible at trial"); *United
States* v. *Arditti,* 955 F.2d 331, 346 (5th Cir. 1992) (quashing a
subpoena where defendant "failed to establish with sufficient
specificity the evidentiary nature of the requested materials");
*Cuthbertson,* 630 F.2d at 144 ("Rule 17(c) is designed as an aid
for obtaining relevant evidentiary material that the moving
party may use at trial."); *United States* v. *Marchisio,* 344 F.2d
653, 669 (2d Cir. 1965) (in criminal cases, subpoena duces tecum
must satisfy relevancy and admissibility tests); *Murray,* 297
F.2d at 821 ("Rule 17(c) is a device solely for the obtaining of
evidence for the use of the moving party, permitting him to
examine the material obtained before trial only where, in the
discretion of the court, it is necessary that he do so in order
to make use of the material *as evidence*.*")* (emphasis added)
(citing *Bowman Dairy*); *Cherry,* 876 F. Supp. at 552 ("[I]n order
to be procurable by means of a Rule 17(c) subpoena, materials
must themselves be admissible evidence."); *United States* v.
*Berg,* 1987 WL 8078, at *1 (E.D.N.Y. Feb. 27, 1987) (granting
Government motion to quash subpoenas issued pursuant to Rule
17(c), *inter alia*, because "the defendants have failed to
demonstrate that the materials sought are admissible as
evidence").

It is important to note that under this test the materials sought "cannot be *potentially* relevant or admissible, *they must meet the test of relevancy and admissibility at the time they are sought.*" *Marchisio*, 344 F.2d at 669 (emphasis added); *see also Cherry*, 876 F. Supp. at 552 (same).  Thus, Rule 17(c) is different from the civil rules, which permit the issuance of subpoenas to seek production of documents or materials which, although themselves not admissible, may lead to admissible evidence. *See Cherry*, 876 F. Supp. at 552; *see also United States* v. *Gross*, 24 F.R.D. 138, 141 (S.D.N.Y. 1959) (Rule 17(c) cannot be used "to obtain leads as to the existence of additional documentary evidence or to seek information relating to the defendant's case.  This type of discovery, permissible under the Federal Rules of Civil Procedure, has not been authorized for criminal trials.").  Thus, "a mere hope that the documents, if produced, may contain evidence favorable to the defendant's case will not suffice.  Rule 17(c) requires a showing that the materials sought are *currently admissible* in evidence; it cannot be used as a device to gain understanding or explanation." *United States* v. *Rich,* 1984 WL 845, at *3 (S.D.N.Y. September 7, 1984) (emphasis added; internal quotations and citations omitted); *see Cuthbertson*, 630 F.2d at 146 ("broad request" for documents "based solely on the mere hope that some exculpatory material might turn up" does not

15

justify enforcement of Rule 17(c) subpoena); *see also United States* v. *Purin*, 486 F.2d 1363, 1368 (2d Cir. 1973); *Murray*, 297 F.2d at 821.

D. The Defendant Must Demonstrate That The Subpoenas Are Not Intended As A Fishing Expedition

The defendant must establish that the defense's "application is made in good faith and is not intended as a general 'fishing expedition.'" *Nixon*, 418 U.S. at 700; *see United States* v. *Noriega*, 764 F. Supp. 1480, 1493 (S.D. Fla. 1991) ("If the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes that something useful will turn up, this is a sure sign that the subpoena is being misused."); *United States* v. *Yian*, 1995 WL 614563, at *2 (subpoena that "call[s] for the production of the entire investigative file . . . is accurately described as a fishing expedition"); *Cuthbertson*, 630 F.2d at 144 ("[T]est for enforcement is whether the subpoena constitutes a good faith effort to obtain *identified evidence* rather than a general 'fishing expedition' that attempts to use the rule as a discovery device.") (emphasis added).   Even if *Tucker* were the standard – which it is not – the defendant would have to articulate how the requested documents are material to his defense.

16

**Argument**

The Government has met its discovery obligations under Rule 16, and will make its *Giglio* and *Jencks* Act disclosures when appropriate. Ceglia has not shown, nor could he show, how the subpoena requests to which the Government objects would result in any admissible evidence that has not already been produced. Instead, the Defendant's requests are merely a fishing expedition designed to obtain potential impeachment and cross-examination material to which he is not entitled at this stage of the proceeding.

