E7M7CEGC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------x

UNITED STATES OF AMERICA,

         v.                                    12 Cr. 876 (ALC)

PAUL CEGLIA,

            Defendant.

------------------------------x

                                 July 22, 2014
                                 2:00 p.m.

Before:

                   HON. ANDREW L. CARTER, JR.
                               District Judge

                      APPEARANCES

PREET BHARARA
     United States Attorney for the
     Southern District of New York
BY:  CHRISTOPHER FREY
     Assistant United States Attorney

DAVID PATTON
ANNALISA MIRON
     Attorneys for Defendant

GIBSON DUNN
     Attorneys for Facebook
BY:  ALEXANDER SOUTHWELL
     MATTHEW BENJAMIN

E7M7CEGC

1              (Case called)

2              (In open court)

3              MR. FREY:  Good afternoon, your Honor.  Christopher

4    Frey for the government.

5              THE COURT:  Good afternoon.

6              MR. PATTON:  Good afternoon, your Honor.  David

7    Patton, and at counsel table is Annalisa Miron, for Mr. Ceglia,

8    who is joining us by telephone.

9              THE COURT:  Good afternoon.  Good afternoon,

10   Mr. Ceglia.

11             THE DEFENDANT:  Good afternoon, your Honor.

12             MR. SOUTHWELL:  Good afternoon, your Honor.  Just to

13   introduce myself, Alexander Southwell from Gibson Dunn on

14   behalf of Facebook and Mark Zuckerberg.  My colleague Matthew

15   Benjamin is here as well.

16             THE COURT:  Good afternoon.

17             I have before me two issues I need to deal with today.

18   First is the defense's request for a bill of particulars, and

19   second is the defense request for certain information to be

20   obtained through subpoena.

21             First, dealing with the bill of particulars, let me

22   just get clarification here.  It doesn't seem to me that there

23   is a dispute, but maybe there is, regarding what or which

24   contract is the real contract here, but maybe there is a

25   dispute.  Let me just get some information from the parties.

E7M7CEGC

1          In the production, how many contracts have been

2     produced that are dated April 28, 2003?  I guess even before

3     getting there, the real contract is dated April 28, 2003, is

4     that correct?

5          MR. FREY:  That's the government's contention, yes,

6     your Honor.

7          THE COURT:  OK.  And it seemed to me that perhaps

8     there were at least two contracts with that date.  There was a

9     work for hire contract and a street -- street something

10     contract that were also dated that date.  In the government's

11     response they pointed to some documents that were Bates stamped

12     39 and 40.  Does that clear this issue up?  Is that what the

13     government is claiming is the real contract here?

14          MR. FREY:  Yes, your Honor, that's what the government

15     is claiming is the actual contract between Mark Zuckerberg and

16     Mr. Ceglia.

17          THE COURT:  And that's the contract Bates stamped page

18     39 and 40?

19          MR. FREY:  Yes, your Honor.

20          THE COURT:  Which contract is it?  Is that the street?

21          MR. FREY:  The street fax contract.

22          THE COURT:  All right.  The street fax.  Does that

23     clarify it?  Seems to me that clarifies that issue.

24          MR. PATTON:  It does.

25          THE COURT:  So that's been clarified, so the issue of

E7M7CEGC

1    bill of particulars of that is moot.

2         The second request seems to be likely moot.  Now that

3    the defense knows clearly which contract the government claims

4    is the real contract, the defense can determine what has been

5    allegedly forged or altered.

6         So, number one we have dealt with.  Number two has

7    been dealt with.

8         MR. PATTON:  Your Honor, if I could.  I think number

9    two has been dealt with, but -- and the government can correct

10   me if I'm wrong -- I think they have essentially responded as

11   we expected, which is they're saying that page 2 of the

12   contract that Mr. Ceglia is alleged to have sued upon was a

13   copy of what the government alleges was the real contract, and

14   it was page 1 that was doctored in some way and attached to it.

15        That doesn't necessarily follow from the government

16   saying that what they've identified as what they claim to be

17   the real contract is the real contract.  I am sorry if this is

18   sounding a bit twisted.

19        Number two is not resolved purely by the government's

20   response to number one.  I think they have responded in other

21   places that do resolve it, and that they are essentially saying

22   we're saying that Ceglia doctored page 1 and attached it to

23   what we claim was the real page 2.

24        THE COURT:  OK.  Does the government have anything to

25   add to this?

E7M7CEGC

1          MR. FREY:  I don't have anything to add, your Honor.

2          THE COURT:  OK.  So number two has been dealt with,

3     it's moot.

4          Number three:  Identify the e-mails involving Ceglia

5     and/or Zuckerberg that the government claims are inauthentic.

