UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :

      - v. -                       :              12 Cr. 876 (ALC)

PAUL CEGLIA,                      :

          Defendant.        :

- - - - - - - - - - - - - - - - x


**GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION REGARDING APPLICATION OF CRIME FRAUD EXCEPTION**


                                        PREET BHARARA
                                        United States Attorney for the
                                        Southern District of New York
                                        Attorney for the United States
                                          of America


Niketh Velamoor
Assistant United States Attorney
      - Of Counsel -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA         :

        - v. -                   :            12 Cr. 876 (ALC)

PAUL CEGLIA,                     :

                Defendant.       :

- - - - - - - - - - - - - - - - x

## GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION REGARDING APPLICATION OF CRIME FRAUD EXCEPTION

The Government respectfully submits this application for an order finding that the crime fraud exception applies to all documents and communications that are subject to a claim of privilege based on the attorney-client relationships between Paul Ceglia ("Ceglia" or "defendant") and his former attorneys at the law firms of DLA Piper LLP ("DLA Piper") and Kasowitz, Benson, Torres & Friedman LLP ("Kasowitz").  As set forth below the Government easily has satisfied its burden of showing that the crime-fraud exception to the privilege applies.[1]

---

1 As discussed in greater detail below, this motion has been prepared by the undersigned Assistant U.S. Attorney (the "Wall AUSA") who, pursuant to a procedure agreed upon by counsel for the defendant, has reviewed the documents produced by DLA Piper and Kasowitz that are at issue here.  However, this motion does not rely on or reference any of the potentially privileged documents.  To date, these documents remain available only to defense counsel and the Wall AUSA.

Attached hereto as Exhibit 1 is the complaint, 12 Mag. 2842, filed in this District on October 25, 2012, sworn to by Douglas Veatch, Postal Inspector with the United States Postal Inspection Service, and signed by the Honorable Michael H. Dolinger, USMJ (the "Complaint").  Attached hereto as Exhibit 2 is Indictment 12 Cr. 876 (ALC) returned by a grand jury sitting in this District on November 26, 2012 (the "Indictment").  Attached hereto as Exhibit 3 is a privilege log produced by Kasowitz in response to a subpoena (the "Kasowitz Log").  Attached as Exhibit 4 is a privilege log produced by DLA Piper in response to a subpoena (the "DLA Piper Log").  The Complaint, Indictment, Kasowitz Log and DLA Log provide the factual basis for the application of the crime-fraud exception.

## I.    FACTUAL BACKGROUND

The defendant was arrested on October 26, 2012, pursuant to the Complaint.  The Complaint charged Ceglia with one count of mail fraud and one count of wire fraud in connection with the defendant's participation in a scheme to defraud Facebook, Inc. ("Facebook") and the Chief Executive Officer of that company, Mark Zuckerberg ("Zuckerberg"), and to corrupt the federal judicial process.  The Indictment charges the Defendant with the same crimes as set forth in the Complaint.

The Complaint and the Indictment set forth detailed

allegations of Ceglia's criminal conduct.  Both the Complaint and the Indictment allege that, on April 28, 2003, Ceglia entered into a contract with Zuckerberg, then a student at Harvard University, in which Zuckerberg agreed to perform certain programming work for Ceglia and StreetFax.com, an online business operated by Ceglia that provided pictures and other information related to street intersections throughout the country to insurance adjusters. (Indictment ¶ 5; see also Compl. at ¶¶ 5, 6b(1)-(2)).  In the contract they signed in Boston, Massachusetts in April 2003, Ceglia agreed to pay Zuckerberg a fee for Zuckerberg's work on the StreetFax.com website.  (Indictment at ¶ 5; see also Compl. at ¶ 6b(4)).

