Approved: _____  **12 MAG 2842**
JANIS M. ECHENBERG/CHRISTOPHER D. FREY
Assistant United States Attorneys

Before:   THE HONORABLE ~~HENRY B. PITTMAN~~   HON. MICHAEL H. DOLINGER
          United States Magistrate Judge         United States Magistrate Judge
          Southern District of New York          Southern District of New York

- - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA           :     SEALED COMPLAINT

          - v. -                   :     Violations of 18
                                         U.S.C. §§ 1341, 1343,
PAUL CEGLIA,                       :     and 2

               Defendant.          :     COUNTY OF OFFENSE:
                                         NEW YORK

- - - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

   DOUGLAS VEATCH, being duly sworn, deposes and says that he is a Postal Inspector with the United States Postal Inspection Service ("USPIS"), and charges as follows:

## COUNT ONE
### (Mail Fraud)

   1.  From at least in or about June 2010 up to and including in or about October 2012, in the Southern District of New York and elsewhere, PAUL CEGLIA, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, for the purpose of executing such scheme and artifice and attempting so to do, would and did place and caused to be placed in a post office and authorized depository for mail matter, matters and things to be sent and delivered by the Postal Service, and would and did deposit and cause to be deposited matters and things to be sent and delivered by private and commercial interstate carriers, and would and did take and receive and cause to be taken and received therefrom, such matters and things, and would and did cause to be delivered by mail and such carriers, according to the direction thereon, such matters and things, to wit, CEGLIA filed a lawsuit against Facebook, Inc. and Facebook's founder and Chief Executive Officer, Mark Zuckerberg falsely demanding a significant

ownership stake in Facebook, Inc. and caused legal pleadings and other items to be delivered by mail to Washington, D.C., among other places, from the Southern District of New York and elsewhere, including on or about April 11, 2011.

(Title 18, United States Code, Sections 1341 and 2.)

## COUNT TWO
### (Wire Fraud)

2.   From at least in or about June 2010 up to and including in or about October 2012, in the Southern District of New York and elsewhere, PAUL CEGLIA, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, CEGLIA filed a lawsuit against Facebook, Inc. and Facebook's founder and Chief Executive Officer, Mark Zuckerberg falsely demanding a significant ownership stake in Facebook, Inc. and CEGLIA caused others to send interstate electronic communications in connection with the lawsuit, including on or about July 14, 2011, November 1, 2011 and December 8, 2011.

(Title 18, United States Code, Sections 1343 and 2.)

The bases for my knowledge and the foregoing charges are, in part, as follows:

3.   I am a Postal Inspector with the USPIS, and I have been involved in the investigation of this matter. The information contained in this affidavit is based upon my personal knowledge and my review of documents and records gathered during the course of this investigation, as well as information obtained, directly and indirectly, from other sources and law enforcement agents. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all of the facts I have learned during the course of the investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## BACKGROUND ON FACEBOOK

4. Based on my review of publicly available records and publications regarding Facebook, Inc. ("Facebook") and my interviews of various witnesses, among other things, I have learned the following:

   a. Facebook is a social networking service and website which launched in or around February 2004. At present, Facebook represents it has over one billion active users. Users must register before using the website, after which they may create a personal profile, add other users as friends, and exchange messages, including automatic notifications when they update their profiles. Additionally, users may join common-interest user groups organized by workplace, school or college, or other characteristics, and categorize their friends into lists. Facebook, Inc. has over 3,000 employees, and offices in 15 different countries.

   b. Facebook was founded by Mark Zuckerberg ("Zuckerberg"), together with his college roommates and fellow Harvard University students, Eduardo Saverin, Dustin Moskovitz and Chris Hughes. Facebook officially launched at Harvard in the afternoon on or about February 4, 2004. At that time, the website was available on the Internet at the domain name, "thefacebook.com," but its membership was limited to Harvard students and only accessible by those with a Harvard email address. Over time, the website's membership expanded to other colleges in the Boston area, the Ivy League, and Stanford University before it eventually was made available to anyone aged 13 and over.

   c. Mark Zuckerberg has served as the Chief Executive Officer and a member of the board of directors of Facebook since in or about July 2004. Beginning in or about January 2012, Mark Zuckerberg also became chairman of the board of directors at Facebook.

   d. On or about May 18, 2012, Facebook, Inc. held its initial public offering (the "IPO"). Zuckerberg's interest in Facebook is presently considered to be worth billions of dollars.

