Robert Ross Fogg, Esq.
Law Office of Robert Ross Fogg, Esq., LL.M.
69 Delaware Avenue, Suite 600
Buffalo, New York 14202
Tel:  (716) 853-3644
Fax: (716) 852-6782
rfogg@rfogglaw.com

*Counsel for Defendant, Paul D. Ceglia*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

UNITED STATES OF AMERICA


                    v.                              Case No: 1:12-CR-00876-ALC


PAUL D. CEGLIA,                          **ORAL ARGUMENT AND**
                                         **HEARING REQUESTED**
                    Defendant.

_____


_____

**DEFENDANT'S MEMORANDUM OF LAW**
**IN OPPOSITION TO THE GOVERNMENT'S**
**MOTION FOR APPLICATION OF THE CRIME FRAUD EXCEPTION**
_____



DATED:        September 29, 2014
              Buffalo, New York


To:
Hon. Preet Bharara, United States Attorney
United States Attorney's Office
For the Southern District of New York

## TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

I.   PRELIMINARY STATEMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   STATEMENT OF FACTS.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.   ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.  The Rationale and Basis for the Attorney-Client Privilege. . . . . . . . . . . . . . . . . . 5

    B.   The Rationale and Basis for the Work Product Doctrine.. . . . . . . . . . . . . . . . . . . 6

    C.   The Permissible Basis for Invoking the Crime-Fraud Exception.. . . . . . . . . . . . . 8

    D.   The Documents Sought by the Government are Admittedly Subject to the
    Attorney Client Privilege and Work Product Protection and the Government
    Has Failed to Establish a Sufficient Basis for Their Outright Disclosure or
    for Disclosure *In Camera* to the Court Under the Crime-Fraud Exception.. . . . . . . 10

    E.   The Government's Professed Need for the Documents is Legally
    Insufficient to Invoke the Crime-Fraud Exception.. . . . . . . . . . . . . . . . . . . . . . . . . 17

IV.   REQUEST FOR ARGUMENT AND A HEARING. . . . . . . . . . . . . . . . . . . . . . . . . . . 21

V.   CONCLUSION.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

**TABLE OF AUTHORITIES**

<u>Cases</u>

*Aiossa v. Bank of America*, 2011 U.S. Dist. LEXIS 102207 (E.D.N.Y. Sept. 12, 2011). . 6, 18, 20

*Ceglia v. Zuckerberg,* Case No. 1:10-cv-00569 (W.D.N.Y. 2010). . . . . . . . . . . . . . . . . . . . . . . . . 2

*Clark v. United States*, 289 U.S. 1 (1933). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8

*Eastern R. Pres. Conf, v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961). . . . . . . . . . . . . . . . 23

*Fisher v. United States*, 425 U.S. 391 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Hickman v. Taylor*, 329 U.S. 495 (1947). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 11

*Hunt v. Blackburn*, 128 U.S. 464 (1888). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re: Grand Jury Proceedings (FMC)*, 604 F.2d 798 (3rd Cir. 1979). . . . . . . . . . . . . . . . . . . . . 7

*In re Grand Jury Subpoenas Duces Tecum*, 798 F.2d 32 (2d Cir.1986). . . . . . . . . . . . . . . . . . . . 8

*In re Grand Jury Subpoena Duces Tecum (Marc Rich)*, 731 F.2d 1032 (2d Cir. 1984). . . . 8, 9, 20

*In re John Doe, Inc. v. United States*, 13 F.3d 633 (2d Cir. 1994). . . . . . . . . . . . . . . . 9, 12, 20, 24

*In re Murphy*, 560 F.2d 326 (8th Cir. 1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Omnicom Group, Inc. Securities Litig.*, 233 F.R.D. 400 (S.D.N.Y. 2006). . . . . . . . . . . . . 18

*In re Richard Roe, Inc. v. United States*, 168 F.3d 69 (2d Cir. 1999). . . . 10, 16, 17, 18, 19, 20, 24

*In the Matter of Grand Jury Subpoena*, 1 A.D.3d 172, 767 N.Y.S.2d 77
        (1st Dept. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Landmarks Holding Corp. v. Bermant*, 664 F.2d 891 (2d Cir. 1981). . . . . . . . . . . . . . . . . . . . 24

*New York Times Newspaper Division v. Lehrer McGovern Bovis, Inc.*,
        300 A.D.2d 169, 752 N.Y.S.2d 642 (1st Dept. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Paul D. Ceglia v. Mark Elliot Zuckerberg,* Index No. 38798/10
        (N.Y. Supreme, Allegeny Cty.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Pure Power Boot Camp v. Warrior Fitness Boot Camp*, 587 F. Supp. 2d 548
(S.D.N.Y 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Rossi v. Blue Cross and Blue Shield of Greater N.Y.*, 73 N.Y.2d 588,
542 N.Y.S.2d 508, 540 N.E.2d 703 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Shahinian v. Tankian*, 242 F.R.D. 255 (S.D.N.Y. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Spectrum Systems International Corp. v. Chemical Bank*, 78 N.Y.2d 371,
575 N.Y.S.2d 809, 581 N.E.2d 1055 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Trammel v. United States*, 445 U.S. 40 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United Mine Workers v. Pennington*, 381 U.S. 657 (1965). . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Jacobs*, 117 F.3d 82 (2d Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . 9, 19, 20

*United States v. Pendergraft*, 297 F.3d 1198 (11th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . 13

*United States v. White*, 887 F.2d 267 (D.C. Cir.1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Zolin*, 491 U.S. 554 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 20

*Upjohn Co. v. United States*, 449 U.S. 383 (1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5


Statutes

18 U.S.C. § 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,4

18 U.S.C. § 1001(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

18 U.S.C. § 1341. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

18 U.S.C. § 1343. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4


Rules

CPLR 4503[a][1]. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

CPLR 3101[b]. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Fed. R. Evid. 501. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

