# EXHIBIT B

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PAUL D. CEGLIA,

Civil Action No.: 1:13-cv-00256-RJA

Plaintiff,

vs.

ERIC HIMPTON HOLDER, JR.,
as Attorney General of the United States,
**PREETINDER S. BHARARA**,
as US Attorney for the Southern District
of New York, **JANIS M. ECHENBERG**
and **CHRISTOPHER D. FRYE**,
in their capacity as representatives of the U.S.
Attorney's Office for the Southern District of New
York,

Defendants.

## DECLARATION OF JOAN M. WINKELMAN

I, Joan M. Winkelman, do hereby declare, under the pains and penalties of perjury of the United States, as follows:

1. I am a board certified forensic document examiner. A true and complete copy of my statement of qualifications is annexed hereto as Exhibit A. I have personal knowledge of the facts stated herein.

2. Included therein is a list of court proceedings and other hearings in which I have testified as an expert forensic document examiner (independent of my former role as an employee of the Erie County Department of Social Services). In each instance where the word "qualified" appears, I was permitted to testify as an expert and, to the best of my knowledge, my testimony was admitted into evidence.

3.  The majority of my work as a forensic document examiner involves determining the authenticity of handwriting including, but not limited to, signatures. My training and experience include determining the authenticity of the various components of questioned documents, including, but not limited to, attributes such as fonts or type and formatting used.

4.  The assignment in this matter was to determine indicators, if any, of authenticity in the "Work For Hire agreement," through the comparison of that document with the Street Fax document which is also described as the "Kato-Street Fax document."

5.  I received images of the two documents in .pdf, jpeg, and .tif formats:

    - The "Work for Hire agreement" consists of two pages, hand-dated on page 2, in the signature area, "4/28/03," received as .tif file image on October 29, 2013, and examined using Irfanview program for zoom of image capability. Printout of the .tif images are attached as Exhibit B.

    - The "Kato-Street Fax document" consists of three pages, type-dated on page 3 in the signature area, "5/5/2003," received as .tif image on November 11, 2013 and examined using Irfanview program for zoom of image capability. As represented by counsel, this document is presumed to be authentic. Printout of the .tif images are attached as Exhibit C.

6.  In addition, I received a two page USPS Lab Report.pdf of John W. Cawley, III, dated September 27, 2013, regarding examination of the original two-page "Work for Hire agreement," for empirical review. A printout of the report is attached as Exhibit D.

7.  My examination of the Work for Hire agreement identified two different fonts which I have determined to be Times New Roman and Garamond. My examination of the Kato-Street Fax document identified two different fonts which I have determined to be Times New Roman and Garamond.

8. My examination and comparison of the Work for Hire agreement and the Kato-Street Fax document disclosed that both instruments contain the same two fonts, limited formatting differences, and typographical errors supporting the conclusion that the Work for Hire agreement is authentic.

9. Based upon my examination and comparison of the two page Work for Hire agreement and the three page Kato-Street Fax document, both available in image form, it is my opinion, given to a reasonable degree of professional certainty, that the similarities and differences identified in the two documents support the conclusion that the Work For Hire agreement is authentic. This opinion is stated at the highly probable level of certainty due to the fact that the documents were available to me only in image form.

10. Annexed hereto as Exhibit E is a listing of my observations of the similarities and differences between the two documents that form the basis of my opinion.

11. ASTM International's Designation E 1658-08 – Standard Terminology for Expressing Conclusions of Forensic Document Examiners is the recognized standard for the terminology used by forensic document examiners to express their conclusions. A copy of the ASTM standard is annexed hereto as Exhibit F. (That standard has also been adopted verbatim by The Scientific Working Group for Forensic Document Examination (see http://www.swgdoc.org/)). My opinion is stated at the "highly probable" level (described by ASTM as "very persuasive") and not a higher level due to the fact that I had to examine document images rather than originals. On the other hand, I have seen the Postal Service's Forensic Document Examiner's report of September 27, 2013, and although he did examine

original documents, his opinion is rendered at the "indications" level which, as the ASTM discussion notes state, is "a very weak opinion," which does not rise even to the level of "probable."

I swear that the foregoing is true and correct under the pains of perjury of the United States.

Dated: December 30, 2013

Joan M. Winkelman

# EXHIBIT A

# JOAN M. WINKELMAN

## STATEMENT OF QUALIFICATIONS

**BOARD CERTIFIED FORENSIC DOCUMENT EXAMINER** status awarded 9/04 following written and oral testing and presentation before Certification Review Board – Independent Association of Questioned Document Examiners
    **RECERTIFIED** 6/20/09 following review of professional activity

**BOARD CERTIFIED FORENSIC DOCUMENT EXAMINER** status awarded 7/93 as Certified Document Examiner following oral presentation and response to questions before Certification Review Board – World Association of Document Examiners. Status renamed 1999 as Board Certified Forensic Document Examiner

**REGISTERED PROFESSIONAL DOCUMENT EXAMINER** status awarded 7/86 following graded written testing – World Association of Document Examiners

