EanQcegC

```
 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x
      UNITED STATES OF AMERICA
 3
                  v.                        12 CR 876 (ALC)
 4
      PAUL CEGLIA
 5
                      Defendant
 6    ------------------------------x

 7                                          New York, N.Y.
                                            October 23, 2014
 8                                          10:30 a.m.

 9
      Before:
10
                         HON. ANDREW L. CARTER, JR.
11                                          District Judge

12
                              APPEARANCES
13
      PREET BHARARA
14         United States Attorney for the
           Southern District of New York
15    JANIS ECHENBERG
      NIKETH VELAMOOR
16         Assistant United States Attorney

17    LAW OFFICE OF ROBERT R. FOGG
           Attorneys for Defendant
18
      ROBERT R. FOGG
19    GIL MESSINA
      TIMOTHY MAY
20

21

22

23

24

25
```

EanQcegC

| 1 | (In open court; case called) |

2          THE DEPUTY CLERK:  Criminal cause for a status

3     conference in the number United States versus Paul Ceglia

4     counsel please state your appearance.  For the government.

5          MS. ECHENBERG:  Good morning, your Honor Janis

6     Echenberg for the government.  With me at counsel table is Nick

7     Velamoor from my office and Ann Marcullino, who is an intern in

8     our office.

9          THE DEPUTY CLERK:  For the defendant.

10          MR. FOGG:  Good morning, your Honor.  Robert Ross Fogg

11     for Mr. Paul Ceglia who is on the telephone line.  Next to me

12     co-counsel Gil Messina, and Timothy May.

13          THE COURT:  Good morning.

14          I have before me several motions.  Primarily it is a

15     motion for the disclosure of certain documents from

16     Mr. Ceglia--

17          Mr. Ceglia, are you on the phone?  Can you hear us?

18          THE DEFENDANT:  I can, your Honor.

19          THE COURT:  -- for certain documents from Mr. Ceglia's

20     former attorneys in the civil matter.

21          I have reviewed everything.  I did have a few

22     questions.  First of all, there is also a motion to strike the

23     reply that has been filed by the defendant.  I will deny the

24     motion to strike the reply.  Again, I can disregard whatever it

25     is I need to disregard in this case, and I will strike the

EanQcegC

1   motion to reply.

2         I have some questions.  Regarding the documents in

3   question, my understanding is a walled-off AUSA has possession

4   of these documents.  Can I just get some further elucidation as

5   to how this walled-off AUSA came into possession of these

6   documents?

7         MR. VELAMOOR:  Certainly, your Honor.  I am the

8   walled-off AUSA who has possession of these documents.

9         I have taken possession of them following essentially

10  discussions between counsel.  At that time it was Mr. Ceglia's

11  former counsel from Federal Defenders, Mr. Patton.  There was

12  email correspondence on how to proceed with respect to these

13  documents that were possession of the law firms.

14        Mr. Patton and counsel for the law firms agreed that

15  these documents would come to me, and only to me, so that I

16  could review them and, if necessary, engage in whatever

17  litigation was necessary to resolve issues with respect to

18  those documents.

19        So, following those discussions, counsel from these

20  law firms produced the documents directly to me with no copy to

21  Ms. Echenberg or any of the other counsel who are actually

22  involved in prosecuting the matter.

23        I have the documents.  They are available to me on a

24  database that only I have access to and only I have access in

25  our office.

EanQcegC

1          THE COURT:  Thank you.

2          Let me hear from defense counsel regarding this.  My

3     understanding is defense counsel takes some issue with the way

4     these documents were given to the walled-off AUSA?

5          MR. FOGG:  Yes, Judge, we do.

6          First of all, whenever there is a crime fraud

7     exception application that is put forth to the court, documents

8     are not transferred to a wall or anyone else, a pseudo-wall or

9     whatever.  Usually the documents will sit with each other's

10    party until we discuss this, and the documents would actually

11    be forwarded to your Honor for your review or your Honor would

12    place them someplace other than someone that the U.S.

13    Attorney's office selects -- the prosecutor, the adversary.

14         Counsel made mention of an email that was an

15    agreement.  I have actually sought this agreement.  I haven't

16    received any agreement.  This is the first time I heard there

17    was an email agreement.  If I heard it incorrectly, please

18    correct me.  However, I heard there was an email discussion

19    where Mr. Patton agreed to transfer these documents.

20         The problem with that is that based on my discussions

21    with my client, Paul Ceglia, that discussion with him has never

22    occurred.  Based on my prior discussions with Mr. Patton, I

23    have never received an indication that my client actually had

24    that communication.  So, therefore there was no consent by

25    Mr. Ceglia to transfer any documents over to anyone for any

EanQcegC

purpose, nor would he allow such a thing.

THE COURT:  If that is the case, what is it you would like me to do about that?

MR. FOGG:  Well, first, Judge, I want the documents back, all of them.

Second, Judge, I don't believe that the crime fraud exception application would be permissible at this time because all documents that were forwarded over that they base their application upon have been done so without my client's consent.

THE COURT:  What do you mean?  Forgetting the documents, let's assume for the sake of argument that the walled-off AUSA has actually done what the walled-off AUSA is supposed to do and hasn't shared any of the actual documents with the AUSAs who are prosecuting this case; but just in terms of the privilege log, which is what I have been looking at, are you saying that looking at the privilege log would be inappropriate in terms of determining whether or not the crime fraud exception does apply or might apply?

MR. FOGG:  Well, Judge, I believe counsel for the government has actually admitted or at least conceded and actually stated that these are documents that are privileged. They are, but there is a breach of privilege here because the breach occurs when counsel without consent of my client transfers them to a third party, whether it be a wall or someone else; without consent of my client.

EanQcegC

```
 1          THE COURT:  Other than wanting the documents back,
 2   what would you be asking me to do about that?  Let's just
 3   assume arguendo that I were today or at some point to find that
 4   the crime fraud exception applies to certain of those documents
 5   which I have not seen yet, but to certain documents.  The fact
 6   that you claim these documents were turned over to a walled-off
 7   AUSA without your client's consent would have what consequence?
 8          MR. FOGG:  Well, considering that this walled-off AUSA
 9   is actually in the U.S. Attorney's office, and for
10   clarification of my client, is sitting right at the front table
11   shoulder to shoulder with the attorney for the U.S. Attorney's
12   office, is part of the U.S. Attorney's office.  This is some
13   sort of pseudo-separation of ideas and concepts in their
14   office.
15          My suggestion, Judge, return those documents to us and
16   have another person appointed to actually receive them for the
17   purposes of the Court or simply if the Court determines later
18   on at some other time that the crime fraud exception does apply
19   and this Court determines that this court needs to review these
20   documents, then we give it straight to you, your Honor,
21   straight to your court.
22          THE COURT:  Other than the means of transmitting these
23   documents to me, if I determine that the crime fraud exception
24   might apply, what else, if anything, would you be asking for as
25   a result of this?
```

