EBOLCEGC                    Conference

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

                v.                      12 CR 876 (ALC)

PAUL CEGLIA,

                Defendant.

------------------------------x

                                     New York, N.Y.
                                     November 24, 2014
                                     10:15 a.m.


Before:

                 HON. ANDREW L. CARTER, JR.,

                                     District Judge


                      APPEARANCES

PREET BHARARA
     United States Attorney for the
     Southern District of New York
JANIS ECHENBERG
NIKETH VELAMOOR
     Assistant United States Attorneys

ROBERT ROSS FOGG
GIL MESSINA
     Attorneys for Defendant

EBOLCEGC                      Conference

1          (Case called)

2          THE COURT:  Is Mr. Ceglia on the telephone?

3          THE DEPUTY CLERK:  Yes.

4          THE COURT:  Can you hear everything, Mr. Ceglia?

5          THE DEFENDANT:  I can.  Good morning, your Honor.

6          THE COURT:  All right.  We're here for a status

7    conference.  There's a couple of issues that have been raised

8    recently since the last time we were in court.

9          First, there is an issue in that the law clerk that I

10   had working on this matter is someone who previously worked as

11   an intern in the U.S. Attorney's Office and I believe worked

12   for one of the assigned assistants on this case or was an

13   intern under her supervision.  And the U.S. Attorney's Office

14   brought that to my attention, gave notice to Mr. Fogg, and I

15   don't want to misstate anything.

16         Mr. Fogg's position is that it would be inappropriate

17   for that law clerk to continue to work on this matter; is that

18   correct?

19         MR. FOGG:  Your Honor, my client has expressed

20   concerns with regard to the appropriateness of the law clerk to

21   work on this particular case, Judge.

22         THE COURT:  Okay.  I don't think that that's an issue

23   that would require the assignment of a different law clerk.

24   But to avoid any appearance of impropriety, in an abundance of

25   caution, I have assigned this matter to a different law clerk

1    who is here in court today who did not intern for the U.S.

2    Attorney's Office, did not work for DLA Piper or any of these

3    other law firms in question.  So that should resolve that

4    issue.

5           There have been other issues that have been recently

6    raised by Mr. Fogg starting with a couple last week, and I

7    think there was a letter he submitted on Friday putting out

8    some other issues.

9           Just as a general matter, to the extent that the

10   parties want me to address these matters, I need a little bit

11   of notice with these things so that I can have some time to

12   look at the appropriate case law and make determinations on

13   this.  So I'm not ready to rule on any of these things that

14   were filed last week.

15          I guess in addition, the letter motion request filed

16   by Mr. Fogg regarding the U.S. attorney's misuse of the grand

17   jury process; I saw that letter.  I will give Mr. Fogg an

18   opportunity to supplement that if he wishes.  It would be

19   helpful to have some legal authority for that ultimate premise

20   that he's put in there.  He's cited some cases regarding the

21   grand jury in general and the way the grand jury is supposed to

22   be used.  And at the end of this letter he makes sort of a

23   conclusory statement that as a result of this, this request

24   that the government has made for the information contained in

25   these documents as part of the crime fraud exception must be

1   denied, but there's no authority there.  There's no case law.

2   There's no statute.  There's nothing there.  So it would be

3   helpful just to have that so I can try to give -- because I

4   want to give each one of these requests the attention it

5   deserves.

6          Recently, on Friday, Mr. Fogg submitted a request for

7   a bill of particulars.  I believe the government has responded

8   to that.  I'll need some time to look at this as well.

9          Let's back up a little bit here.  Again, I have a

10  different law clerk who's going to be working on this matter.

11  We need to get the privilege log from the parties, and we need

12  to get these documents so that we can go through this in camera

13  review which is going to be quite lengthy.  So we'll try to get

14  that done as soon as we can, but that's going to take some time

15  to go through all of those documents.

16         Let me get a sense from Mr. Fogg what other motions

17  you anticipate because it would be nice if we could get these

18  all coordinated around the same time.  So let me hear from you.

19         MR. FOGG:  Thank you, Judge.  Just to put a framework,

20  first, I've been snowed out of my office for about a week, so a

21  lot of things I have not been able to do.  But prior to that I

22  conferred with my client and counsel.

