## ROBERT ROSS FOGG, ESQ., LL.M.

Attorney and Counselor at Law

69 Delaware Ave., Suite 600
Buffalo, New York 14202
(716) 853-FOGG (3644)
Fax:    (716) 852-6782

December 17, 2014

Honorable Andrew L. Carter, Jr., U.S.D.J.
United States District Court
United States Courthouse
Southern District of New York
40 Foley Square
New York, New York 10007

> RE:    United States v. Paul Ceglia
> Case No.: 12 cr 876 (ALC)

Dear Judge Carter:

At the last status conference, the Court asked for additional authority to support Mr. Ceglia's request that the grand jury subpoenas issued to Defendant's former lawyers be quashed and the documents obtained - most, if not all of which are being reviewed in camera by the Court - be returned to the Defendant in their entirety.  This letter memorandum responds to the Court's call for the legal support for Mr. Ceglia's request.

The Grand Jury Subpoenas issued post-indictment in this matter are meant to elicit evidence from Mr. Ceglia's former attorneys, not for presentation to the Grand Jury, but as a discovery device in the criminal proceeding in this Court.  As a result, 1) the subpoenas must be quashed; 2) the documents obtained pursuant to those subpoenas must be returned to Mr. Ceglia without being shared with the Government's prosecution team; and 3) the use of any evidence obtained pursuant to those subpoenas barred at trial.[1]

---

[1]This memorandum is written to address the improper issuance of the Grand Jury Subpoenas and use of the compelled evidence by the Government's trial team. The subpoenas should be

"The law is settled in [the Second Circuit] and elsewhere that 'it is improper to utilize a Grand Jury for the sole or dominating purpose of preparing an already pending indictment for trial.'" *In re Grand Jury Subpoena Duces Tecum Dated January 2, 1985* ("*Simels*"), 767 F.2d 26, 29 (2d Cir. 1985) quoting *United States v. Dardi*, 330 F.2d 316, 336 (2d Cir. 1964), cert. denied, 379 U.S. 845 (1964). In *Simels*, the defendant, Payden, appealed from an order of the district court denying a motion to quash a grand jury subpoena served upon Payden's attorney, Simels. *Id.* at 27. The subpoena called for the production of all documents relating to the fee agreement between Payden and Simels. *Id.* In August 1984, Payden was arrested and indicted shortly thereafter. *Id.* On October 10, 1984, the grand jury returned a superseding indictment that added an additional count to the complaint. *Id.* A week later, the district court issued a trial subpoena to Simels calling for all of the production of all documents related to the fee agreement between Simels and Payden. *Id.* at 28.

Simels requested that the subpoena be adjourned pending reconsideration of its issuance by the U.S. Attorney. *Id.* Among other reasons, this request was due to the impact the subpoena had on the attorney-client relationship. *Id.* The government did not respond until January 3, 1985, when it issued a grand jury subpoena to Simels, seeking the same documents as the trial subpoena. *Id.* Payden moved to quash the grand jury subpoena and "argued the subpoena constituted an abuse of process because its 'sole or dominant purpose' [was] to obtain evidence for use at trial..." *Id.* Among other reasons, the government argued that the grand jury subpoena "offered the promise of...'additional charges against Payden, and additional defendants in a superceding indictment...'" *Id.* The district court "rejected Payden's claim that the prosecutor

quashed and the evidence returned to Mr. Ceglia on this basis set forth herein. This memorandum is not and should not be construed as a waiver by Mr. Ceglia of his Fourth Amendment right to be free of unreasonable searches and seizures.

US v Ceglia, 1:12-CR-00876-ALC
December 17, 2014
Page 3 of 6

had abused the grand jury process; it held instead that the grand jury's investigation 'was still in

progress at the time the subpoena was issued,' finding that the grand jury was still entitled to

gather information 'relevant to forfeiture' and to seek the identities of as yet unindicted co-

conspirators." *Id.* at 28 - 29.

The circuit court reversed the district court's denial of the motion to quash, noting that

the timing of the subpoena casted "significant light on its purposes." *Id.* at 29 - 30.  The

documents were initially sought through a trial, not a grand jury subpoena. *Id.* at 29.  The

government's letter issuing the trial subpoena stated that it was "served solely for evidentiary

purposes." *Id.* The court reasoned as follows:

