UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

*Plaintiff,*

v.

PAUL D. CEGLIA

*Defendants.*

**NOTICE OF MOTION**
CASE No: 1:12-CR-00876-ALC

S I R S:

COMES NOW the defendant, Paul D. Ceglia, by and through his attorney, ROBERT

ROSS FOGG, ESQ., attorney for Paul D. Ceglia and upon the annexed affidavit of Robert Ross

Fogg, hereby moves this Court for the relief set forth in the affidavit annexed hereto and made a

part hereof together with such other and further relief as to this court deems just and proper.

Dated:      Buffalo, New York
            December 17, 2014

Respectfully submitted,

*/s/ Robert Ross Fogg*
ROBERT ROSS FOGG, ESQ.
Counsel for Defendant
*PAUL D. CEGLIA*
Office and Post Office Address
69 Delaware Avenue, Suite 600
Buffalo, New York 14202
Tele: (716) 853-3644  Fax: (716) 852-6782
Email: rfogg@rfogglaw.com

TO:
      Janis M. Echenberg, Esq.
      Assistant United States Attorney
      Southern District of New York
      1 Saint Andrew's Plaza
      New York, NY 10007

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    *Plaintiff,*<br><br>                    v.<br><br>PAUL D. CEGLIA<br><br>                    *Defendants.* | PRE-TRIAL MOTIONS<br>ON BEHALF OF DEFENDANT<br>PAUL D. CEGLIA<br><br>CASE No: 1:12-CR-00876-ALC |

---

ROBERT ROSS FOGG, ESQ., being duly sworn, deposes and says:

1.      I am an attorney at law duly licensed to practice in the State of New York and admitted to practice before the Court, with a solo-practice located at 69 Delaware Avenue, Suite 600, Buffalo, New York 14202.

2.      I represent the defendant, Paul D. Ceglia, in the above-entitled action brought by the United States of America and as such am familiar with the facts and circumstances of the case from interviews with the Defendant and previous pleadings and proceedings.

3.      Defendant Paul D. Ceglia files the instant motion for various relief.

4.      As background, Paul D. Ceglia is charged in COUNT ONE, of the instant two (2) count indictment, with Mail Fraud, in violation of Title 18, United States Code, Section 1341 and 2.  Count One reads as follows:

"From at least in or about June 2010, up to and including in or about October 2012, in the Southern District of New York and elsewhere, PAUL CEGLIA, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, for the purpose of executing such scheme and artifice and attempting so to do, did place and caused to be placed in a post office and authorized depository for mail matter, matters and things to be sent and delivered by the Postal Service, and did deposit and cause to be deposited matters and things to be sent and delivered by private and commercial interstate carriers, and did take and receive and cause to be taken and received therefrom, such matters and things, and did cause to be delivered by mail and such carriers, according to the direction thereon, such matters and

things, to wit, CEGLIA filed a civil lawsuit against Facebook, Inc. and that company's
founder and Chief Executive Officer, Mark Zuckerberg, fraudulently demanding a
significant ownership stake in Facebook, Inc., and caused legal pleadings and other items
to be delivered by mail to Washington, D.C., among other places, from the Southern
District of New York and elsewhere, including on or about April 11, 2011."

5.      Defendant Paul D. Ceglia is charged in COUNT TWO, of the instant two (2)
count indictment, with Wire Fraud, in violation of Title 18, United States Code, Section 1343
and 2.  Count Two repeats, realleges and incorporates by reference the allegations contained in
the preamble of the indictment and Count One.  Count One reads as follows:

"From at least in or about June 2010, up to and including in or about October 2012, in the
Southern District of New York and elsewhere, PAUL CEGLIA, the defendant, willfully
and knowingly, having devised and intending to devise a scheme and artifice to defraud,
and for obtaining money and property by means of false and fraudulent pretenses,
representations and promises, did transmit and cause to be transmitted by means of wire
communication in interstate and foreign commerce, writings, signs, signals, pictures, and
sounds for the purpose of executing such scheme and artifice, to wit, CEGLIA filed a
civil lawsuit against Facebook, Inc. and that company's founder and Chief Executive
Officer, Mark Zuckerberg, fraudulently demanding a significant ownership stake in
Facebook, Inc., and caused others to send interstate electronic communications in
connection with that lawsuit, including on or about July 14, 2011, November 1, 2011, and
December 8, 2011."

6.      Defendant Paul D. Ceglia is also charged with two separate "Forfeiture
Allegations" and "Substitute Asset Provisions."  As to Count One, defendant is required to
forfeit property to the United States pursuant to 18 USC §§ 981(a)(1)(C) and 1341, 21 USC §853
and 28 USC §2461(c).  As to Count Two, defendant is required to forfeit property to the United
States pursuant to 18 USC §981(a)(2)(A) and 21 USC §853(p).

7.      The motions filed and included (and referred to as numbered) below should be
considered separate motions and requests for relief, but are filed together in one pleading for the
convenience of the Court and opposing counsel.

# I.

## MOTION TO SUPPRESS STATEMENTS

8.      Voluntary discovery has not revealed that statements attributed to Paul D. Ceglia may have been attained by law enforcement personnel effectuating his arrest or otherwise.

9.      Counsel requests notice of the intention to use any such statements and a full description of the circumstances in which they may have been made, as well as any documents pertinent to this issue.

10.      Accordingly, Paul D. Ceglia reserves his right to move to suppress any statements taken in violation of his Fifth Amendment rights; or in the alternative, requests that a hearing be conducted to resolve any outstanding factual issues.

# II.
## MOTION TO EXCLUDE STATEMENTS BY
## NON-TESTIFYING CO-CONSPIRATORS

11.      Voluntary discovery has not revealed that there exist statements attributed to non-testifying co-conspirators, or even the existence of co-conspirators.  However, in light of the Government's recent statement that issuance of the grand jury "subpoenas to DLA Piper and Kasowitz were part of the Government's then-ongoing investigation into potential additional charges and defendants"  Dkt #100, pursuant to *Bruton v. United States*, 391 U.S. 123 (1968), and the Sixth Amendment to the United States Constitution, Paul D. Ceglia respectfully requests that the Court bar the admission into evidence of all post-arrest statements by non-testifying coconspirators/co-defendants which may implicate him in any way.

12.      In *Bruton v. United States*, 391 U.S. 123 (1968), the Supreme Court held that a defendant's Sixth Amendment right of cross-examination was violated when a non-testifying co-defendant's confession, implicating the defendant, was introduced at their joint criminal trial. *Bruton*'s protection of defendants' Sixth Amendment confrontation and cross-examination rights remains a linchpin of joint criminal trials.

13.      Although in *Richardson v. Marsh*, 481 U.S. 200 (1987), the Supreme Court approved the use of non-testifying co-defendant confessions where all reference to the defendant's existence are eliminated and a limiting instruction is used, the continued vitality of *Bruton* and broad protections of the Sixth Amendment were demonstrated by the Supreme

Court's recent decision in *Gray v. Maryland*, 523 U.S. 185 (1998).  There, the Court applied *Bruton* to a case where reference to the defendant's existence was eliminated in the confession, but deletions in the confession were marked with a blank or "deleted."  The Court found that the defendant's Sixth Amendment rights were violated. *Cf. Lilley v. Virginia*, 527 U.S. 116 (1999) (admission of non-testifying accomplice's confession violated Confrontation Clause).  Because he has not received discovery of any post-arrest statements by coconspirators or co-defendants, Paul D. Ceglia cannot know whether the government will seek to use such evidence against him or even if such statements exist.  Therefore, Paul D. Ceglia makes this motion to exclude any such statements, and requests leave to amend and supplement it, and to file an additional memorandum of law or memorandum in support, after he has received full discovery and can apply the applicable authorities to the facts presented.

### III
### MOTION FOR A BILL OF PARTICULARS

14.     Paul D. Ceglia requests an Order, pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure, requiring the government to provide a written bill of particulars as requested below.

15.     The two-count Indictment charges Paul D. Ceglia with mail and wire fraud, where each count is accompanied by an additional charge of aiding and abetting, arising out of ordinary litigation activity in pursuing a civil lawsuit.

16.     Your deponent has been provided with some voluntary discovery provided by the government, there is no information in that discovery which provides any information or evidence linking Defendant to the crimes under Count One.  In review of the discovery thus, Defense has yet to uncover a copy of the alleged mailings underlying the mail fraud charge in Count One.