In support of his extremely broad subpoena requests, Ceglia argues only that "[i]n order to address [the Government's] claims, and for all the reasons that the Government found it necessary to gather all of Ceglia's documents, the defense must have access to the same sort of documents from Zuckerberg, Facebook and Harvard, including a full set of Zuckerberg's emails rather than only those emails it has selectively chosen to produce." First, the Government did not "gather all of Ceglia's documents," but rather produced what had been obtained *from Ceglia himself*, pursuant to court order in the Civil Case. Second, Ceglia is not entitled to a full set of Zuckerberg's emails, sent from *any account* he used during college and the first year of Facebook's existence (Facebook officially launched in or about February 2004), merely because he alleges to have

17

had some limited contact with Mark Zuckerberg in 2003 and 2004.
The Government has produced all relevant communications obtained
from Harvard (from the email account used in the email
communications Ceglia purports to have had with Zuckerberg
regarding his alleged ownership in Facebook), as required under
Rule 16.

　　　To the extent Ceglia seeks material to impeach or cross-
examine Mark Zuckerberg at trial (commonly known as *Giglio*
material), courts in this Circuit have repeatedly and
consistently refused to compel disclosure of impeachment or
*Giglio* material well in advance of trial, and furthermore, as
set forth above, Rule 17 is not a mechanism for obtaining such
material.  In order to avoid any adjournment or delay in the
trial, the Government will adhere to its customary practice of
producing impeachment material at the same time as *Jencks* Act
material.

　　　By further asking for all of Facebook's and Zuckerberg's
computers, cell phones, electronic media and bank records from
2003 and 2004, without any further specificity or limitation as
to relevance, and no explanation as to how those materials will
be admissible, Ceglia's request is far outside the *Nixon*
parameters (and even too broad for what *Tucker* requires).
Given the limited scope of the charges – a purported contract
between Zuckerberg and Ceglia before Facebook launched – Ceglia

is in no way entitled to all of Zuckerberg's or Facebook's computers, cell phones and bank records for the first year of Facebook's existence.

Ceglia's request for documents related to Zuckerberg's disciplinary record at Harvard is a transparent attempt to obtain a potentially large amount of personal information about Zuckerberg in the hope that it might contain *Giglio* or other cross-examination material.  The Government believes that Ceglia's theory, as he has argued in the Civil Case – with no basis for this argument – is that Zuckerberg somehow "hacked" in to Ceglia's computer to plant a copy of what the Government alleges is the legitimate contract.  At best, Ceglia will only be able to present this baseless argument through cross-examination of Zuckerberg.

**Conclusion**

For all of the reasons set forth above, the Defendant's request for subpoenas pursuant to Rule 17(c), as currently drafted, should be denied.

Dated: New York, New York
       June 30, 2014

                         Respectfully submitted,

                         PREET BHARARA
                         United States Attorney


              By:  __/s/_____
                   Janis M. Echenberg
                   Christopher D. Frey
                   Assistant United States Attorneys
                   Telephone: (212) 637-2597/2270

<u>AFFIRMATION OF SERVICE</u>

JANIS M. ECHENBERG hereby affirms pursuant to Section 1746 of Title 28, United States Code:

1.   I am an Assistant United States Attorney in the office of Preet Bharara, United States Attorney for the Southern District of New York.

2.   On June 30, 2014, I caused a true and correct copy of the foregoing Government's Memorandum of Law in Opposition to Defendant Ceglia's Motion for Subpoenas Pursuant to Federal Rule of Criminal Procedure 17(c), via the Court's Electronic Case Filing system on:

> David E. Patton, Esq.
> Federal Defenders of New York, Inc.
> 52 Duane Street, 10th Floor
> New York, New York 10007
> *Counsel for Paul Ceglia*

3.   I declare under penalty of perjury that the foregoing is true and correct.  28 U.S.C. § 1746.

Dated:  New York, New York
        June 30, 2014


____/s/_____
JANIS M. ECHENBERG