6     I am going to deny that request.

7          Number four:  Whereas the government states in the

8     indictment that Ceglia also destroyed evidence that was

9     inconsistent with his theory in the civil suit, identify the

10    evidence the government alleges that Ceglia destroyed.

11         I am inclined to deny that request as well, but let me

12    just got a sense, is the government in a position to do that?

13    Does the government have that information currently?

14         MR. FREY:  To the extent we have it, your Honor, it's

15    been provided to the defense.  It consists largely of our

16    forensic expert and the report that was generated and produced

17    to defense counsel with respect to alterations or deletions of

18    material.

19         THE COURT:  Defense counsel?

20         MR. PATTON:  And that's fine.  If the government's

21    response is:  What we know of at this point is what is

22    contained in the government's computer forensic expert

23    report -- which is the Curtis Rose report -- then that's fine

24    and that answers it.  But I do think we would be entitled to

25    know if at this point they are alleging that some other

E7M7CEGC

1   evidence was destroyed.  We would need to have that information

2   to be able to prepare any sort of defense of evidence being

3   destroyed.

4          THE COURT:  OK.  It seems that the government has

5   answered that question to the best of its ability now.  I think

6   it would be inappropriate for me to ask the government to

7   become Miss Cleo or some other psychic and try to determine

8   what other evidence might have been --

9          In terms of the evidence they have identified thus

10   far, they have given that information.  There may be other

11   evidence that is in their possession that they have yet to cull

12   through and go through and make determinations.  I am not

13   prepared to force the government to do that now.  Obviously,

14   the government will need to turn this information over on an

15   ongoing basis to the extent they continue to get more

16   information regarding the materials that they feel have been

17   altered.

18          MR. PATTON:  And, your Honor, to be clear, we're not

19   asking for them to look into the future, but I do think we are

20   entitled to if they have some other allegation of destruction

21   of evidence that they know now that they are going to be

22   relying on -- not that it might be contained in the voluminous

23   amounts of materials that exist -- but just that when they make

24   that allegation in the indictment, what are they referring to?

25   At this point if it's contained in the expert report, then so

E7M7CEGC

1   be it, fine.  But if they are referring to something that we

2   haven't been told about, that they know about right now, I

3   think we ought to be able to investigate that.

4           THE COURT:  Does the government have anything to say?

5           MR. FREY:  Your Honor, all I can say is to the extent

6   we know about it, we have provided the underlying materials to

7   defense counsel.  Again, it consists largely of the forensic

8   expert's analysis.

9           MR. PATTON:  I'm worried about that qualifier.

10          MR. FREY:  I don't mean anything by the qualifier.  As

11  I stand here today it consists of the forensic analysis.

12          THE COURT:  All right.  So, I will deny that request.

13          Number five:  Whom does the government claim Ceglia

14  intended to deceive as part of the fraudulent scheme alleged?

15          I think that the government has made that clear in the

16  indictment, so I'm going to deny that request.

17          Number six:  To the extent that the government is

18  relying on the theory that corrupting the judicial process

19  constitutes fraud, what communications to the court were

20  fraudulent?

21          I will deny that request.

22          Number seven:  If the government intends to rely on

23  settlement discussions to prove the alleged fraudulent scheme,

24  identify the instances in which Ceglia engaged or attempted to

25  engage in settlement discussions.

E7M7CEGC

1          I am taking this request to mean that the defense is

2    asking for dates of settlement discussions?  Is that what you

3    are talking about, dates and potential locations of settlement

4    discussions?

5          MR. PATTON:  Correct, your Honor.

6          THE COURT:  OK.  I feel that that is appropriate, and

7    I am inclined to grant that request.  Anything from the

8    government on that?

9          MR. FREY:  I would just say, your Honor, I think

10   Mr. Ceglia is probably in the better position of the parties in

11   this matter to know the answer to that question.  I understand

12   that your Honor is inclined to grant it, and that's fine.  I

13   don't know that there will be anything for the government to

14   produce in response to that.

15         THE COURT:  OK.  Well, I guess the first question

16   might be then, since this request is stated in the conditional,

17   at this point does the government intend to rely on settlement

18   discussions?

19         MR. FREY:  The government does not currently intend to

20   rely on settlement discussions.

21         THE COURT:  OK.  So it seems to me at this point that

22   this is perhaps moot now.  What's defense counsel's position on

23   that?

24         MR. PATTON:  That's fine, your Honor.  Obviously if

25   the government changes its mind, we would like to know about

E7M7CEGC

1    it.

2              THE COURT:  OK.  So I will deny that.

3              Regarding the documents produced on December 24, 2012,

4    identify the source of the documents produced, the location

5    from which they were retrieved, and the manner in which the

6    documents were obtained via search warrant, subpoena or some

7    other manner.