The Indictment alleges that, sometime after 2003, as part of his scheme to defraud, Ceglia doctored or otherwise fraudulently converted the real contract that he had with Zuckerberg concerning programming work for StreetFax.com to make it appear as though Zuckerberg had agreed to provide Ceglia with at least a 50% interest in Facebook (the "Alleged Contract").  (Indictment at ¶ 5).  The first page of the Alleged Contract contained language giving Ceglia "a half interest (50%) in the software, programming language and business interests" derived from the expansion of "The Face Book" or "The Page Book."  The second page of the Alleged Contract contained the signatures of Ceglia and Zuckerberg.  Moreover, the

Indictment charges that, to further his scheme, Ceglia manufactured evidence to support his false ownership claim, including creating e-mail communications he purportedly had with Zuckerberg between July 2003 and July 2004 via Zuckerberg's Harvard e-mail account (the "Purported E-mails").  Additionally, Ceglia destroyed certain evidence that was inconsistent with his false claim.  (Indictment at ¶ 7; see also Compl. at ¶ 6).

In connection with the above acts, and as a further part of his scheme to defraud, Ceglia then initiated a lawsuit against Zuckerberg and Facebook, Inc. (the "Civil Defendants") in the Supreme Court for the State of New York, Allegany County, on or about June 30, 2010, to enforce his rights under the Alleged Contract  (the "Civil Action").  The case was subsequently removed to the U.S. District Court for the Western District of New York.

At various times throughout the pendency of the Defendant's Civil Action, Ceglia has been represented by a number of different attorneys.  In or about March 2011, the defendant retained Kasowitz to represent him in connection with the Civil Action.  According to the privilege log prepared by Kasowitz, communications with Kasowitz regarding this matter began on or about March 8, 2011 and an engagement letter was sent to the defendant on March 21, 2011.  Shortly thereafter, on March 30, 2011, Kasowitz

4

informed the defendant that it was withdrawing from the representation.

According to the DLA Piper Log, discussions regarding DLA Piper's possible representation of the defendant in the Civil Action began as early as February 2011.  DLA Piper appeared as counsel for Ceglia in the Civil Action on April 11, 2011.

Also on April 11, 2011, Ceglia filed a 25-page amended complaint, through his attorneys at DLA Piper.  See Ceglia v. Zuckerberg, et al., 10 Civ. 569 (RJA)(LGF).  In his amended complaint, the Defendant claimed, among other things, that Zuckerberg, in the April 2003 contract, had promised him at least a 50% interest in "The Face Book" project that ultimately became Facebook, Inc.  In support of his claim, Ceglia attached a copy of the Alleged Contract to his amended complaint.  Also in support of his claim, Ceglia described and cited the Purported E-mails in the amended complaint.  The Purported E-mails reflect conversations between Ceglia and Zuckerberg about the design and functionality of "The Face Book" website, as well as ways to generate income from its expansion.  The Purported E-mails also reflect conversations in which Zuckerberg offered Ceglia money to "repair [their] business relationship."  (Indictment at ¶¶ 6-7; see Compl. at ¶ 6).

Around this time period, there were additional

5

communications, including communications between Kasowitz and other

counsel, regarding Kasowitz's withdrawal.  Specifically, Kasowitz

sent a letter dated April 13, 2011 to other counsel for the defendant

(the "April 13 Kasowitz Letter"), including attorneys at DLA Piper.[2]

In the April 13 Kasowitz Letter, Kasowitz made clear that it was

withdrawing from the matter because it believed that the Alleged

Contract was fabricated.  According to the DLA Piper Privilege Log,

attorneys at DLA Piper began discussing withdrawing from Civil Action

in late June 2011.  DLA Piper was formally substituted as counsel

for the defendant on June 29, 2011.

By order dated March 24, 2014, United States District Judge

Richard J. Arcara dismissed the Civil Action because the "purported

contract upon which the action is predicated is a fabrication and,

alternatively, because of spoilation (sic) of evidence by, or on

behalf of, plaintiff Paul D. Ceglia."  Ceglia v. Zuckerberg, 10 Civ.

569 (RJA) (LGF) (W.D.N.Y), Docket No. 674 at 2.  The spoliation of

evidence is described in more detail in United States Magistrate

Judge Leslie G. Foschio's March 26, 2013 Report and Recommendation,

in a section entitled "Spoliation."  Docket No. 651, at 120-144.