## OVERVIEW OF THE DEFENDANT'S SCHEME TO DEFRAUD

5. Based on my review of documents, interviews with witnesses, and materials obtained pursuant to search warrant, among other things, and as set forth in greater detail below, there is probable cause to believe that PAUL CEGLIA, the

3

defendant, an online businessman, has engaged in a multi-billion dollar scheme to defraud Facebook and Mark Zuckerberg. CEGLIA filed a federal lawsuit falsely claiming that he was entitled to at least a 50% interest in Facebook. Specifically, as set forth below, in April 2003, Zuckerberg entered into a contract with CEGLIA in which Zuckerberg agreed to perform certain programming work for CEGLIA in exchange for a fee; that contract had nothing to do with Facebook and did not make any reference to Facebook, let alone give CEGLIA an interest in it. Years later, CEGLIA filed suit against Facebook and Zuckerberg alleging that the contract gave him a 50% interest in Facebook. To support his lawsuit, CEGLIA replaced page one of the actual contract with a new page one doctored to make it appear as though Zuckerberg agreed to provide CEGLIA with an interest in Facebook; CEGLIA manufactured evidence, including purported emails with Zuckerberg, to support his false claim to an interest in Facebook; and CEGLIA destroyed evidence that was inconsistent with his false claim. Through these and other deceitful acts, and together with the numerous material misrepresentations that CEGLIA has made under penalty of perjury, CEGLIA has deliberately engaged in a systematic effort to defraud Facebook and Zuckerberg and to corrupt the federal judicial process.

## CEGLIA'S CIVIL ACTION

6.    Based on my review of publicly available documents filed in Paul D. Ceglia v. Mark Elliot Zuckerberg, et al., a civil action pending in the United States District Court for the Western District of New York before the Honorable Richard J. Arcara, United States District Judge, and referred to the Honorable Leslie G. Foschio, United States Magistrate Judge (the "Civil Action"), I have learned the following, among other things:

a.    On or about June 30, 2010, PAUL CEGLIA, the defendant, through counsel, filed a two-page complaint (the "Complaint") in the Supreme Court for the State of New York, Allegany County against Zuckerberg and Facebook. The Complaint alleges, in sum and substance, and among other things, that CEGLIA has an 84% interest in Facebook pursuant to a purported contract, dated April 28, 2003, between CEGLIA and Zuckerberg.

b.    On or about April 11, 2011, after the case was removed to federal court, CEGLIA, through counsel, filed a 25-page amended complaint (the "Amended Complaint"), alleging, in sum and substance, that CEGLIA was entitled to a 50% interest in

4

Facebook.[1]  On or about June 12, 2011, CEGLIA signed and filed a declaration, under penalty of perjury, in which he affirmed the truth of the allegations in the Amended Complaint (the "June 12 Declaration").  In the Amended Complaint and the June 12 Declaration, CEGLIA alleges, in sum and substance and among other things, that:

(1) In 2002 and 2003, CEGLIA, who was living and working in upstate New York at the time, was developing an online business called StreetFax.com.  StreetFax.com compiled into a database photographs and other information related to traffic intersections that were intended to allow insurance adjusters to obtain information to assist them in handling claims.

(2) In connection with his development of StreetFax.com, CEGLIA occasionally hired programmers and web developers, posting advertisements for such positions online.  In early 2003, Mark Zuckerberg responded to one such advertisement.