Other Authority

C. MCCORMICK, LAW OF EVIDENCE § 95 (2d ed. 1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Hazard, An Historical Perspective on the Attorney-Client Privilege,
     66 Calif. L. Rev. 1061 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

8 J. WIGMORE, EVIDENCE (McNaughton rev. 1961). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 11

JOHN WILLIAM GERGACZ, ATTORNEY- CORPORATE CLIENT PRIVILEGE (1990). . . . . . . . . . . . . . . 9

## I.  PRELIMINARY STATEMENT

The Government asserts and maintains that defendant's civil lawsuit, filed on June 30, 2010 against Mark Zuckerberg and Facebook, Inc. was and is fraudulent.  Consequently, the Government sought and obtained a two-count indictment alleging mail and wire fraud based upon defendant's act of having filed and pursued the civil lawsuit.  The Government asserts that the filing, by defendant, Paul Ceglia, of his civil lawsuit against Zuckerberg and Facebook "is a central part of the fraud" for which the Government has charged the defendant.  Govt.'s Memo p.7.

The Government now claims that because defendant Ceglia enlisted his former attorneys to file and prosecute his civil lawsuit against Zuckerberg and Facebook, all of defendant's attorney-client privileged documents and attorney work product involving his former lawyers at the Kasowitz and DLA Piper law firms are subject to the crime fraud exception and are, therefore, unprotected and subject to being produced to the Government.

The Government asks this Honorable Court for an unlimited order finding that the crime fraud exception applies to every one of the 1,710 attorney-client privileged and work product documents identified in privilege logs produced by defendant Ceglia's former attorneys in the civil action.

The Government's motion is an improper attempt to uncover all papers and communications protected under the attorney-client privilege and work product doctrine and to use this Court as a hammer to require defendant and his former attorneys to turn over the same as "discovery" so that the Government can attempt to buttress its baseless criminal prosecution of defendant.  To allow the privilege to be overcome upon the Government's mere assertion of

1

fraud or crime is unwarranted and unprecedented under the crime-fraud exception and would, if permitted, eviscerate the privilege.

Based upon well-established precedent in this circuit, there is no legal basis upon which the Government's motion may be granted.  It should, therefore, be denied.

## II.   STATEMENT OF FACTS

Defendant, Paul Ceglia, sought and obtained legal representation to file and pursue a civil action against Mark Zuckerberg and Facebook, Inc. for breach of contract claiming, *inter alia*, that the civil defendants failed to provide Ceglia an agreed interest in Facebook, Inc.

Accordingly, on or about June 30, 2010, with the aid of counsel, defendant, as a civil plaintiff, filed a Summons and Verified Complaint in the Supreme Court of the State of New York for the County of Allegany, against the defendants Zuckerberg and Facebook, Inc. entitled *Paul D. Ceglia v. Mark Elliot Zuckerberg, et al.*, Index No. 38798/10.  After review and consideration of the civil pleadings, the Supreme Court issued an Order to Show Cause, which was duly served upon the civil defendants.

On July 9, 2010, the civil defendants removed the case to the United States District Court for the Western District of New York under Case No. 1:10-cv-00569-RJA.

The civil defendants reserved "all defenses in [the civil] action" and denied liability to the civil plaintiff (now the criminal defendant, Ceglia), "for any amount" based upon the "enforcement of an alleged contract" that grants Ceglia "a purported right to certain ownership interest in Facebook, Inc."

On or about April 11, 2011, in addition to other prior filings by the parties, Mr. Ceglia, by and through his civil attorneys, DLA Piper LLP and associated co-counsel, filed an amended

2

complaint in the civil action in federal court.

On or about July 14, 2011, November 1, 2011 and December 8, 2011, in the ordinary course of the civil litigation, Mr. Ceglia's lawyers filed, respectively, a Declaration by Jeffrey Lake pursuant to an order of the Court, Ceglia's Notice of Motion for Sanctions for Spoliation of Evidence against Facebook, Inc., and Ceglia's Reply to Response to Motion Regarding Spoliation of Contract.

It is the filing of the amended complaint and the other three referenced filings that purport to be the basis for the Government's criminal complaint against Mr. Ceglia. [1]/

On or about October 25, 2012, while the federal civil lawsuit was ongoing, the Government filed a sealed criminal complaint, sworn to by Douglas Veatch, Postal Inspector for the U.S. Postal Service, alleging that Mr. Ceglia "filed a civil lawsuit against Facebook, Inc. and ... Mark Zuckerberg, fraudulently demanding a significant ownership stake in Facebook, Inc., and caused legal pleadings and other items to be delivered by mail to Washington, D.C., among other places, from the Southern District of New York and elsewhere, including on or about April 11, 2011. . . [and] caused others to send interstate electronic communications in connection with the lawsuit, including on or about July 14, 2011, November 1, 2011 and December 8, 2011."  Based upon this absurd complaint, Mr. Ceglia was formally charged with committing the crimes of mail and wire fraud in violation of 18 U.S.C. §§ 1341, 1343 and 2, merely for commencing a civil lawsuit, filing an amended complaint, and for transmitting three other ordinary and necessary communications related to the pending federal civil lawsuit.

---

[1] Significantly, Jeffrey Lake, who signed and filed the Declaration on July 14, 2011, was not a DLA Piper or Kasowitz attorney.  He was the lawyer who succeeded DLA Piper.

On or about November 28, 2012, a grand jury handed down a two-count indictment consisting of allegations identical – word-for-word – to allegations contained in the complaint. Thus, Mr. Ceglia was indicted for committing the federal offenses of mail and wire fraud, in violation of 18 USC §§ 1341, 1343 and 2, upon which he was arraigned and entered a plea of not guilty.

In short, simply for commencing a lawsuit in state court, filing an amended complaint in federal court and sending ordinary litigation documents electronically or by mail in his pending civil lawsuit, Mr. Ceglia was indicted for mail and wire fraud.