**COURT QUALIFIED** designated within World Association of Document Examiners 1993

**MEMBER:** National Association of Document Examiners (NADE) 1986 --
    Independent Association of Questioned Document Examiners (IAQDE) 2002 to 10/31/10
    World Association of Document Examiners (WADE) 1986 to 1/16/03
    ASTM International (formerly American Soc for Testing and Materials) 2008 –

**OFFICES HELD:** Appointed Librarian and serving as member of Board of Directors, NADE 10/88 --
    Elected Secretary and served as member of the Executive Board, IAQDE 8/05, re-elected 6/07 – re-elected 6/09
    Appointed Newsletter Editor, IAQDE 6/07 – 8/08
    Appointed Publication Editor, IAQDE 8/08 – 10/10
    Joined Journal Editorial Board, NADE 7/10 --
    Appointed Chief Editor Newsletter, NADE 4/11 --

**ACTIVITIES:** Member Certification Board and Testing Proctor, IAQDE 2006 – 2010

**PAPERS PUBLISHED:** NADE 11/89 Journal "Signatures In Succeeding Series"
    NADE 8/92 Journal "Envelopes: Gum Strip Differences"
    WADE 7/94 Exchange "'Electron' Microscope for Lee-Tekees"
    WADE 4/98 Exchange "A New Method to Detect Erasures"
    WADE 10/98 Exchange "Watermarks Are Trademarks"
    IAQDE 2-3/09 Under the Scope "Signatures In A Series – A Test"

As Editor IAQDE articles re: Document examiner website set-up, search engine placement, office computer security and maintenance 6/07 – articles re: locating references on various handwriting case topics 1/09 – 10/10

**PAPERS PRESENTED:** WADE Spring Seminar, Warwick, Rhode Island 2/90
    "Determining Ball Point Pen Direction"
    WADE Annual Seminar, Oak Brook, Illinois 7/01
    "Seeing Is Believing – Convincing Demonstrative Exhibits"
    IAQDE Annual Seminar, St. Louis, MO 9/03
    "Social Security Cards – from the beginning"
    IAQDE Annual Seminar, Arlington, VA 8/06
    "All About the Date – Metal Date Stamp Impressions"
    IAQDE Annual Seminar, Albuquerque, NM 6/07
    "I Need Information, Where Do I Find It, Where Do I Begin (Nourishing Professional Library)"

Statement of Qualifications     JOAN M. WINKELMAN     Page 2 of 2

**PAPERS PRESENTED** -cont'd

IAQDE Annual Seminar, Sarasota, Florida 6/09
"Promoting Your Business"
IAQDE Annual Seminar, Boston, MA 6/10
"How Can Those Resting Dots Help You?"

**COURT AND HEARING TESTIMONY:** as an independent document examiner I have testified in Supreme Court in Cattaraugus, Erie and Monroe County, Erie County Court, Livingston County Court, Surrogates Court in Erie Co., Buffalo City Court, Niagara Falls City Court, Town Courts of Amherst, Clarence, Newstead, Tonawanda. (List available on request.)

**DOCUMENT EXAMINATION RELATED TRAINING GIVEN:**

2/96 Marine Midland Item Processing and Security staff, approximately 40 staff members, 2 sessions 4 hours each
3/99 Marine Midland/HSBC Item Processing staff, approximately 30 staff members, 1 session 2 hours
11/02 HSBC Item Processing and Security staff, approximately 25 staff members, 1 session 1 ½ hours

**BUSINESS:** in 1984 filed business certificate establishing business as handwriting consultant. In 1986 added service as independent document examiner.

**EMPLOYMENT:** Erie Co. Dept. of Social Services 4/26/61-3/15/05; assigned to Resource Section, Special Investigations Division.
Duties included **document examination** work in fraud investigation cases involving signature and form comparison, anonymous letter authorship - 1993 to 2005

**EDUCATION - INTENSIVE DOCUMENT EXAMINATION TRAINING:**

40 hours **NADE Apprentice Course**, Philadelphia, Pa., Phyllis Cook, CDE 7/86
70+ hours **Department of the Treasury, U. S. Secret Service** Questioned Document Course, Glynco, Ga. 3/92
26 hours **Rochester Institute of Technology and U. S. Secret Service** Printing Process Identification and Image Analysis for Forensic Document Examiners, 6/03
32+ hours **Foray Technologies** and Town of Hamburg Police Depart Introduction to Forensic Digital Imaging, Hilbert College, Hamburg, NY 8/04
35 hours including digital imaging, microscopy, measurement
823 1/2 hours attendance at **training seminars, annual seminars, additional training** 7/86 to current sponsored by World Association of Document Examiners, National Association of Document Examiners, Independent Association of Questioned Document Examiners
( 7 months) Andrew Bradley Training Course in Forensic Document Examination 20 lessons 20 testings and final exam    8/87 -- 3/88
219 1/2 hours other school courses and training    (List available on request.)

Independent study and empirical research as needed (List of professional library available on request.)