EanQcegC

```
 1            MR. FOGG:  Well, I would ask that you strike their

 2    request; that you deny their request for the application based

 3    on this breach of confidentiality.

 4            THE COURT:  What basis would I have to do that?

 5            MR. FOGG:  Well, Judge, the crime fraud exception came

 6    about after -- their application came about after they received

 7    this information.  Based on the receipt of this information,

 8    then they made their application.  Had they not had that

 9    information from the beginning or not been able to receive it,

10    they may not have made that application.  I don't know that for

11    a fact, but I would say based on the facts that we see today,

12    documents are handed over.  Now they make the application.

13            THE COURT:  Does the government have any response to

14    that?

15            MR. VELAMOOR:  I actually have several responses, your

16    Honor.  First of all, in terms of the procedure, I am not

17    familiar with the procedure that Mr. Fogg described.  We did

18    what I understand to be customary in this district.  Mr. Patton

19    is very familiar, I think, to this Court, both your Honor's

20    court and all the other courts in this district.  If there is

21    any reason to believe he acted inappropriately in any way, we

22    operated in the way that we often operate in circumstances like

23    this with a walled AUSA.  So I really don't understand what the

24    problem is with respect to that.

25            We have not cited a single of the documents in support
```

EanQcegC

1    of our application.  The Court knows that.  So I am not sure

2    why there is any issue with respect to that.  We are not

3    relying on the substance of any of these documents in pursuit

4    of our motion.

5            In terms of the defendant's knowledge, again, I think

6    this is an issue, frankly, between defendant and his counsel.

7    I don't think it changes the substance or the merits of the

8    motion in any way.  I would note parenthetically that we looked

9    at some transcripts from prior court conferences.  Of course I

10   was not present at these court conferences, but I believe

11   during these conferences, the general procedure that we were

12   pursuing was discussed at these conferences earlier -- I guess

13   last year, in June and September of 2013.  So it was, frankly,

14   surprising to us that it was surprising to Mr. Ceglia.  It's

15   been part of the case that's been discussed.

16           THE COURT:  OK.  Thank you.  Hold on a second.  I will

17   be back.  Just give me a moment.

18           (Pause)

19           THE COURT:  Sorry.  Just wanted to discuss something

20   with my law clerk briefly.

21           Let's move on to the crime fraud exception.  I see I

22   have seen the parties' submissions on this.  Let me hear

23   briefly from each side as to why they feel the crime fraud

24   exception does or does not apply or might apply.

25           I guess at the outset, defense counsel in the briefs

EanQcegC

1    spent a large portion of the brief talking about why these

2    communications were privileged or the subject of work product.

3    I don't think there is any dispute about that.

4            Let's just move on to the issue of the crime fraud

5    exception and why the parties feel that it applies or doesn't

6    apply starting with counsel for the government

7            MR. VELAMOOR:  Yes, your Honor.  As we set forth in

8    our motion, we think the standard here is straightforward.  As

9    the Court knows, we need to establish that there is probable

10   cause and to believe that a crime of fraud has been attempted

11   or committed and that the communications we're seeking were in

12   furtherance of that crime.

13           We think in this particular case that there were

14   numerous findings by other courts and other entities of

15   probable cause that a crime was committed, specifically that

16   the defendants attempted to fraud Mr. Zuckerberg and Facebook,

17   and there also have been findings, I think it's quite clear in

18   the record, that this lawsuit was a central part of that fraud

19   and it was pursued for the purpose of achieving this fraud.

20           So I think this is a circumstance, this is a case --

21   it's an unusual case, but it happens to be a case that fits, I

22   think, precisely within the scope of what the crime fraud

23   exception applies to.

24           THE COURT:  Thank you.

25           Let me hear from defense counsel.

1          MR. FOGG:  Yes, your Honor.

2          Your Honor, the crime fraud exception does not apply.

3     Now, they say that there is probable cause to establish the

4     crime fraud exception applies.  What they are actually

5     referring to, your Honor, is a probable cause standard that is

6     set out in their briefs that basically lays out that a prudent

7     person would have a reasonable basis to suspect the

8     perpetration of a crime or fraud and that the communication

9     were in furtherance thereof.  All that to prove probable cause

10    to lead to the crime or fraud was attempted or committed and

11    that the communications were in furtherance of.

12         Now, they cite several different cases.  All of these

13    cases that they cite do not pertain to the issues at hand.  A

14    civil lawsuit is the basis of this wire and mail fraud case.

15    No cases have that except for one.  Now, with that one case, it

16    is *In Re: Richard Roe.*

17         Now, *In Re: Richard Roe* was very, very much on point.

18    They cited it through and they gave this Court preamble within

19    their motions.  Out of 17 pages, only two pages apply that are

20    directly on point.  What they do not tell you, Judge, is they

21    cite *In Re: Roe* 68 F. 3d 40.

22         The problem is *In Re: Richard Roe* was a case that was

23    brought to the Court of Appeals, and then it was remanded back

24    to the court, the trial court with instructions.  That's *In Re:*

25    *Roe I.  In Re: Roe II* came back to the Court of Appeals and

EanQcegC

1    they set out a specific standard that actually meets this case.

2    It parallels this case.

3            What they keep citing is *In Re: Richard Roe* 68 F. 3d

4    38, that is *Roe I*.  That was October 13, 1995.  They say they

5    cited another one, which is 94, which is even one before that.

6    But the last case was *In Re: Richard Roe, Inc.*, 168 F 3d 69.

7    That was February 3, 1999.  In that case, the court analyzed

8    the government's theory, and stated that the government's

9    theory was that the act of defending the lawsuit in question,

10   it says here, except Mr. Ceglia is prosecuting the lawsuit, as

11   itself being in furtherance of the fraud.  Now that was the

12   government's theory there.

13           The government's theory here is Mr. Ceglia prosecuting

14   a civil lawsuit, and that is the fraud.  And everything

15   afterwards was in furtherance of the fraud.

16           Now, the court then went on to -- state, and your

17   Honor, you can read this -- but it states that the government's

18   theory would collapse in two-part test for the crime fraud

19   exception establishing the one if as the government argues

20   there is probable cause that a fraud has been committed, that

21   consists at least partially of engaging in litigation, then

22   probable cause would arguably exist to find that every document

23   prepared in connection with the defense of that litigation was

24   in furtherance of the fraud and therefore not privileged.