23         We have received discovery from Mr. Patton's office

24  just as recently as three to four weeks ago.  Actually, four

25  weeks ago.  One of the CDs had some defect which a technician

1    was able to correct.  The other one had a physical defect that

2    could not be corrected at all.  We received copies of those, so

3    we have certain information.  Based on the information that we

4    did review so far, we're looking to determine whether or not

5    there are coconspirators or some other codefendants that may be

6    involved in light of the last letter from the government which

7    stated that they were seeking additional defendants or

8    additional charges in their pursuit of the grand jury subpoena.

9            Also, Judge, we're looking for, based on our discovery

10   that we have, we find there are some things that we might want

11   to supplement the bill of particulars also with regard to

12   discovery.  We're looking for the Rule 404(b), 608, 609, a

13   disclosure witness statements, and also preservation of rough

14   notes.

15           We're going to submit some information with regard to

16   motion for grand jury transcripts, with regard to also voir

17   dire the government experts in preparation for a Daubert

18   motion, and also a motion to make leave for other motions.

19           However, the one motion that we would like to review

20   is a motion to dismiss based on certain grounds and a motion to

21   dismiss based on failure to state an offense.  I have cases

22   with regard to information that may supplement or at least we

23   can adapt some of the motions that were made previously.  I do

24   know the Court has made or at least had some sort of a decision

25   on a previous motion.  However, Judge, I'd like to provide as

1    zealous advocacy for my client as I possibly can by presenting

2    these motions.

3           Now, I believe we can get these motions done.

4    Unfortunately, I do have to travel back.  We can probably have

5    these motions done -- my colleague says by tomorrow, but

6    considering the fact that I have to drive, I'm hoping maybe by

7    the end of the week, if not Thursday.  So the motions that

8    we're seeking we can have in by Thursday, Judge.

9           THE COURT:  Okay.  But what I'd like to do is try to

10   do this in an orderly fashion.  It seems that what you're

11   saying is you still need to review some of the discovery before

12   making these motions; is that correct?

13          MR. FOGG:  Based on what we've reviewed thus far, we

14   could make certain motions.  However, Judge, there are certain

15   issues that are outstanding, for example, the subpoena which we

16   put before the Court, if in fact we receive that, there may be

17   discoverable issues that would require supplement motions.

18   Also, Judge, we'll be looking for other subpoenas as well which

19   we'll be placing in in accordance with the rules.  So we can

20   line those out for the Court as well in our motion paperwork.

21          So based on what we have so far, we can submit motions

22   within a fairly quick period of time based on what I've

23   requested.  However, we're going to do an omnibus motion.

24   However, the specificity as far as what we get from a subpoena,

25   especially the subpoena that we put before your Honor in camera

with regard to the request that we made, that would have been

on October 22, that was the request that we put in for the

October 24 appearance, based on receipt of that information,

then we may have to further supplement motions.

I did reach out to counsel and I did reach out to

Mr. Southwell via email who informed me that he received it and

he will get it back to me.  I requested it be returned back to

me or information to me by last week.  I have not yet received

it.  So therefore, Judge, I don't believe I'll ever get it.  So

therefore I'm requesting a subpoena.

THE COURT:  Okay.  Hold on just a second.  Here's what

I don't want to continue to do.  I don't want to set a motion

schedule and have defense counsel file a motion and then after

the motion is ruled upon for you to file a similar motion

saying you got some new information and you want to -- the

motion has now changed because of some slightly new

information.  I'd like to do this all in one fell swoop.  You

don't need to file an omnibus motion to throw everything in

here and the kitchen sink.

I want to make sure if there are legitimate motions

that need to be filed, I will give you time to make sure that

you can file the motion properly and appropriately so that I

can rule on it once.  Because already when I'm getting so far

seems to be motions that have already been decided by the Court

that you keep trying to put back in front of me, and I'm not

1   sure what the difference is between this request for a bill of

2   particulars from the one that was previously denied by the

3   Court by Mr. Ceglia's prior counsel.

4        So I'll give you more time to file the motion, but

5   let's get it right and get it done once so I can rule on it and

6   move on.  It doesn't appear that anything that you're talking

7   about -- you're talking about a motion to dismiss the

8   indictment.  Obviously, that would have a huge effect on

9   whether or not there is a trial.

10       It doesn't sound like you're talking about any other

11   motions to suppress evidence; is that correct?