> [W]hen the trial subpoena was issued, we assume that the government knew that Simels'
> evidence might bear on matters relevant to the grand jury's investigation, such as the
> identification of co-conspirators.  Nevertheless, no grand jury subpoena was issued in
> October 1984.  The adjournment of the trial subpoena and the substitution of a grand jury
> subpoena in January 1985 might have represented a laudable attempt to alleviate the
> concerns raised by Simels and representatives of the organized bar, but we see no reason
> to believe that this concession signified a shift in the uses to which the government
> intended to put the information sought.
>
> ...
> We are well aware the rule barring use of the grand jury to gather evidence to prepare for
> trial on an already pending indictment "is difficult, if not impossible, to enforce."  8 J.
> Moore, *supra*, para. 6.04 at 6-86.  Even where we have found clear violations, we have
> often been reluctant to go beyond a simple rebuke. See *United States v. Fahey*, 510 F.2d
> 302, 306-07 (2d Cir. 1974); *United States v. Fisher*, 455 F.2d 1101, 1104-05 (2d Cir.
> 1972).  But if the rule is to have any meaning, we believe that the subpoena here must be
> quashed as an abuse of the grand jury process.  In some circumstances, it may be
> appropriate to enforce the rule against using a grand jury subpoena predominantly for
> trial preparation simply by barring use at trial of evidence obtained pursuant to the
> subpoena, thereby leaving the grand jury's access to the evidence unimpaired.  See
> *United States v. Dyer*, 722 F.2d 174, 178-79 (5th Cir. 1983); *United States v. Doe
> (Application of Ellsberg)*, 455 F.2d 1270, 1276 (1st Cir. 1972); see also *United States v.
> Dardi, supra*, 330 F.2d at 336.  In the circumstances of this case, however, we conclude
> that quashing is the appropriate remedy.

*Id.* at 29 - 30.

Like *Simels*, in the matter at hand the Grand Jury Subpoenas were issued post-indictment. Furthermore, it is clear that the subpoenas are an abuse of procedure and are meant to elicit evidence from Mr. Ceglia's former attorneys, not for presentation to the Grand Jury, but as a discovery device in the criminal proceeding in this Court. This, the Government admitted at page 15 of its brief in support of the application of the crime-fraud exception (ECF No. 70):

> The Government respectfully requests that the Court order that the crime fraud exception applies to all documents and communications withheld by Kasowitz and DLA Piper, and authorize the Wall AUSA to make these documents available *to the prosecution team in this case.* (Emphasis added).

The Government's resort to the exception applicable to superseding indictments, additional charges or additional defendants was made for the first time in its letter to the Court on November 20, 2014 (ECF No. 100), and is contrary to the earlier assertion that the privileged communications are intended for use by the Government's trial team.

Here, the government wants this Honorable Court to believe that the the Second Circuit holds that the Court's determination under the crime-fraud exception requires there to be "(i) a determination that 'the client communication or attorney work product in question was itself in furtherance of the crime or fraud' and (ii) 'probable cause to believe that the particular communication with counsel or attorney work product was intended in some way to facilitate or to conceal the criminal activity.'" *In re Richard Roe, Inc.*, 68 F.3d 38, 39 (2d Cir 1995) ("Roe I"). However, the Government's reliance upon "Roe I" is misplaced and in error.

The *Richard Roe* case returned to the Second Circuit again on appeal, under *In re Richard Roe, Inc.*, 168 F. 3d 69, 2nd Cir 1999 (Roe II). This time the government made it clear to the Second Circuit Court that, as in this case, the government was criminally prosecuting the defendant for fraud based on the act of litigating. In that instance, the Second Circuit held that "Where the very act of litigating is alleged as being in furtherance of a fraud, the party seeking

Case 1:12-cr-00876-ALC   Document 109   Filed 12/17/14   Page 5 of 6

disclosure under the crime-fraud exception must show probable cause that the litigation or an aspect thereof had little or no legal or factual basis and was carried on substantially for the purpose of furthering the crime or fraud. Absent such a showing, the requisite finding that an otherwise privileged or immunized communication was intended to further the fraud cannot be made." *Id.*

Therefore, under the controlling law of this Circuit, the party alleging that the crime-fraud exception applies must show "probable cause" that the litigation or an aspect thereof "had little or no legal or factual basis and was carried on substantially for the purpose of furthering the crime or fraud." *Id.*

It is not enough to show probable cause that the Defendant can be accused of a crime, the government must show "that the use of an attorney's services [was] in furtherance of a crime or fraud for the exception to apply". *Id.* Finally, "The party seeking disclosure has a very high burden and must establish the alleged crime or fraud by a preponderance of evidence." *Id.*

Without the use of the fruit of the poisonous tree, the government could not possibly have shown any evidence, let alone a preponderance of evidence, that the attorneys furthered a crime. As the Court already knows from having reviewed certain of the documents in question, even if the government already had full access to the privileged communications in question, they could not present evidence of fraud by the attorneys.

Finally, the Government has not clearly and definitively stated that the issuance of the subpoenas to the Mr. Ceglia's former attorneys was authorized by the Assistant Attorney General in charge of the Criminal Division. We respectfully request that the Court require the Government to confirm that the Assistant Attorney General's authorization was obtained for these subpoenas.

US v Ceglia, 1:12-CR-00876-ALC
December 17, 2014
Page 6 of 6

In conclusion, the Court must follow the binding precedent of *Simels* by 1) quashing the

Grand Jury Subpoenas; 2) ordering the return of the documents to Mr. Ceglia without sharing

them with the Government's prosecution team; and 3) barring the use at trial of any evidence

obtained pursuant to those subpoenas.

Thank you for Your Honor's consideration.

Respectfully yours,

Robert Ross Fogg,
Attorney for Defendant, Paul Ceglia

RRF/hs