17.     In addition, the Government's ultimate theory of the case continues to shift and evolve as the case proceeds.  The Government refuses to commit to the rulings of the Court regarding the Court's July 7, 2014 determination on Defendant's bill of particulars request.

18.

19.      As the Court knows, Rule 7(f) of Federal Rules of Criminal Procedure permits the Court to direct the filing of a bill of particulars.  As recognized by the Second Circuit, the bill of particulars has three functions: (1) to inform the defendant of the nature of the charge against

him with sufficient precision to enable him to prepare for trial; (2) to avoid or minimize the danger of surprise at the time of trial; and (3) to enable him to plead his acquittal or conviction in bar of another prosecution for the same offense when the indictment itself is too vague, and indefinite for such purposes. *United States v. GAF Corp.*, 928 F.2d 1253 (2d Cir. 1991); *United States v. Davidoff*, 845 F.2d 1151 (2d Cir. 1988); *United States v. Bortnovsky*, 820 F.2d 572 (2d Cir. 1987). The particulars requested are also necessary because the charges in the indictment are so general that they do not advise the defendant of the specific acts of which he is accused. *United States v. Torres*, 901 F.2d 205 (2d Cir. 1990).

20.     Without such specification as to the nature of his allegedly improper conduct, Paul D. Ceglia is without ability to prepare for trial and the danger of surprise at trial is greatly increased. *See*, *also*, *United States v. Bortnovsky*, 820 F.2d 572 (2d Cir. 1987) (prosecutor was required to advise the defendant, through a bill of particulars, which specific documents they intended to rely upon in a mail fraud prosecution).

21.     As recognized by the Court in *United States v. Rosa*, 891 F.2d 1063, 1066 (3d Cir. 1989):

> Prior to 1966, Rule 7(f) limited bills of particulars to those situations in which the moving party demonstrated the cause for his request. By amending the rule in 1966 to eliminate the cause requirement, the drafters expressly sought "to encourage a more liberal attitude by the courts towards bills of particulars without taking away the discretion which courts must have in dealing with such motions in individual cases." Fed. R. Crim. P. 7 Advisory Committee's note to 1966 amendment. Consistent with this shift, the case law now recognizes that motions for bills of particulars should be granted whenever an indictment's failure to provide factual or legal information significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial.

22.     In accordance with these principals, we request that the specified particulars be supplied as without such information counsel's ability to prepare a defense is significantly impaired and it is likely that prejudicial surprise at trial will occur.  For the reasons set forth above, and for the additional reasons set forth below, the defendant requests the following particulars as to each count (i.e., each substantive offense in each Count, each aiding and abetting charge in each Count and each separate wire fraud transaction in Count Two):

a.  State with specificity whether page two of the Streetfax is an original or a copy of the authentic contract as alleged by the government;

b.  State with specificity whether the signature of Mark Elliot Zuckerberg appearing on the signature line of page two is an original or a copy of the authentic signature of Mark Elliot Zuckerberg;

c.  State with specificity whether page one of the Streetfax is an original or a copy of the authentic contract as alleged by the government;

d.  State with specificity whether the initials of Mark Elliot Zuckerberg appearing approximately mid-page of the first column of page one is an original or a copy of the authentic initials of Mark Elliot Zuckerberg;

e.  State with specificity whether defendant devised or intended to devise a scheme or artifice;

f.  State with specificity whether defendant is alleged to have obtained money or property;

g.  Particularly describe the specific times, dates and locations when, where and the manner in which defendant Paul D. Ceglia sold, disposed of, loaned, exchanged, altered, gave away, distributed, supplied, or furnished or procured for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do;

h.  State with specificity the manner in which defendant is alleged to have defrauded

i.  Particularly describe the alleged false or fraudulent pretenses by which defendant obtained money or property;

j.  Particularly describe the alleged false or fraudulent representations by which defendant obtained money or property;

k.  Particularly describe the alleged false or fraudulent promises by which defendant obtained money or property

l.  Particularly describe the specific times, dates and locations when, where and the manner in which defendant Paul D. Ceglia placed in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service.

m.  Particularly describe the matter or thing whatever defendant is alleged to have sent or delivered by the Postal Service

n.  Particularly describe the specific times, dates and locations when, where and the manner in which defendant Paul D. Ceglia deposited any matter or thing

whatever to be sent or delivered by any private or commercial interstate carrier;

o.   Particularly describe the specific times, dates and locations when, where and the manner in which defendant Paul D. Ceglia caused to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier;

p.   Particularly describe the specific times, dates and locations when, where and the manner in which defendant Paul D. Ceglia took or received any such matter or thing any private or commercial interstate carrier;

q.   Particularly describe the specific times, dates and locations when, where and the manner in which defendant Paul D. Ceglia caused to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing;

r.   State with specificity the matters or things defendant is alleged to have transmitted by means of wire, radio, or television communication in interstate or foreign commerce any writings, signs, signals, pictures, or sounds, including the times, dates and locations of such actions;

s.   State with specificity the matters or things defendant is alleged to have caused to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce any writings, signs, signals, pictures, or sounds, including the times, dates and locations of such actions;

t.   A list of all unindicted co-conspirators, regardless of whether the government intends to call any co-conspirator as a witness at trial. *See United States v. DeGroote*, 122 F.R.D. 131, 137-39 (W.D.N.Y. 1988) (collecting cases); *United States v. Feola*, 651 F. Supp. 1068, 1133-34 (S.D.N.Y. 1987), *aff'd.*, 875 F.2d 857 (2d Cir. 1989) (mem.);

u.   The specific times, dates and locations when and where Paul D. Ceglia and other co-conspirators combined and agreed to commit mail and wire fraud;

v.   Where "elsewhere" the co-conspirators allegedly conspired;

w.   How the co-conspirators, including Paul D. Ceglia, knowingly, willfully and unlawfully combined, conspired and agreed together to commit mail and wire fraud;

x.   List all uncharged overt acts taken by the co-conspirators, including Paul D. Ceglia;

y.   Particularly describe the significance of June 2010 as the alleged date of the commencement of the conspiracy, if the exact date is not known to the grand jury;

    z.   Whether or not any individual present during the commission of any alleged overt acts was acting for the government, and the names, or names then used or similar identification, or any such person;

   aa.  The names, to the extent known, of any persons present when the overt and substantive acts allegedly took place;

   bb.  The dates, to the extent known, when each defendant joined the conspiracy, and the date on which the conspiracy ended, including the dates when each defendant left the conspiracy, if different than the alleged ending date. *See United States v. Feola,* 651 F. Supp. 1068, 1134 (S.D.N.Y. 1987), *aff'd*, 875 F.2d 857 (2d Cir. 1989); *United States v. DeGroote*, 122 F.R.D. 131 (W.D.N.Y. 1988); *United States v. Scott*, 93-CR-26E (W.D.N.Y. 1994); and

23.    Whether to grant a bill of particulars rests within the sound discretion of the district court. *United States v. Panza*, 750 F.2d 1141, 1148 (2d Cir. 1984). A bill of particulars is particularly important in complex cases, such as conspiracy cases covering an extended period of time. See, e.g., *United States v. Davidoff*, 845 F.2d 1151 (2d Cir. 1988). The fact that evidentiary details or the government's theory of the case may be revealed is insufficient reason to deny a reasonable request for a bill of particulars. *United States v. Greater Syracuse Board of Realtors*, 438 F. Supp. 376 (N.D.N.Y. 1977). *United States v. Calvi*, 830 F. Supp. 221 (S.D.N.Y. 1993), is instructive regarding both the necessity and the importance of a bill of particulars:

> An order directing filing of a bill of particulars in regard to this rather detailed indictment would be inappropriate in view of the United States Attorney having responded to all other discovery requests of the defense, and no claim of inadequacy of that response having been made.
>
> The prosecution is in the best position to know in advance of trial whether any of its evidence is likely to produce surprise making it difficult for the defense to cross-examine the applicable witnesses or otherwise defend the case with full vigor. If such a risk exists, it will be in the interest of the United States to furnish further information in advance of trial to avoid the need for a continuance during the trial to alleviate any adverse consequences which may flow from such surprise.
>
> Rule 7(f) of the Federal Rules of Criminal Procedure does not require the United States Attorney to furnish a three dimensional colored motion picture of the prosecution's proof prior to trial. In the event that actual unfair surprise can be shown, an appropriate continuance may be considered.