8              Just let me get a little bit more elucidation from the

9    defense as to why you need this information.

10             MR. PATTON:  Your Honor, largely to -- and to be

11   clear, I think for much of it at this point we now do have that

12   information.

13             But that information may either have direct relevance

14   to guilt or innocence in terms of the government's proof in the

15   case, that is, where some document was found might be relevant

16   to the case.  Secondly, it might be relevant to opposing some

17   sort of Fourth Amendment challenge.

18             THE COURT:  OK.  And I think in your submission you

19   mentioned something else about some other sort of forensic

20   computer analysis of this information.  Is this relevant to

21   that as well, or no?

22             MR. PATTON:  I'm not sure I'm following the question.

23             THE COURT:  OK.  I thought that there was also a

24   request -- obviously if some of these documents -- again, I'm

25   not sure what was in the December 24, 2012 regarding your

E7M7CEGC

1    earlier request —— that if some of these documents were

2    retrieved via computer or something of the like, or that sort

3    of information, that the defense indicated that it might intend

4    to have someone conduct some sort of forensic analysis related

5    to that recovery of that material.

6              MR. PATTON:  Correct, your Honor, and that certainly

7    also relates to some of the subpoena issues.

8              THE COURT:  OK.  So I'm inclined to grant that

9    request.  Anything from the government on that?

10             MR. FREY:  Your Honor, I will just note that the

11   government believes it has adequately described to defense

12   counsel where various materials were obtained from in our cover

13   letter with the production of discovery in December of 2012.

14   We set forth where documents had been obtained by.  There was

15   one search warrant in this case.  A copy had been provided to

16   defense counsel.

17             You know, in the reply briefing on the bill of

18   particulars motion, defense counsel takes issue with certain

19   documents, and that consists largely of background materials

20   concerning Facebook, which just on their face it's clear they

21   are public source documents, a chapter from a book, a newspaper

22   article.  There is nothing hidden with respect to where those

23   materials came from.  The government believes that defense

24   counsel knows quite well where everything that has been

25   produced came from, and they are in a position to determine

E7M7CEGC

1    whether there are motions to be made or otherwise.

2            MR. PATTON:  So, your Honor, if I could use that just

3    as an example, because this is one of the items.

4            THE COURT:  OK.  I guess before you address this, as I

5    indicated, I'm inclined to grant this request to the extent

6    this material has not already been turned over, but I will give

7    you an opportunity --

8            MR. PATTON:  Then I will quit while I'm ahead.

9            THE COURT:  So I will grant request number eight to

10   the extent that material has not been turned over, regarding

11   the location and the sources of these documents.

12           All right.  So that deals with everything.  I think

13   that resolves everything with the bill of particulars.  Now

14   let's move on to the issue of the subpoenas.  I know the

15   parties have requested oral argument regarding this.  I will

16   give the parties a brief opportunity to address the court in

17   that regard.

18           OK.  Since this is the defense subpoena, I will start

19   with defense counsel and give you a few minutes to go ahead and

20   address me.

21           MR. PATTON:  Thank you, your Honor.  I won't go into

22   great detail; I'll save things for whatever questions the court

23   may have.  But as a general proposition, if these subpoenas

24   were denied certainly in whole but at least in part, we would

25   have a trial where at root the case is about whether or not two

E7M7CEGC

1   people signed a particular contract, what contract did they

2   sign.

3          The government has produced and has access to almost

4   all -- I'm not aware of what they don't have access to -- of

5   one of those party's computers, bank records, internet

6   searches, vast quantities of information, based on all sorts of

7   electronic media that they've gathered.  On the flip side, we

8   have nothing.

9          It strikes me as just fundamentally unfair that we

10  would go to trial, where the issue is what happened between

11  these two people, and we have this mountain of electronic

12  evidence on one side and nothing on the other.

13         At the very least we should have access to those

14  things that have already been gathered.  It would not be

15  burdensome.  We are not asking necessarily at least at the

16  outset to do a remarkable amount of digging.

17         We already know that a large quantity of

18  Mr. Zuckerberg's electronic media has been gathered and has

19  been stored and exists because of prior litigation.  So, we are

20  not asking them to do some extraordinary search or hunt for

21  that material at least.  Obviously, we may be unaware of

22  additional material that exists from '03, '04.  But at the very

23  least we can start with that material.

24         And, similarly, we could start with finding out how

25  Harvard backs up its servers.  We have already demonstrated

E7M7CEGC

1   that which backup day you collect from can affect the material

2   that's on there; not all backup dates necessarily contain

3   everything prior to that date.  And we don't know how Harvard

4   backs up its servers.  We don't know whether they do it on a

5   daily basis, on a weekly basis, on a monthly basis.  We would

6   like to have that information, and we would like to, using that

7   information, get a much better, more accurate, snapshot or

8   collection of Mr. Zuckerberg's e-mails.