Judge Foschio discusses, among other things, willful destruction and

_____

2    The April 13 Kasowitz Letter is not privileged.  It was ordered
produced to the defense in the District Court in the Civil Action
and has been fully available to all parties in this case.

deletion of relevant files.  Docket No. 651 at 136-137, 140.  In a section entitled "Litigation Misconduct," Judge Foschio also notes that the defendant engaged in, among other things "stonewalling and obstructive discovery, filing false declarations under oath, and making frivolous assertions of privilege to conceal his wrongdoing." Docket No. 651 at 144.

The Government seeks the documents because discussions between the defendant and his attorneys at DLA Piper and Kasowitz are highly relevant to the investigation and subject to the crime fraud exception to the attorney-client privilege because Ceglia enlisted his attorneys at DLA Piper and Kasowitz to file and litigate his fraudulent lawsuit against Facebook and Ceglia.  Indeed, the filing of the lawsuit is a central part of the fraud with which Ceglia is charged.

The Kasowitz Log and DLA Piper Log reveal extensive communications concerning, among other things, litigation strategy in the Civil Action, the discussion of facts underlying the claims in the Civil Action and communications regarding the withdrawal of Kasowitz and DLA Piper from the case.  Thus, these communications will likely reveal information relating to the defendant's illicit conduct, knowledge and intent to pursue a fraudulent lawsuit, including representations that Ceglia was making to his attorneys

7

in furtherance of his fraudulent scheme as well as any information
he was given by his attorneys regarding the validity or invalidity
of his claims.  Also, given that the Kasowitz and DLA Piper firms
withdrew, these communications will reveal the reasons for their
withdrawal, which may consist of additional evidence of the
defendant's fraud.

## II.   DISPUTE OVER WITHHELD DOCUMENTS AND TESTIMONY

        Following the Indictment in this case, counsel for the
Government and Ceglia agreed on a procedure concerning potentially
privileged documents produced by DLA Piper and Kasowitz.  Under the
agreed-upon procedure, DLA Piper and Kasowitz produced potentially
privileged documents and communications regarding their
representations of Ceglia to the undersigned Assistant U.S. Attorney
(the "Wall AUSA"), who is not part of the prosecution team in this
case.  The Wall AUSA then reviewed the documents and informed counsel
for Ceglia of the Government's position that the documents were
subject to the crime fraud exception and should be made available
to the prosecution team.  Defense counsel indicated that they
objected to making these documents available to the prosecution team.
This motion follows.

### III. APPLICABLE STANDARDS FOR CRIME-FRAUD EXCEPTION

The attorney-client privilege applies "(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or the legal adviser, (8) except the protection be waived . . . ." United States v. Kovel, 296 F.2d 918, 921 (2d Cir. 1961).  The privilege, however, is not absolute.  "The privilege cannot stand in the face of countervailing law or strong public policy and should be strictly confined within the narrowest possible limits underlying its purpose."  United States v. Goldberger & Dubin, 935 F.2d 501, 504 (2d Cir. 1991) (citations omitted).

Thus, it is "well-established that communications that otherwise would be protected by the attorney-client privilege or the attorney work product privilege are not protected if they relate to client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct."  In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983, 731 F.2d 1032, 1038 (2d Cir. 1984).  "The crime-fraud exception thus insures that the secrecy protecting the attorney-client relationship does not extend to communications or work product 'made for the purpose of getting advice for the

9

commission of a fraud' or crime." In re Richard Roe, Inc., 68 F.3d 38, 40 (2d Cir. 1995) (quoting United States v. Zolin, 491 U.S. 554, 563 (1989)); see also In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983, 731 F.2d at 1038 ("Whereas confidentiality . . . facilitates the rendering of sound legal advice, advice in furtherance of a fraudulent or unlawful goal cannot be considered 'sound' . . . and the client's communications seeking such advice are not worthy of protection."). Such communications or work product are not protected "even if the attorney is unaware that his advice is sought in furtherance of such an improper purpose." In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983, 731 F.2d at 1038.