(3) During certain telephone conversations between Zuckerberg and CEGLIA in April 2003, Zuckerberg told CEGLIA that he was working on his own project involving an online, interactive yearbook, which initially would be targeted at students attending Harvard University and later would be expanded beyond the school, and whose working title was "The Face Book."  Zuckerberg told CEGLIA that if CEGLIA hired him to work on the StreetFax.com project and helped fund the development of his own project, Zuckerberg would give CEGLIA a 50% interest in "The Face Book" project.

(4) CEGLIA accepted Zuckerberg's offer and agreed

---

[1] According to a certificate of service signed by CEGLIA's counsel, the Amended Complaint was served via electronic notification and by mail on various attorneys located in New York, New York; Buffalo, New York; and Washington, D.C.  In connection with the ongoing litigation between CEGLIA, Zuckerberg and Facebook, attorneys for CEGLIA located in various states, including California and Ohio, have served various legal documents via interstate email communication.  On or about July 22, 2011, counsel for CEGLIA located in San Diego, California, filed a declaration electronically, and served it by email, on counsel for Facebook located in New York, New York.  On or about November 1, 2011 and December 8, 2011, counsel for CEGLIA located in Lakewood, Ohio, filed electronically a notice of motion, memorandum of law and several declarations, among other things, and served them by email on counsel for Facebook located in New York, New York.

5

to pay Zuckerberg $1,000 for his work on StreetFax.com and an additional $1,000 for work to be performed in developing "The Face Book." The two also made plans to meet at a hotel in Boston, Massachusetts on April 28, 2003 to sign a written contract.

(5) In advance of meeting with Zuckerberg, CEGLIA prepared a contract that covered both the work Zuckerberg agreed to do for StreetFax.com and the agreement concerning "The Face Book." CEGLIA drafted this contract by cutting and pasting from two different forms that were provided to him by two different people.

(6) On April 28, 2003, CEGLIA met Zuckerberg in the lobby of a hotel in Boston, Massachusetts. CEGLIA provided a contract he had prepared and titled "Work For Hire Contract" to Zuckerberg, who asked for one change on the first page of the agreement, an edit that was subsequently handwritten on the first page of the document and initialed by both Zuckerberg and CEGLIA. Zuckerberg and CEGLIA then signed the second page of the contract.

(7) CEGLIA attached, as an exhibit to the Amended Complaint, a copy of what he alleges to be the contract between himself and Zuckerberg signed on April 28, 2003 (the "Alleged Contract"). In the Alleged Contract, CEGLIA agreed to pay Zuckerberg $1,000 "for work to be performed for Streetfax and $1,000 for work to be performed for 'The Page Book'" -- a term CEGLIA alleges was another working title for what became Facebook. The Alleged Contract gave CEGLIA "a half interest (50%) in the software, programming language and business interests" derived from the expansion of Facebook to a larger audience. In addition, the Alleged Contract provided that "The Face Book" project would be completed by January 1, 2004, and that CEGLIA would gain an additional 1% interest in the business for each day that the website was delayed from that date.

(8) According to CEGLIA, after signing the Alleged Contract, Zuckerberg and CEGLIA began to communicate with each other concerning both the StreetFax.com project and "The Face Book" project by telephone and by email. In the Amended Complaint, CEGLIA cites a number of purported email exchanges between himself and Zuckerberg occurring from on or about July 30, 2003 through on or about July 22, 2004 (the "Purported Emails"). CEGLIA alleges that he retained copies of the Purported Emails, and that he did so by copying emails from his email account into Microsoft Word documents, which were then saved on to floppy disks. (As set forth in more detail below,

electronic evidence produced by CEGLIA in connection with the civil litigation shows that the Purported Emails were sent to and from Zuckerberg using his Harvard email address.) According to CEGLIA, he and Zuckerberg communicated with each other concerning the design and functionality of "The Face Book" website, various ways they could generate income from "The Face Book" website, various ways they could expand "The Face Book" website to a larger audience beyond Harvard University, and technical and other challenges in developing "The Face Book" website. In one such purported email, dated February 4, 2004, the day Facebook launched, CEGLIA claims to have written that he looked at the Facebook site and told Zuckerberg, "it looks great."