The Government has now filed the instant Motion Regarding Application of Crime Fraud Exception in an effort to obtain access to and use of privileged communications between Mr. Ceglia and his former attorneys in the civil action and the protected work product of those attorneys.

Defendant Ceglia now files this, his opposition, to the Government's baseless motion.

### III.  ARGUMENT

As an initial matter, communications between an attorney and his or her client are protected by the attorney-client privilege, and the attorney's work-product is similarly protected from disclosure.  Fed. R. Evid. 501.  Generally, the attorney-client privilege protects disclosure of communications between the attorney and the client and work-product immunity protects against disclosure of the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation.

These privileges are admittedly not absolute, but are subject to certain *limited* exceptions, such as the attorney self-defense exception (which is not implicated here) and the crime-fraud

exception (which is).

As a general proposition, the crime-fraud exception applies only to an attorney's work product and privileged client communications regarding past crimes or fraud, but it does not extend to those related to continuing or future wrongdoing. *Clark v. United States*, 289 U.S. 1, 15 (1933); *In re Murphy*, 560 F.2d 326, 337 (8th Cir. 1977). *See generally* C. MCCORMICK, LAW OF EVIDENCE § 95 (2d ed. 1972); Hazard, An Historical Perspective on the Attorney-Client Privilege, 66 Calif. L. Rev. 1061 (1979).

## A.  The Rationale and Basis for the Attorney-Client Privilege

The attorney-client privilege has a long and important history in our common law.

Federal Rule of Evidence 501 provides that 'the privilege of a witness . . . shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience.'  The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law.  8 J. WIGMORE, EVIDENCE 2290 (McNaughton rev. 1961).  Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice.  The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.  As we stated last Term in *Trammel v. United States*, 445 U.S. 40, 51 (1980): 'The lawyer-client privilege rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out.'  And in *Fisher v. United States*, 425 U.S. 391, 403 (1976), we recognized the purpose of the privilege to be 'to encourage clients to make full disclosure to their attorneys.' This rationale for the privilege has long been recognized by the Court, *see Hunt v. Blackburn*, 128 U.S. 464, 470 (1888) (privilege "is founded upon the necessity, in the interest and administration of justice, of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure").

*Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

A lawyer should be fully informed of all the facts of the matter he is handling in order for his client to obtain the full advantage of our legal system. It is for the lawyer in the exercise of his independent professional judgment to separate the relevant and important from the irrelevant and unimportant. The observance of the ethical obligation of a lawyer to hold inviolate the confidences and secrets of his client not only facilitates the full development of facts essential to proper representation of the client but also encourages laymen to seek early legal assistance.

*Id., citing Hickman v. Taylor*, 329 U.S. 495, 511 (1947).

The attorney-client privilege applies to confidential communications between clients and their attorneys made 'in the course of professional employment' (CPLR 4503[a][1]), and such privileged communications are absolutely immune from discovery (CPLR 3101[b]; see also *Spectrum Systems International Corp. v. Chemical Bank*, 78 N.Y.2d 371, 377, 575 N.Y.S.2d 809, 581 N.E.2d 1055 [(1991)]). The privilege applies to communications from the client to the attorney when the communication is 'made for the purpose of obtaining legal advice and directed to an attorney who has been consulted for that purpose' (*Rossi v. Blue Cross and Blue Shield of Greater N.Y.*, 73 N.Y.2d 588, 593, 542 N.Y.S.2d 508, 540 N.E.2d 703 [(1989)] [citation omitted]).

*New York Times Newspaper Division v. Lehrer McGovern Bovis, Inc.*, 300 A.D.2d 169, 752

N.Y.S.2d 642 (1st Dept. 2002) (internal quotation omitted). [2]/

The documents which are identified on the privilege logs of defendant's former attorneys are clearly subject to the attorney-client privilege and for the stated reasons below, they are not subject to the crime-fraud exception.

**B.   The Rationale and Basis for the Work Product Doctrine**

The concept of protection of an attorney's work product from disclosure was first recognized by the United States Supreme Court in *Hickman v. Taylor*, 329 U.S. 495 (1947). The

---

[2] In diversity actions – which is the civil action out of which the disputed attorney-client privilege and work product documents arose – the attorney-client privilege is governed by state law, (although New York law on the subject is "generally similar to accepted federal doctrine") and work product is governed by federal law. *See e.g., Aiossa v. Bank of America*, 2011 U.S. Dist. LEXIS 102207, *8-9 (E.D.N.Y. Sept. 12, 2011) and cases cited (internal quotation marks omitted).

work-product doctrine is "designed to prevent disclosure of the attorney's legal theories, research and certain factual material gathered in preparation for proper representation of the client." *In re: Grand Jury Proceedings (FMC)*, 604 F.2d 798, 801 (3rd Cir. 1979) (*citing Hickman v. Taylor*, 329 U.S. 495, 508-13 (1947)).

In *Hickman v. Taylor*, the Supreme Court considered whether notes taken by an attorney when interviewing witnesses to the sinking of a boat were discoverable.  The Court held that the notes, largely because they contained thoughts and impressions of the attorney, were not discoverable:

> Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients.  In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.  Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference.  That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests.

*Id.* at 510-11.

The Supreme Court in *Hickman* was concerned that a lawyer's knowledge that the adversary could subpoena his personal notes about a case would hamper the lawyer's preparation and strategies for litigation.  If such materials were made available to opposing counsel on demand, "much of what is now put down in writing would remain unwritten.  An attorney's thoughts, heretofore inviolate, would not be his own.  Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing.  And the interests of the clients and the cause of justice would be poorly served." *Id.* at 511.

7

These imperatives apply equally here and, for the reasons discussed below, they are not vitiated by the Government's ill-advised motion to invoke the crime-fraud exception.

## C.   The Permissible Basis for Invoking the Crime-Fraud Exception

One exception to the attorney-client privilege and work product doctrine is the crime-fraud exception.  The exception pierces the veil of privilege if the attorney-client relationship was "fraudulently begun or fraudulently continued."  *Clark v. United States*, 289 U.S. at 14.