**PROFICIENCY TESTING:** as an independent document examiner I participate in proficiency testing through Collaborative Testing Services Inc. (providing worldwide interlaboratory testing programs www.collaborativetesting.com)

4/30/13

Please do not designate me as your expert until fee contract agreement has been signed and retainer fee has been received by me.

Joan M. Winkelman    1905 Maple Road, Amherst, NY – 14221-2754    716-634-4348    bp995@netzero.net
                                                                                                                                          jwink995@gmail.com

# JOAN M. WINKELMAN

**COURT AND HEARING TESTIMONY:** as an independent document examiner

5/23/91  Joan Able v Able   John A. Michalek, attorney   Index 832/90
Judge Joseph Sedita   Court – Supreme   Bench   Qualified

7/25/91  James J. Michalek v People,   James J. Michalek, attorney   Index 90-0911-001
Judge Rose LaMendola   Court – Erie County   Jury   Qualified

5/21/92  People v Michael Marano   Philip Thielman, attorney   Complaint #102526
Judge John Gruber   Court – Tn. of Tonawanda   Bench   Qualified

11/16/92  Estate Harold Schrutt   L. Mattar & T. D'Agostino, attorneys   File #89-5096
Judge Joseph S. Mattina   Court – Surrogate   Jury   Qualified

6/25/93  Estate of Janet M. Ward,   ShaRee Meadows, attorney   File #92-2952
Judge Joseph S. Mattina   Court – Surrogate   Bench   Qualified

7/13/94  K. Kozlowski v Victor Lorenzo   Jerry Ader, attorney   Case 93-070001
Judge Dennis R. Freeman   Court - Tn of Newstead   Jury   Qualified

9/28/94  K. Kozlowski v Taurus Automotive/Todd Lorenzo   Robert Gurbacki, attorney
Judge Richard L. Campbell   Court – Tn. of Newstead   Small Claims
Bench   Qualified

10/14/94  Sears Roebuck v Larnell Evans   William Urban, attorney
Judge William Waible   Court – Tn. of Clarence   Bench   Qualified

6/3/96  Hearing – National Assoc. Security Dealers   Dr. Joseph S. Calabrese, attorney
Hyatt Hotel  Executive Room                                   Qualified

1/14 & 15/97  C.A.Curtze Co. v Frank Cipriani/Garcia's Irish Pub   Robert DiTusa, attorney
Judge Christopher J. Burns   Court – Supreme   Part 29   Bench   Qualified
Index 1996-2932

5/21/98  John M. Hariaczyi v Leo Piotrowski   Daniel Sperrazza, attorney   Index H58546
Judge Nelson H. Cosgrove   Court – Supreme   Part 7   Jury   Qualified

2/11/99  Hearing – Barker School System   Jerome D. Schad, attorney
Somerset Town Hall                                   Qualified

2/16/99  Coley v Fibich   Robert DiTusa, attorney   Index 97-3647
Judge John H. Doerr   Court – Supreme   Part 13   Bench   Qualified

9/7/00  Bottini v Holiday Olds   Christopher A. Cardillo, attorney   Index 3877 – 98
Judge John F. O'Donnell   Court – Supreme   Part 11   Bench   Qualified

7/24/02  84 Lumber Co. v McGuire Contracting   James F. Allen, attorney   Index 2282/1998
Judge Joseph G. Makowski   Court – Supreme   Part 25   Bench   Qualified

1/16/03  Re: James Kavanaugh   John M. Garrity, attorney   Case No. 01-05136-5
Judge Mark G. Farrell   Court – Tn. of Amherst   Bench   Qualified

6/2/03  Re: Terrance Gidney   Michael J. Rooth, attorney   Index 2002-2256001
Judge Sheila A. DiTullio   Court – Erie Co   Part 3   Bench   Qualified

7/10/03  Hearing: Lewis v Lewis   Robert K. Duerr, attorney   Index 901982-2002
Judge Salvatore R. Martoche   Court – Supreme   Part 2   Qualified

JOAN M. WINKELMAN
COURT TESTIMONY

Page 2 of 2

11/10/03  Sharon Galbraith v Gary Buchanan
          Judge John Gruber   Tn of Tonawanda Small Claims Court   Bench   Qualified

11/19/03  People v Dwayne Ivery   Daniel Medved, attorney   Index 177-03
          Judge David D. Eagan   Court - Monroe Co. Supreme/Criminal  Rm. 444
                                                        Jury   Qualified

12/2 & 3/03  Linda L Sikorski, Boleslus F Sikorski v Henry Boron, Christopher Boron, Security
          Mutual Life Insurance Co of NY, Hartford Accident & Indemnity Co.
          Howard Kleiman, attorney    Index 2001-6059
          Judge John P. Lane   Court – Supreme  Part 13   Jury   Qualified

8/5/04   Ring v Koch   Robert H. Gurbacki, attorney   Index 67062
          Judge Larry M. Himelein   Court – Cattaraugus Co. Supreme   Bench   Qualified