25           Now, what this court went on to say is the standard,

EanQcegC

1    and the standard is probable cause that the litigation or an

2    aspect thereof, had little or no legal or factual basis, and

3    was carried on substantially for the purpose of furthering the

4    crime of fraud.  That is the standard to be applied.  It is not

5    the reasonableness.  That's the Second Circuit, that's here.

6    That's the law of our land.  That's the law of this case.

7            So if that's the case, Judge, they would have to

8    establish that there is no legal or factual basis for the case

9    itself.  That's why in our motion we submitted to your Honor

10   the experts:  The experts that say the ink matched; the pages

11   matched; it comes from the same trees; that the staples go

12   through the same holes through the first page and second page;

13   and when the staples come back, they create an indentation

14   under the second page which is reflected on the first page.

15   They compared the year of the ink.  They compared all of these

16   things to show that, well, there is a legal basis here.

17           The government says one contract is a fraud.  We say

18   it's not.  That's a triable issue of fact.  That's a triable

19   issue of fact.  So, therefore, they cannot show that there is

20   no legal or factual basis for this.  And if they do, Judge,

21   then I request a probable cause hearing because now what

22   they're doing is they are pulling up cases, they're pulling up

23   decisions from other courts just to bog the issue down to

24   prejudice this court.

25           Well, two judges in Buffalo have decided.  Well, those

EanQcegC

1   are currently under appeal.  Well, there was a complaint, and

2   the judge issued a warrant on that to establish probable cause.

3   No.  That happens in every case.  Well, the grand jury indicted

4   the case.  Well, that happens in every case.  But now as we

5   move to dismiss, the court says, if I could reflect back to a

6   prior date before me, the court says to Mr. Ceglia, well, show

7   me a case, a criminal case, that is on point.

8         They have not done that.  I have just done this.  I

9   just did this.  What we've got is we've got a criminal case,

10  but now it's their burden to prove probable cause, so show a

11  criminal case in this circuit right on point.  Well, there is

12  one:  *In Re: Richard Roe*, *Roe II*, that's right on point.  And

13  for them to establish this basis, they have to establish

14  probable cause beyond what they just simply thought or what

15  they simply told you.

16        So the other issue that I see, Judge, is that there is

17  a recent lawsuit concerning these attorneys that they're

18  seeking the information from.  They have not been noticed here.

19  They haven't been given an opportunity to actually put up their

20  objections.  Because if we actually release these documents,

21  then you've released documents that could adversely affect the

22  attorneys on a pending case.

23        Just recently Mr. Ceglia has sued several attorneys,

24  quite a few of them -- Facebook.  Excuse me.  Facebook has sued

25  several attorneys, Facebook, Inc. and Mark Elliot Zuckerberg

EanQcegC

```
1    has sued DL Piper.  That's one of the law offices.  That's one

2    information.  They should be here.  They should have a right to

3    say.  And this court shouldn't turn that information over

4    because it will be prejudicial to their case as well.

5            Your Honor, what they point to in their case, they got

6    the indictment, they got a complaint, a decision from two

7    judges in Buffalo.  They say those things to establish probable

8    cause, but they haven't forwarded any probable cause at all,

9    none.

10           By virtue of the fact that those issues were already

11   decided, Judge, three judges have already made a decision, how

12   could you go against three judges?  Allowing this information,

13   Judge, you are going to have to make an issue as to the triable

14   issue of this case.  They are saying the contract is a fraud.

15   Your Honor, you are going to have to decide whether this

16   contract is a fraud before we even get to a trial.  And if

17   Mr. Ceglia is cloaked in the presumption of innocence, then we

18   are just stripping that away from him.

19           THE COURT:  Why is it you say that I have to determine

20   whether or not this contract is fraudulent?  And by what

21   standard are you talking about?  You keep talking about triable

22   issues of fact.  It seems to me that you are wanting me to make

23   some sort of pretrial determination beyond a reasonable doubt

24   or beyond any sort of doubt that this is -- I am not going to

25   be the ultimate trier of fact of this matter.  The issue is
```

EanQcegC

probable cause.  You have experts who say one thing about that

contract.  The government has experts who will say something

else.  You say this is a triable issue of fact.  I agree, it is

a triable issue of fact, a triable issue of fact really doesn't

mean a whole lot in the criminal context.

In the civil context, that could mean it would be

inappropriate to impose some sort of summary judgment but that

has nothing to do with whether there is probable cause.  The

standard here is probable cause, whether or not there is

probable cause to believe that a fraud has been committed.  I

understand your position is that a fraud has not been

committed, and that the contract is genuine, and that is

something that it seems to me ultimately needs to be decided by

a jury, by a standard of beyond a reasonable doubt.  It seems

that you are inviting me to make the ultimate determination in

this case, which is inappropriate for me to do, and it's not my

real.

My role at this point in terms of dealing with this

crime fraud exception is just to determine whether or not based

on the information before me, there is probable cause to

believe that a crime has been committed as a result of this,

and, particularly, a fraudulent crime, wire fraud, mail fraud

and the like, by the government's theory is that the initiation

of this entire lawsuit was fraudulent.

Obviously you disagree with that, but it seems to me

EanQcegC

1    that at a minimum -- well, you won't concede -- but at a

2    minimum it seems to me that I am not sure how you can dispute

3    that at a minimum there is probable cause regarding the

4    contract regarding this issuance of the contract.

5         I know you believe that the contract is genuine.  You

6    have experts who believe that the contract is genuine and the

7    jury will decide -- let me rephrase this.  The jury will not

8    decide whether or not the contract is actually genuine.  The

9    jury will decide whether or not the government has proven its

10   case beyond a reasonable doubt.

11        But I want to hear more from you as to why there is

12   not probable cause, which is a much lower standard than what it

13   seems to me that you are inviting me to apply here.

14        MR. FOGG:  Well, Judge, I do not invite, I do not

15   attempt, nor do I in any way try to suggest that I am asking

16   this Court to invade the province of some jury that will decide

17   the issue beyond a reasonable doubt.  That is not what I am

18   doing.

19        What I am simply saying is in order to get to the

20   standard which was set by *In Re: Richard Roe*, and that standard

21   is clear that the litigation or any aspect thereof had little,

22   even no legal or factual basis, the litigation itself.  So,

23   therefore, they would have to establish that Mr. Ceglia when he

24   initiated his civil lawsuit -- now this is the probable cause

25   burden -- *In Re: Richard Roe*, they have to establish that it

1    had no legitimate basis; that it was baseless.  That is

2    something they have to establish.

3          They haven't done that here.  They haven't established

4    that; that the actual litigation brought forth by Mr. Ceglia

5    had no basis whatsoever.  Well, how do you do that?  They have

6    experts, experts that can't even determine -- can't make a

7    determination, can't come to a conclusion on the contract that

8    they believe is correct.