12       MR. FOGG:  Well, based on what we've discovered thus

13   far, I don't believe there may be a motion to suppress.

14   However, I did speak to counsel with regard to a search warrant

15   for one of the attorneys for my client's computer and I don't

16   believe that we have that search warrant in the voluminous

17   documents that we received just yet.  So that's one of the

18   things we wanted to confirm as well, Judge.

19       THE COURT:  Okay.  Let me hear from the government.

20       MS. ECHENBERG:  Your Honor, I want to respond to a

21   number of points.

22       First of all, I'm very surprised to learn there's some

23   sort of physical defect with some of the discovery.  I emailed

24   Mr. Fogg on November 3rd to confirm that he received

25   everything.  I asked him to let me know right away if there was

1    any issue.  This is the first I'm learning of it.

2              Second of all, again Mr. Fogg is misstating what's

3    transpired among the parties.  Your Honor directed us to confer

4    about the pending subpoena.  We did that.  We involved Gibson

5    Dunn who represents Facebook.  They emailed -- I'm looking at

6    the email right now because I was copied on it -- they emailed

7    Mr. Fogg on November 15 to say they received his request and

8    they were considering it and they would respond as soon as

9    possible.  So for Mr. Fogg to state on the record that he

10   expects they'll never respond, there's no basis for that.

11             With regard to these motions, a motion to dismiss for

12   failure to state a claim is exactly the motion that Mr. Patton

13   made on Mr. Ceglia's behalf.  So the government would reiterate

14   its objection to reopening motions that have already been made.

15   Your Honor was very clear at the last conference that Mr. Fogg

16   was to come here prepared to let your Honor know what motions

17   he was considering.  There's now this litany of things he might

18   submit and now it looks like we're going to extend again any

19   potential deadline.  We have a trial date.  We've adjourned it

20   once.  The government would be opposed to any further

21   adjournment.

22             So the government would ask that a motion deadline be

23   set today, that that motion deadline be abided, and that no

24   motions that have already been made and decided be allowed to

25   be reopened.

1          And to the extent that Mr. Fogg says he doesn't have

2     the search warrant, that was absolutely produced with the

3     original discovery to Mr. Patton.  He's not let me know that

4     was missing.  I sent him an index of all the discovery by Bates

5     number.  The search warrant is identified by Bates number.  So,

6     again, I'm surprised to learn that he doesn't have it.  We can

7     obviously provide another copy, but it was produced to

8     Mr. Patton literally years ago and it was produced from

9     Mr. Patton to Mr. Fogg, as far as I was aware.

10          THE COURT:  Okay.  Anything else, Mr. Fogg?

11          MR. FOGG:  Judge, I don't care to go back and forth

12     with banter and knock anyone's credibility because I believe

13     that's transpiring here.  Judge, I state on the record as

14     counsel of this court, as an officer of this court, disks were

15     damaged.  They were taken care of.  I didn't need her help or

16     the office's help to correct that damage.  We corrected it with

17     Patton's office and now I received it.  Whether or not she's

18     surprised to learn that is irrelevant right now.

19          The fact is that these are the things that we've been

20     doing in trying to go through all of these documents and it's

21     only been recent and we probably still need to go through more.

22     But as soon as we find more things, we'll send out a letter to

23     counsel and say do you have these things.  For once I don't

24     believe there's a problem in our communication pathway.  So I

25     believe we can be honest and true going forward with that.

1          But as far as a slash at credibility before this

2     Court, I take offense to that, Judge, and I'd like to stay on a

3     cordial and civil manner in our adversarial process.

4          MS. ECHENBERG:  Your Honor, if we can just clarify for

5     the record then there is nothing other than potentially the

6     copy of the search warrant, which I will produce another copy

7     of immediately after this conference, there's nothing else that

8     Mr. Fogg believes he is missing from the discovery.  I've given

9     him the index a month ago.  I gave him the opportunity more

10    than a month ago, immediately following our last conference, I

11    gave him the opportunity to compare that against what he

12    received.  He said he received the last of the discovery four

13    weeks ago.

14         So if he can state definitively on the record whether

15    he's aware of anything missing.  I thought what he said was

16    something was physically damaged, but it appears he's now said

17    he has what he needs.  So if he can clarify that so there's no

18    confusion.