*Id.* at 223. *Calvi* directly correlates the need for a bill of particulars with the amount of detail in the indictment. Although the reported decision in *Calvi* does not set forth the indictment *in toto*, the indictment there was obviously much more detailed than the indictment here, which does

little more than track the statutory language over a period of years. Here, the Indictment is fairly characterized as "bare bones," and in order to adequately prepare a defense to these charges and for trial, the Court should order the government to file a bill of particulars providing the information requested above.

## IV.
## MOTION FOR REVELATION OF
## IDENTITY OF INFORMANTS

24.     Voluntary discovery has not revealed that there exist of informants, identified or unidentified.  As such, counsel requests notice of the intention to use any such informants, of the identity of said informants, of statements attributable to said informants and a full description of the circumstances in which they may have been made, as well as any documents pertinent to this issue.

25.     In light of the Government's November 20, 2014 letter to the court, Dkt #100, Paul D. Ceglia reserves his right to move this Court, pursuant to the provisions of Rule 16 of the Federal Rules of Criminal Procedure and the Fifth Amendment to the United States Constitution, for an Order requiring disclosure by the government; or in the alternative, requests that a hearing be conducted to resolve any outstanding factual issues.

26.     Nevertheless, should the existence of informants come to bear, defendant Paul D. Ceglia hereby reserves his right to move this Court for an Order requiring for disclosure, pursuant to the provisions of Rule 16 of the Federal Rules of Criminal Procedure and the Fifth Amendment to the United States Constitution.

**A.     Upon a Proper Showing, the Defendant is Entitled
to Pre-Trial Access to Prosecution Witnesses.**

27.     Paul D. Ceglia recognizes that the general rule is that in a non-capital case, the accused has no constitutional right to require production of the names and addresses of prospective witnesses. *See, e.g., United States v. Cole*, 449 F.2d 194, 198 (8th Cir. 1971), *cert. denied*, 405 U.S. 931, 92 S.Ct. 991 (1972).  However, it should be noted that this rule is suffering from increasing erosion. For example, in *United States v. Baum*, 482 F.2d 1325 (2d Cir. 1973), the Second Circuit held that it was reversible error to deny pre-trial disclosure of the identity of a witness to the defendant's similar criminal conduct. *See also, United States v. Allstate Mortgage Corp*., 507 F.2d 492 (7th Cir. 1974) (rule of *Baum* adopted and approved). Moreover, an order

requiring pretrial disclosure of government witnesses is a proper exercise of judicial authority. *See, United States v. Richter*, 488 F.2d 170, 173-174 (9th Cir. 1973) (affirming the authority of the trial court to order pre-trial discovery of prospective government witnesses); *United States v. Jackson,* 508 F.2d 1001, 1006-1007 (7th Cir. 1975) (a trial court can enter and order *sua sponte* and without a showing of materiality requiring pre-trial disclosure of prospective government witnesses.

     28.    The United States Supreme Court first addressed the disclosure of government witnesses in *Alford v. United States*:

> Cross-examination of a witness is a matter of right. Its permissible purposes, among others, are that the witness may be identified with his community so that independent testimony may be sought and offered of his reputation for veracity in his own neighborhood; that the jury may interpret his testimony in the light reflected upon it by knowledge of his environment; and that facts may be brought tending to discredit the witness by showing that his testimony in chief as untrue or biased . . . . Prejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise them.

[Citations omitted]. *Alford v. United States*, 282 U.S. 687, 688, 51 S.Ct. 218, 219 (1931).

     29.    Subsequently, in *Smith v. Illinois*, 390 U.S. 129, 88 S.Ct. 748 (1967), the Supreme Court reconsidered the rule of *Alford v. United States* and held that the failure to disclose the address of a primary prosecution witness was a denial of the defendant's Sixth Amendment right to confront and cross-examine witnesses. The Court stated:

> The witness' name and address open countless avenues of in-court examination and out-of-court investigation. To forbid this most rudimentary inquiry at the threshold is effectively to emasculate the right of cross-examination itself. Id. at 750.

     30.    Therefore, it is the defendant's position that an accused has the right to know the identity and location of prospective government witnesses so that he may interview them prior to trial in order to put such witnesses in proper setting for purposes of credibility and cross-examination.

     31.    Based, then, on the reasons cited above, it is respectfully requested that the identity and location of the prospective government witnesses be disclosed and that they be produced by the government prior to trial.

32.     Disclosure of informant information in this prosecution is essential to a fair determination of the charges filed against the defendant. Much of what the government's evidence in this case appears to be is based the filing of ordinary litigation documents that in no way is tied to Paul D. Ceglia the commission of any crime.  Paul D. Ceglia is entitled to know whether these government witnesses have any knowledge of whether Paul D. Ceglia was involved in alleged criminal activity.

33.     In addition, the defense demands the following information about all informants:

    a.   All evidence affecting the issues of bias or credibility;

    b.   Their criminal records, *United States v. Auten*, 632 F.2d 478 (5th Cir. 1980);

    c.   All promises or consideration of any kind given to the informants, *Giglio v. United States*, 405 U.S. 150 (1972);

    d.   Identification of the witness' prior testimony, *Johnson v. Brewer*, 521 F.2d 556 (8th Cir. 1975);

    e.   Evidence of psychiatric treatment of each informant or cooperating witness or person, *United States v. Lindstrom*, 698 F.2d 1154 (11th Cir. 1983); and

    f.   Whether the informants, cooperating witnesses or persons are being compensated, including favorable plea agreements, in return for their cooperation with the government. *United States v. Morell*, 524 F.2d 550 (2d Cir. 1975).

34.     The inherent unreliability of the testimony of an accomplice or government informant underscores the need for complete disclosure of information relating to credibility. *See United States v. Bagley*, 473 U.S. 667 (1985); *Perkins v. LeFevre*, 642 F.2d 37 (2d Cir. 1981); *United States v. Caldwell*, 466 F.2d 611 (9th Cir. 1972). Put another way, "[t]he use of informants to investigate and prosecute persons is fraught with peril." *United States v. Bernal-Obeso*, 989 F.2d 331 (9th Cir. 1993).

35.     For these reasons, the identities and information requested above should be disclosed by the government to Paul D. Ceglia.

**V.**
**MOTION FOR DISCOVERY PURSUANT TO**
**RULE 16 AND NOTICE OF INTENTION**
**PURSUANT TO RULE 12**

36.     The government has provided some voluntary discovery. However, pursuant to Federal Rule of Criminal Procedure 16(a)(1)(A)(B)(C) & (D), the defendant now moves to compel discovery of any items or information to which the defendant is entitled. *Specifically*, this request includes, but is not limited to, the following:

  a.   copies of any and all records, including reports and/or logs, relating to the alleged conspiracy and the arrest of all coconspirators;

  b.   copies of all records, including reports and/or logs, regarding radio transmissions from the officers at any search warrant or arrest scene regarding the investigation;

  c.   copies of any and all reports relating to the booking process in this case;

  d.   copies of any reports and/or test results relating to authenticity of documents, whether in electronic, image, native, paper, wire, digital, date and whatever form;

  e.   copies of any reports and/or test results relating to the contents of any and all data electronic devices and the storage of data, images, documents, electronic mail (email),

  f.    documents, whether in electronic, image, native, paper, wire, digital, date and whatever form;

  g.   copies of any and all photographs taken relating to this investigation;

  h.   copies of any and all documents and photographs seized on the day of any searches in this case;

  i.    inspection of all items seized from the defendant before, on or after the day of his arrest;

  j.    disclosure of the names and identities of expert witnesses the government intends to call at trial, their qualifications, subject of testimony, and reports, and the results of tests, examinations or experiments which are material to the preparation of the defense or which are intended for use by the government as evidence-in-chief at the trial;

  k.   a copy of any search warrant or arrest warrant applied for and/or issued or denied during the course of this investigation (whether state, federal or local); and

l.    pursuant to Rule 12(d) of the Federal Rules of Criminal Procedure, the
defendant requests written notification of any evidence that the government
intends to use in its case-in-chief that may, in any way, be subject to a motion
to suppress and which the defendant is entitled to discover pursuant to Rule
16.

37.    Pursuant to Rule 16, Paul D. Ceglia requests that the government provide him
with discovery as provided by that Rule, to the extent that they have not already done so.  Paul
D. Ceglia notes that the government has provided the defense access to some discovery
documents in their possession, and has agreed that the defense, upon reasonable notice, will be
permitted continued access to such material, as well as the ability to copy the same.
Nevertheless, this motion is brought to preserve the defendant's discovery rights.