9          It's fairly remarkable that the backup that was

10   selected by both Facebook and the government to retrieve from

11   Harvard is from late November, when the e-mails that the

12   government is claiming are inauthentic actually largely

13   post-date that date.  And there are other circumstances that

14   exist.  There are other communications that exist post that

15   backup date that would be remarkably relevant to the matters at

16   hand here.  So, at the very least we should be looking at those

17   materials.

18          As for other materials related to bank records and

19   telephone records, I admit that we're not on as strong a

20   footing for getting those materials, but they are relevant.

21          The government and Facebook have repeatedly claimed

22   that, look, you know these e-mails are wrong or unauthentic, or

23   you know this is the correct version of the contract because it

24   either comports or doesn't comport with some objective fact

25   that we know about, that can either be verified through

E7M7CEGC

1    canceled checks or bank records.

2          We don't have the same ability to examine those

3    records to see whether or not they comport with the e-mails

4    that are widely accepted to be true versus the ones that are

5    contested.  That information is highly relevant to us just in

6    the same way that it's highly relevant to the government and

7    Facebook and the way they are planning to use it at trial.

8          THE COURT:  OK.  Let me hear from the government, and

9    I will give counsel for Facebook an opportunity to address me.

10         Let me just let the parties know that in terms of the

11   legal standard here that I am applying the standard articulated

12   by the Supreme Court in Nixon, not the Tucker standard that was

13   articulated by Judge Scheindlin.

14         It should be noted that Judge Scheindlin in

15   articulating that Tucker test cabined that test to apply only

16   where the production is requested on the eve of trial and the

17   defendant has an articulable suspicion that the documents may

18   be material to the defense.

19         So, I'm going to go under the Supreme Court standard

20   articulated in Nixon that the 17(c) subpoena must demonstrate

21   the relevancy, admissibility and specificity of its request.

22         I guess I should have indicated that before I gave

23   defense counsel an opportunity to make his presentation.  I

24   will give defense counsel an opportunity to supplement it now

25   if there is anything you would like to add in regards to that.

E7M7CEGC

1              MR. PATTON:  Your Honor, particularly with respect to

2       the eve of trial issue, this is material that would have to be

3       examined by experts for it to be meaningful.  So to seek this

4       material on the eve of trial frankly either does us no good or

5       it results in a last minute adjournment of proceedings.

6              Nothing is going to change between now and the eve of

7       trial in terms of our knowledge about whether or not this

8       material is relevant.  So, I do think that we are in a

9       fundamentally position than BOP phone calls.

10             Frankly, I think we are in a stronger position than

11      Tucker, because there is an argument to be made, and arguments

12      have been made about whether that subpoenaing material from the

13      government, as opposed to a situation here where we are

14      subpoenaing material that is clearly from a nongovernment

15      actor, not remotely related to law enforcement or the

16      government.  And I do think Judge Scheindlin's reasoning as

17      well as several other courts that we cited in our papers makes

18      a lot of sense.

19             Nixon is an entirely different circumstance; it's the

20      government seeking material; it's the government seeking it

21      from the President of the United States.  There are sound

22      reasons why when the defense is seeking to gather information

23      not from the government -- which I mean the government briefs

24      almost respond as though we have subpoenaed the government for

25      this material.  There is no reason that Rule 17 -- which was

E7M7CEGC

based on the Federal Rules of Civil Procedure, which do not

contain restricting language that is discussed in Nixon --

there is no reason to limit what the defense should be able to

gather that is clearly material to the defense, and it would

not be onerous on the party that we are seeking material from.

THE COURT:  OK, thank you.  Let me hear from the

government.

MR. FREY:  Your Honor, obviously the government agrees

with the court that the Nixon standard is the appropriate

standard to be applied here.

First, with respect to the point that defense counsel

makes about the unfairness of it all, I think Judge Scheindlin

said it best in Tucker that a criminal prosecution is in no

sense a symmetrical proceeding, that for better or worse due

process demand only that a criminal defendant receive a

constitutionally adequate defense and that the parties in a

criminal prosecution be equally matched.

The fact of the matter is that the subpoenas here

largely are overbroad, they are burdensome, and the government

has real concerns with respect to the requests that have the

potential to unduly or inappropriately harass not a prospective

witness but a witness that the government 100 percent knows

will be calling to testify at this trial, and that is with

respect to Mark Zuckerberg.

With respect to -- and I will start first with the

E7M7CEGC

Harvard subpoena -- with respect to the e-mails, first of all,
the government has no objection to a subpoena to Harvard that
requests the protocols for backup.  We noted that in our
opposition, and that strikes the government as perfectly fine.
It's not something that's currently in the government's
possession, and that's why it wasn't produced to defense
counsel in discovery.  But that seems appropriate.