## IV.   PROCEDURE

### A.   Establishing Probable Cause Of Crime Or Fraud And That Communications Were In Furtherance Of Crime Or Fraud

To overcome the attorney-client privilege in this context, the Government must establish "that there is 'probable cause to believe that a crime or fraud has been [attempted or] committed and that the communications were in furtherance thereof.'" The probable cause standard in this context is "not an overly demanding" one. A.I.A. Holdings, S.A. v. Lehman Brothers, Inc., No. 97 Cir. 4978, 1999 WL 61442, at *5 (S.D.N.Y. Feb. 3, 1999); In re John Doe, Inc., 13 F.3d 633, 637 (2d Cir. 1994) (quoting In re Grand Jury Subpoena

10

Duces Tecum Dated September 15, 1983, 731 F.2d at 1039).  The Court

must find that the communication in question was itself in

furtherance of the crime or fraud and intended in some way to

facilitate or conceal the criminal activity.  In re Richard Roe,

Inc., 68 F.3d at 40.   Thus, to find that the crime-fraud exception

applies, the Court need only conclude that "a prudent person [would]

have a reasonable basis to suspect the perpetration of a crime or

fraud, and that the communications were in furtherance thereof."

Id. at 71.

        "[T]he crime-fraud exception embraces common-law

fraud[,]"  Specialty Minerals, Inc. v. Pleuss-Stauffer AG, No. 98

Civ. 7775, 2004 WL 42280, at *9 (S.D.N.Y. Jan. 7, 2004), and has been

interpreted to encompass "'misconduct fundamentally inconsistent

with the basis premises of the adversary system,'" Madanes v.

Madanes, 199 F.R.D. 135, 148-49 (S.D.N.Y. 2001) (quoting Coleman v.

American Broadcasting Cos., 106 F.R.D. 201, 208 (D.D.C. 1985)).  The

crime or fraud need not have actually occurred for the exception to

be applicable; it need only have been the objective of the client's

communication.  In re Grand Jury Subpoena Duces Tecum Dated

September 15, 1983, 731 F.2d at 1039.  And the fraudulent nature of

the objective need not be established definitively; there need only

be presented a reasonable basis for believing that the objective was

fraudulent.  Id.  Thus, to find that the crime-fraud exception applies, the Court need only conclude that "a prudent person [would] have a reasonable basis to suspect the perpetration of a crime or fraud, and that the communications were in furtherance thereof." Id.

**B.   Compelling Disclosure / In Camera Review**

Once the Government has provided a factual basis for moving forward, the Court then moves to the next step in the process: either (a) undertaking an in camera review of the documents at issue and/or of the attorneys who were subpoenaed to testify, or (b) ordering the production of the documents (assuming that the probable cause requirements have been satisfied without an in camera examination).[3] See, e.g., United States v. Jacobs, 117 F.3d 82, 87 (2d Cir. 1997). "Once there is a showing of a factual basis, the decision whether to engage in an in camera review of the evidence lies in the discretion of the district court."  Id.; see also In re John Doe, Inc., 13 F.3d at 636 ("in camera proceedings may be used to determine whether the [crime-fraud] exception applies to particular communications").

---

[3]   To trigger an in camera review of materials to support its probable cause showing, the Government need only establish, through non-privileged materials, "'a factual basis adequate to support a good faith belief by a reasonable person . . . that in camera review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies.'"  In re John Doe, 13 F.3d at 636 (quoting Zolin, 491 U.S. at 572).

As discussed below in Section VI, the Government respectfully submits that an <u>in camera</u> examination of documents is not necessary here because the Government has satisfied the requirements of probable cause without reference to the documents at issue.

**V.   PROBABLE CAUSE EXISTS TO BELIEVE THAT A FRAUD WAS COMMITTED AND THAT THE DEFENDANT'S COMMUNICATIONS WITH COUNSEL WERE IN FURTHERANCE OF THE FRAUD**

Here, the Government easily satisfies its burden of showing that the defendant's communications with counsel were in furtherance of fraud and, accordingly, the crime-fraud exception applies.  The Complaint, Indictment, Kasowitz Log and DLA Piper Log meet the requirement of showing probable cause (1) of the commission of a crime or fraud, and (2) that the communications at issue were made with the objective of furthering the crime or fraud.  With respect to the commission of a crime or fraud element, the Complaint and Indictment demonstrate probable cause that the defendant orchestrated a scheme to defraud Facebook and Zuckerberg through the filing of a fraudulent lawsuit based on false claims and documents. Indeed, Magistrate Judge Michael H. Dolinger, who authorized an arrest warrant based on the Complaint, and the Grand Jury, which returned the Indictment, have found probable cause to believe that the defendant was committing a crime or fraud in this case.