(9) After several months of continued communication from the end of 2003 through the early part of 2004, and following a purported additional $1,000 investment by CEGLIA in November 2003, CEGLIA alleges that Zuckerberg intentionally attempted to sour their business relationship in order to convince CEGLIA to abandon his involvement with "The Face Book" project, which had launched successfully, unbeknownst to CEGLIA. CEGLIA alleges Zuckerberg misrepresented to CEGLIA that he was not continuing to work on further development of "The Face Book," further expanding "The Face Book" to a larger audience, or commercializing "The Face Book" for profit. CEGLIA cites emails to support these claims. For example, in a purported email dated April 6, 2004, Zuckerberg told CEGLIA that he was too busy to work on the Facebook site and was thinking of taking it down, and offered to return CEGLIA's $2,000 investment. In another purported email dated July 22, 2004, Zuckerberg again offered to return CEGLIA's investment to "repair [their] business relationship." On or about July 29, 2004, Zuckerberg incorporated Facebook, Inc. and failed to provide CEGLIA with 50% of the capital stock of Facebook, Inc.

c. In the Amended Complaint CEGLIA makes several claims for relief, including that he is entitled to 50% of the total equity interest in Facebook, Inc. received by, and promised to Zuckerberg, including but not limited to, stock, stock options and restricted stock units.

## CEGLIA FALSIFIED EVIDENCE TO SUPPORT HIS CLAIM AGAINST ZUCKERBERG AND FACEBOOK

### The Alleged Contract Is Fraudulent On Its Face

7. In connection with this investigation, I have reviewed the publicly available scan of the Alleged Contract that PAUL CEGLIA, the defendant, attached to the Amended Complaint and upon

which CEGLIA bases the Civil Action. Based on my review of this scan, I have observed the following, among other things:

 a. The Alleged Contract is a two-page document. Page two of the Alleged Contract appears to contain the signatures of "Paul Ceglia" and "Mark Zuckerberg" as well as the date "April 28, 2003."

 b. All references to "The Face Book" and/or "The Page Book" in the Alleged Contract appear only on page one of that document.

 c. There are significant differences between the widths of the columns, margins, and the space between columns on pages one and two of the Alleged Contract. Specifically, the column widths are wider on page one than on page two, while the widths of the margins and the space between columns are narrower on page one than on page two.

 d. The spacing between paragraphs on page one of the Alleged Contract appears to be different than the spacing on page two of the Alleged Contract. Specifically, the spacing between the numbered items varies between single, double, and triple spacing on page one, while the spacing between the numbered items on page two is uniformly single.

 e. On page one of the Alleged Contract, there is a reference to "Street Fax LLC." Based on my review of certain records maintained by the New York Department of State, I have learned that "Street Fax, LLC" was formed on or about August 26, 2003, approximately four months after the Alleged Contract appears to have been signed by "Mark Zuckerberg" and "Paul Ceglia."

### The Real Contract

8. In or about early February 2012, I executed a search warrant that had been issued in the United States District Court for the Southern District of New York at Stroz, Friedberg LLC ("Stroz") to obtain forensically-sound copies of the images made by certain Stroz employees of the computers and other electronic media that PAUL CEGLIA, the defendant, made available for examination in the Civil Action (the "CEGLIA Electronic Devices"). Thereafter, I provided the forensically-sound copies that I obtained from Stroz to an expert in computer forensics (the "Computer Forensics Expert"). Based upon conversations I have had with the Computer Forensics Expert, who has examined the Ceglia Electronic Devices, I have learned the following, among

other things:

    a. When reviewing the CEGLIA Electronic Devices, specifically, one of CEGLIA's hard drives, the Computer Forensics Expert found, in a Microsoft Outlook Express sent box, two emails which appear to have been sent on March 3, 2004, approximately two minutes apart, from the email address Ceglia@adelphia.net to the email address of an attorney at a law firm.