However, the mere assertion of fraud or crime does not automatically render a communication subject to the crime-fraud exception.  Neither does the crime-fraud exception apply simply because privileged communications would provide an adversary with evidence of a crime or fraud.  If it did, the exception would consume the privilege and the privilege would be virtually worthless because a client could not freely give, or an attorney request, evidence that might support a finding of culpability.  Instead, the exception applies only when the court determines that the client communication or attorney work product in question was *itself* in furtherance of the crime or fraud.  *See In re Grand Jury Subpoenas Duces Tecum*, 798 F.2d 32, 34 (2d Cir.1986) (crime-fraud exception inapplicable where the documents themselves in combination with government proffer did not support a finding "that those communications were in furtherance of those crimes").

The crime-fraud exception applies only where there is probable cause to believe that the particular communication with counsel or the attorney's work product was intended in some way to facilitate or conceal the criminal activity.  *Id.* at 34 (reversing compulsion order for failure "to show the requisite purposeful nexus"); *In re Grand Jury Subpoena Duces Tecum (Marc Rich)*,

8

731 F.2d 1032, 1039 (2d Cir. 1984) (the crime or fraud must "have been the objective of the client's communication"); *United States v. White*, 887 F.2d 267, 271 (D.C. Cir.1989) ("[t]o subject the attorney-client communications to disclosure, they must actually have been made with an intent to further an unlawful act"). *See also* JOHN WILLIAM GERGACZ, ATTORNEY-CORPORATE CLIENT PRIVILEGE 4-16 (1990) ("The client's intention in communicating with counsel is controlling under the crime-fraud exception and, therefore, must be established as a part of the *prima facie* case."). Because a simple finding of relevance does not demonstrate a criminal or fraudulent purpose, it does not trigger the exception.

In the Second Circuit, the standard of proof required to override the privilege is a showing of "probable cause to believe that a crime or fraud has been committed *and that the communications were in furtherance thereof*." *In re John Doe, Inc. v. United States*, 13 F.3d 633, 637 (2d Cir. 1994) (*citing In re Grand Jury Subpoena Duces Tecum*, 731 F.2d at 1039). The Court explained, "This standard has been rephrased as requiring 'that a prudent person have a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, and that the communications were in furtherance thereof.'" *Id.* at 637. Once probable cause is shown, the trial judge may exercise discretion to decide whether to conduct an *in camera* review. *United States v. Jacobs*, 117 F.3d 82, 87 (2d Cir. 1997).

As discussed below, the Government has failed to establish a basis for invoking the crime-fraud exception as to any document, much less as to all 1,710 documents listed in the privilege logs of defendant's former law firms.

The Government contends that the defendant altered an otherwise legitimate contract and emails in order to obtain an ownership interest in Facebook. As a consequence, the Government

9

commenced this criminal prosecution alleging that the civil lawsuit is a fraud and that defendant committed mail and wire fraud by initiating and prosecuting the civil action against Mark Zuckerberg and Facebook.

The Government now asks this Honorable Court to apply the crime-fraud exception to the attorney-client privilege and work product doctrine where a private citizen has sued another for breach of contract and, as a defense, the civil defendant claims that the contract is a fraud.  To Defendant's knowledge, never before has a Federal Court been so tasked.  As the Second Circuit astutely observed, "[g]iven that the attorney-client privilege and work product immunity play a critical role in our judicial system, the limited exceptions to them should not be framed so broadly as to vitiate much of the protection they afford."  *In re Richard Roe, Inc. v. United States*, 168 F.3d 69, 71 (2d Cir. 1999) (citations omitted).

**D.   The Documents Sought by the Government are Admittedly Subject to the Attorney Client Privilege and Work Product Protection and the Government Has Failed to Establish a Sufficient Basis for Their Outright Disclosure or for Disclosure *In Camera* to the Court Under the Crime-Fraud Exception**

It is important at the outset to state the obvious: the documents which are the subject of the Government's Motion Regarding Application of the Crime Fraud Exception are communications that are subject to the attorney-client privilege or attorney work-product doctrine.  This is implicit in the Government's motion to have the documents released from the stated protections by attempting to have this Court invoke the crime-fraud exception in order to achieve that result.

Defendant asserts that all the attorney-client communications and work-product sought by the Government from his former lawyers – all created in connection with the filing and prosecuting of his civil lawsuit against Zuckerberg and Facebook – are privileged and may not be

discovered by the Government.

All of the documents and communications sought by the Government were collected or prepared in anticipation of or in connection with the pursuit of the civil litigation, which justifies defendant's invocation of the attorney-client privilege. Because the documents and communications sought by the Government were prepared by the defendant for the purpose of communicating with his lawyers in confidence, their contents have special protection. Similarly, those documents prepared by defendant's former attorneys and identified in their privilege logs as either privileged or subject to the work product doctrine are beyond the Government's reach. *Hickman v. Taylor*, 329 U.S. at 508; 8 J. WIGMORE, EVIDENCE 2317 (McNaughton rev. 1961).

The Kasowitz firm produced a privilege log identifying as privileged or work-product 80 separate documents, the vast majority of which are identified as e-mail communications between or among defendant Ceglia and his former counsel. See Exhibit 3 attached to the Government's motion.

DLA Piper produced a Privilege Log of 244 pages identifying 1,630 separate documents it submits are privileged or work-product. See Exhibit 4 attached to the Government's motion.

There is nothing in the two firm's privilege logs to suggest that the documents listed are other than privileged or work-product documents. Those two firms made independent determinations that the documents are protected and they listed them in their logs. The logs cannot, therefore, be a "factual basis" for a finding that the crime-fraud exception applies, as the Government claims. Govt.'s Memo p.2.

11

It is *all* of these documents which the Wall AUSA says should be indiscriminately released from protection and allowed to be spread upon the public record without regard to whether any meet the requirements of the crime-fraud exception.