10/20/04  People v Shondell Edwards   Carl H. Dobozin, attorney   Docket 03F16571
          Judge Thomas P. Franczyk   Court – Buffalo City Court   Bench   Qualified

10/4/05  People v Stephen J. Hicks   John M. Ange, attorney   Indictment 01775-04
          Judge Joseph S. Forma   Court – Supreme Part 22   Bench   Qualified

3/19/07  Creative Collections of New York, Inc. v James DiBlasi, Jr., Denise DiBlasi, Jason Knobloch
          and Innovative Recovery Group, Inc.   James I. Myers, attorney   Index I 2006/12455
          Judge John M. Curran   Court – Supreme  Part 4   Bench   Qualified

1/31/08  People v Corey R. Moss   James R. Boehler, attorney   Indictment 2007-093
          Judge Robert Wiggins   Court – Livingston County   Jury   Qualified

3/28/08  Hearing – Anthony C. Otto vs Daniel Buttery   P. Andrew Vona, attorney   File 07-9479
          Judge Mark A. Volante   Court – Niagara Falls City Court   Qualified

5/6/08   Hearing – Andree S. Bogaerts as Executrix of the Estate of Winoc Bogaerts v Elaine
          Thompson   Michael E. Ferdman, attorney   Index 2006-012432
          Judge Joseph E. Makowski   Court – Supreme  Part 33   Qualified

11/19/09  People v Abdo Alkhulaqi   Frank L. Bybel, attorney   File 08-02476
          Judge M. William Boller   Court – Supreme  Part 13   Bench   Qualified

7/19/11  American Legal & Commercial Printers, Inc. and Douglas J. Russo v John L. Russo
          E. Robert Fussell, attorney   Case No. 1-10-11576  AP(adversary proceeding) #1-10-01110
          Judge Michael J. Kaplan   Court – US Bankruptcy Court Western Dist of NY
                                                        Bench   Qualified

10/4/12  Hearing - NYS Trooper Disciplinary   David Killion   Jon Wilson, attorney
          NYS Trooper Troup A Headquarters                     Qualified

As an employee, Erie Co. Dept. of Social Services, I testified as a document examiner at more than fifty NYS Fair Hearings.

12/18/13

# EXHIBIT B

Case 1:13-cv-00256-RJS Document 64 Filed 09/29/14 Page 11 of 17

# "WORK FOR HIRE" CONTRACT

## SECTION 1- GENERAL PROVISIONS

1. Definitions

The following terms have the meaning specified when used herein:
PURCHASER - Paul Ceglia
CONTRACTOR/SELLER – Mark Zuckerberg, his agents, employees, suppliers, or sub-contractors, furnishing materials equipment, or services.
CUSTOMER – StreetFax LLC the entity contracting for construction or other services form the Purchaser or which the goods and/or services provided hereunder are for incorporation into the work or are required to facilitate completion of Purchaser's contract with such entity.
PRIME CONTRACT – This contract between Purchaser and Seller.

2. Entire Agreement

The contract between the Purchaser and Seller as a Purchase agreement and "work made for hire" reflects two seperate business ventures, the first being for the work to be performed directly for the StreetFax Database and the Programming language to be provided by Seller.
Second it is for the continued development of the software, program and for the purchase and design of a suitable website for the project Seller has already initiated that is designed to offer the students of Harvard university access to a wesite similar to a live functioning yearbook with the working title of "The Face Book"

It is agreed that Purchaser will own a half interest (50%) in the software, programming language and business interests derived from the expansion of that service to a larger audience.

3. Payment Terms

No insurance or premium charges or price increases will be allowed unless authorized by Purchaser in writing. No increase in price from that stated on the face hereof will be considered throughout the duration of the order.
The Agreed upon Cost that the Seller and the Buyer have agreed upon are as follows: Buyer agrees to pay the seller the Sum of $1000 a piece for the work to be performed for Streetfax and $1,000 for the work to be performed for "The Page Book".
Late fees are agreed to be a 5% deduction for the seller if the project is not completed by the due date and an additional 1% deduction for each day the project is delayed beyond that point.
The agreed upon project due date ifor the StreetFax software is May 31, 2003. *Providing web designer is fixed by May 21, 2003;*
The agreed upon completion for the expanded project with working title "The Face Book" shall be Janruary 1 2004 and an additional 1% interest in the business will be due the buyer for each day the website is delayed from that date.
Additional funds may be provided for either project on an as needed basis at the sole diiscretion of the Buyer.

4. Changes

a) BY PURCHASER – Purchaser agrees that no further revision shall be implemented until or unless approved by the seller. Those revisions shall be transmitted for written approval to seller.

b) BY SELLER – The Seller agrees that no further revision shall be implemented until or unless approved by Buyer. Those revisions shall be transmitted for written approval to the Street Fax Purchasing Department.

5. Purchaser's Property/Seller's Responsibility

For the StreetFax database Buyer agree to pay for and maintain the cost of upkeep for the servers needed for it's operation.

For "The Face Book" Seller agrees to maintain and act as the sites webmaster and to pay for all domain and hosting expenses from the funds received under this contract, and Seller agrees that he will maintain control of these services at all times.