9          We have experts that says that the contract that

10   Mr. Ceglia has is genuine, is authentic.  They have experts,

11   and I believe -- now this is an issue that I need clarity on.

12   There are two pages.  One page was actually signed by

13   Mr. Zuckerberg.  Is it the government's position today that

14   Mr. Zuckerberg signed that second page?  That's a question I

15   have.

16          THE COURT:  Before we get to that question, let me

17   just ask you this:  Hypothetically speaking, if the contract in

18   question had been altered and if Mr. Ceglia altered that

19   contract, would you then not concede that there is probable

20   cause to believe that -- forget probable cause.

21          If the contract is altered and had been altered by

22   Mr. Ceglia, would you not concede that at least a part of that

23   litigation was baseless if that were true?  Wouldn't that mean

24   that a part of that litigation at a minimum was baseless?

25          MR. FOGG:  I don't want to concur with you, Judge.

EanQcegC

         THE COURT:  I'm not saying that you agree with that

factually, but I'm saying assuming arguendo that Mr. Ceglia

altered that contract and then tried to collect a money

judgment based on an altered contract, wouldn't you concede

that at least, if that were true -- I'm not saying it is

true -- but if that were true, at a minimum that portion of the

litigation would be baseless, correct?

         MR. FOGG:  I would say if he attempted to collect a

money judgment, yes.  But there is no attempt to collect a

money judgment.  There is only attempt to bring a lawsuit, and

under *Noerr-Pennington* --

         THE DEFENDANT:  Your Honor --

         THE COURT:  Hold on.  Hold on.  Even forgetting the

money judgment, that would still be baseless if there is still

a claim that what has been altered, what is false is true,

that's baseless, correct?

         MR. FOGG:  I would agree, Judge.

         THE COURT:  And that would certainly lead to an

inference that the entire litigation was baseless, correct?

         MR. FOGG:  I would say no, Judge.  I wouldn't say that

the entire litigation --

         THE COURT:  Let's say it wouldn't prove it, but that

would lead to an inference.  Again, we are talking about

probable cause here.  I am not that saying any of these things

are definitively true one way or another, but it seems to me

EanQcegC

that I have probable cause to believe that a crime has been

committed, and I have probable cause before me based on what

the government has submitted, based on the complaint, based on

the indictment, forgetting the decisions of other judges in

another district, but just based on the indictment and the

complaint and the other information submitted by the

government, it seems I have probable cause to believe that a

crime has been committed.

Certainly the grand jury felt there was probable cause

that a crime has committed because they indicted Mr. Ceglia.

But it seems to me that I have probable cause to believe that a

crime has been committed and that a fraud has been committed,

and that there is probable cause.  That does not mean that

Mr. Ceglia is guilty of this crime.  That does not mean that

the government will be able to prove Mr. Ceglia's guilt beyond

a reasonable doubt, but it does seem to me that based on what I

have, and you have these other arguments to the contrary, that

there is probable cause.  But let me hear from you a little bit

more on this, counsel, if you have anything else.

I am inclined to believe -- let me tell you where I am

leading.  I obviously agree with you in terms of the legal

standard that you laid out.  I don't think that the government

was trying to go with a different legal standard, but that

legal standard that was set out in *Jacobs* and in *Roe* is that in

order for the crime fraud exception to apply, as the Second

Circuit laid out in *United v. Jacobs*, the government must

demonstrate that there is a factual basis for a showing of

probable cause to believe that a fraud or crime has been

committed, and that the communications in question were in

furtherance of the fraud or crime.

I believe that I have a factual basis that the

government has demonstrated for a showing of probable cause to

believe that a fraud or crime has been committed.

As to the second part, that I do not have yet.  It

seems to me that it would be appropriate for me to conduct an

in camera review because the fact that there is probable cause

to believe that a fraud or crime has been committed does not

mean that all of the documents that are mentioned are subject

to the crime fraud exception, or that any of the documents that

have been admitted are subject to the crime fraud exception.

MR. FOGG:  Exactly.

THE COURT:  That second part still needs to be shown

that the communications were in furtherance of the fraud or

crime, and that I don't believe I have in front of me yet.

That is why I think it would be appropriate for me to conduct

an in camera review.  Let me give defense counsel another

opportunity to be heard.  That is where I am leading.  I will

give you another opportunity to be heard on this.

It seems pretty clear that the first part of the crime

fraud exception has been met.  As to the second part, it seems

EanQcegC

```
 1    to me that I would be required to conduct an in camera review

 2    to make sure that these communications and questions were

 3    intended to further the commission of that crime and that they

 4    were intended to facilitate or conceal the crime.  That I

 5    cannot do based on a privilege log.  I actually have to look at

 6    the communications.

 7            But go ahead, Counsel.

 8            MR. FOGG:  Well, Judge, the second part, like I said,

 9    if it was borne out of the litigation, the whole concept of

10    crime fraud exception two-part test would collapse because

11    every case that they bring forth would always be supported by

12    probable cause because of an indictment, probable cause because

13    of a complaint.  So, as in In Re: Richard Roe says is that the

14    theory actually collapses the two-part test.

15            Now, I know your Honor states that the court believes

16    that there is probable cause, at least in part.  So, therefore,

17    I disagree.  I take objection and I take exception to that,

18    Judge.

19            However, Judge, going on to the second part of the

20    test, the second part of the test is, yes, they have to

21    demonstrate there is some communication.  There is no

22    communication for which they have demonstrated, as the Court

23    amply stated.  And then they are asking for this enormous

24    amount of all, all communications whatsoever.  They need to be

25    able to point to something specific other than the fact that
```

EanQcegC

```
 1   they have already charged Mr. Ceglia with mail fraud, wire

 2   fraud.

 3            THE COURT:  Thank you.

 4            Again, it seems to me too your point -- and I don't

 5   want to belabor this too much longer -- but Richard Roe, that

 6   case is very different from this case.  It is one thing to

 7   defend a civil lawsuit when you are hauled into court and you

 8   are defending yourself in a civil lawsuit versus the allegation

 9   here that Mr. Ceglia initiated a lawsuit based on a fraud,

10   initiated a fraudulent lawsuit as a plaintiff.  There is an

11   entirely different sort of actual scenario that we are talking

12   about here.  Let's leave it at that.

13            That is certainly very distinguishable, but as you may

14   have gathered from what I said before, I am not inclined to

15   turn over all of these documents to the government.  I am

16   inclined to conduct a lengthy, rigorous, in camera review of

17   all of these documents to determine whether the second prong of

18   the crime fraud exception applies.

19            If the second prong does not apply to any of those

20   documents, then none of those documents would be turned over.

21   If it applies to some, then some.  If it applies to all, then

22   all.

23            That's where I'm leading.  Go ahead, counsel.

24            MR. FOGG:  Judge, I apologize, these cases have

25   similarities and differences.  From this point we have not had
```

1    a criminal case from the circuit that actually addressed civil

2    litigation, whether it's defending or prosecution.  We have a

3    case.