19         THE COURT:  Okay.  I do think it might be helpful

20    because, Mr. Fogg, I believe you indicated before that there

21    was something that was physically damaged.  You were able to

22    get that repaired.  Then you said there was something else that

23    was physically damaged, leaving the impression that that was

24    not able to be repaired.

25         Do you have anything you need now?

EBOLCEGC                      Conference

1          MR. FOGG:  As I stated before, yes.  We received it

2     from David Patton.  So we took care of that issue.  What I

3     first stated was there was a CD that somehow was corrupt.  A

4     technician took care of that problem.  And then there was a CD

5     that was physically damaged.  And David Patton's office

6     forwarded us both CDs.  So I didn't need assistance or to

7     inform them.

8          THE COURT:  That's fine.  So you have everything?

9          MR. FOGG:  I have that, yes, I do, and we're just

10    going through it, yes.

11         THE COURT:  Not just that -- do you have everything?

12    You've looked at the index.  Is there anything you believe

13    you're missing, anything on that index that you believe you do

14    not have or you do not have in a usable form?

15         MR. FOGG:  We made a list of possible things that we

16    thought we did not have and it's still coming in.  One was a

17    criminal history report and it looks like it's Bates 2435, but.

18         THE COURT:  Before you go down the list, my question

19    is -- you said you made a list of things that you think you

20    don't have.  Have you shared that list with the government?

21         MR. FOGG:  Not yet because I want it to be complete.

22    I don't want to keep coming back to her and I want to get this

23    complete.  As far as I see, this is what we have thus far.

24         Judge, we're not done going through.  There is over

25    2,000 -- there's several logs that are here.  There's several

1    Bates stamps that are here.  And we're not done with that.  If

2    we want to do it piecemeal and I can tell her what I've got so

3    far, we can do that and we'll keep looking and see if there's

4    something else missing.  It just may be we do have it and we

5    need direction as far as where it is.  As counsel says, we

6    should have it.  But the whole idea is this is something that

7    we have not located yet for some reason.

8              THE COURT:  Hold on.  I'm not sure how efficient it is

9    to wait until you've gone through everything.  If there are

10   individual items that you think you don't have that have Bates

11   stamps numbers, just email or call the government, pick up the

12   phone, talk to the government.  Make sure you have those

13   things.  You can do those on an ongoing basis.  I think it's

14   causing unnecessary delays to wait for this.  Especially if

15   there are Bates stamp numbers on these documents, just reach

16   out to them and make sure you have everything.

17             So let's do this.  I'm going to give you a motion

18   schedule.  Any motions that you feel you need to file, go ahead

19   and file them.  This is the motion deadline.  I'll give you

20   until December 17, which will give you plenty of time to go

21   through, to confirm that you have the discovery you need, to go

22   through the discovery and figure out what motions need to be

23   filed and to give you time to make sure that in the motions

24   you've given me adequate legal support for anything you're

25   asking for.  So I'll give you until December 17 for your

1    motions.

2              We'll give the government until January 7 to respond.

3    And then we'll see where we are at that point.  We'll go ahead

4    and get a status conference date so we can check in again.

5              How about January 30 at 10 a.m., does that time work

6    for everyone?

7              MS. ECHENBERG:  It's fine for the government.

8              MR. FOGG:  Judge, just to avoid the possibility of

9    traffic, can we have it at 10:30.  We were able to get here,

10   but for some reason my traffic was worrisome.

11             THE COURT:  That's fine.  10:30.  Does that work for

12   the government?

13             MS. ECHENBERG:  That's fine, your Honor.

14             Just to clarify, are you allowing defense to make a

15   motion to dismiss the indictment, reopen that issue, even

16   though it's been decided?

17             THE COURT:  I will, but defense counsel is cautioned

18   that defense counsel needs to make sure that this motion is

19   different than the motion that was already decided by the

20   Court.  If it's the exact same motion with the exact same

21   analysis and the exact same facts, that would not be

22   appropriate.  But I'll allow defense counsel to make that

23   motion.

24             So we have a date of January 30 for the return date at

25   10:30.  I believe I've already excluded time.  But to the

EBOLCEGC                    Conference

extent that I haven't, that time is excluded under the Speedy

Trial Act because the defense is making motions and it will

take me time to decide the motions.