38.    Rule 12(b) establishes a procedure for notifying a defendant of the government's
intention to use certain evidence at trial. The express purpose of this procedure is to afford an
opportunity for submission of pre-trial motions seeking the suppression of such evidence [Rule
12(b)(1) and (2)]. Specifically, Rule 12(b)(4)(B) provides that at the defendants request, in order
to have an opportunity to move to suppress evidence under Rule 12(b)(3)(C), he may request
notice of the government's intent to use (in its evidence-in-chief at trial) any evidence that the
defendant may be entitled to discover under Rule 16.

39.    To the extent that the government complied with Rule 12(b), they need only so
note on the disclosure notice.

40.    Therefore, pursuant to Rule 12(b), request is hereby made for the immediate
disclosure by the government of a notice setting forth any evidence which the defendant may be
entitled to discover under Rule 16 which the government intends to utilize at trial, including, but
not limited to:

**Statements of Defendants**

41.    Paul D. Ceglia hereby requests notification of any relevant written or recorded
statements made by the defendants, or copies thereof, within the possession, custody, or control
of the government, the existence of which is known, or by the exercise of due diligence may
become known, to the attorney for the government; that portion of any written record containing
the substance of any relevant oral statement made by the defendants whether before or after
arrest in response to interrogation by any person then known to the defendants to be a
government agent; and recorded testimony of the defendant before a grand jury which relates to

the offense charged. The government must also disclose to the defendants the substance of any other relevant oral statement made by the defendants whether before or after arrest in response to interrogation by any person then known by the defendants to be a government agent if the government intends to use that statement at trial. Upon request of a defendant which is an organization such as a corporation, partnership, association or labor union, the government must disclose to the defendant any of the foregoing statements made by a person who the government contends (1) was, at the time of making the statement, so situated as a director, officer, employee, or agent as to have been able legally to bind the defendant in respect to the subject of the statement, or (2) was, at the time of the offense, personally involved in the alleged conduct constituting the offense and so situated as a director, officer, employee, or agent as to have been able legally to bind the defendant in respect to that alleged conduct in which the person was involved.

### Defendant's Prior Record

42.     Paul D. Ceglia hereby requests a copy of his prior criminal record, if any, as is within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government.

### Documents and Tangible Objects

43.     Paul D. Ceglia requests the following: (1) any tangible items within the government's possession, custody and/or control which the prosecutor intends to use as evidence in chief; (b) any tangible items within the government's possession, custody and/or control which was obtained from the defendants or which belong to the defendants; (c) any tangible items within the government's possession, custody and/or control which is material to the preparation of the defendant's defense; and (d) any and all recordings of any conversations which pertain to any of the facts alleged in the instant Indictment.

### Intercepted Communications

44.     Paul D. Ceglia hereby requests notification of the existence of any and all Title III surveillance, or any electronic surveillance conducted pursuant to federal, state or local warrant, including any intercepted communications (audio and/or video intercepts) or evidentiary leads derived therefrom, and a statement as to whether they were acquired in the presence or absence of court authorization.

1.     If acquired by warrantless means, disclosure is requested as to the following:

(a)     specifications of the name and address of the participant in each such communication who ostensibly consented to interception of same;

(b)     reproduction of any technical or physical surveillance logs respective of each communication so intercepted;

(c)     reproduction of any transcripts purporting to memorialize the content of each communication so intercepted; and

(d)     any instructions by the supervising agency to each participant who purportedly consented to the interception.

2.      As to each and every intercepted communication, counsel further seeks an opportunity to examine and inspect the electronic equipment used to intercept and record each communication constituting the subject of electronic surveillance.

3.      If acquired by eavesdrop order(s), disclosure and duplication is requested as to the following:

(a)     each eavesdrop order and each amendment and extension order;

(b)     the application and all other supporting documents which preceded each such eavesdrop, amendment and/or extension order;

(c)     all progress reports which relate to any eavesdrop, amendment and/or extension order;

(d)     any technical and/or physical surveillance logs;

(e)     all minimization instructions to the executing agency(s); and

(f)     all sealing order(s) which relate to any of the aforementioned orders.

(g)     All surveillance logs and reports related to the instant investigation.

**Search and Seizure**

45.     In order to preserve his rights, to the extent not yet provided, Paul D. Ceglia hereby seeks notification of whether any evidence to be offered at trial consists of or was derived from the "fruits" of any search and/or seizure authorized by virtue of a judicial and/or administrative search warrant.

46.     In the event that any such evidence consists of or was derived from the "fruits" of any judicial and/or administrative search warrant as referred to above, request is made for:

(a)     a copy of each such search warrant;

(b)     a copy of each written search warrant application together with any supporting affidavit(s);

(c)     a copy of each voice recording, stenographic transcript and/or longhand record with respect to any oral search warrant application;

(d)     a copy of any search warrant inventory return;

(e)     the exact time and date when the United States government entered into the investigation of the defendant or any codefendant relative to the instant matter; and

(f)     whether the United States Government, including any police officials or United States prosecutors, had any involvement in the instant case, including communication or correspondence with other national officials at the time any search warrants were issued.

47.     In the event that any evidence was acquired in the fashion(s) referred to above, request is made for any item consisting of, derived from and/or purporting to memorialize the "fruit" of any search and/or seizure.

## Identification

48.     Paul D. Ceglia requests notification of whether any evidence to be offered at trial relates to or is derived from an identification of Defendant Paul D. Ceglia's person, voice, handwriting, his picture and/or a composite sketch purporting to embody his facial features.

49.     In the event that any such evidence will be offered at trial, a statement is requested setting forth the following:

(a)     the exact date, time and place where the identification proceeding occurred; and

(b)     the substances of the identification proceeding to include the names of all persons present thereat.

50.     If any such evidence to be offered at trial relates to non-corporeal identification proceedings, request is made for access to any and all pictures, sketches, voice exemplars, and/or handwriting specimens utilized during the course of any such identification proceeding.

## Reports of Examinations and Tests

51.     Paul D. Ceglia respectfully requests disclosure of any and all results of any physical, mental and/or scientific examinations, tests and/or experiments within the prosecution's possession, custody and/or control which are either intended by the prosecution to be used as

evidence in chief or which are material to the defense preparation and have not been previously provided.

### *Jencks* Material

52.     Paul D. Ceglia respectfully requests disclosure of *Jencks* material (18 U.S.C. 3500) at least 30 days in advance of trial so as to permit its meaningful use by the defense.

53.     It is respectfully requested that the defense motion for discovery and inspection pursuant to Rule 16, and notice of intention be granted.

## VI.
## MOTION TO COMPEL PRODUCTION
## OF *BRADY* MATERIAL

54.     Pursuant to the prosecution's obligations under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963), *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392 (1976), *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375 (1985) and *Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555 (1995), Paul D. Ceglia hereby moves the Court for the immediate disclosure of all exculpatory and/or impeaching material in the prosecution's possession, custody or control or which is otherwise known to the prosecution, including, but not limited to, the following:

  a.  Any and all information and/or material which tends to exonerate Paul D. Ceglia or which tends to show that he did not knowingly commit any offenses alleged in the indictment.

  b.  Any and all evidence which tends to impeach the credibility of any prospective government witness (including codefendants), including, but not limited to:

  (1)  Any and all records or information revealing prior criminal convictions or guilty verdicts or juvenile adjudications, including but not limited to, relevant "rap sheets" of each witness the prosecutor intends to call at trial;

  (2)  Any and all records and information revealing prior or subsequent misconduct, unethical conduct, criminal acts or bad acts of any witness, including codefendants, the prosecutor intends to call at trial;

  (3)  Any and all allegations of prior or subsequent misconduct, unethical conduct, criminal acts or bad acts of any witness, including co-defendants, the prosecutor intends to call at trial of which the prosecutor knows or through the exercise of reasonable diligence should have reason to know;