          I take issue, however, with defense counsel's
assertion that the government selected dates by which it
received e-mails from Harvard.  Those were the dates that the
captures were done by Harvard at various points in time based
on various events in history, based on their retention policy,
based on litigation requests in other matters, and that is, as
the government understands it, what Harvard has in its
possession, or it had at the time that the government made its
request to Harvard University.

          Now, of the three dates that the government received
captures from Harvard, the government reviewed that material
and produced what it believed it was obligated to produce
pursuant to Rule 16.  There is a larger set of material that is
still relevant to this case and that the government intends to
produce closer in time to trial, because it contains either
3500 material for Mr. Zuckerberg, or potential Giglio/Jencks
cross-examination material, but that's not appropriate at this
point.

E7M7CEGC

         1          And the request as drafted is really nothing more than

         2     a fishing expedition that is likely to reveal material that

         3     could be potentially embarrassing to Mr. Zuckerberg or to

         4     others, quite frankly, who are involved in those e-mail

         5     communications.

         6          So at this point the government sees no reason why

         7     defense counsel or the defendant would be entitled to a full

         8     set of Mr. Zuckerberg's e-mails from any account that he used

         9     during the relevant time period.  We believe that the defense

        10     has everything that it needs at this stage and will be

        11     receiving more, consistent with our obligations as we move

        12     forward.

        13          With respect to the request for disciplinary records,

        14     again that strikes the government as nothing more than a

        15     fishing expedition for potential Giglio and cross-examination

        16     material, nothing that at this point in time can be articulated

        17     as relevant.

        18          Now, with respect to Mr. Zuckerberg himself and to

        19     Facebook -- counsel for those parties are here today and I am

        20     sure will address this further -- but obviously the government

        21     has concern with the potential for undue harassment of

        22     Mr. Zuckerberg as a potential witness in this trial.  The

        23     requests for all computer, cell phones, electronic media, again

        24     without further specificity or limitation as to relevance, in

        25     the government's view it does not meet the standard articulated

E7M7CEGC

1   in Nixon, and it would be nothing more than a fishing

2   expedition.  The same is true for the bank records that have

3   been requested as well.

4           Unless the court has any further questions, the

5   government will rest on its written submission in this regard.

6           THE COURT:  OK, thank you.  Let me hear from counsel

7   for Facebook.

8           MR. SOUTHWELL:  Thank you, your Honor.

9           Largely for the reasons that we laid out in our

10  papers, we would ask the court to reject the sweepingly

11  overbroad and unreasonable subpoenas that are sought against

12  our client Mark Zuckerberg and Facebook.  They lack

13  specificity, they lack relevance, and they lack admissibility

14  under Nixon or frankly even under the lower standard, and they

15  really only serve to further harass our clients who are the

16  victims here and are entitled to respect under the relevant

17  statutory authorities here.

18          Quite clearly to seek every computer, cell phone,

19  electronic source device that Mr. Zuckerberg or every employee

20  of Facebook used during 2003 and 2004 is really by definition a

21  fishing expedition.

22          There is certainly a corpus of material that we think

23  would meet that standard, and that which we have offered to

24  voluntary produce without the need for a subpoena, and we have

25  laid that out at pages 6 and 7 of our letter of June 30, 2014.

1    And I think that would be an appropriate basis that we would

2    offer voluntarily that really covers everything.

3              Just to be clear about that, your Honor, to echo what

4    AUSA Frey said, in the context of the civil case, and pursuant

5    to our discovery obligations there, we forensically preserved

6    any data that Harvard held related to Mr. Zuckerberg's e-mail

7    accounts.  So whatever data Harvard had, we have a forensic

8    copy of it.  And that was the subject of deposition questioning

9    by civil counsel for Mr. Ceglia.

10             So the record has been established that whatever

11   Harvard has has been preserved.  Moreover, whatever that

12   preserved body of electronic evidence is has been searched for

13   any correspondence between Ceglia or anybody that was known to

14   be working with him and Zuckerberg, and that has been produced

15   in the civil case.  So, all of that has been developed, quite

16   frankly, in the civil case, and we are prepared to produce it.

17             I don't know actually what the government has turned

18   over, but we are prepared to turn over the correspondence

19   between our client and Mr. Ceglia and the others, as we laid

20   out in the letter, and we think that that is an appropriate

21   resolution.

22             I think that it is notable that Mr. Patton says he

23   would like to look at these materials, and he doesn't specify

24   these materials.  He is asking for the entire computer, the

25   entire contents of the e-mail accounts, including all manner of

E7M7CEGC

1    rank, inadmissible, irrelevant material.  That's not proper,

2    because he is not entitled to look at those materials under

3    Rule 17(c)(3).

4          But we are willing to offer the materials that we

5    think are relevant and admissible as we have laid out.  We

6    think that that is the appropriate response, and we would ask

7    your Honor reject the requests for the subpoenas and allow us

8    to voluntarily produce the materials spelled out.