The Complaint, Indictment, Kasowitz Log and DLA Piper Log also demonstrate probable cause that the defendant's communications with his attorneys at DLA Piper and Kasowitz were in furtherance of the fraud. Indeed, the critical part of the defendant's scheme was the pursuit of a fraudulent lawsuit, based on fraudulent documents, and the defendant retained and relied on his attorneys at DLA Piper and Kasowitz to file and litigate that lawsuit. As noted, Kasowitz and both judges who presided over the Civil Action have concluded that the lawsuit was based on a fraudulent document. Thus, the defendant's communications with his attorneys at those firms are necessarily in furtherance of that fraud.

Accordingly, the Government has set forth sufficient evidence to allow "a prudent person [to] have a reasonable basis to suspect the perpetration of a crime or fraud, and that the communications were in furtherance thereof." In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983, 731 F.2d at 1039. At a minimum, the Government has set forth adequate facts for the Court to find that there is a good faith belief by a reasonable person that in camera review of the materials and communications at issue may reveal evidence for the application of the crime-fraud exception. In re John Doe, Inc., 13 F.3d at 636.

## VI.   PROPOSED PROCEDURE

The Government respectfully requests that the Court order that the crime fraud exception applies to all documents and communications withheld by Kasowitz and DLA Piper, and authorize the Wall AUSA to make these documents available to the prosecution team in this case.  It is the Government's understanding that the defendant's relationships with attorneys at these firms were related exclusively to the Civil Action, and therefore the crime fraud exception should encompass all documents and communications generated in connection with these attorney-client relationships.

As set forth above, the Government does not believe that an in camera examination of the documents is necessary because the Complaint, Indictment, Kasowitz Log, DLA Piper Log and documents incorporated therein sufficiently demonstrate that the defendant orchestrated a scheme to defraud Facebook and Zuckerberg through the filing of a fraudulent lawsuit and that the defendant retained and relied upon his attorneys at DLA Piper and Kasowitz to prepare for and pursue this lawsuit.  The Government submits, therefore, that further review of the documents is not necessary to establish that the crime fraud exception applies to all documents and communications generated as part of these attorney-client relationships.[4]

---

[4]    To the extent the Court finds that the Government has not

## CONCLUSION

For the reasons set forth above, the Government respectfully requests that the Court issue an order finding that the crime fraud exception applies to the documents and communications withheld by Kasowitz and DLA Piper pursuant to the attorney-client privilege, and authorize the undersigned to make these documents available to the prosecution team in this case.

Dated:  New York, New York
        September 15, 2014

                              Respectfully Submitted,

                              PREET BHARARA
                              United States Attorney

                    By:  _____
                              Niketh Velamoor
                              Assistant United States Attorney
                              (212) 637-1076

---

established the probable cause standards set forth in In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983, 731 F.2d at 1039, the Government certainly has established the lower threshold of "'a factual basis adequate to support a good faith belief by a reasonable person . . . .that in camera review of may reveal evidence to establish the claim that the crime-fraud exception applies.'"  In re John Doe, 13 F.3d at 636 (quoting Zolin, 491 U.S. at 572).

16

<u>AFFIRMATION OF SERVICE</u>

NIKETH VELAMOOR hereby affirms pursuant to Section 1746 of Title 28, United States Code:

1.   I am an Assistant United States Attorney in the office of Preet Bharara, United States Attorney for the Southern District of New York.

2.   On September 15, 2014, I caused a true and correct copy of the foregoing Government's Memorandum of Law in Support of Motion Regarding Application of Crime Fraud Exception to be served via the Court's Electronic Case Filing system on:

> David E. Patton, Esq.
> Annalisa Miron, Esq.
> Daniel Habib, Esq.
> Federal Defenders of New York, Inc.
> 52 Duane Street, 10th Floor
> New York, New York 10007
> *Counsel for Paul Ceglia*

3.   I declare under penalty of perjury that the foregoing is true and correct.   28 U.S.C. § 1746.

Dated:   New York, New York
         September 15, 2014


___/s/_____
NIKETH VELAMOOR