    (1) The subject of the first email is "page 1 of 2 for Streetfax contract with mark." Attached to the first email is what appears to be the first page of a contract entitled "STREET FAX," which outlines a generic contract for programming work between the purchaser, "StreetFax, Inc" and the contract/seller, who is not identified by name. Although page one of the Alleged Contract contains references "The Face Book" "The Page Book," and "StreetFax, LLC," page one of this contract contains no such references nor does it contain the word Facebook.

    (2) The subject of the second email is "2 of 2 for streetfax contract." Attached to the second email is what appears to be the second page of the same contract. The contents of this document -- including what appear to be the signatures of Mark Zuckerberg and PAUL CEGLIA, the defendant, and handwritten dates -- appear to be identical to the second page of the Alleged Contract.

    (3) The margins and spacing are consistent between page one and page two of the STREET FAX contract attached to the two emails.

<u>The Emails Attached To The Amended Complaint Are Fake</u>

9. I have received and reviewed copies of all existing emails maintained by Harvard University associated with the Harvard email address registered to Mark Zuckerberg. More specifically, I have received and reviewed copies of those emails as they existed on the Harvard University computer servers in or about February 2012, as well as on back-up tapes from on or about November 3, 2003 and in or about October 2010 (collectively, the "Harvard Emails"). Based upon my comparison of the Harvard Emails to the Purported Emails, I believe PAUL CEGLIA, the defendant, fabricated the existence of the emails cited in the Amended Complaint for the following reasons, among others:

    a. None of the quoted Purported Emails appear in Zuckerberg's Harvard emails as Zuckerberg's emails existed in

February 2012. Further, none of the Purported Emails is in the back up tapes from October 2010, prior to the filing of the Amended Complaint. And none of the Purported Emails occurring before November 2003 is in the Harvard back-up tapes from November 2003.

      b.    In addition, there is no discussion of Facebook, "The Face Book," or "The Page Book," in any of the Harvard Emails. And contrary to the emails cited in the Amended Complaint, indicating that Zuckerberg attempted to return $2,000 to CEGLIA to repair their business relationship, the Harvard emails reflect that Zuckerberg was asking CEGLIA for money CEGLIA owed Zuckerberg for programming work Zuckerberg did for StreetFax in or around late 2003 and 2004. As late as on or about May 7, 2004, CEGLIA wrote an email to Zuckerberg acknowledging that he still owed Zuckerberg money and offering to pay $500 per month until Zuckerberg was paid in full.

### There Is Evidence Of Manipulation And Backdating On The CEGLIA Electronic Devices

    10.    Based upon further conversations I have had with the Computer Forensics Expert, I have learned the following, among other things:

      a.    The Computer Forensic Expert identified several inconsistencies within the file system and embedded document metadata[2] which were indicative of intentional, organized and methodical alteration, tampering and backdating.

      b.    For example, the Computer Forensic Expert found, on a floppy disk, three Microsoft Word files, entitled "work for hire SF template," "Work for Hire Contract MZ," and "Streetfaxworkforhire randy," which were last accessed on or about February 18, 2011 (approximately two months before the Amended Complaint was filed). These three files were overwritten by new files, entitled "SFWebWorkForHireMZ," and "SFWebWorkForHire randy." Notwithstanding the fact that the metadata indicates these new files were created on or after February 11, 2011, the documents reflect purported creation dates in 2003. This, combined with the other activity on the disk, is inconsistent with known file behavior and is consistent with tampering and manipulation such as altering the computer system

---

    [2]    Embedded metadata is additional data (such as last saved date and time, last saved by, last ten authors, etc.) stored within the file and automatically recorded by various types of applications such as Microsoft Office.

clock, also known as "backdating." The "SFWebWorkForHireMZ" file contains an unsigned contract entitled "Work For Hire," which contains the same language, but slightly alternative formatting, as the Alleged Contract.