The Government does not allege that defendant's attorneys at DLA Piper or Kasowitz were involved in creating the contract or emails that are the subject of both this criminal case and Ceglia's civil lawsuit. The Government does not argue that defendant's civil attorneys assisted him by fraudulently altering a preexisting contract. The Government does not allege that defendant's civil attorneys provided instructions to defendant about how to alter an existing contract or alter or create emails so as to fraudulently gain a percentage interest in Facebook. The Government cannot identify *any* reasonable basis to believe that any communication between defendant and his civil attorneys related to the attorneys' supposed involvement in the allegedly fraudulent act of filing and prosecuting the civil lawsuit. Defendant's research fails to disclose any case where the crime fraud exception was sought to be applied so indiscriminately, *en masse*, on the mere say-so of adversary counsel (who should not have had the documents in the first place).

It is axiomatic that when invoking the crime-fraud exception, the movant may not rely upon the subject documents themselves as the basis for asserting the exception. Rather the Government must make a *prima facie* showing of fraud or crime based upon evidence other than the privileged information sought to be disclosed. *United States v. Zolin*, 491 U.S. 554, 574 (1989); *In re John Doe, Inc. v. United States*, 13 F.3d at 636 (*citing Zolin, supra*). The Wall AUSA appears to understand this rule where he states: "[T]his motion does not rely on or reference any of the potentially privileged documents." Govt.'s Memo. p.1, n.1. Without

12

referring to the contents of any of the documents, he concludes that "The Complaint, Indictment, Kasowitz Log and DLA Log provide the factual basis for the application of the crime-fraud exception[,]" which he expects the Court to apply to all 1,710 documents, without *in camera* review, merely because he says so.  *Id.* at p.2.

In essence, the prosecution bases its motion on the fact that because Mr. Ceglia is being prosecuted under (baseless) charges of wire and mail fraud and that is, *ipso facto*, sufficient to find that the crime-fraud exception applies to otherwise protected documents. [3]/  The Government cannot rely upon such a dubious rationale and the law requires that the motion be denied and the documents now in the Wall AUSA's possession be returned to defendant's counsel.

According to the Government's Memorandum, the documents were turned over to the so-called Wall AUSA by defendant's former counsel "pursuant to a procedure agreed upon by counsel for the defendant[.]"  Govt.'s Memo.  p.1, n.1.  Although there may have been some agreed procedure between the Government and defendant's former Public Defender, it was an agreement which defendant did not authorize and one of which he had no knowledge until the Government filed the instant motion.  Defendant's former attorneys and their firms are subject to the attorney-client privilege and neither a former attorney nor firm is permitted to disgorge privileged communications or attorney work product without the client's authorization.  At no time during the representation of Mr. Ceglia by his former attorneys in the prosecution of

---

[3] Defendant's assertion that the prosecution of defendant is legally baseless is not mere posturing for purposes of this opposition.  Defendant continues to assert in the strongest terms that under *United States v. Pendergraft*, 297 F.3d 1198 (11th Cir. 2002) and its progeny (including cases in this circuit) and 18 U.S.C. § 1001(b), this prosecution is utterly baseless.

defendant's civil lawsuit, did he inform his attorneys that he authorized the disclosure of the communications now in issue to anyone other than himself and his counsel.  Further, at no time during the representation of defendant by the Federal Public Defenders' Office in this criminal case did defendant inform his counsel that he waived any privilege he had with respect to the subject documents or that he authorized their disclosure to the Wall AUSA.  Ceglia Declaration ¶¶ 4-7.  Had Mr. Ceglia known that protected documents were to be released to the Government so that the Government could determine if they wanted to use them against him in this criminal case, he would categorically have refused to authorize such an act.  Ceglia Declaration ¶¶ 8-11. [4]/

According to the Government's Memorandum, "Under the agreed-upon procedure, DLA Piper and Kasowitz produced potentially privileged documents and communications regarding their representation of Ceglia to the [Wall AUSA], who is not part of the prosecution team in this case."  Govt. Memo p.8.  "The Wall AUSA then read the documents and [not surprisingly] informed counsel for Ceglia of the Government's position that the documents were subject to the crime fraud exception and should be made available to the prosecution team."  *Id.* [5]/

---

[4] Defendant acknowledges that if the crime-fraud exception does apply – which it does not – certain identified documents might be subject to disclosure after *in camera* review by the Court.  However, the "procedure" employed – whatever it may have been – whereby protected documents were turned over to the prosecution *first* so that *they* could determine what *they* believe meets the crime-fraud test is completely backwards, a violation of defendant's rights and, as discussed below, if permitted by this Court, would eviscerate the attorney-client privilege and work product protection in cases like this.

[5] It is unstated whether the Wall AUSA – who says he is "not part of the prosecution team" – is in some sense supposed to be acting as a neutral arbiter concerning the applicability of the attorney-client privilege and work-product protection on the one hand, and the applicability of the crime-fraud exception on the other.  What is clear is that his Memorandum states the *Government's* position and his proposal to release every page of every document from the privilege without identifying anything to support the release of even one page, reveals that he is simply a partisan who, for purposes of this motion, at least, is a central part of the "prosecution

There is nothing in the two firm's privilege logs to suggest that the documents listed are other than privileged or work-product documents.

In the case of the letter from the Kasowitz firm dated April 13, 2011, which is referred to in the Government's Memorandum at page 6 and note 2, that firm stated it was withdrawing from the civil case because it did not think Mr. Ceglia's contract was authentic. [6]  It is important to state that what the Kasowtitz firm may have believed at that time about the contract's authenticity is not probative of anything other than their decision to discontinue their representation of Mr. Ceglia in the civil action. [7]  That letter failed to account for the copious evidence from Mr. Ceglia's world-class experts which support the conclusion that the Work for Hire Contract signed by him and Zuckerberg which is the subject of the civil suit is authentic, and that includes expert reports which were prepared after the Government's forensic expert was *unable* to opine on the authenticity of the Work for Hire Contract.  Those reports were filed in the injunction action brought by Mr. Ceglia in the Western District of New York and copies are attached hereto as Exhibits A and B.  The significance – for purposes of opposing this motion –

----

team."