Data, drawings, tooling, patterns, materials, specifications, and any other items or information supplied to Seller under this order are the property of the Purchaser and must be returned upon completion of this order. Such items or information are to be used solely in the performance of the work by the seller and shall not be used or disclosed for any other purpose whatsoever without Purchaser's prior express written consent.

6. Settlement of Controversies

In the event that this purchase order is for materials or equipment which is excluded from this Prime Contract, and in the case of disputes between the Purchaser and the Customer or between the Purchaser and the Seller regarding materials or equipment to be furnished by the Seller, the Seller agrees to be bound to the same extent that the Purchaser is bound by the terms of the Prime Contract, and by any and all decisions and determinations made thereunder, provided that the Seller shall have the right to participate in the settlement of any dispute to the extent that the Seller will be affected thereby.
No interest shall accrue on any payment(s) otherwise due the Seller, which is withheld or delayed as a result of any such dispute, except to the extent that the Purchaser is ultimately paid interest on monies due the Seller. The Seller shall not be held liable if the Seller follows instructions of the Purchase and it is later determined that the Purchaser's instructions were not in compiance with the terms and specifications of the Prime Contract. Pending final disposition of a dispute hereunder, the Seller shall carry on the work unless otherwise agreed I writing by the purchaser.
In all isntances the final authority should rest with the final Specifications.

7. Patent Indemnity

Purchaser hold seller harmless for an infringement sellers work may constitute on patents held by and third party that result from the direct request for the work made by purchaser in this "work made for hire" agreement.
The Seller hereby agrees to be responsible for all claims against the Purchaser of the Customer for alleged infringement of patents by reason of the Purchaser's or Customer's possession, use, or sake of any materials or equipment furnished hereunder by the Seller or by reason of the performance of any work hereunder by the Seller. The Seller agress to defend at it's sole expense all suits against the Purchaser and/or the Customer and to save and hold harmless the Purchaser and the Customer from and against all costs, expensed, judgements, and damages of any kind which the Purchaser or the Customer may be obliged to pay or incur by reason of any such alleged or actual infringement of a patent or patents. The Purchaser and the Customer agree to render whatever assistance it reasonably can I the way of information and access to records for the defense of any such suit.
This indemnity shall not extend to alleged or actual infringements resulting from the Seller's compliance with the Purchaser's or Customers's design, instructions, processes, or formulas provided, however, that the Seller agrees to be responsible if it is reasonable to assume the the Seller should have been aware of a possible alleged or actual infringement resulting from the Purchaser's or Customer's design, instructions, processes, or formulas and fails to notify the Purchasers of such possibility.

### 8. Assignment of Subcontracting

Neither this order nor any rights, obligations, or monies due hereunder are assignable or transferable (as security for advances or otherwise) without the Purchaser's prior written consent, and except as to purchases of raw materials or standard commercial articles or parts, the Seller shall not subcontract any major portion of the work encompassed by this order without the Purchaser's prior written approval. The Purchaser shall not be required to recognize any assignment or subcontract made without its prior written consent.

The buyer accepts that there will be two other subcontractors working on this project their work will be accepted provided a noncompete and "work made for hire agreement" are in place.

### 9. Proprietary Rights

It is acknowledged that this is a work made for hire agreement and that all Intellectual property rights or patent rights are that of Streetfax Inc. All code in portion or in its complete form remain the property of StreetFax Inc. If the items to be supplied hereunder have been designed in accordance with specifications or data furnished or originated by the Purchaser or its Customer, such items shall not be reproduced except with the approval of the Purchaser and, as applicable, its Customer and all drawings, photographs, data, software, and other written material or information supplied in connection therewith shall at all times remain the property of the Purchaser or its Customer and be returned promptly upon request at the completion, termination or cancellation of this order. In the event that StreetFax defaults on it payment terms rights would be granted to seller.

### 10. Termination

A. DEFAULT – The Purchaser may terminate this order or any part thereof by written notice if the Seller:
   a) fails to make deliveries or to complete performance of its obligations hereunder within the time specified or in accordance with the agreed schedules unless such failure is due to acts of God, strike or other causes which are beyond the control of the Seller.
   b) Fails to comply with the terms and conditions of the purchase order and does not cure such failure within a period of ten (10) calendar days after written notice thereof.
   c) Makes an assignment for the benefit of creditors without prior written consent of the Purchaser, becomes insolvent or subject to proceedings under any law relating to bankruptcy, insolvency, or the relief of debtors.

Should the Purchaser elect to terminate for default, the Purchaser may take possession of all or any of the items to be supplied hereunder which are in the Seller's possession without regard to stage of completion and may complete or cause the work to e completed on such items or may manufacture or procure similar items. Any additional costs or expense incurred by the Purchaser over and above the original purchase price from the Seller plus freight costs shall be for the account of the Seller.

In all events, the Purchaser shall not be or become liable to the Seller or any third party claiming through or under the Seller for any portion of the price of any items that Purchaser elects not to accept following notice of termination for default.