4         So basically the analogy is, it is litigation.  The

5    crime which was mail and wire fraud that this gentlemen was

6    brought in on, yes.  It's the same as here.  It's all based on

7    civil litigation.  That is a direct analogy.  However, it is

8    true there are differences.  One, Mr. Ceglia is prosecuted.  *In*

9    *Re: Roe*, he was a defendant.  And that's true.  We accept that.

10   However, we've gotten a lot closest to an analogous case than

11   we had before.

12        THE COURT:  Thank you.

13        Let me hear from the government.

14        MR. VELAMOOR:  I don't plan on discussing the content

15   of any emails, but I will say briefly, I agree that the *Roe*

16   case is relevant.  I also agree that the distinction the Court

17   just drew about prosecuting a case as opposed to defending a

18   case is also very important.  I think that difference benefits

19   the government's position in this case, because I think that

20   Roe contemplates that in this instance where the act of

21   litigating is part of a fraud, the implication of that is that

22   all the documents get turned over because that implies that the

23   attorney/client relationship was pursued in order to achieve a

24   fraudulent result.

25        What *Roe* did not do was then narrow its focus of what

EanQcegC

1   the government could get as a result of that.  They acknowledge

2   that in the instance where the act of litigating is part of the

3   fraud, the likely result of that is all the documents are going

4   to get turned over.

5           So, in that instance, it is important then to make

6   sure there is no factual basis.  At least there's probable

7   cause if there is no factual basis.  I think that's what we've

8   shown.

9           So, again, I don't believe the cases require us, for

10  example, to establish that the substance of any document or any

11  communication itself includes false statements or includes

12  fraudulent statements or otherwise.  I think what we are

13  required to show is Mr. Ceglia pursued this relationship, this

14  attorney/client relationship for the purpose of achieving a

15  fraud.

16          To take another example, the *Jacobs* case for example,

17  the Court decides in *Jacobs* that the defendant was pursuing a

18  fraud and then agrees to turn over to the government an opinion

19  letter written entirely by an innocent lawyer about how such a

20  business could or could not be carried out because I think the

21  court decided in that particular case that the defendant

22  approached the lower with the intent to achieve a fraudulent

23  result and his communications with the attorney were part of

24  the course of conduct of that fraud.

25          While I certainly understand the Court believes the

EanQcegC

need to establish both prongs, we believe the Court needs to

establish both prongs.  Our position here though is that in

this particular instance where the probable cause demonstrates

the defendant hired counsel, initiated a lawsuit after crafting

fraudulent documents in order to achieve a fraudulent result.

This whole attorney/client relationship I think is in

furtherance of a fraud.  That's why we believe that in this

particular case under these circumstances, that's what the

scope of the order should ultimately be.  That is why in this

particular case we felt it was appropriate to describe what we

were seeking in that manner.

THE COURT:  Give me a little bit more on that from the

government.  What is your definition of "in furtherance" then?

It seems me your definition is obviously a lot broader than

what the Second Circuit's definition is, but let me hear from

you as to what your definition of "in furtherance" means.

MR. VELAMOOR:  I think we need to demonstrate that the

defendant in this instance pursued an attorney/client

relationship and engaged in communications with a lawyer as

part of an attempt to achieve a fraud.  Again, it can't be the

case, I think, based on the decisions that have been made that

we would only get access to specific documents that in and of

themselves create or include false statements by the defendant.

If that were true, for example, the *Jacobs* case wouldn't make

any sense.  In *Jacobs*, the whole issue was turning over an

EanQcegC

```
 1    opinion letter written by an innocent lawyer.  And the court

 2    said because the defendant's intent in pursuing that

 3    attorney/client relationship and in obtaining that advice from

 4    the lawyer, because the defendant's intent was to achieve a

 5    fraud, that that letter gets turned over to the government even

 6    though nothing on the face of that letter was even written by

 7    the defendant.  Nothing on the face of that letter included any

 8    false statements or would have included anything to suggest

 9    that the lawyer was involved in the fraud or any such thing.

10          THE COURT:  I agree -- and I'm sorry if I misled you

11    into thinking this -- that certainly the case law is clear it

12    is not about the lawyer's intent or whether or not the lawyer

13    was duped in some way by the client.  And I am certainly not

14    indicating, or I didn't mean to indicate, that the government

15    would be restricted to if they are going to get any of these

16    documents to only documents that are false on their face.

17          But the standard as laid out in *Roe* is that the

18    government must show that the particular communication with

19    counsel or attorney work product was intended in some way to

20    facilitate or conceal the criminal activity.  That is what the

21    standard is.  That is the standard that I will apply.

22          So it is not a matter of whether or not the document

23    is false on its face or whether or not it's apparent from the

24    document that the attorney knew what was going on.  It's about

25    whether or not that particular statement or that particular
```

EanQcegC

```
1    document, whatever it is, that particular communication was

2    intended to further the criminal activity, and the Second

3    Circuit has gone on to define that as intending to facilitate

4    or conceal the criminal activity.

5          MR. VELAMOOR:  I think we agree with that.  Certainly

6    we don't disagree with the Second Circuit.  I think our point

7    though is that in this particular instance the issue here is a

8    unique one, but the issue here is that the defendant has

9    initiated a lawsuit as part of a fraudulent act.

10          I can't conceive of a way in which any of these

11   documents would be saved from the crime fraud exception because

12   without talking about any of the substance of any of the

13   documents because this is a defective attorney/client

14   relationship from its inception.  This is an attorney/client

15   relationship that was started and pursued for the purpose of

16   achieving a fraudulent result.  That is not something that the

17   attorney-client privilege would in any way protect.

18          We are not, for example, seeking the defendant's

19   attorney/client communications with respect to his injunction

20   lawsuit to enjoin these individuals Preet Bharara and

21   Ms. Echenberg from pursuing the case.  We are not seeking those

22   communications.  We are not seeking, obviously, the defendant's

23   current communications with his current counsel.

24          What we are saying is that the lawsuit he pursued with

25   the law firms of Kasowitz and DL Piper, he hired them to file a
```

28

EanQcegC

<div style="padding-left:2em;"></div>

1    fraudulent lawsuit.  So I think these are not attorney/client

2    communications that the privilege exists to protect.

3            So, I guess all I am suggesting is -- and I am not to

4    preview what the Court will decide.  We can't envision an

5    instance in which any of these documents would be saved from

6    the crime fraud exception given the nature and circumstances of

7    this lawsuit.