        Also, we have a trial date of May 4, 2015.  This trial

date was adjourned at the request of the defense because

defense counsel indicated he needed more time to be adequately

prepared for trial.  To the extent I did not do this before, I

hereby exclude time under the Speedy Trial Act from today's

date until May 4 so that the defense may make motions and be

better prepared for trial and review the voluminous discovery

in this case.  I find it's in the interests of Mr. Ceglia and

in the interest of justice to exclude time under the Speedy

Trial Act from today's date until May 4, 2015.  I further find

that Mr. Ceglia's interests and the interest of justice

outweigh the public's interest in a speedy trial and I will

enter an order to that effect.

        Anything else from the government today?

        MS. ECHENBERG:  Yes, your Honor, I just want to

clarify where we are on two issues.  One, Mr. Fogg put in this

proposed order regarding the bill of particulars.  I think it

was clear in Mr. Fogg's cover letter, but the government

objects to this order.  We believe it misstates the record in a

variety of ways.  In particular, it states that the first two

requests were granted and it tries to force the government to

take a position that the government neither took at that

```
 1   July 22 conference nor does the government need to take at this
 2   point.  We can certainly put in something in writing if your
 3   Honor is intending to rule on this at the next conference.
 4   But, in any event, the transcript speaks for itself.  The
 5   government doesn't see why there's any need for an order at
 6   all.
 7            So if your Honor would like to hear from us further on
 8   that, we certainly can.  I don't know if your Honor was
 9   intending to rule on that now or at the next conference or
10   sometime in between.
11            THE COURT:  Let's do this.  Regarding the requests
12   that were recently made by Mr. Fogg, the request for the bill
13   of particulars, as well as this request regarding the grand
14   jury proceeding, I will deny those requests without prejudice
15   and give Mr. Fogg an opportunity to file those again on the
16   December 17 deadline, to give Mr. Fogg an opportunity again to
17   supplement his motions with case law.  Let's have that all done
18   on December 17.  And the government has its date to respond to
19   that.
20            MS. ECHENBERG:  Thank you, your Honor.
21            THE COURT:  Okay.
22            MS. ECHENBERG:  Anything else for the government?
23            MR. VELAMOOR:  Judge, there was the issue of the last
24   remaining I think turns out to be about 50 or so documents that
25   DLA had.  I'd ask the Court -- I'd initially just thought that
```

1    DLA could just give them to me as they've done before.  But

2    after that Mr. Fogg indicated he had an objection to DLA giving

3    me those additional documents.  So I then proposed either the

4    Court order DLA to give them directly to the Court since the

5    Court has now initiated its own review, or have them give them

6    to me.  I'm frankly indifferent to either given the posture of

7    the motion at this point.  I thought we should address that

8    today.

9             THE COURT:  Okay.  Mr. Fogg.

10            MR. FOGG:  Judge, as far as the additional documents

11   that were submitted or at least Mr. Velamoor is seeking, we're

12   arguing in the letter that was recently submitted with regard

13   to the abuse of the grand jury process to gain those documents.

14   In other words, my client was already indicted and he used the

15   grand jury to get information so they can use that for the

16   prosecution's team in this case, which Mr. Velamoor stated in

17   his own brief to this Court.  Based on that, our argument was

18   that they should not be entitled to receive that information.

19   The fact that, as this Court knows, and I disagree with the

20   turning over of information, whether it be the case and the

21   norm here in this district, I didn't agree.  My client didn't

22   agree.  So, therefore, I could not agree.

23            THE COURT:  Let me just cut to the chase here.  What

24   is your position on whether or not -- it seems that the

25   question here is whether or not DLA turns these documents over

1   to the U.S. Attorney's Office, who then turns them over to me,

2   or whether they just turn them over to me.  Is that really what

3   we're talking about?

4           MR. FOGG:  What we we're talking about, what I was

5   talking about was that they should not turn it over, period.

6           THE COURT:  And why is that?

7           MR. FOGG:  Well, Judge, the motion that was made

8   before was made without that information.  They didn't have

9   that information prior to making the crime fraud exception.

10  That information was not had properly by a grand jury subpoena

11  which was not impanelled for the sake of indicting my client.

12  It was still privileged and it still is privileged information,

13  Judge.  So for me to say right now that it should be turned

14  over to this Court, I think that would be improper.  I don't

15  think it should be turned over to the Court.