(4)     Any and all consideration or promises of consideration given during the course of the investigation and preparation of this matter by any law enforcement officials, including prosecutors or agents, police or informers, to or on behalf of any witness, including co-defendants, or on behalf of a relative of any such witness or co-defendant, the government intends to call at trial, or any such consideration or promises expected or hoped for by any such witness, or relative of any witness, at any future time. Such "consideration" refers to anything which arguably could be of value or use to a witness, or relative of the witness, including but not limited to: formal or informal, direct or indirect, leniency; favorable treatment or recommendations or other assistance with respect to any pending or potential criminal, parole, probation, pardon, clemency, civil, administrative, regulatory, disciplinary or other matter involving the state or federal government or agency thereof, any association, (including legal association), any other authority, or other parties; civil, criminal or tax immunity grants; relief from forfeiture; payments of money, rewards or fees, witness fees and special witness fees; provisions of food, clothing, transportation, legal services, alcohol or drug related rehabilitation services or other benefits; placement in a "witness protection" program; informer status of the witness; letters to anyone informing the recipient of the witness' or the relative's cooperation; recommendations concerning licensing, certification or registration; recommendations concerning federal aid or benefits; promises to take affirmative action to help the status of the witness or co-defendant, or relative of the witness or co-defendant, in a profession, business or employment or promises not to jeopardize such status; aid or efforts in securing or maintaining the business or employment of a witness, or a relative of the witness; and anything else which arguably could reveal any interest, motive or bias of the witness in favor of the prosecution or against any defendant or which could act as an inducement to testify or to color his testimony;

(5)     Any and all statements -- formal and informal, oral or written -- by the prosecution, its agents and representatives to any person (including counsel for such persons) whom the prosecution intends to call as a witness at trial pertaining in any way to the possible or likely course or outcome of any government action -- state or federal, civil or criminal -- or licensing, matters against the witness, including co-defendants, or anyone related by blood or marriage to the witness;

(6)     Any statements read or made by the government to the departments of pre-trial services or probation in connection with the prosecution or conviction of any prosecution witness or potential prosecution witness;

(7)     Any and all threats, express or implied, direct or indirect, or other coercion directed against any witness, or against a relative of such

witness, whom the prosecutor intends to call at trial; criminal prosecutions, investigations, or potential prosecutions pending or which could be brought against any such witness, or relative of such witness; any probationary, parole, deferred prosecution or custodial status of any such witness, or relative of such witness; and any civil, tax court, court of claims, administrative, or other pending or potential legal disputes or transactions involving any such witness, or relative of such witness or co-defendant, and the state or federal government, any agency thereof or any regulatory body or association or over which the state or federal government, agency, body or association has real, apparent or perceived influence;

(8)     A list of any and all requests, demands or complaints made of the government by any witness, including co-defendants, which arguably could be developed on cross-examination to demonstrate any hope or expectation on the part of the witness or co-defendant for favorable governmental action in his behalf or on behalf of a relative of such witness (regardless of whether or not the government has agreed to provide any favorable action);

(9)     With respect to each witness and/or co-defendant the government intends to call at trial, or any member of the immediate family of any such witness, copies of all indictments, complaints or informations brought against such person by the federal, or any state or local government, all administrative, disciplinary, regulatory, licensing, tax, customs, or immigration proceedings brought by the federal, or any state or local government, or by any regulatory body or association, and, state what counts or actions have been the subject of guilty pleas, convictions, consent decrees, dismissals, or understandings to dismiss at a future date; the date or dates on which pleas of guilty, if any, took place; and the names of the judges or hearing officers before whom such pleas were taken. If the government does not have copies of all indictments, complaints, or proceedings, state the dates and places of arrests, hearings, indictments, and information, the charges brought, and the disposition of those charges or matters so far as it is known to the government;

(10)   With respect to each witness and/or co-defendant the government intends to call at trial, or any member of the immediate family of any such witness, a written summary of all charges or proceedings which could be brought by the federal, or any state or local government, but which have not or will not or which the witness believes have not or will not be brought because the witness is cooperating with or has cooperated with the government, or for any reason. Include copies of all memoranda of understanding between the government and its witnesses, whether by way of a letter to the attorney for a witness or otherwise;

(11)     Any material not otherwise listed which reflects or evidences the motivation of any witness and/or codefendant either to cooperate with the government or any bias or hostility against any defendant; the existence and identification of each occasion on which a witness has testified before any court, grand jury, administrative, regulatory, disciplinary body or other association, or otherwise officially narrated herewith, in the investigation, the indictment or the facts of this case, and any testimony, statements or documents given by the witness regarding same;

(12)     All judicial proceedings in any criminal cases, and all regulatory, association or disciplinary proceedings of which the government knows or through the exercise of reasonable diligence should have reason to know in which testimony by any person has been given, regarding the misconduct, criminal acts or bad acts of any witness the government intends to call at the trial of this action;

(13)     Any statements or documents, including but not limited to, judicial, regulatory, administrative, disciplinary, association or grand jury testimony, or federal, state or local tax returns, made or executed by any potential prosecution witness or co-defendant in the trial in this action, which the prosecution knows or through the exercise of reasonable diligence should have reason to know, is false;

(14)     Any and all records pertaining to any civil lawsuits, arbitration proceedings or other proceedings between any defendant and any witness, or any company with which any defendant or any government witness may have been affiliated, including, without limitation, records or statements pertaining to the investigation, conduct and disposition of such litigation;

(15)     Copies of all medical and psychiatric reports known to the prosecutor or which can reasonably be known to the prosecutor concerning any witness and/or codefendant the prosecutor intends to call at trial which may arguably affect the witness' credibility or his ability to perceive, relate or recall events;

(16)     All documents and other evidence regarding drug or alcohol usage and/or dependency by any individual the government intends to call as a witness at trial, including but not limited to records relating to treatment of such individual in any federal, state, city or military drug or detoxification program;

(17)     Any written or oral statements, whether or not reduced to writing, made by any potential prosecution witness and/or co-defendant which in any way contradicts or is inconsistent with or different from other oral or written statements he has made;

(18)   Any requests prepared by the prosecution for permission to grant formal or informal immunity or leniency for any witness and/or co-defendant, whether or not such request was granted;

(19)   The same records and information requested in items "(1)" through "(18)" with respect to each non-witness declaring whose statements will be offered in evidence at trial pursuant to Fed. R. Evid. 806;

(20)   Copies of any and all records of law enforcement agencies reflecting intradepartmental disciplinary action taken against any law enforcement official or agent who will testify at trial;

(21)   Copies of any and all records of any law enforcement or other governmental agency reflecting any commendations, awards or recognition or any kind, or requests for any commendations, awards or recognition of any kind made to or by any government agent or law enforcement officer for any work, action or conduct in connection with the investigation and prosecution of this case.

(c)   The name and address and written or oral statements made by any person, including co-defendants, with knowledge and information concerning the events charged in the indictment and whose version of the same events is contrary to, or non-supportive of, the accusations set forth in the indictment.

(d)   The name and address and any written or oral statement made by any persons and/or co-defendants the government reasonably believes has information helpful to the preparation of the defense.

(e)   The name and address and any written or oral statement made by any witnesses or co-defendants to the offense charged in the indictment whom the government does not intend to call as witnesses in this case.

55.     Due process, as the constitutional phrase has been interpreted, requires that the government not suppress evidence favorable to a defendant or discrediting to its own case, and, upon request, that it disclose to the defense all such information. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963); *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392 (1976); *Pyle v. State of Kansas*, 317 U.S. 213, 63 S.Ct. 177 (1942). The requirement of disclosure extends to candor by the government witnesses as well as matters which relate more directly to guilt or innocence. *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763 (1972); *Napue v. People of the State of Illinois*, 360 U.S. 264, 79 S.Ct. 1173 (1959). *See also, Williams v. Dutton*, 400 F.2d 797 (5th Cir. 1968), *cert. denied*, 393 U.S. 1105, 89 S.Ct. 908 (1969).

56.     The *Brady* rule grew out of a realization by the Supreme Court that the defendant's abilities for acquiring evidence are disproportionate to those of the government. Most

defendants have neither the manpower nor the access and contacts available to the government in its investigation of crime. Thus, the prosecution is obliged to share the proceeds of its discovery with the defense where that evidence is favorable to the latter's cause. Indeed, the importance of *Brady* has been so strongly enforced that the Supreme Court, in *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375 (1985), unequivocally extended the duty of disclosure to information which may be used by the accused for impeachment at trial.

**A. Time of Disclosure.**

57.     Effective preparation for trial is the cornerstone of effective representation of criminal defendants and disclosure of information which, in any of a variety of ways, impeaches the witness' credibility is consequently required before trial in order to enable effective preparation. As the Court in *United States v. Pollack* pointed out:

> Disclosure by the government must be made at such a time as to allow the defense to use the favorable material effectively in the preparation and presentation of its case, even if satisfaction of this criterion requires pre-trial disclosure. [Citations omitted].

*United States v. Pollack*, 534 F.2d 964, 973 (D.C. Cir. 1976).