9          THE COURT:  OK, thank you.

10          MR. PATTON:  Your Honor, may I be heard?

11          THE COURT:  Sure.

12          MR. PATTON:  Particularly with respect to Harvard, we

13    didn't get into the objecting -- this afternoon we haven't

14    gotten into objecting to the government's standing to raise

15    these issues.  We continue to take that position, as we set it

16    forth in our papers.

17          But particularly with respect to Harvard it's relevant

18    here because a subpoena hasn't even been issued; Harvard hasn't

19    been heard on this.  And I think it's just black and white that

20    the government does not have standing to object at this point

21    to Harvard producing this material.

22          If this is truly the entirety of what Harvard has, I

23    mean it just strikes me as remarkable -- and maybe I'm wrong

24    about this -- but it strikes me as remarkable that there is a

25    backup date in November 2003 and not one again until 2010.

E7M7CEGC

1          I think we ought to hear from Harvard about their

2     backup policies.  Maybe, frankly, once that material is

3     produced about what their policies are and how often they back

4     up, we will have a better sense of what is at issue here.  But

5     I don't think the government is in a position to object to this

6     on behalf of Harvard.

7          THE COURT:  OK, thank you.

8          MR. SOUTHWELL:  Your Honor, could I just very briefly

9     respond to that point?  Just to make the record clear, there

10    was a civil deposition which spelled out -- and there are civil

11    declarations filed in this case -- that spell out the dates of

12    the backups that Harvard represented they possess that has any

13    data related to Mark Zuckerberg.

14         It's hardly a surprise that an educational institution

15    does not keep backups in the way that a Fortune 100 company

16    does.  They have represented that these are the only backups.

17    That is in sworn declarations in the civil case.  It was the

18    subject of cross-examination during deposition.  So the record

19    is clear in that regard.

20         But certainly we also have no objection to Harvard

21    producing policies related to that.  We do believe we have

22    standing, and I would submit that the government has standing

23    as it relates to an effort to harass our client who is entitled

24    to standing as the crime victim here and as a main government

25    witness in the case.

E7M7CEGC

1          THE COURT:  Thank you.  I find that the government

2     does have standing to object to these subpoenas.  Let's go one

3     by one.

4          Let's talk about Harvard University.  The first

5     request, the first subpoena is the contents of any and all

6     e-mail communications for the years 2003 and 2004 for accounts

7     registered to Mark Elliot Zuckerberg, including but not limited

8     to the account mzuckerb@fas.harvard.edu.  I am denying that

9     request as too broad.

10          Go to the number three request under the Harvard

11     University subpoena, because it relates directly to number one:

12     Any and all backup copies of the e-mail communications

13     requested in item one above, whether maintained on-site or

14     off-site.  I will also deny that as too broad.

15          Then number two:  Any and all documents setting forth

16     Harvard University's policies and protocols relating to backing

17     up, storing and maintaining the contents of e-mail

18     communications for Harvard email addresses from 2003 to the

19     present.  I will grant that and allow that subpoena to go

20     forward.

21          Number four:  Any and all documents relating to

22     disciplinary proceedings relating to Mark Zuckerberg's

23     unauthorized access to Harvard's computer systems, or Mark

24     Zuckerberg's violation of any Harvard policies or rules

25     relating to computer usage and/or student privacy.  I will deny

E7M7CEGC

1    that request.  That very well may be appropriate later, but I

2    am denying that request.

3           I believe that covers the requests for Harvard, but

4    defense counsel can correct me if I'm wrong.  Is there another

5    subpoena request regarding Harvard?

6           MR. PATTON:  Your Honor, I believe that covers it.  I

7    guess I would just ask that once we do have the policies and

8    procedures about backup, I assume the court's order does not

9    preclude some further request based on what we learn from that

10   information.

11          THE COURT:  That's correct.

12          MR. PATTON:  And perhaps a narrowing of what we have

13   requested here.

14          THE COURT:  That's correct.

15          OK.  Regarding Facebook and Mark Zuckerberg, request

16   number one:  Any and all agreements, draft agreements, or

17   copies thereof, in any format or media, including electronic or

18   paper, between Facebook/Mark Zuckerberg and Paul Ceglia, or

19   between companies managed or owned in whole or in part by

20   either Facebook/Zuckerberg or Ceglia.

21          This appears to be appropriate to me, and from what

22   I've heard from the parties it seems to indicate I think that

23   Facebook claims that Ceglia already has these documents.  I

24   think that's basically where we are.  Is that correct?