       c. On a CD-ROM, the Computer Forensic Expert found versions of a Microsoft Word document entitled "Work for Hire ContractMZ.doc." Embedded metadata indicated these files were last printed on February 15, 2011. As the last printed date is stored within the document (i.e. embedded), these files should reflect last written and last saved dates of 2011; however, instead they have purported dates of 2003, again suggesting backdating. Additionally, the file naming convention suggests a progression of the document alteration and merging process with folder and file names such as "Maybe got it," "Page 1," "merged," "page1feb4twotenpm.doc," "MP1," "MP1and2.doc," "Zuck Contract.doc," and finally "A:\Work for Hire ContractMZ.doc."

       d. In addition, review of another floppy disk revealed Microsoft Word documents containing the Purported Emails between CEGLIA and Zuckerberg at Zuckerberg's Harvard email address. The floppy disk contains deleted files that were last accessed on or about February 18, 2011 and overwritten by files with purported creation dates of July 23, 2004. Again, this is inconsistent with known file behavior and is consistent with tampering and manipulation such as backdating.

       e. Review of another CD-Rom revealed several documents with titles including the word "test." These documents show testing of document manipulation, including practicing copying and pasting text and the use of a hexeditor, which is a type of computer program that allows a user to manipulate the fundamental data that makes up computer files. Metadata on the "test" documents shows a purported creation and last written date of November 26, 2003, but there is also metadata showing this date has likely been manipulated.

<u>The Founding of Facebook Did Not Involve CEGLIA</u>

11. From speaking with Mark Zuckerberg, I have learned the following, among other things:

       a. While a freshman at Harvard University, Zuckerberg had a contract with PAUL CEGLIA, the defendant, related to certain programming work for the StreetFax website. His business relationship with CEGLIA did not involve Facebook in any way.

       b. Despite CEGLIA's claim that their contract

involved both Zuckerberg's work on StreetFax and CEGLIA's investment in Facebook, Zuckerberg had not conceived of the idea of the Facebook website as of April 28, 2003, the date of the Alleged Contract referring to The Face Book. It was only in or about September and October 2003 -- months after the Alleged Contract was purportedly signed, while in his sophomore year at Harvard University, that Zuckerberg worked on certain projects that ultimately were precursors for the Facebook website. It was only when those tools were in place that Zuckerberg began to think about the concept of the Facebook website, which was inspired by paper face books and his high school's online face book.

      c.    The Facebook website launched at Harvard University on or about February 4, 2004. At that time, the Facebook website was only accessible to Harvard University students, who needed to use a Harvard University email address in order to register for the website. Because he was not a Harvard student, CEGLIA would not have had access to the Facebook website at that time -- contrary to CEGLIA's claim, in the Purported Emails, to have looked at the site on that date.

      d.    Zuckerberg has never used the term "Page Book" in referring to the Facebook website.

      e.    In communicating with CEGLIA by email, Zuckerberg used the email address provided to him by Harvard University.

      f.    Zuckerberg did not write or receive any of the Purported Emails that CEGLIA cites in the Amended Complaint in the Civil Action.

12.    I also spoke with another founder of Facebook, who recounted the timing of the formation of Facebook consistent with Zuckerberg's statements above.

13.    In addition, I spoke to an individual who assisted Zuckerberg with work for StreetFax in or around 2003 and whose email communications regarding StreetFax I found in the Harvard Emails. During his time working with Zuckerberg on the StreetFax project, Zuckerberg did not discuss Facebook with this individual.

WHEREFORE, deponent respectfully requests that a warrant issue for the arrest of PAUL CEGLIA, the defendant, and that he be arrested and imprisoned, or bailed, as the case may be.

*Douglas G. Veatch*
_____
DOUGLAS VEATCH
Postal Inspector
United States Postal
Inspection Service

Sworn to before me this
25th day of October, 2012

_____
HONORABLE ~~HENRY B. PITTMAN~~
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

HON. MICHAEL H. DOLINGER
United States Magistrate Judge
Southern District of New York

13