[6] Although the privilege as to that particular letter was held to have been waived because the Magistrate Judge in the civil case believed a copy had been sent to a non-attorney, he did not conclude that it was discoverable under the crime-fraud exception.

[7] Later privileged communications between the Kasowitz lawyers and Mr. Ceglia's other counsel, Dennis Vacco, about the actual facts, led the Kasowitz lawyers to send another privileged communication to Ceglia's counsel on June 3, 2011, which does not correspond to the demand made in Kasowitz's April 13, 2011 letter.  The June 3, 2011, letter was produced by Mr. Ceglia to the Court *in camera* in the civil action and its privileged nature was not questioned. Mr. Ceglia will, with the Court's permission, submit a copy of the June 3, 2011 letter *in camera* to this Court.  Notably, the Kasowitz firm continues to list both the April 13 and June 3, 2011 letters in its privilege log as being subject to the attorney-client privilege.

of Mr. Ceglia's evidence in the civil actions in the Western District showing that his contract

with Zuckerberg is authentic is discussed below.  In short, the evidence shows that there is a

factual and legal basis for bringing the civil action and the bringing and prosecution of that action

*cannot*, therefore, be the basis for the Government's motion.  *See, In re Richard Roe, Inc. v.*

*United States*, *infra.*

The Wall AUSA also bases his opinion that the crime-fraud exception applies on the

mere fact that, according to him, DLA Piper's privilege log discloses that "attorneys at DLA

Piper began discussing withdrawal from the Civil Action in late June 2011."  The Wall AUSA

does not refer to a particular document or documents or explain why communications

"discussing withdrawal" or substitution of counsel – events that occur regularly in civil cases –

are in and of themselves suggestive that the crime-fraud exception applies.

Presumably, the Wall AUSA is alluding to a series of emails commencing on June 26,

2011, each of which is described as "E-mail reflecting request for and provision of legal advice

in anticipation of litigation regarding substitution of counsel" or "regarding withdrawal."  There

is nothing in these log entries to support the conclusion that the crime-fraud exception is

somehow implicated.

Finally, the Wall AUSA's unwarranted assertion that the log entries relating to

withdrawal and the substitution of counsel somehow support the conclusion that the crime-fraud

exception applies is belied by the ongoing privileged communications that lawyers at DLA Piper

had with Mr. Ceglia's other counsel between June 29, 2011 (when DLA Piper withdrew) and

December 7, 2011 (the last entry in DLA Piper's log) during which time DLA Piper was

evidently assisting in the transition to new counsel in that highly complex civil action.

The Kasowitz and DLA Piper firms made independent determinations that the documents are protected and they listed them in their logs.  The logs cannot, therefore, be a "factual basis" for a finding that the crime-fraud exception applies, as the Wall AUSA claims.

## E.   The Government's Professed Need for the Documents is Legally Insufficient to Invoke the Crime-Fraud Exception

The Government seeks the documents because, according to it, they "are highly relevant to the investigation and subject to the crime fraud exception to the attorney-client privilege because Ceglia enlisted his attorneys at DLA Piper and Kasowitz to file and litigate his fraudulent lawsuit against Facebook and Ceglia [*sic*]."  And "these communications will *likely reveal* information relating to the defendant's illicit conduct, knowledge and intent to pursue a fraudulent lawsuit, including representations that Ceglia was making to his attorneys in furtherance of his fraudulent scheme as well as any information he was given by his attorneys regarding the validity or invalidity of his claims."  Govt.'s Memo pp.7-8 (emphasis added). These reasons are legally insufficient on their face.

With respect to the first justification, that Ceglia "enlisted his attorneys ... to file and litigate his fraudulent lawsuit," the Second Circuit has held:

> Where the very act of litigating is alleged as being in furtherance of a fraud, the party seeking disclosure under the crime-fraud exception must show probable cause that the litigation or an aspect thereof had *little or no legal or factual basis* and was carried on substantially for the purpose of furthering the crime or fraud. Absent such a showing, the requisite finding that an otherwise privileged or immunized communication was intended to further the fraud cannot be made.

*In re Richard Roe, Inc. v. United States*, 168 F.3d at 71 (emphasis added).

The reports of merely two of defendant's experts (which are annexed to this memorandum as Exhibits A and B) establish that Ceglia's civil action was not without a factual

17

basis.[8]/

As the Second Circuit observed, this type of argument by the Government, if permitted,

"would collapse the two-part test for the crime fraud exception." *Id.* at 71.

> If (as the government argues) there is probable cause that a fraud has been
> committed that consists, at least partially, of engaging in litigation, then probable
> cause would arguably exist to find that every document prepared in connection
> with the defense of that litigation was in furtherance of the fraud and thus not
> privileged.

*Id.*

As stated above, the second component of the Government's argument is that "these

communications will *likely reveal* information relating to the defendant's illicit conduct, ... ."

This type of justification for piercing the privilege has also been rejected in this circuit:

> "*It is not enough to show merely that privileged communications 'might provide
> evidence of a crime or fraud.*' 'Rather, the communication itself must have been
> in furtherance of a fraud or crime and must have been intended to facilitate the
> fraud or crime.'" *Pure Power Boot Camp v. Warrior Fitness Boot Camp*, 587 F.
> Supp. 2d 548, 565 (S.D.N.Y 2008) (*quoting In re Richard Roe, Inc.*, 168 F.3d 69,
> 71 (2d Cir. 1999) and *Shahinian v. Tankian*, 242 F.R.D. 255, 258 (S.D.N.Y.
> 2007)). Thus, there are two separate probable cause showings required to invoke
> the crime/fraud exception: (1) probable cause to believe that a fraud or crime has
> been perpetrated, and (2) probable cause to believe that the communications at
> issue were in furtherance of *and* intended to facilitate the fraud or crime. *See,
> e.g., In re Omnicom Group, Inc. Securities Litig.*, 233 F.R.D. 400, 404-05
> (S.D.N.Y. 2006).