### 11. Liens

The Seller agrees to deliver the items to be supplied hereunder free and clear of all liens, encumbrances, and claims of laborers or material men and the Purchaser may withhold payment pending receipt of evidence in form and substance satisfactory to it of the absence of such items, claims and encumbrances.

### 12. Governing Law

This Purchase Order and any material relating thereto shall be governed by the laws of the state in which the Purchaser's office that issues the order is located.

### 13. Recovery of Damages

If the Seller should recover any damages as a result of antitrust violations in any manner due to price fixing on the part of another manufacturer or Seller, the Seller shall pay over to the Purchaser any ages Purchaser has suffered as a result of the same price fixing within a reasonable time after the damages are recovered by the Seller.

### 14. Notice of Labor Disputes

a) Whenever the Seller has knowledge that any actual or potential labor dispute is delaying or threatens to delay the timely performance of this order, the Seller shall immediately give notice thereof, including all relevant information with respect thereto, to the Purchaser.

b) The Seller shall insert the substance of this clause including this paragraph (b) in any subtier supply agreement hereunder as to which a labor dispute may delay the timely performance of this order except that each such subtier supply agreement shall provide that in the event its timely performance is delayed or threatened by delay by an actual or potential labor dispute, the subtier Seller shall immediately notify its next higher tier Seller or Sellers, as the case may be, of all relevant information with respect to such dispute.

### 15. Indemnity Requirements for Contractors/Seller

Contractor/Vendor shall defend, indemnity and save Street Fax from any and all claims, suits, losses, damages, or expenses, whether caused or contributed to by the negligence of Street Fax, its agents, or employees, or otherwise, on account of injuries to or death of any and all persons whomsoever, including the Contractor/Vendor, subcontractors, employees of Contractor/Vendor, the subcontractor, and of Street Fax and any and all damage to property to whomsoever belonging, including property owned by, rented to, or in the care, custody, or control of the parties hereto arising or growing out of, or in any manner connected with the work performed under this contract, or caused or occasioned, in whole or in party by reason of or arising during the presence of the person or of the property of Contractor/Vendor, subcontractors, their employees, or agents upon or in proximity to the property of Street Fax Notwithstanding the foregoing, nothing herein contained is to be construed as an indemnification against the sole negligence of Street Fax.

### 16. Publicity

Seller shall not publish photographs or articles, give press releases or make speeches about or otherwise publicize the existence or scope of this Purchase Order, or any generalities or details about this Purchase Order without first obtaining the written consent of Buyer.

### 17. Seller's Disclosure

Any information relating to the Seller's designs, manufacturing processes or manufactured products which the Seller may disclose to the Buyer in connection with the performance of the contract may be used by the Buyer for any purpose relating to the contract and to its performance without liability therefor to the Seller.

### 18. General Notes

Seller shall reference this purchase order number on all documents and/or correspondence related to this order.

The signatures below will execute this contract.

Buyer – Paul Ceglia, StreetFax

4/28/03

Seller – Mark Zuckerberg

MZ Zuby 04.28.03

# EXHIBIT C

Case 1:12-cv-00256-RJA Document 61-4 Filed 01/29/14 Page 14 of 29

General Conditions of Purchase

# STREET FAX

## SECTION 1- GENERAL PROVISIONS

### 1. Definitions

The following terms have the meaning specified when used herein:
PURCHASER – Street Fax Inc.
CONTRACTOR/SELLER – The entity, its agents, employees, suppliers, or sub-contractors, furnishing materials equipment, or services hereunder, as identified on Purchase Order.
CUSTOMER – the entity contracting for construction or other services from Purchaser or which the goods and/or services provided hereunder are for incorporation into the work or are required to facilitate completion of Purchaser's contract with such entity.
PRIME CONTRACT - The contract between Purchaser and Corner and all provisions, specifications and drawing referenced therein.

### 2. Entire Agreement

The contract between the Purchaser and Seller shall consist of and be contingent upon the Seller's acceptance of the Purchase Order, the provisions written on the face thereof, all provisions, specifications, and drawings referred to therein and these printed terms and conditions with appendixes. In the event of conflict between the provisions written on the face of this Purchase Order and those contained in these printed terms and conditions, the provisions written on the face of the Purchase Order shall prevail. This Purchase Order shall not be modified either orally or by failure of either party to enforce their rights hereunder. It is a condition of this Purchase Order that provisions printed on or otherwise contained in any quotations, order acknowledgement, shipping document, or other instrument of the seller shall be of no force or effect.

### 3. Payment Terms

No insurance or premium charges or price increases will be allowed unless authorized by Purchaser in writing. No increase in price from that stated on the face hereof will be considered throughout the duration of the order.
The Agreed upon Cost that the Seller and the Buyer have agreed upon are as follows: Buyer agrees to pay seller the Sum of five hundred dollars($500) at the onset of this contract. Upon completion Buyer agrees to pay seller an additional one thousand dollars ($1,000.00 )US dollars within Thirty days of delivery of the Final approved work. Late fees are agreed to be a 5 % deduction for the seller if project is not completed by due date and an additional 1% deduction for each day the project is late thereafter. Buyer agrees to pay a 2% late fee per month on the balance owed the seller and further agrees to pay a minimum of $500 per month to seller or acknowledges that failure to comply will result in the seller having the right to offline the site Streetfax.com and remove his work until it is paid in full.