8            THE COURT:  Again, the way I read the case is that I

9    am required to conduct a rigorous inquiry to make sure that any

10   document that gets turned over satisfies the requirements as

11   laid out in the Second Circuit.  So I understand your position

12   that it should be all the documents.  I have to look at them

13   all.  It may end up that it's all the documents.  It may end up

14   that it is none of the documents, but I have to look at them

15   all.

16           So it is going to take me some time to do that.  I

17   believe there are around 1,700 documents.  Is that correct?

18           MR. VELAMOOR:  I can confer with your Honor's

19   chambers.  I have them in like a concordance database.  That's

20   how they're available to me.  I have some on paper and some in

21   a concordance database.  I will have to in fact devise a way to

22   provide those over to you or I can ask the law firms to produce

23   them directly open to the court.  I am open to any way you

24   choose.

25           THE COURT:  Anything from defense counsel on this?  I

EanQcegC

```
 1   am going to need to go through these documents.  It is going to
 2   take me some time to do that.  Does the defense counsel have
 3   any position as to how I should receive these documents or from
 4   whom?
 5           MR. FOGG:  Judge, I don't have a position at this
 6   present time.  However, I would like at least for myself to
 7   review the documents if they have them before they are passed
 8   on to your Honor.
 9           THE COURT:  Does the government have a position on
10   that?
11           MR. VELAMOOR:  They should have them.  When they were
12   given to me, they were also given to Mr. Patton.  He was copied
13   on all the correspondence.
14           MR. FOGG:  Are we talking about the logs themselves
15   and not the contents of the cited emails themselves?
16           MR. VELAMOOR:  We are talking -- I am talking about
17   the contents.
18           THE COURT:  He's talking before the contents.
19           Counsel, you indicated you have those contents in what
20   form?
21           MR. VELAMOOR:  From one of the law firms, I have them
22   actually on paper.  From the other law firm that has more of
23   them, I have them, or at least I access them when I do, in a
24   concordance database.  They were received electronically.
25           THE COURT:  It seems to me that it is appropriate
```

1   certainly for the defense to review those documents as well.

2           Defense counsel should make efforts to try to get

3   those documents if you can from prior defense counsel.  If not,

4   please reach out to the government, and I'd ask the government

5   to make those documents or I ask the walled-off AUSA to make

6   those documents available to defense counsel and then provide

7   them to me.

8           MR. VELAMOOR:  I will, your Honor.

9           THE COURT:  I am not sure why it would be necessary

10  for the defense to have them before me, but again, it is going

11  to take me some time to do it.

12          Let me get a sense from defense counsel, why is it you

13  want to have them potentially before me?  I am ordering that

14  you get them.  You should have them.

15          The whole purpose of the walled-off AUSA is so that

16  the AUSAs who are prosecuting this case don't get those

17  documents.  If your goal is to go through all of that and then

18  submit something to me regarding certain communications, I

19  suppose that's fine, but that would need to be done in a vague

20  enough way so that it does not reveal the content of those

21  documents to the AUSA who are prosecuting this case.

22          MR. FOGG:  Judge, any method that will facilitate this

23  Court's goal in reviewing them would be fine.  I believe we can

24  get copies.

25          THE COURT:  Let's have the government provide --

EanQcegC

1          MR. FOGG:  Simultaneously would be fine.

2          THE COURT:  -- these documents simultaneously.

3          Can we get them by Monday?  Is that possible?

4          MR. VELAMOOR:  I think it should be possible.  I may

5     have to confer with some of the technical people in how to

6     provide that, but I don't think that should be a problem.

7          THE COURT:  Let's say Wednesday then to be safe.

8     Wednesday of next week, which is what day, Tara?

9          THE DEPUTY CLERK:  29TH.

10          THE COURT:  I would need about 60 days probably to go

11     through all of these documents and make the appropriate rulings

12     regarding any and/or all of these documents.

13          So let's get adjourned date for perhaps -- 60 days is

14     going to get us right around the holidays.  Let's find out what

15     else we have to do.  I understand that defense counsel, the

16     last time we were here, was indicating a desire to file a

17     motion to dismiss the indictment.

18          Now, your prior defense counsel had filed a motion to

19     dismiss to the documents based on *Noerr-Pennington* and the

20     like.  I don't think it is necessary for me to go through that

21     analysis again.  If that is your basis to dismiss the

22     indictment, that objection has been noted.  Is there any other

23     basis by which you seek to dismiss the indictment here?

24          MR. FOGG:  Well, Judge, I believe maybe we can just

25     set some sort of pretrial discovery dates so they get completed

EanQcegC

1  and then that would be it, and for responses and the like.

2          THE COURT:  Responses to what?

3          MR. FOGG:  To any pretrial discovery motions that

4  defense makes with regard to our submissions.

5          THE COURT:  Does the government have any objection

6  position on this?

7          MS. ECHENBERG:  Yes, your Honor.

8          Defense counsel, prior counsel was given multiple

9  opportunities to make motions.  As you may remember, he wanted

10  to do it in a sort of rolling fashion, so he wanted to first

11  make the motion to dismiss the indictment, wait to see what the

12  result of that was, and then he was given the opportunity to

13  make more motions, which he did.

14          I don't think because the defendant has decided to

15  retain new counsel two years into this case he should have the

16  opportunity to reopen all motions again.  We've already had

17  significant delay in this case.  He's had ample opportunity to

18  make motions.  So we would oppose the reopening of a motion

19  schedule.

20          There are also just a few housekeeping matters that I

21  wanted to put on the record.

22          THE COURT:  Before we get to that, my understanding is

23  defense counsel indicated he doesn't plan to file a motion; he

24  just wishes to sort out the remaining discovery if there is

25  any.  My understanding is that discovery had been complete

EanQcegC

1     before in this case.

2             MS. ECHENBERG:  That was one of the housekeeping

3     matters I wanted to put on record.  That is correct.  We have

4     produced significant discovery to prior counsel.  He stated on

5     the record at the last conference a month ago that he intended

6     to Fed Ex all of that discovery to new counsel that week.  I

7     conferred with Mr. Fogg before the conference began.  He

8     confirmed that he has received that package from Mr. Patton.

9     So it is my understanding from Mr. Fogg and Mr. Patton's

10    statement that all discovery has now been transmitted to

11    Mr. Fogg.

12            THE COURT:  OK.  Thank you.

13            Defense counsel, do you have all the discovery that

14    has been provided by prior counsel?

15            MR. FOGG:  I received discovery from prior counsel.

16    Whether or not there was something missing, lacking, I can't

17    say at this present time.  However, I did receive that.  Judge,

18    my intention was to file motions.  However, as soon as I came

19    on the case on the morning of the 16th, we were faced with this

20    crime fraud exception we which we had to address.