16          THE COURT:  And why?  What's the legal basis for that?

17          MR. FOGG:  Your Honor, it's because of, well, it's our

18  belief and it's our position that the grand jury subpoena

19  process was done inappropriately.  They used the grand jury

20  subpoena to force these documents to be turned over and that

21  was after he was indicted and also after we made our argument

22  and sat here before your Honor in talking about what documents

23  we were going to produce.

24          THE COURT:  I understand.  But what's the harm in

25  those documents being produced from DLA Piper directly to the

1    Court as opposed to U.S. Attorney's Office?  What's the

2    prejudice there?

3         MR. FOGG:  Well, Judge, it's no longer in the privacy

4    and the sanctity of the privilege holders, which would be my

5    client and also DLA Piper.  And it's out, yes, before the

6    judge, but it's no longer within their custody and their

7    control.  And that's the whole protection behind the

8    attorney-client privilege.

9         THE COURT:  But if your argument is -- this is why it

10   helps to have the legal cases on this stuff -- if your argument

11   is that the government abused the grand jury process, let's

12   assume for the documents that have already been turned over

13   that you are correct.  I'm not saying that you are, but

14   assuming you were correct, what would your remedy be?  If I

15   already have these documents, what is your remedy?

16        MR. FOGG:  Well, my remedy based upon if I was correct

17   and the subsequent documents we're seeking, the same

18   application would be to the first documents.  And my remedy

19   would simply be for this Court to turn them back over to me so

20   I can give them to the respective parties and the crime fraud

21   exception application be denied and they be precluded from

22   using any use or derivative use of that information in this

23   trial.  That would be my position.

24        THE COURT:  But that's what my question is.  If we're

25   talking about the evidentiary utility of this information, if

EBOLCEGC                     Conference

1    it's turned over to me, if you are ultimately successful in

2    making this argument, then it would not be entered into

3    evidence.  It would not be submitted to a jury under the crime

4    fraud exception.  But what is the prejudice if I have those

5    documents to the extent that I'm already looking at tons and

6    tons of documents to determine whether the crime fraud

7    exception applies?  I'm still not understanding what the harm

8    is in terms of the documents being turned over to the Court.

9              MR. FOGG:  Your Honor, if I may yield the floor to my

10   cocounsel, Gil Messina.

11             MR. MESSINA:  If your Honor please, thank you.  We

12   have taken the position that from the inception of the

13   acquisition of these documents through the use of the grand

14   jury subpoena, it was improper.  It should not have gone to the

15   U.S. Attorney's Office, to the law attorney, or otherwise.  I

16   know I was here and your Honor ruled that you should see them

17   in camera.  I understand your ruling.  We respectfully disagree

18   with it, but we understand it.

19             Now, in the discovery that we have received recently,

20   we noticed that DLA Piper was referring to a grand jury

21   subpoena pursuant to which it was going to produce the

22   documents.  That was issued after the indictment came down.

23   That was when we contacted DLA Piper.  Actually, pursuant to

24   the letters that DLA Piper had sent to the U.S. Attorney's

25   Office saying before these go to any third party or anybody

1   else, please advise me in advance and please telephone me.

2   That's how important we view this privilege and work product

3   issue to be.  I don't know if that happened.  I'm not going to

4   jump to any conclusions about that.  But it was clear that

5   everyone has always considered those to be privileged.

6         Now, you said they should go to you in camera and

7   frankly, your Honor, I don't have a problem with the additional

8   documents going directly to your Honor in camera given your

9   Honor's order today that our request has been denied without

10  prejudice and we can actually file that formal motion with the

11  case law backup and whatever other supporting documents we have

12  by December 17.  That's my position.  I don't know what

13  Mr. Fogg -- we didn't discuss that particular issue ahead of

14  time, but I don't frankly have a problem with that.

15        MS. ECHENBERG:  Your Honor, just given that Mr. Ceglia

16  has raised before not knowing what his lawyers are doing, I'm

17  just concerned.  Mr. Messina has not entered a notice of

18  appearance in this case.  So I want to make sure Mr. Ceglia is

19  consenting to whatever position his lawyer is taking on his

20  behalf or at least was able to consult because that seems to be

21  a different position than Mr. Fogg was just taking.