58.     The need for pre-trial disclosure of *Brady* material has been highlighted in several cases. In *United States v. Bernal-Obeso*, 989 F.2d 331 (9th Cir. 1993), irreconcilable discrepancies between the informer's actual record and government representations about the prior record indicated the informer had misled his government handlers. The court vacated the conviction and remanded for an evidentiary hearing "to restore the parties" to their "pre-trial" position and to ascertain whether the informer had lied to the government. 989 F.2d at 336-337. *See also, United States v. Bejasa*, 904 F.2d 137, 140 (2d Cir. 1990), *cert. denied*, 498 U.S. 921, 111 S.Ct. 299 (1990) (a government file which contained impeachment material regarding a prosecution witness should have been produced "prior to" the witness' testimony); *Gorham v. Wainwright*, 588 F.2d 178 (5th Cir. 1979) (under certain circumstances, delayed revelation of discoverable evidence may deny a defendant an effective defense); *United States v. Opager*, 589 F.2d 799 (5th Cir. 1979) (harm was done by the pre-trial failure of the government to disclose the whereabouts of the informant; crucial importance was given to pretrial opportunity to interview and/or investigate potential witness); *Grant v. Alldredge*, 498 F.2d 376, 381-382, n.5 (2d Cir. 1974) (failure of government to disclose before trial that bank teller picked out photograph of another individual was error); *United States v. Baxter, et al.*, 492 F.2d 150 (9th

Cir. 1973), *cert. denied*, 416 U.S. 940, 94 S.Ct. 1945 (1974) (delay in turning over requested favorable evidence is unconstitutional when delay in disclosure substantially prejudiced the preparation of the defense); *Clay v. Black*, 479 F.2d 319 (6th Cir. 1973) (per curiam) (pre-trial disclosure of an FBI scientific report would have permitted defense to establish necessary claim of custody to introduce certain blood stains); *United States v. Polisi*, 416 F.2d 573 (2d Cir. 1969) (the importance of *Brady* is to measure the effects of the suppression upon the defendant's preparation for trial); and *Hamric v. Bailey*, 386 F.2d 390 (4th Cir. 1967) (to be effective, disclosure must be made at a time when disclosure would be of value to the accused).

59.     Numerous district courts have ordered such discovery both before and after the 1975 amendments to the Federal Rules of Criminal Procedure. *See, United States v. Thevis, supra* (delaying disclosure of *Brady* materials useful for impeachment until the night preceding the testimony is insufficient); *United States v. Five Persons*, 472 F.Supp. 64 (D.N.J. 1979) (by adoption of a standard order, district judges declared that the rights to due process and a fair trial require availability of *Brady* material within 10 days after arraignment); *United States v. Goldman*, 439 F.Supp. 337 (S.D.N.Y. 1977) (if exculpatory evidence is produced for the first time at trial, defendant may not have an adequate opportunity to effectively utilize the material; all *Brady* material to be provided "immediately"); *United States v. Dillard*, 419 F.Supp. 1000 (N.D. Ill. 1976) (in light of complex decisions of strategy and preparation, it is better practice to require disclosure in advance of trial); *United States v. Quinn*, 364 F.Supp. 432 (N.D. Ga. 1973), *aff'd on other grounds*, 514 F.2d 1250 (5th Cir. 1975), *cert. denied*, 424 U.S. 955, 96 S.Ct. 1430 (1976) (*Jencks* Act timetable cannot control release of information to which defendant is constitutionally entitled).

60.     The due process requirements of disclosure are reinforced by a federal court's supervisory powers. In this federal prosecution, this Court can ensure that justice is administered properly in the federal courts by requiring immediate disclosure of the information sought, including impeachment materials.

**B. Impeachment Evidence.**

61.     Paul D. Ceglia has itemized likely sources of impeaching information within the knowledge or reach of government counsel. *United States v. Agurs, supra*. Disclosure of this information is necessary in order for defense counsel to conduct an appropriate investigation and

to conduct interviews and otherwise prepare for such trial proceedings as jury selection, opening statements and cross-examination.

62.     At issue, from an impeachment standpoint, are the general principles of crediting and discrediting witnesses. McCormick has identified "five main lines of attack upon the credibility of a witness": The first, and probably the most effective and most frequently employed, is an attack by proof that the witness on a previous occasion has made statements inconsistent with his present testimony. The second is an attack by a showing that the witness is partial on account of emotional influences such as kinship for one party or hostility to another, or motives of pecuniary interest, whether legitimate or corrupt. The third is an attack upon the character of the witness. The fourth is an attack by showing a defect of capacity in the witness to observe, remember or recount the matters testified about. The fifth is proof by other witnesses that material facts are otherwise than as testified to by the witness under attack. 1 McCormick on Evidence §33, at 111-12 (4th ed. 1992) (footnotes omitted).

63.     Discovery should extend to production of so-called "rap sheets" of the witnesses as well as any information concerning criminal conduct of prospective witnesses. Indeed, in requiring the production of this type of information, the Court in *United States v. Osorio*, 929 F.2d 753, 761 (1st Cir. 1991), described the government's obligation as "a constitutionally derived duty to search for and produce impeachment information . . ."

64.     The Supreme Court has recognized ". . . that the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. at 419, 115 S.Ct. at 1555 (1995). The *Kyles* decision was followed by the Second Circuit in *United States v. Payne*, 63 F.3d 1200, 1208 (2d Cir. 1995) ("the individual prosecutor is presumed to have knowledge of all information gathered in connection with the government's investigation"). *Kyles* was also followed by the Ninth Circuit in *United States v. Hanna*, 55 F.3d 1456 (9th Cir. 1995). The *Hanna* Court vacated the conviction and remanded for an evidentiary hearing to explore "inconsistencies" between the arresting officer's testimony and his conversations with fellow officers. *Id*. at 1460-1461.

65.     Paul D. Ceglia specifically requested the substance of any and all inducements, promises, compensation or consideration, broadly defined, which the government has held out to witnesses or which a witness subjectively anticipates to receive in exchange for testimony or assistance.

66.     The government has a constitutional obligation to disclose any and all consideration which is held out to a witness or which the witness subjectively hopes for and anticipates since such consideration directly gives rise to the inference of bias or interest. *See, generally, United States v. Mayer*, 556 F.2d 245 (5th Cir. 1977) (cross-examination of a prosecution witness who has had prior dealings with the prosecution or other law enforcement officials "ought to be given the largest possible scope [citation omitted];" conviction reversed). *Id*. at 248. A common example of such matter which must be disclosed to the defense is the making of promises or the holding out of other inducements for a witness to cooperate and testify against the defendant. *See, e.g., United States v. Sanfilippo*, 564 F.2d 176 (5th Cir. 1977); *Annunziato v. Manson*, 566 F.2d 410 (2d Cir. 1977); *Boone v. Paderick*, 541 F.2d 447 (4th Cir.), *cert. denied*, 430 U.S. 959, 97 S.Ct. 1610 (1977); and *United States v. Tashman*, 478 F.2d 129 (5th Cir. 1973).

67.     The duty of the government to disclose this information is an affirmative one and the ignorance of one prosecutor as to promises made to a government witness by another prosecutor does not excuse the failure to disclose. *Giglio v. United States, supra*. The obligation to disclose includes the total compensation or benefits paid to or expected by each witness. *United States v. Leja*, 568 F.2d 493 (6th Cir. 1977). The government must disclose both "the stick and the carrot," including threats to prosecute. *United States v. Sutton*, 542 F.2d 1239 (4th Cir. 1976).

68.     Numerous examples exist which make the principle of "consideration" clear. *United States v. Sutton, supra* (witness rendered a statement as an inducement to government informant); *United States v. Antone*, 603 F.2d 566 (5th Cir. 1979) (witness' attorneys fees paid by State of Florida); *United States v. DiCarlo*, 575 F.2d 952 (1st Cir. 1978), *cert. denied*, 439 U.S. 834, 99 S.Ct. 115 (1978) (assistance in the business world); *United States v. Garza*, 574 F.2d 299 (5th Cir. 1978) (information provided would result in no other indictments, heroin conspiracy indictment dismissed, bond in prior conviction on appeal would be lowered); *United States v. Croucher*, 532 F.2d 1042 (5th Cir. 1976) (error to refuse defense counsel to cross-examine informer about prior arrests, other than ones resulting in convictions for felonies or misdemeanors involving moral turpitude); *United States v. Bonanno*, 430 F.2d 1060 (2d Cir. 1970), *cert. denied*, 400 U.S. 964 (1971) (failure to disclose outstanding indictment); and *Patriarca v. United States*, 402 F.2d 314 (1st Cir.), *cert. denied*, 393 U.S. 1022, 89 S.Ct. 633

(1969), *rehearing denied*, 393 U.S. 1124, 89 S.Ct. 987 (1969) (information provided would be brought to the attention of prosecution in other pending action; family assigned to protective custody). These examples, of course, are only intended to make the principle clear and do not exhaust the range of possibilities.