25          MR. SOUTHWELL:  Well, your Honor, I don't know what

E7M7CEGC

1   Mr. Patton on behalf of Mr. Ceglia in the criminal case has.  I

2   do know that in the civil case what existed with respect to

3   written agreements has been produced, and the written agreement

4   is the street fax contract, which says nothing about Facebook.

5   That was recovered off of Mr. Ceglia's computer, and that is

6   what was produced.

7          I guess I would just ask your Honor -- because I think

8   that the language that is included in these subpoenas is in and

9   of itself overbroad -- I would ask your Honor to deny the

10   subpoenas, allow us to voluntarily produce the material that we

11   spelled out.

12          I am happy to work with Mr. Patton and explain to him

13   what we are providing to him, what exists, what doesn't exist.

14   I am just troubled by the scope of some of the language in the

15   subpoena, and I think that it would be much more efficient for

16   us to simply turn over what we've -- and I am happy to explain

17   it to Mr. Patton, and it may be that it's new material to them.

18   I don't know.  And that would be a more effective way to

19   proceed, rather than have to go through specific language

20   which, you know, there may be problematic aspects.

21          THE COURT:  Mr. Patton, anything on that?

22          MR. PATTON:  Your Honor, obviously we are happy to

23   receive the material that Facebook offered to produce in its

24   response.  When they provided that response, they dropped

25   footnotes that essentially said but Ceglia already has all of

E7M7CEGC

1   this material.

2          So, I mean I'm happy to see what documents are

3   contained in that production and to have further discussions

4   and perhaps narrow our requests based on what is produced to

5   us.  I am happy to do that.

6          It sounds like that would certainly not cover, for

7   instance, material that's on the 28 devices that were examined

8   and that are held by either Facebook or a third party that were

9   examined by Facebook's expert in a civil matter, which, you

10  know, I think that that material would contain highly relevant

11  information for this case that we're still going to be seeking

12  from Facebook, from Mark Zuckerberg.

13         So I am happy to sort of see what we get and see if

14  that resolves this, and approach the court after we have done

15  that.

16         THE COURT:  OK, let's do this then:  Let's have

17  Facebook voluntarily turn over the information that it

18  indicated that it was willing to turn over.  I will deny that

19  subpoena request number one without prejudice, and see where we

20  are once the defense has that information.

21         Number two:  Any and all written correspondence or

22  communication, or copies thereof, in any format or media,

23  including electronic or paper, between Facebook/Zuckerberg and

24  Ceglia, or between companies managed or owned in whole or in

25  part by either Facebook/Zuckerberg or Ceglia.

E7M7CEGC

1          It seems to me we should probably do the same thing

2     regard request two that we did for number one, but let me hear

3     from the parties if they have a different view of things.

4          MR. SOUTHWELL:  Yes, agreed.  I am happy again to work

5     with Mr. Patton and explain.  He mentioned these 28 other

6     assets.  Those were in fact searched, and there is nothing on

7     those materials, and that was made clear in the civil case.

8          To be clear, our view is that Mr. Ceglia is aware of

9     this.  I don't know whether Mr. Patton is aware of it, and so I

10     am happy to work with Mr. Patton to make sure he is aware, and

11     hopefully there won't be any issues, and if there are, we know

12     where to find the judge.

13          THE COURT:  Mr. Patton?

14          MR. PATTON:  Your Honor, I know -- and I certainly

15     don't know the civil case as well as Mr. Southwell -- I know

16     from some of the civil materials that at least that was the

17     statement made in the deposition by Mr. McGowan, that he had

18     examined those.  But it's not clear to me what -- I know they

19     used search terms, but it's not entirely clear to me what

20     search terms were used.  I know that at one point in the

21     deposition there was a claim that some of the material that we

22     are talking about now, communications between Ceglia and

23     Zuckerberg and other people associated with the companies, was

24     outside the purview of what they were looking for.

25          So I don't know if they have done additional searches;

E7M7CEGC

1    I don't know what those terms have been.  Again, I am happy to

2    have further discussions with them to fill in some of that

3    information and then take it from there.

4             THE COURT:  OK, that's fine.  So we will do the same

5    thing:  Number two is denied without prejudice, and Facebook

6    will voluntarily turn over the information that they indicated

7    in their submission, and counsel for Mr. Ceglia and counsel for

8    Facebook should get together and try to work things out.

9             Let's move to number five under that:  Forensically

10   sound copies of any and all contents of e-mail accounts

11   registered to or regularly used by Facebook/Zuckerberg during

12   the years 2003 and 2004.