*Aiossa v. Bank of Am., N.A.*, 2011 U.S. Dist. LEXIS 102207, *17 (E.D.N.Y. Sept. 12, 2011)

(emphases added).

---

[8] These do not include the many other reports from Ceglia's highly qualified experts filed
in the civil action against Zuckerberg and Facebook that support the authenticity of the Work for
Hire Contract signed by Zuckerberg upon which defendant relies.

Whatever the Government may hope the 1,710 documents will "likely reveal" is not a sufficient basis to jettison the attorney-client privilege and work product protections that have been placed at risk by the Government's fundamentally flawed motion.

In a case where the petitioner was "suspected of providing movant, her counsel, with documents falsely backdated so as to exonerate her of the commission of an offense or offenses for which she has been indicted," the New York Appellate Division held that documents which were produced in court – and as to which the attorney client privilege had been waived – showed that "the communications in question were in furtherance of such fraud or crime" and that the crime-fraud exception applied. *In the Matter of Grand Jury Subpoena*, 1 A.D.3d 172, 173, 767 N.Y.S.2d 77, 78 (1st Dept. 2003). However, as to other records which the client had provided to her lawyer, the subpoena "should have been quashed because *the record does not indicate that there is probable cause to believe that a fraud or crime was committed each time a ... document was exchanged between [the client] and [her counsel], or that there is probable cause to believe that communications in connection with each of those documents – however many there may have been – were in furtherance of a fraud or crime.*" *Id.* (emphasis added); *citing United States v. Jacobs*, 117 F.3d at 87 and *In re Richard Roe, Inc. v. United States*, 168 F.3d at 71.

Here, the facts are analogous. As to the 1,710 documents identified in the Kasowitz and DLA Piper privilege logs there is *nothing* in the record to cause one to believe that "a fraud or crime was committed each time a ... document was exchanged" between Mr. Ceglia and his counsel to justify invoking the crime-fraud exception.

> A party wishing to invoke the crime-fraud exception must demonstrate that there is a factual basis for a showing of probable cause to believe that a fraud or crime has been committed and that the communications in question were in furtherance of the fraud or crime. This is a two-step process. First, the proposed

factual basis must strike "a prudent person" as constituting "a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, and that the communications were in furtherance thereof." *In re John Doe*, 13 F.3d at 637 (*quoting In re Grand Jury*, 731 F.2d at 1039). Once there is a showing of a factual basis, the decision whether to engage in an *in camera* review of the evidence lies in the discretion of the district court. [*United States v.*] *Zolin*, 491 U.S. [554,] 572 [(1989)]. Second, if and when there has been an *in camera* review, the district court exercises its discretion again to determine whether the facts are such that the exception applies.

*United States v. Jacobs*, 117 F.3d 82, 87 (2d Cir. 1997) (alterations added).

In *Jacobs*, the Court, based its finding of probable cause supporting the crime-fraud exception upon "tape recordings of statements made by Jacobs to an undercover FBI agent" that his attorney had looked into the matter and "'there was absolutely nothing wrong about the program that was illegal.'" It was this extraneous evidence that led the Court to conclude that the crime-fraud exception applied. *Id.* Even so, the Court held that this provided only a "minimum showing" that an *in camera* review of the privileged documents was authorized. *Id.* at 88.

Here, there has been *nothing* offered by the Government to support the conclusion that the 1,710 documents are subject to the crime-fraud exception, other than the Government's own complaint and indictment which are insufficient as a matter of law. *See, In re Richard Roe, Inc. v. United States*, 168 F.3d at 71 and *Aiossa v. Bank of Am., N.A.*, 2011 U.S. Dist. LEXIS 102207 at *17 (and cases cited).

*Jacobs* further undermines the Government's conclusory arguments:

For the crime-fraud exception has a *narrow and precise* application:
It applies only when the communications between the client and his lawyer further a crime, fraud or other misconduct. *It does not suffice that the communications may be related to a crime.* To subject the attorney-client communications to disclosure, they must actually *have been made with an intent to further an unlawful act.*

*Id.* (first and second emphases added, last emphasis in original).

20

There is no cognizable evidence before the Court to support the conclusion that the privileged communications were for any purpose other than obtaining and effecting the legal representation of Mr. Ceglia in his civil action in Buffalo.  That is what the privilege logs indicate.  That the Kasowitz firm was not convinced of the authenticity of the documents upon which Ceglia's complaint is based or that DLA Piper later withdrew as Ceglia's counsel is simply not evidence of a crime or fraud that will permit invoking the crime-fraud exception.

The communications may more readily be interpreted to mean quite the opposite of what the Government suggests.  They indicate that Mr. Ceglia fully disclosed every known fact to his lawyers and they formed their own judgments about credibility or the likelihood that Mr. Ceglia would prevail in the civil action (whether one agrees with their assessments or not).  That is precisely the reason such communications and attorney work product are protected in the first place.

## IV.   REQUEST FOR ARGUMENT AND A HEARING

The Government contends that the crime-fraud exception operates to permit disclosure of documents that defendant Ceglia and his former attorneys assert are protected by the work product doctrine as well as those within the ambit of the attorney-client privilege.  Due process requires that the determination of this important motion be preceded by an evidentiary hearing and argument.

Although the Government accused defendant of committing a crime, the Government's motion for the application of the crime-fraud exception does not state whether the supposed crime was committed before or after Mr. Ceglia retained his former attorneys for the legal work out of which the privileged and work product documents arose.  If the alleged crime had been

21

completed before retention of the former attorneys and firms, then the privilege and protection

remains in effect.  If, however, the Government takes the position that the alleged crime was a

continuing one, or one that occurred after the former attorneys and firms were consulted, the

Government is first required to make a *prima facie* evidentiary showing sufficient to permit the

discovery it seeks to be released from the constraints of the privileges, followed, if necessary, by

the Court's *in camera* review of the subject documents.