### 4. Changes

a) BY PURCHASER – Purchaser agrees that no further revision shall be implemented until or unless approved by seller. Those revisions shall be transmitted for writtten approval to seller.
b) BY SELLER – The Seller agrees that no further revision shall be implemented until or unless approved by Street Fax. Those revisions shall be transmitted for written approval to the Street Fax Purchasing Department.

### 5. Purchaser's Property

Does not include the price of renting the server, and registering VeriSign and SSL.

Data, drawings, tooling, patterns, materials, specifications, and any other items or information supplied to Seller under this order are the property of the Purchaser and must be returned upon completion of this order. Such items or information are to be used solely in the performance of the work by the seller and shall not be used or disclosed for any other purpose whatsoever without Purchaser's prior express written consent.

### 6. Settlement of Controversies

In the event that this purchase order is for materials or equipment which will be incorporated in the Customer's work under the Prime Contract, and in the case of disputes between the Purchase and the Customer or between the Purchaser and the Seller regarding materials or equipment to be furnished by the seller, the Seller agrees to be bound to the same extent that the Purchaser is bound by the terms of the Prime Contract, and by any and all decisions and determinations made thereunder, provided that the Seller shall have the right to participated in the settlement of any dispute with the customer to the extent that the Seller will be affected thereby.
No interest shall accrue on any payment(s) otherwise due the Seller, which is withheld or delayed as a result of any such dispute except to the extent that the Purchaser is ultimately paid interest on monies due the Seller. The Seller shall not be held liable if the Seller follows instructions of the Purchase and it is later determined that the Purchaser's instructions were not in compliance with the terms and specifications of the Prime Contract. Pending final disposition of a dispute hereunder, the Seller shall carry on the work unless otherwise agreed in writing by the Purchaser.
In all instances the final authority should rest with the final Specifications.

### 7. Patent Indemnity

Purchaser hold seller harmless for any infingment sellers work may constitute on patents held by any third party that result from the direct request for work made by purchaser in this "work made for hire" agreement.
The Seller hereby agrees to be responsible for all claims against the Purchaser of the Customer for alleged infringement of patents by reason of the Purchaser's or Customer's possession, use, or sake of any materials or equipment furnished hereunder by the Seller or by reason of the performance of any work hereunder by the Seller. The Seller agrees to defend at its sole expense all suits against the Purchaser and/or the Customer and to save and hold harmless the Purchaser and the Customer from and against all costs, expensed, judgments, and damages of any kind which the Purchaser or the Customer may be obliged to pay or incur by reason of any such alleged or actual infringement of a patent or patents. The Purchaser and the Customer agree to render whatever assistance is reasonably can in the way of information and access to records for the defense of any such suit. This indemnity shall not extend to alleged or actual infringements resulting from the Seller's compliance with the Purchaser's or Customer's design, instructions, processes, or formulas provided, however, that the Seller agrees to be responsible if it is reasonable to assume that the Seller should have been aware of a possible alleged or actual infringement resulting from the Purchaser's or Customer's design, instructions, processes, or formulas and fails to notify the Purchasers of such possibility.

### 8. Assignment of Subcontracting

Neither this order nor any rights, obligations, or monies due hereunder are assignable or transferable (as security for advances or otherwise) without the Purchaser's prior written consent, and except as to

purchases of raw materials or standard commercial articles or parts, the Seller shall not subcontract any major portion of the work encompassed by this order without the Purchaser's prior written approval. The Purchaser shall not be required to recognize any assignment or subcontract made without its prior written consent.

Subcontractors must have a "work made for hire agreement" in place with StreetFax.com before commencing their work.

9. Proprietary Rights

It is acknowledged that this is a work made for hire agreement and that all Intellectual property rights or patent rights are that of Streetfax Inc. All code in portion or in its complete form remain the property of StreetFax Inc. If the items to be supplied hereunder have been designed in accordance with specifications or data furnished or originated by the Purchaser or its Customer, such items shall not be reproduced except with the approval of the Purchaser and, as applicable, its Customer and all drawings, photographs, data, software, and other written material or information supplied in connection therewith shall at all times remain the property of the Purchaser or its Customer and be returned promptly upon request at the completion, termination or cancellation of this order. In the event that StreetFax defaults on it payment terms rights would be granted to seller.

10. Termination

A. DEFAULT – The Purchaser may terminate this order or any part thereof by written notice if the Seller:
   a) fails to make deliveries or to complete performance of its obligations hereunder within the time specified or in accordance with the agreed schedules unless such failure is due to acts of God, strike or other causes which are beyond the control of the Seller.
   b) Fails to comply with the terms and conditions of the purchase order and does not cure such failure within a period of ten (10) calendar days after written notice thereof.
   c) Makes an assignment for the benefit of creditors without prior written consent of the Purchaser, becomes insolvent or subject to proceedings under any law relating to bankruptcy, insolvency, or the relief of debtors.