21            THE COURT:  What sort of motions are you

22    contemplating?

23            MR. FOGG:  Judge, there are several issues that I saw

24    within the case itself.  Number one, Judge, I believe we are

25    going to address the subpoena issue in and of itself.  I

EanQcegC

```
 1   thought we were going to address that today.  And that would
 2   have been some formal basis of a motion that I was going to
 3   file, but I understand we will -- am I correct?
 4              THE COURT:  No, we'll deal with that at a future date,
 5   but go ahead.  In terms of the motion, the subpoena, we are
 6   going to address that.
 7              MR. FOGG:  Today.
 8              THE COURT:  Yes.  What else?
 9              MR. FOGG:  There are other motions with regard to a
10   Daubert challenge that we are going to seek.  Again, Judge,
11   there was a motion for failure is to state a cause of action
12   which again may be the motion to dismiss.  However, I'm trying
13   not to rehash the prior attorneys arguments --
14              THE COURT:  Give me a sense of what is appropriate
15   here so it I condition determine whether it is appropriate to
16   give you leave to file the motion.  What are we talking about
17   in terms of the motion to dismiss the indictment?  What are we
18   talking about here?
19              MR. FOGG:  As I see it, Judge, the indictment at least
20   as it's written --
21              THE COURT:  Let me clarify that.  What is there that
22   you wish to raise, if anything, regarding the motion to dismiss
23   the indictment that was not previously raised by prior counsel?
24              MR. FOGG:  Honestly, Judge, I need time to figure that
25   one out.  I don't know exactly because what I have been doing
```

EanQcegC

```
 1   is preparing for this crime fraud exception, which has taken me

 2   a little off track here.

 3           However, what I would like to do is file some motions,

 4   if the Court would just give us a date and if the Court will

 5   then either grant or deny.  Because I don't believe the Court

 6   has set a date for the filing of motions.  I may be wrong only

 7   because I've come in afterwards, but I don't believe the Court

 8   has set a date.  Am I correct?

 9           THE COURT:  We had had prior counsel, who had been on

10   this case for quite some time -- we had a trial date.  The

11   trial was supposed to start, I think, actually next month,

12   actually about a week or two from now.  We adjourned the trial

13   date because new counsel was here.

14           I am not going to rehash all of those other issues

15   again.  If there is some compelling reason you have to file a

16   motion, I would certainly like to hear it.  I don't just want

17   to set a motion schedule, some sort of omnibus motion schedule

18   without having a sense what the motions are because I think

19   many of these things may have been covered by prior counsel.

20           THE DEFENDANT:  Your Honor?

21           THE COURT:  Tell me what kind of motions we're talking

22   about.  You've told me a motion to dismiss the indictment.  I

23   have already ruled on that.  If there is some other ground that

24   wasn't raised by prior counsel, fine.  Any other motions, a

25   Daubert hearing, that's fine.  Give me a sense of what we are
```

EanQcegC

| | |
|---|---|
| 1 | talking about, so I can know when to schedule this, where to |
| 2 | schedule it and if we should schedule it.  Give me a sense of |
| 3 | what we're talking about. |
| 4 | MR. FOGG:  Judge, if I may ask, I could refer back to |
| 5 | this court within a couple days and let the Judge and counsel |
| 6 | know exactly what I'm looking for. |
| 7 | THE DEFENDANT:  May I have a few minutes to talk with |
| 8 | my attorney off of the speaker phone? |
| 9 | THE COURT:  Yes.  Hold on a second.  We will give |
| 10 | counsel a tune to speak to his client.  I will step aside for |
| 11 | just a second.  Let's try to make it brief. |
| 12 | (Recess) |
| 13 | THE COURT:  We are back.  Mr. Ceglia, can you hear me. |
| 14 | THE DEFENDANT:  Yes, I can, your Honor.  Thank you. |
| 15 | THE COURT:  We gave Mr. Ceglia, just so the record is |
| 16 | complete, an opportunity to speak privately with his attorney |
| 17 | by telephone. |
| 18 | counsel? |
| 19 | MR. FOGG:  Judge, if I may, I don't know if on the |
| 20 | record I misspoke, but I wanted the Court to be clear that I |
| 21 | don't concede that the contract or any contract or the civil |
| 22 | suit was baseless.  I don't concede that. |
| 23 | THE COURT:  That's very clear.  There is no dispute |
| 24 | that you don't concede that and I am not saying that that has |
| 25 | been proven beyond a reasonable doubt.  I'm saying there is |

EanQcegC

 1    probable cause to believe that.

 2              MR. FOGG:  My client wanted me to remind the court

 3    that there are cashed checks which in and of itself demonstrate

 4    there is an agreement.  These are cashed checks which have

 5    never been disputed.  So, therefore, even if there was some

 6    sort of change in the contract despite that, there is a

 7    legitimate agreement that was founded here which just takes it

 8    out of the realm of being baseless at all and is actually quite

 9    legitimate.

10              THE COURT:  Thank you.  I still find there is probable

11    cause.

12              Let's do this:  Let me hear from the parties regarding

13    where we are with the subpoena situation.  Actually, counsel

14    for the government, there were some other housekeeping matters

15    you wanted to address?

16              MS. ECHENBERG:  Just one other matter, your Honor.

17    There was discussion at the last conference about releasing

18    certain properties from the bail order.  That has basically

19    been taken care of.  I provided by email previously, but I

20    provided signed notarized copies of the release of lien in

21    person to Mr. Fogg today.  I wanted to put that on the record.

22              I also wanted to note that I will send by email later

23    today a discovery index.  I believe Mr. Patton provided that as

24    well, but I will send that to Mr. Fogg to be sure that he can

25    check against the index to be sure that he has everything.

EanQcegC

1          THE COURT:  Thank you.

2          Where are we in terms -- I think we have resolved many

3     of the issues regarding subpoenas.  Where are we regarding

4     that?

5          MS. ECHENBERG:  Your Honor, I thought that was

6     resolved, but I know that Gibson Dunn had turned over the

7     portions that they were required and were volunteering to turn

8     over.  I know that that has occurred.  I believe that our

9     office was in the process of turning things over.  I spoke to

10    them shortly after the conference, and they were going to

11    provide a copy to the government as well, which now that I'm

12    thinking about it, I am not sure we received but, I can confirm

13    that.

14         THE COURT:  Counsel anything else on the subpoena

15    issue?

16         MR. FOGG:  In looking over the subpoenas that were

17    issued previously with regard to Facebook and Mr. Zuckerberg,

18    they do take on a larger than scale request.  I have drafted up

19    a subpoena and request that is more scaled down and limited and

20    very specific.