22        THE COURT:  Let me find out from Mr. Fogg what

23  Mr. Fogg's position is on that.

24        MR. FOGG:  Judge, we are a team.  We are of one mind.

25  This issue was brought forth and I would just cut to the chase

EBOLCEGC                    Conference

1    and say in light of the fact that your Honor gave us an

2    opportunity to supplement and make an actual written motion, I

3    don't see a harm with the Court receiving it in camera, even

4    though I do feel that the better practice would be that it

5    remain in the possession where it is.  However, Judge, you're

6    already in possession of several other documents and I would be

7    satisfied with the notion of -- I'd ask the Court, are you in

8    receipt of those documents anyway?

9            THE COURT:  Not yet, but yes.

10           MR. MESSINA:  Your Honor directed a question to

11   Mr. Fogg earlier about what should be done and that there

12   hadn't been any case law provided to the Court.  Actually,

13   respectfully, there was in Mr. Fogg's letters to you.  And the

14   one that was sent on Friday or on November 20, there is a

15   citation that says that barring the use of information obtained

16   through the improper use of a grand jury subpoena is a very

17   difficult thing to police.  And what should be the proper

18   mechanism, it talks about -- and this is in the November 20

19   letter.  I'm quoting it from the court now which is quoting

20   from Moore, it is difficult if not impossible to enforce.  Even

21   where we have found clear violations, we have often been

22   reluctant to go beyond a simple rebuke.  But then it goes on to

23   say, if the rules have any meaning, we believe that the

24   subpoena here must be quashed as an abuse of the grand jury

25   process.

1        So that is what we will ultimately be asking for in

2   that submission that we make on December 17.  You asked what do

3   you want us to do.  We will make a respectful request to the

4   Court.

5        THE COURT:  Again, my concern was that there were some

6   cases cited toward the middle of that letter, but at the very

7   end of that letter there is a request that I deny the

8   government's request for use of this material under the crime

9   fraud exception and there's no case law.  There's nothing

10  there.

11       MR. MESSINA:  Understood.

12       THE COURT:  All right.  Anything else we need to deal

13  with today?

14       MR. VELAMOOR:  So I suppose then --

15       THE COURT:  I'm going to request that the documents be

16  provided by DLA Piper directly to the Court.

17       MR. VELAMOOR:  I will communicate with counsel for DLA

18  Piper and have him deliver the documents to your Honor's

19  chambers.

20       Just so it's clear, I've also delivered the other

21  documents previously to your Honor's chambers.  I think there

22  may be issues ongoing as to how to access those.

23       THE COURT:  You mean issues in terms of access of

24  documents.

25       MR. VELAMOOR:  I already put, I think, in touch our

1   computer people with the Court's computer people.  If there are

2   any further problems with that, I'm happy to try to intervene.

3          THE COURT:  Anything else from the government or

4   defense today?

5          MS. ECHENBERG:  Nothing from the government.  Thank

6   you, your Honor.

7          MR. FOGG:  Your Honor, if I may address the one issue

8   that on October 24, we put forth a request for subpoenas with

9   regard to Facebook and Zuckerberg.  There was a confidential

10  email that was attached to it.  So, therefore, we did not file

11  it and we gave it straight to counsel and straight to the

12  Court.  Your Honor, we did, as soon as we drafted this up and

13  went back, we did contact counsel and we tried to figure out a

14  way to reach out to Mr. Southwell.  And I thought the most

15  expeditious way to do that was send an email CCing counsel, and

16  this way we'd have a dialogue that way.  We have not received

17  it yet, Judge.  Whether they do or they don't turn it over, I

18  don't want there to be a playing with words or some

19  wordsmithing and we don't get exactly what we need.  So,

20  therefore, I ask the Court to issue the order so it's exactly

21  what we need.

22          Now, in the email I used the exact same language

23  that's in the order.  So I'd ask that the Court issue the order

24  so this way we can get it to Mr. Southwell and the other

25  attorneys so they can make conformity so this way I don't waste

1    the time before December 17 to file respective motions that I

2    need to file.

3              THE COURT:  Okay.  I'm not going to do that yet.  I

4    need some more time to think about that and look at that and

5    discuss it with my clerk, especially since now there's a new

6    clerk assigned to this matter.  I need some time to look at

7    that and make a decision.

8              Okay.  Thank you very much.  Have a good day.

9                              o0o

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25