69.     The defendant has moved for specific information regarding the prior occasions when each witness gave testimony or otherwise made statements relative to the facts in this action. Witnesses' statements which are at least, in part, exculpatory and/or important for impeachment should be produced. *United States v. Miller*, 529 F.2d 1125 (9th Cir. 1976), *cert. denied*, 426 U.S. 924, 96 S.Ct. 2634 (1976); *United States v. Quinn, supra; United States v. Five Persons, supra;* and *United States v. Thevis, supra*. Witnesses' statements or other information which has been recorded on so-called 302 Forms by agents of the government which contain exculpatory material should also be disclosed. *Brady v. Maryland, supra*.

70.     Likewise, Paul D. Ceglia's request for the substance of all occasions known to the government on which an informer, accomplice or co-conspirator has previously testified, even if no direct relationship to the instant case is apparent, should be granted. A defendant should be afforded the widest possible latitude in investigation and cross-examination. In *Johnson v. Brewer*, 521 F.2d 556 (8th Cir. 1975), the point was clearly illustrated. There, a defendant was charged in an Iowa proceeding with a drug offense. The conviction was obtained with the involvement of a paid informer who had worked in such a capacity in other jurisdictions, including Michigan. In light of the witness' modus operandi and his desire to maintain a continuing relationship as an informant with the law enforcement agencies, and his bias, it was a denial of due process to have refused to provide the defendant access to the informant's testimony in an earlier proceeding involving a separate drug sale in Michigan. Similarly, it amounts to a denial of due process in this instance to refuse to provide the requested information in this case.

71.     It has also been held that where a government employee serves as a prosecution witness, the defendant is entitled to have access to his or her government personnel file in order to ascertain whether there is information within it which could be of impeaching nature. *United States v. Deutsch*, 475 F.2d 55, 58 (5th Cir. 1973), *rev'd on other grounds, United States v. Henry*, 799 F.2d 203 (5th Cir. 1984). Similarly, in *United States v. Morell*, 524 F.2d 550, 552-55 (2d Cir. 1975), the Court of Appeals held that defense counsel were entitled to impeaching

information in the confidential file of an informant witness. *See also, United States v. Beekman*, 155 F.2d 580 (2d Cir. 1946). As pointed out by one commentator, "This information is extremely valuable to the criminal or civil practitioner in thoroughly investigating and preparing any cases where the credibility of a police officer is at issue." Snyder, Discovery of Police Personnel Files in Criminal Proceedings, 52 Fla. Bar. J. 119, 122 (1979).

72.     In sum, the right of counsel for the accused to confront, cross-examine and impeach is cherished and remains the means by which "the scope and the truth of his testimony are tested." *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105 (1974) (Burger, C.J.). Our specific requests for impeaching information are highly material for precisely this venerable mission. *See*, generally, *United States v. Opager*, 589 F.2d 799 (5th Cir. 1979). Therefore, the prosecution should be ordered to disclose the requested information or to show good cause for their failure to comply. *United States v. Agurs*, 427 U.S. 97, 106, 96 S.Ct. 2392 (1976); *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963).

73.     It is respectfully requested that the defense motion for pre-trial disclosure of all *Brady* material be granted. 80. The recent decision by the Second Circuit in re United States (*United States v. Coppa*), 267 F.3d 132 (2d Cir. 2001) does not change or limit the District Court's ability to order pre-trial disclosure of *Brady* and impeachment evidence. Indeed, the Second Circuit in *Coppa* made clear that "[t]his case presents no occasion to consider the scope of a trial judge's discretion to order pretrial disclosures as a matter of sound case management." *Coppa*, 267 F.3d at 146. In a multi-defendant, multi-conspiracy, multidrug case such as this, sound case management requires early disclosure of impeachment and *Brady* material. *Cf. United States v. Ruiz*, 241 F.3d 1157 (9th Cir. 2001) (right to waive undisclosed *Brady* material cannot be waived through plea agreement), *cert. granted*, 122 S.Ct. 803 (2002).

74.     Counsel specifically reserves the right to make additional requests for the material covered above at the time this motion is argued, or at such other time as the existence of such materials shall become known to counsel for the defendant, and it is respectfully requested that the prosecution be admonished that its duty under *Brady/Giglio* is a continuing one.

# VII.
## MOTION FOR DISCLOSURE OF EVIDENCE
## PURSUANT TO RULES 404(b), 608 AND 609
## OF THE FEDERAL RULES OF EVIDENCE

75.     Pursuant to Rules 12(b)(4), (d)(1) and (2) of the Federal Rules of Criminal Procedure, and Rules 104(a) and 404(b) of the Federal Rules of Evidence, Paul D. Ceglia respectfully requests that the government notify him of any evidence that the government contends would be admissible under Rule 404(b) of the Federal Rules of Evidence.

76.     The defendant also request pretrial disclosure of any other evidence the government intends to use to impeach the defendant's credibility if he should choose to testify. In the event the government intends to use such evidence, the defendant requests a pretrial hearing to determine the admissibility of such evidence.

77.     The defense should be put on notice of the exact nature of this evidence, the witnesses pertaining thereto, the documents in support thereof, and the theory upon which the government asserts that admissibility rests. By so notifying the defense in advance of trial, the defendant can file appropriate motion(s) *in limine* prior to trial and afford the Court the occasion to make pretrial determinations regarding the admissibility of any potential Rule 404(b) evidence proffered by the prosecution.

78.     The defense requests discovery of all information pertaining to the character and/or conduct that may be used to impeach any witness the government intends to call.

79.     The pretrial determination of the admissibility of this evidence question will serve to ensure the smooth operation of the trial, eliminate possible extraneous objections and assist both the government and defense counsel in the presentation of evidence.

# VIII.
## MOTION FOR DISCLOSURE OF WITNESS STATEMENTS

80.     Under 18 U.S.C. § 3500 (the "Jencks Act"), a defendant is entitled to witness statements after the witness has completed his or her testimony on direct examination. This Court has, on a case-by-case basis, invoked its discretion to require production of Jencks Act statements in advance of the trial so that unnecessary delays will not take place during the course of the trial.

81.     Paul D. Ceglia requests the Court to order the government to deliver to counsel immediately, but in no event not later than four weeks prior to the date of the trial, the following: a. any statement, however taken or recorded, or a transcription thereof, if any, made by the witness(es) to a grand jury; b. any written statement made by a witness that is signed or otherwise c. adopted or approved by the witness; d. any stenographic, mechanical, electrical or other recording transcription thereof, which is a substantially verbatim recital of an oral statement made by the witness and recorded contemporaneously with the making of such oral statement; e. any and all rough notes of witness interview(s) taken or obtained in any investigation of the defendant including federal, state, local and other investigations whether or not the contents thereof have been incorporated in official records; f. any notes and memoranda made by government counsel during the interviewing of any witness intended to be called by the government in its direct case. *Goldberg v. United States*, 425 U.S. 94, 101-108 (1976); and, g. all surveillance reports made or adopted by a witness. *United States v. Petito*, 671 F.2d 68, 73 (2d Cir. 1932).

82.     In addition to avoiding unnecessary delays, sufficient pretrial delivery of *Jencks* material also insures that the defendant's fundamental rights to a fair trial and due process are safeguarded.

## IX.
## MOTION FOR PRESERVATION OF
## ROUGH NOTES AND OTHER EVIDENCE

83.     Paul D. Ceglia moves for an order of this Court requiring all government agents and officers who participated in the investigation of the defendants in this case to retain and preserve all rough notes taken as part of their investigation whether or not the contents of the notes are incorporated in official records.

84.     This motion is made so the trial court can determine whether disclosure of the notes is required under *Brady*, *Agurs*, *Giglio* and/or the Jencks Act (18 U.S.C. §3500) or the Fifth and/or Sixth Amendments of the United States Constitution.

85.     Paul D. Ceglia also requests an order of this Court requiring the government to preserve and protect from destruction, alteration, mutilation or dilution any and all evidence acquired in their investigation of the defendants.