13            I am going to deny that; that's too broad.

14            Number three:  Forensically sound copies of the

15   content of any and all computers, electronic storage devices,

16   and other electronic media devices owned or regularly used by

17   Facebook/Zuckerberg during the years 2003 and 2004.

18            Number four:  Forensically sound copies of the

19   contents of any and all cell phones owned or regularly used by

20   Facebook/Zuckerberg during the years 2003 and 2004.

21            I am going to deny that as well.  That is also too

22   broad.

23            I think that resolves everything dealing with the

24   subpoenas.  Have I left anything out, defense counsel?

25            MR. PATTON:  I don't believe your Honor addressed the

E7M7CEGC

1    bank account.

2              THE COURT:  OK.  And the request for the bank account

3    is also denied as too broad.  Is there anything else, defense

4    counsel, regarding the subpoenas?

5              MR. PATTON:  Not at this time, your Honor.

6              THE COURT:  OK.  It seems to me that at this point

7    where we are is the parties are still engaged in going

8    through -- the defense is still engaged in going through the

9    large volume of electronic materials in this case and going

10   through review of these materials with their client.

11             So it seems to me that perhaps what we should do is

12   adjourn this matter and have another status date in about 45

13   days or so and see where we are with the discovery that's been

14   produced, and see if there are anymore issues regarding any

15   requests by the defense.  I will hear from the parties.  Any

16   different take on things?

17             MR. PATTON:  I think that's exactly what we were

18   discussing before your Honor came out, so I think that makes

19   sense.

20             THE COURT:  Are counsel around the first week of

21   September?

22             MR. PATTON:  Yes, your Honor.

23             MR. FREY:  Yes, your Honor.

24             DEPUTY COURT CLERK:  Friday, September the 5th at

25   12:30?

E7M7CEGC

1            MR. PATTON:  That's fine with us.

2            THE COURT:  Does that work for everyone?

3            MR. FREY:  Yes, your Honor.

4            THE COURT:  Now, it seems to me that counsel for --

5    well, what are the parties' position?  It seems to me it's not

6    necessarily necessary to have counsel for Facebook here, at

7    least to order that at this time.  If in the interim between

8    now and September 5 it's determined that that will be

9    appropriate, I guess counsel can send me a letter and file that

10   letter electronically.  But do counsel have any position on

11   that?

12            MR. PATTON:  No, your Honor.

13            MR. FREY:  No, your Honor.

14            THE COURT:  OK.

15            MR. SOUTHWELL:  Your Honor, one last thing, if I could

16   just request that pursuant to the CVRA 18 U.S.C. 3771 that we

17   be given notice of any subpoenas or applications that relate to

18   our clients' rights.  So, for example, Harvard, if that issue

19   is raised again, I think we have a right under 3771 to be heard

20   on those issues, so I would simply request to be notified so

21   that we can appear if necessary.

22            THE COURT:  Does anyone have any position on that?

23            MR. PATTON:  No, your Honor.  I will just say that in

24   terms of how we went about it in this setting, had the court

25   signed those subpoenas, they would have been served, Facebook

E7M7CEGC

```
1    could have moved to quash, so there wouldn't be any sort of

2    surreptitious subpoenaing.  But, of course, I'm happy to keep

3    everybody in the loop.

4                THE COURT:  OK, so we will do that.

5                In the past I have certainly excluded time under the

6    Speedy Trial Act.  I think it's appropriate to continue to do

7    that.  We have a trial date in this case, I believe it's

8    November the 17th.  Is that right?

9                MR. FREY:  That's correct, your Honor.

10               THE COURT:  It seems to me that it's appropriate to

11   exclude time under the Speedy Trial Act from today's date until

12   November 17 because the defense will need that time to continue

13   to prepare for trial.  This is a complex case due to the volume

14   and the nature of the electronic discovery in this case.

15               I find it's in the interests of Mr. Ceglia and in the

16   interests of justice to exclude time under the Speedy Trial Act

17   from today's date until November 17.

18               I further find that Mr. Ceglia's interest and the

19   interests of justice outweigh the public's interest in a speedy

20   trial, and I will enter an order to that effect.

21               So, again, we have excluded time from today's date

22   until November 17 under the Speedy Trial Act, and we will

23   adjourn this matter until September 5 at 12:30.

24               Anything else from the government today?

25               MR. FREY:  No, your Honor.  Thank you.
```

E7M7CEGC

1              THE COURT:  Anything else from the defense?

2              MR. PATTON:  No, your Honor.  Thank you.

3              THE COURT:  Anything else from Facebook?

4              MR. SOUTHWELL:  No, thank you.

5              THE COURT:  Thank you.

6              Mr. Ceglia, did you hear everything that happened

7    here?

8              THE DEFENDANT:  I did, your Honor.  Thank you.

9              THE COURT:  OK, have a good day.

10             (Adjourned to September 5, 2014 at 12:30 p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25