It appears from the record that at least by April 11, 2011, DLA Piper represented Mr.

Ceglia in connection with the civil lawsuit already pending in federal court alleging, *inter alia*, a

breach of contract.  The law firm and Mr. Ceglia's co-counsel filed an amended complaint on his

behalf in the District Court for the Western District of New York.  The amended complaint

asserted the authenticity of a contract between Mr. Ceglia and the civil defendants by virtue of

which Mr. Ceglia claimed an interest in Facebook, and the authenticity of which the civil

defendants denied – the very issue underlying the criminal complaint and grand jury indictment

in this case.  There is thus an identity of subject matter between the cause of action asserted in

the civil action and the instant criminal proceedings, including the Government's motion.

During some stages, moreover, both the civil and criminal matters were proceeding at the same

time and, therefore, a temporal connection between the civil and criminal litigation existed as

well.

In this circumstance, the documents requested by the Government cover the period from

at least April 2011 to October 2012 and require consideration of the privilege and work product

doctrine, even though the documents may not have been prepared specifically in connection with

the filing of the civil suit.  Therefore, the privilege and work product doctrine apply to all the

litigations.

Since the record fails to demonstrate when the alleged crime upon which the Government relies may have occurred, this Court is unable to determine whether the crime fraud exception can apply to the requested discovery.  If the Court determines that the alleged crime occurred before Mr. Ceglia consulted with his attorneys in connection with the filing of the amended civil complaint, then the Court should rule that both privileges remain in effect.  If, however, the Court determines that the alleged crime occurred after consultation with counsel, then the Court may find that the crime-fraud exception bars the privileges as to certain documents it may identify after *in camera* review.

Therefore, the matter of probable cause sufficient to support the Government's motion must be the subject of an evidentiary hearing.  As argued above, since the alleged crime involves defendant's pursuit of civil litigation, in order for the Government to prevail on its motion, it must show that there was *not* a factual or legal basis for defendant to have brought the civil action in the first place and, absent such a showing, the pursuit of that civil action *cannot* be the basis for the Government's crime-fraud motion.

Such a hearing would be of like kind with a hearing under the *Noerr-Pennington* Doctrine to determine whether an underlying litigation was objectively baseless and therefore unprotected activity under the First Amendment. [9]  At an earlier hearing in this case, the Court expressed uncertainty about the applicability of a *Noerr-Pennington* type hearing in this circuit in the

---

[9] *Eastern R. Pres. Conf, v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 135 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657, 670 (1965).

criminal context. [10]/  Although not denominated as a *Noerr-Pennington* matter, the Second

Circuit did indeed address the concept in a criminal case where a defendant was charged with

mail fraud and the crime-fraud exception was sought to be invoked by the prosecution.  Although

quoted above, the following bears repeating in this context because the Second Circuit clearly

had *Noerr-Pennington* in mind when it rejected the crime-fraud motion in the criminal case

before it and held:

> Where the very act of litigating is alleged as being in furtherance of a fraud, the
> party seeking disclosure under the crime-fraud exception *must show probable
> cause that the litigation or an aspect thereof had little or no legal or factual basis*
> and was carried on substantially for the purpose of furthering the crime or fraud.
> Absent such a showing, the requisite finding that an otherwise privileged or
> immunized communication was intended to further the fraud cannot be made.

*In re Richard Roe, Inc. v. United States*, 168 F.3d at 71 (emphasis added).

Then, obviously alluding to the *Noerr-Pennington* Doctrine (whose had its genesis in two

antitrust cases), the Second Circuit further held:

> For example, one may violate the antitrust laws by bringing baseless litigation
> intended to delay entry into a market by a competitor.  *See Landmarks Holding
> Corp. v. Bermant*, 664 F.2d 891, 895-97 (2d Cir. 1981).  If the litigation
> objectively lacked a factual or legal basis, some communications or work product
> generated in the course of such litigation might, after a rigorous *in camera* review
> by a court for relevance, fall within the crime-fraud exception.  Thus, a client's
> directing an attorney to make large numbers of motions solely for purposes of
> delay would be discoverable.  Similarly, where a party suborns perjury by a
> witness to bolster a claim or defense, Communications or work product relating to
> that witness might also be discoverable.  *See In re John Doe, Inc.*, 13 F.3d at 635,
> 637-38. We do not probe these issues beyond setting out these examples because
> the documents sought here clearly do not fall within the crime-fraud exception.
> First, the defense of the underlying litigation hardly lacked any legal or factual basis.

*Id.* at 72.

---

[10] See *e.g.*, transcript of hearing, March 7, 2014, T.3:1-13 (ECF Doc. 42).

A showing that the underlying civil action is baseless is essential to the Government's motion.  Just as a criminal defendant is cloaked with a presumption of innocence, under *Noerr-Pennington,* a civil litigant is cloaked with immunity from criminal liability under the First Amendment if his lawsuit is *not* objectively baseless.  That is a showing which imposes a heavy burden on the Government, but one which defendant is convinced the Government cannot meet.

Defendant respectfully requests that the Court schedule the Government's motion for argument and an evidentiary hearing directed to the factual and legal basis for the underlying civil action.

## V.   CONCLUSION

The Government's Motion Regarding Application of Crime Fraud Exception in which it seeks the *en masse* disclosure of all documents listed in the privilege logs of DLA Piper and the Kasowitz law firms is without basis in the law and should be set down for argument and an evidentiary hearing or else denied in all respects.

                          Respectfully submitted,


Dated:  September 29, 2014        By:     s/ Robert Ross Fogg
        Buffalo, NY                       Robert Ross Fogg, Attorney for Defendant
                                          Paul D. Ceglia