Should the Purchaser elect to terminate for default, the Purchaser may take possession of all or any of the items to be supplied hereunder which are in the Seller's possession without regard to stage of completion and may complete or cause the work to e completed on such items or may manufacture of procure similar items. Any additional costs or expense incurred by the Purchaser over and above the original purchase price from the Seller plus freight costs shall be for the account of the Seller.

In all events, the Purchaser shall not be or become liable to the Seller or any third party claiming through or under the Seller for any portion of the price of any items that Purchaser elects not to accept following notice of termination for default.

11. Liens

The Seller agrees to deliver the items to be supplied hereunder free and clear of all liens, encumbrances, and claims of laborers or material men and the Purchaser may withhold payment pending receipt of evidence in form and substance satisfactory to it of the absence of such items, claims and encumbrances.

12. Governing Law

This Purchase Order and any material relating thereto shall be governed by the laws of the state in which the Purchaser's office that issues the order is located.

13. Recovery of Damages

If the Seller should recover any damages as a result of antitrust violations in any manner due to price fixing on the part of another manufacturer or Seller, the Seller shall pay over to the Purchaser any ages Purchaser has suffered as a result of the same price fixing within a reasonable time after the damages are recovered by the Seller.

14. Notice of Labor Disputes
a) Whenever the Seller has knowledge that any actual or potential labor dispute is delaying or threatens to delay the timely performance of this order, the Seller shall immediately give notice thereof, including all relevant information with respect thereto, to the Purchaser.

b) The Seller shall insert the substance of this clause including this paragraph (b) in any subtier supply agreement hereunder as to which a labor dispute may delay the timely performance of this order except that each such subtier supply agreement shall provide that in the event its timely performance is delayed or threatened by delay by an actual or potential labor dispute, the subtier Seller shall immediately notify its next higher tier Seller or Sellers, as the case may be, of all relevant information with respect to such dispute.

Work agreement. The scope of this contract is based on the following agreement for work to be performed:

CONSULTING (10 hours)
- review of business concept, site services and goals, target audience
- determining user interface design with respect to site functionality
- clarifying roles of designer/developer and programmer

DESIGN (10 hours)
- incorporating existing concepts/logo into a professional, easy-to-use graphical interface
- laying out a flexible template that can be used throughout the site to present various dynamically generated textual and graphical content

DEVELOPMENT (10 hours)
- converting designs to working HTML
- optimizing imagery and code for optimum efficiency and browser compatibility
- setting up style sheets and template code for easy plug-and-play implementation of dynamic content

TOTAL PROJECT BID: $1500.00

PROVISIONS
- work to begin/proceed upon signing of contract and receipt of pre-payment (previously determined to be $500)
- design limited to one round of revisions
- design limited to one homepage design and one universal subpage design
- development to include delivery of all static pages and a single template to serve for all dynamic pages
- development limited to pages included on the site map sent 4/12/2003
- development to begin upon delivery of complete and finalized content for all static pages (1-6, 8-10, 11, 12, 22, 25 and 26)
- any additional work (further design/content revisions, additional templates, additional pages, etc.) to be billed on top of the total project bid

24. Indemnity Requirements for Contractors/Seller

Contractor/Vendor shall defend, indemnity and save Street Fax from any and all claims, suits, losses, damages, or expenses, whether caused or contributed to by the negligence of Street Fax, its agents, or employees, or otherwise, on account of injuries to or death of any and all persons whomsoever, including the Contractor/Vendor, subcontractors, employees of Contractor/Vendor, the subcontractor, and of Street Fax and any and all damage to property to whomsoever belonging, including property owned by, rented to, or in the care, custody, or control of the parties hereto arising or growing out of, or in any manner connected with the work performed under this contract, or caused or occasioned, in whole or in party by reason of or arising during the presence of the person or of the property of Contractor/Vendor, subcontractors, their employees, or agents upon or in proximity to the property of Street Fax Notwithstanding the foregoing, nothing herein contained is to be construed as an indemnification against the sole negligence of Street Fax.

25. Publicity

Seller shall not publish photographs or articles, give press releases or make speeches about or otherwise publicize the existence or scope of this Purchase Order, or any generalities or details about this Purchase Order without first obtaining the written consent of Buyer.

26. Seller's Disclosure
Any information relating to the Seller's designs, manufacturing processes or manufactured products which the Seller may disclose to the Buyer in connection with the performance of the contract may be used by the Buyer for any purpose relating to the contract and to its performance without liability therefor to the Seller.

27. General Notes
Seller shall reference this purchase order number on all documents and/or correspondence related to this order.

CONTRACTOR/SELLER:

Randy Kato
527 Gates Avenue #4
Brooklyn, NY 11216

Signed: [signature]
Dated: May 5, 2003