21    A.   Now, in my affidavit I state forth a certain bails is for

22    that, and that is based on an item that was found in the

23    discovery pages on pages.  It's an email from Mr. Zuckerberg

24    actually giving us a hint that there is another contract that

25    he himself created and passed on to my client.

EanQcegC

1        THE COURT:  Hold on just one second.

2        (Pause)

3        THE COURT:  Go ahead, counsel.

4        MR. FOGG:  Yes, Judge, because of the nature of the

5   confidentiality of the document, I'd rather not go into greater

6   detail with that.  However, Judge, I would like to submit that

7   for the Court's review and pass it on to client and counsel

8   with regard to my request for contracts and agreements, whether

9   proposed or contemplated, in any form that Mr. Zuckerberg may

10  have wherever they may reside.  It is more specific in my

11  request, Judge.

12       THE COURT:  What is it you want to do?

13       MR. FOGG:  Well, I would like to submit to the Court

14  an order for a subpoena with regard to certain information that

15  all his email attachments, his contracts, whether they're

16  drafts, whether they're emails, whether they're attachments --

17  apparently there is a contract out there.  There are several

18  versions of a contract out there.  And the attachment will

19  demonstrate that.

20       THE COURT:  I'm just curious, when was this subpoena

21  drafted?

22       MR. FOGG:  When was this subpoena drafted?

23       THE COURT:  Yes.

24       MR. FOGG:  I did it this morning, Judge.

25       THE COURT:  All right.  That's fine.  You can submit

EanQcegC

1    it to me.  We have a trial date.  I would like to move things

2    along.  It is helpful if you submit stuff earlier so that I

3    have a chance to look at it and make decisions on these things;

4    but let me just hear from the government regarding this.

5         MS. ECHENBERG:  Your Honor, this is the first time I'm

6    hearing of it, so of course I would like an opportunity to

7    review it and respond, if necessary.  It sounds from the

8    description as though it's overlapping significantly with what

9    has already been requested and possibly with already what's

10   been produced by Gibson & Dunn, but I will have to look at it

11   more closely.

12        THE COURT:  That is fine.  I will do that.  I will

13   give the government to -- why don't we do this:  Give the

14   parties an opportunity to meet and confer about the subpoena

15   and give the government an opportunity to respond if they like.

16   Then let's have a status conference sometime next month to be

17   sure we keep everything on track, since defense counsel has

18   indicated since the last conference he has been consumed by

19   this issue of the crime fraud exception.  Defense counsel can

20   certainly take this time to figure out if there are any motions

21   you wish to file.  If so, what they might be so that I can make

22   a determination -- I am not inclined to grant the filing of any

23   motions, but I may be depending on what it is.  I just need to

24   have a sense of what we're talking about.

25        MR. FOGG:  Yes, Judge.

EanQcegC

1          THE COURT:  Let's do that.  And we can discuss this

2     other issue of the subpoena sometime next month, as well as

3     come back here relatively quickly.  Can we get a date sometime

4     around the middle of November, Tara?  Maybe earlier that

5     Thanksgiving week, that Monday or Tuesday.

6          THE DEPUTY CLERK:  Monday, November 24 at 10:00 a.m.

7          THE COURT:  Does that date and time work for everyone?

8          MS. ECHENBERG:  It's fine for the government.

9          MR. FOGG:  10:00 a.m.?

10          THE COURT:  Yes.

11          MR. FOGG:  Judge, I will have to make that work.

12     Judge, if I may, before we proceed on?

13          THE COURT:  Yes.

14          MR. FOGG:  I needed clarification, as I stated before,

15     there is a transcript from 7/22, Judge, where there was

16     discussions as to the signature on page 2, and I would like to

17     know if that is Mr. Zuckerberg's signature.

18          THE COURT:  Is the government in a position to -- does

19     the government want to answer that on the record?  Does the

20     government want to answer that privately?  Where are we with

21     this?  I think we had -- I don't remember the answer to that

22     question, but I'm pretty sure we had clarification of that at

23     that conference but let me hear from the government.

24          MS. ECHENBERG:  Again, your Honor, this is the first

25     time hearing this.  I would obviously like to review the

EanQcegC

1    transcript and have a little more context what defense is

2    asking for.

3        THE COURT:  Let me find out defense counsel.  Have you

4    asked the government this question before today.

5        MR. FOGG:  Well, Judge, as I was reading through the

6    transcript, it stated that --

7        THE COURT:  I understand, but have you asked the

8    government this question.

9        MR. FOGG:  I have not asked them specifically this

10   question.

11       THE COURT:  So I will give you a chance to meet and

12   confer with the government and see what the answer to that is.

13   If they don't answer the question or there is something that

14   you are not satisfied with, we will deal with that on

15   November 24.

16       Anything else from the government today?

17       MS. ECHENBERG:  No, your Honor.

18       THE COURT:  Anything else from the defense today?

19       MR. FOGG:  Just a minute, Judge.

20       (Pause)

21       MR. FOGG:  Judge that will be it.

22       THE COURT:  So, again, I believe I have excluded time

23   under the Speedy Trial Act until the trial date.

24       To the extent that I have not, just to be on the safe

25   side, I will exclude time from today's date until November 21

EanQcegC

1    under the Speedy Trial Act.  I find it is in the interest of

2    Mr. Ceglia and the interest of justice to exclude time under

3    the Speedy Trial Act so that defense counsel may continue to

4    review the discovery and prepare for trial and so that the --

5    that is primarily the reason.

6          The court will also need time to review the documents

7    that have been turned over to make a determination as to

8    whether or not any of these documents satisfy the crime fraud

9    exception but primarily so that the defense can prepare for

10   trial and determine whether or not defense counsel wishes to

11   file any motions.  I further find the interest of Mr. Ceglia

12   and the interest of justice outweigh the public's interest in a

13   speedy trial and I will enter a report to that effect.

14         Again, from today's date until November 24. I may have

15   said the 21st.  Anything else?  Again, I find the interest of

16   Mr. Ceglia and the interest of justice outweigh the interest of

17   the public in a speedy trial, and I will enter an order to that

18   effect.

19         MS. ECHENBERG:  Your Honor, at the last conference I

20   believe you excluded time May 24, 2014 the trial.

21         THE COURT:  Anything else from defense?

22         MR. FOGG:  No, your Honor.

23         THE COURT:  Again, I will again continue as I have

24   allowed the defense to waive Mr. Ceglia's personal presence in

25   court and allow Mr. Ceglia to appear by telephone to reduce the

EanQcegC

1   travel expenses.

2           Also for the record, I think what counsel said, I

3   excluded time before.  You may have misspoke and said May 2014.

4   It's obviously May 2015.

5           (Adjourned)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25