**X.**
**MOTION FOR GRAND JURY TRANSCRIPTS**

86.     Paul D. Ceglia moves the Court, pursuant to Federal Rule of Criminal Procedure 6(e)(3)(C)(i), for disclosure of transcripts of all testimony before and all exhibits considered by the grand jury that indicted him. The Court should order production of the transcripts because defendant has a particularized need for the transcripts, outlined below, which outweighs the grand jury policy of secrecy. *See, e.g.*, *Pittsburgh Plate Glass Company v. United States* , 360 U.S. 395, 400 (1959); *see also, e.g.*, *Dennis v. United States*, 384 U.S. 855, 868-75 (1966).

87.     Specifically, Paul D. Ceglia is the subject of a bare bones Indictment that does not state any particular acts or overt acts that he allegedly committed in the course of the conspiracy. Except for the names of law enforcement officers and others in various interception applications, Paul D. Ceglia has no information as to who the witnesses against him will be. The particularized need justifying disclosure is so that Paul D. Ceglia is informed of what evidence actually exists against him, and so he can intelligently make a decision as to his course of action. For these reasons, the grand jury transcripts and evidence should be disclosed to Paul D. Ceglia.

**XI.**
**MOTION TO *VOIR DIRE* GOVERNMENT**
**EXPERTS OUTSIDE THE PRESENCE OF THE JURY**

88.     Paul D. Ceglia moves the Court to issue an order allowing him to *voir dire* any proposed government experts at trial outside the presence of the jury.

89.     Rule 104 of the Federal Rules of Evidence states that preliminary questions regarding the competency of a person called as a witness "shall be determined by the Court."

90.     A defendant is entitled to challenge the competence of the government's proposed experts and the admissibility of his/her testimony. *See, In re Chicago Flood Litig.*, No. 93 C 1214, 1995 U.S. Dist. LEXIS 10305, at *27 (N.D. Ill. July 19, 1995) (when question raised regarding basis for proffered expert testimony, court permitted voir dire outside the jury's presence).

91.     A *voir dire* examination outside the presence of the jurors is the preferred method for determining the competency of an offered expert witness. *See, e.g.*, *United States v. 68.94 Acres of Land*, 918 F.2d 389, 391 (3d Cir. 1990); *see also, e.g.*, *United States v. Snow*, 552 F.2d 165, 168 (6th Cir. 1977) (defense counsel examined government expert outside of presence of

jury regarding qualifications); *United States v. Henson*, 486 F.2d 1292, 1303 (D.C. Cir. 1973) (en banc) (voir dire of government expert outside the presence of the jury).

92.     In the present case, complete discovery has not been received from the government, including the names of and summaries by the government's proposed experts, if any, pursuant to Rule 16 of the Federal Rules of Criminal Procedure. Therefore, this motion is made so that if the government subsequently identifies any experts (such as to identify questioned substances), defense counsel may *voir dire* the expert outside of the presence of the jury.

93.     Therefore, Paul D. Ceglia requests that he be permitted to *voir dire* any government expert or experts outside the presence of the jury, as to both competency and admissibility.

## XII.
## MOTION FOR *DAUBERT* HEARING

94.     *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), requires that the trial judge determine at the outset, pursuant to Fed. R. Evid. 104(a), whether the expert here, Curtis Rose, is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.  This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue.  *Daubert*, at 592-593.

95.     It is Defendant's position that the Government cannot meet this burden under Rule 104 because Rose did not conduct any sort of examination of the evidence taken.  He simply analyzed the data before without engaging in comparative analysis exercising due diligence to explore contending theories and merely came to a conclusion born of pure conjecture unsupported by proven method recognized by the scientific community.

96.     Defendant intends to contest his conclusory reports and opinion even in the absence of sender and recipient computers.  Curtis Rose cannot comment on this.  A true independent examination would entail Curtis Rose comparing data of one computer with a suspected or probable computer that received, transmitted, created or altered data rather than actually making criticizing data before him without considering as many hypothesis as possible and using the details of another report for his own report.

97.     It is Defendant's position that what Rose did, does not constitute scientific knowledge and would not assist a jury in determining that beyond a reasonable doubt.

98.     Under *Daubert* the trial court must make a two-step inquiry: First, the proffered expert must be qualified to express an expert opinion.  Second, the proffered expert opinion must be reliable.  In determining the reliability of the expert testimony, the Supreme Court has provided a non-exhaustive list of factors which will assist the trial court, including:

a.   Whether a method consists of a testable hypothesis;
b.   Whether the method has been subjected to peer review;
c.   The known or potential rate of error;
d.   The existence and maintenance of standards controlling the technique's operation;
e.   Whether the method is generally accepted;
f.   The relationship of the technique to methods which have been established to be reliable;
g.   The qualifications of the expert witness testifying based on the methodology; and
h.   The non-judicial uses to which the method has been put.

99.     Here, Curtis Rose is not a qualified expert and his testimony is not reliable under *Daubert*.  Defendant requests a *Daubert* hearing to determine the material issues raised herein.

## XIII.
## MOTION FOR AUDIBILITY HEARING

100.     Paul D. Ceglia moves the Court to hold an audibility hearing to determine whether any recordings that the government seeks to introduce at his trial are audible. The government has not formally identified what recordings it will introduce at trial. Once it does so, an audibility hearing should be held.

101.     As the Court is aware, if portions of any recording are unintelligible, and the unintelligible portions are so substantial as to render the recording as a whole untrustworthy, the recording must be suppressed. *See United States v. Arango-Correa*, 851 F. 2d 54, 58 (2d Cir. 1988); United *States v. Aisenberg*, 120 F. Supp.2d 1345 (M.D. Fla. 2000). Therefore, in advance of trial, the Court should conduct a hearing to determine the audibility of the recordings the government plans to introduce at trial.

## XIII.
## MOTION FOR LEAVE TO MAKE OTHER MOTIONS

102.     Paul D. Ceglia respectfully moves the Court for an order allowing defendant to make further and additional motions which may be necessitated by due process of law, by the Court's ruling on the relief sought herein, by additional discovery provided by the government or investigation made by the defense, and/or by any information provided by the government in response to the defendant's demands.

103.     The specific requests contained in these motions are not meant to limit or preclude future requests by the defendant for further relief from this Court as appropriate. The reason additional motions should be allowed is that filing these motions at this time would not be an efficient use of the Court's and the parties' time and resources, as many of these motions may not be necessary based on what evidence the government does or does not intend to introduce at trial, or by other pre-trial developments in this case. Additionally, other motions may be required depending on the Court's rulings on the motions made *supra* and other information or documents disclosed by the government.

104.     Specifically, Paul D. Ceglia reserves the right to make the following motions at an appropriate time in the case, in addition to other motions that may be appropriate:

> a.   motions *in limine* related to evidence the government, Paul D. Ceglia or co-defendants intend(s) to introduce at trial;

      b.   *ex parte* motion pursuant to Federal Rule of Criminal Procedure 17(b)/(c) for an order allowing the pretrial production of documents;

      c.   motion pursuant to Federal Rule of Criminal Procedure 15(a) for pre-trial deposition of a witness;

      d.   motion for pre-trial production of government summaries pursuant to Federal Rule of Evidence 1006;

      e.   motion for a supplemental jury questionnaire or for counsel participation in *voir dire*;

      f.   motion for additional peremptory challenges;

      g.   Federal Rule of Criminal Procedure Rule 29 motions at trial; and,

      h.   motion for various non-pattern jury instructions.

      105.   For the foregoing reasons, the Court should issue an Order permitting Paul D. Ceglia to make other motions as requested above.

Dated:      Buffalo, New York           Respectfully submitted,
             December 17, 2014

                                            */s/ Robert Ross Fogg*
                                          ROBERT ROSS FOGG, ESQ.
                                          Counsel for Defendant
                                          *PAUL D. CEGLIA*
                                          69 Delaware Avenue, Suite 600
                                          Buffalo, New York 14202
                                          Tele: (716) 853-3644  Fax: (716) 852-6782

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA,
                                    *Plaintiff,*

             v.                                CASE No: 1:12-CR-00876-ALC

PAUL D. CEGLIA
                          *Defendant.*

---

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing document is being served via transmission of

Notice of Electronic Filing generated by CM/ECF on all counsel of record who are authorized to

receive electronically Notices of Electronic Filing in this criminal case on December 17, 2014.

Dated:   December 17, 2014                Respectfully Submitted,

                                    By: /s/ Robert Ross Fogg