UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :

        - v. -                    :          12 Cr. 876 (ALC)

PAUL CEGLIA,                      :

            Defendant.            :

- - - - - - - - - - - - - - - x


**GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT CEGLIA'S MOTIONS DATED DECEMBER 17, 2014**


                          PREET BHARARA
                          United States Attorney for the
                          Southern District of New York
                          Attorney for the United States
                          of America


Janis M. Echenberg
Alexander J. Wilson
Assistant United States Attorneys
        - Of Counsel -

## **Table of Contents**

PRELIMINARY STATEMENT ................................................................................. 3

RELEVANT PROCEDURAL HISTORY ................................................................. 5

ARGUMENT .......................................................................................................... 8

   I.   Ceglia's Motion for Reconsideration Should Be Denied. ........... 8

   II.   The Indictment Is Not Duplicitous. ...................................... 13

   III.   The Omnibus Motions Are Baseless, Premature or Moot. ....... 17

      A.   Motions to Exclude and Suppress Statements .............................. 17

      B.   Motion for a Bill of Particulars ...................................... 18

      C.   Motions to Identify Witnesses and for Disclosure of *Brady*, *Giglio* and *Jencks Act* Material ................................... 27

      D.   Motion for Discovery .......................................................... 32

      E.   Motion for Disclosure of 404(b), 608 and 609 Evidence ..... 32

      F.   Motion for Preservation of Rough Notes ........................ 34

           and Other Evidence ........................................................ 34

      G.   Motion for Grand Jury Transcripts ................................. 35

      H.   Motion to Voir Dire Government Experts Outside the Presence of the Jury and for a *Daubert* Hearing .................... 37

      I.   Motion for an Audibility Hearing ................................. 42

      J.   Motion for Leave to Make Other Motions ........................ 43

   IV.   The Subpoenas Motion ...................................................... 44

   V.   Ceglia's Request for Return of Documents ........................ 48

CONCLUSION ...................................................................................................... 53

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to the voluminous motions by defendant Paul Ceglia ("Ceglia" or the "Defendant") dated December 17, 2014. Despite the Court's express warning to Ceglia not to file and omnibus motion containing "everything and the kitchen sink," he has done just that. Ceglia has filed almost 20 motions, many of them nearly identical to motions previously filed:

(i)     an untimely motion for reconsideration of the Court's denial of his motion to dismiss the Indictment on First Amendment grounds, specifically that the *Noerr-Pennington* doctrine grants him immunity from prosecution (the "Reconsideration Motion");[1]

(ii)    a motion to dismiss the Indictment on duplicity grounds (the "Duplicity Motion");

(iii)   a motion for defense subpoenas (the "Subpoenas Motion"); and

(iv)    a separate omnibus motion (the "Omnibus Motion"), containing several additional motions, seeking

---

[1] While this motion is styled a "Motion to Dismiss," it is brought on grounds already covered in the defendant's prior motion to dismiss, and  is described in the introductory sentence as a motion brought "on the grounds that the Court's prior ruling on Defendant's pretrial motion deviates from due process and legal authority."  In substance, therefore, it is a motion for reconsideration.

a. a bill of particulars (with demands similar to the original request);

b. to suppress or exclude (unidentified) statements;

c. to identify witnesses;

d. for discovery;

e. for *Brady*, *Giglio*, and *Jencks Act* material;

f. disclosure of 404(b) and other material the Government intends to use to impeach the defendant;

g. the preservation of agents' rough notes;

h. disclosure of grand jury transcripts and exhibits;

i. permission to *voir dire* experts outside the presence of the jury;

j. a *Daubert* hearing;

k. an audibility hearing; and

l. leave to file other motions.[2]

In a separate letter, Ceglia also asserts that certain documents obtained by the Government from Ceglia's former lawyers through the use of post-indictment grand jury subpoenas should be returned to Ceglia and the Government should not be able to use them for any purpose.

---

[2] Citations to motions are as follows: the Reconsideration Motion is cited herein as "Reconsideration Mot."; the Duplicity Motion is cited herein as "Duplicity Mot."; the Subpoenas Motion is cited herein as "Subpoenas Mot."; and the Omnibus Motion is cited herein as "Omnibus Mot."

In the interests of efficiency, the Government responds to all of Ceglia's motions and his letter in this memorandum, rather that filing separate briefs in response to each of the five filings by Ceglia. With only the partial exception of the Subpoenas Motion, Ceglia's motions are variously baseless, premature, or moot, and should be denied accordingly.

## RELEVANT PROCEDURAL HISTORY

Ceglia was arrested on October 26, 2012, pursuant to a criminal complaint (the "Criminal Complaint") filed in this District on October 25, 2012. The Criminal Complaint charged Ceglia with one count of mail fraud and one count of wire fraud in connection with the Defendant's participation in a scheme to defraud Facebook, Inc. and the Chief Executive Officer of that company, Mark Zuckerberg ("Zuckerberg"), and to corrupt the federal judicial process. A grand jury sitting in this District returned Indictment 12 Cr. 876 (ALC) (the "Indictment") on November 26, 2012, charging the Defendant with the same crimes as set forth in the Criminal Complaint.

From the time of his arrest, until on or about September 15, 2014, the defendant was represented by the Federal Defenders of New York, specifically David Patton and Annalisa Miron. On or about January 16, 2013, the defendant moved to

transfer venue.   On or about November 27, 2013, the defendant moved to dismiss the Indictment based on, inter alia, *Noerr-Pennington* immunity.   After briefing and oral argument, both motions were denied by the Court.   (March 13, 2013 Tr. 21; March 7, 2014 Tr. 30.) The Court specifically considered and rejected the defendant's *Noerr-Pennington* argument and his request for an evidentiary hearing on that issue. (March 7, 2014 Tr. 29-30.)

At a conference in the matter on May 6, 2014, counsel for Ceglia sought and was granted a deadline of May 23, 2014 to file all remaining pretrial motions.   (May 6, 2014 Tr. 2.)   At that same conference, the Court set a November 17, 2014 trial date.   Ceglia filed a motion for a bill of particulars on or about May 23, 2014.  After briefing and oral argument, the Court denied all but one of the requests for particulars, ordering the Government to identify the sources of discovery material to the extent it had not already done so.   (July 22, 2014 Tr. 3-11.)

On or about June 9, 2014, Ceglia's counsel also sought certain trial subpoenas for documents from Harvard University and from Mark Zuckerberg and Facebook.   After briefing and oral argument, the Court denied the requests to Harvard – for being overly broad or premature -- with the exception of a request to Harvard for email retention policies from 2003 to the present. With regard to the requests to Zuckerberg and Facebook, the

Court denied three requests (seeking all emails, electronic storage devices and cell phones used by Zuckerberg and Facebook in 2003 and 2004) as overbroad, and denied the other two requests (seeking agreements and correspondence between Ceglia and Zuckerberg/Facebook) without prejudice because Facebook's counsel voluntarily agreed to produce the requested documents. On or about September 6, 2014, counsel for Facebook made their voluntary production, which included approximately 525 pages of documents (a copy of which was also sent to the Government).

On or about September 15, 2014, Ceglia retained private counsel to represent him in this matter and the Federal Defenders were relieved. Ceglia's new counsel, Robert Ross Fogg, sought and was granted an almost six-month adjournment of the trial date. Mr. Fogg also sought, and was granted, the re-opening of the pretrial motions deadline to December 17, 2014.

The Court repeatedly cautioned Mr. Fogg that he should not – without asserting a new ground not raised by prior counsel -- attempt to reopen issues that had already been decided by the Court. (October 23, 2014 Tr. 35 ("I am not going rehash all of those other issues again"); November 24, 2014 Tr. 7 ("You don't need to file an omnibus motion to throw everything in here and the kitchen sink. I want to make sure if there are legitimate motions that need to be filed. . ."); November 24, 2014 Tr. 14

("defense counsel is cautioned that defense counsel needs to make sure that [the proposed motion to dismiss] is different than the motion that was already decided by the Court. If it's the exact same motion with the exact same analysis and the exact same facts, that would not be appropriate.").) With respect to the *Noerr-Pennington* issue specifically, the Court stated at the conference on October 23, 2014 that "your prior defense counsel had filed a motion to dismiss [  ] based on *Noerr-Pennington* and the like. I don't think it is necessary for me to go through that analysis again. If that is your basis to dismiss the indictment, that objection has been noted." (October 23, 2014 Tr. 31.)

The instant motions followed.

## ARGUMENT

### I.  Ceglia's Motion for Reconsideration Should Be Denied.

Ceglia moves for reconsideration of the Court's denial of his prior motion to dismiss the Indictment, claiming that the Court erred in rejecting his arguments under the *Noerr-Pennington* doctrine. (Reconsideration Mot. at 1.) Ceglia's motion must be rejected both as untimely and meritless. Ceglia filed his motion almost nine months after the deadline to do so under Local Criminal Rule 49.1(d), despite the Court's cautions regarding relitigating identical issues in general, and the

-8-

*Noerr-Pennington* issue in particular.   Moreover, Ceglia presents no new controlling law or facts overlooked by the Court, but rather seeks simply to reargue the *Noerr-Pennington* motion already fully considered and properly rejected by the Court. Under Second Circuit law, "a motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Accordingly, the Court should deny the motion for reconsideration.

Under Local Criminal Rule 49.1(d), a motion for reconsideration must be filed within 14 days after the Court's ruling, and accompanied by a "memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court has overlooked."[3]   "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *See Shrader*, 70 F.3d at 257.

---

[3] These provisions are identical to the relevant provisions of Local Civil Rule 6.3.   Prior to the recent adoption of the current Local Criminal Rule 49.1(d), courts in criminal cases simply applied the standards associated with Local Civil Rule 6.3.   *See, e.g., United States v. Yannotti*, 457 F. Supp. 2d 385, 388-89 (S.D.N.Y. 2006). As Local Criminal Rule 49.1 adopts the language of Local Civil Rule 6.3, that case law continues to apply. *See United States v. Wilson*, 920 F.Supp.2d 287, 292 n. 3 (E.D.N.Y. 2012).

Reconsideration may also be justified by "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotation marks omitted).

Where none of these circumstances are present, however, reconsideration should be rejected. "The Second Circuit has made clear that a motion for reconsideration 'is not a vehicle for relitigating old issues, presenting the case under new theories ... or otherwise taking a second bite at the apple.'" *United States v. Almonte*, No. 14 Cr. 86 (KPF), 2014 WL 3702598, at *1 (S.D.N.Y. July 24, 2014) (*quoting Analytical Surveys, Inc. v. Tonga Partners, L.P.,* 684 F.3d 36, 52 (2d Cir. 2012). Indeed, the Second Circuit has expressly held that "a motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader*, 70 F.3d at 257.

Ceglia's motion for reconsideration is both untimely and substantively meritless. The Court denied Ceglia's original motion to dismiss on March 7, 2014. Under Local Criminal Rule 49.1(d), Ceglia had until March 21, 2014 to file a motion for reconsideration. The instant motion was filed on December 18,

2014, almost nine months after the deadline, and is therefore untimely.

In the Reconsideration Motion, Ceglia does not attempt to justify his non-compliance with the filing deadline.  But to the extent Ceglia seeks to argue that the Court granted him permission to file an untimely motion for reconsideration, that argument is baseless.  As set forth above, the Court made clear at the October 23, 2014 conference that it did not wish Ceglia to revisit the *Noerr-Pennington* issue.[4]  Accordingly, Ceglia's motion should be dismissed as untimely.

As to the substance of the motion, Ceglia seeks to relitigate the *Noerr-Pennington* issue in precisely the manner that is precluded on a motion for reconsideration.  He cites no facts or controlling law overlooked by the Court, as required by Local Criminal Rule 49.1(d) and the relevant case law.  Nor does he point to any change in the law, new evidence or manifest injustice.  The motion simply points to cases and facts already raised and thoroughly addressed by the parties and the Court at

---

[4] At the conference on November 24, 2014, the Court ruled that Ceglia could file a new motion to dismiss the Indictment for failure to state a claim as long as it was "different than the motion that was already decided by the Court." (November 24, 2014 Tr. 14.) That plainly does not cover the Reconsideration Motion, which is neither different from the prior motion nor based on failure to state a claim.

oral argument.   The Second Circuit has made clear that such a motion must be denied.

Finally, even if the Court were to consider Ceglia's *Noerr-Pennington* argument yet again, it remains invalid.   As Ceglia now summarizes the argument, his lawsuit against Facebook cannot be a "sham" because there were "triable issues of fact" as to whether the contract on which Ceglia relied was fabricated, which purportedly renders the suit "objectively reasonable" for purposes of *Noerr-Pennington* immunity. (Reconsideration Mot. 9.)   Ceglia continues, in short, to assert that his fraud is immunized if there was a reasonable chance that it would succeed in deceiving the court and/or jury.   It is well-established, however, that where the basis for a lawsuit is fraudulent, *Noerr-Pennington* immunity does not apply. *See, e.g., In re DDAVP Direct Purchaser Antitrust Litigation*, 585 F.3d 677, 692-694 (2d Cir. 2009); *Mercatus Group, LLC v. Lake Forest Hosp.*, 641 F.3d 834, 842-844 (7th Cir. 2011) (collecting cases); *United States v. Phillip Morris USA*, 566 F.3d 1095, 1123 (D.C. Cir. 2009); *Shetiwy v. Midland Credit Management,* 980 F.Supp.2d 461, 475-476 (S.D.N.Y. 2013).   The likelihood of the fraud's success is immaterial.   And for good reason, as the alternative would be perverse: a transparent fraud would subject the

-12-

perpetrator to liability, while a sophisticated, successful fraudster would be immunized.

The Indictment alleges that the defendant's lawsuit against Facebook and Zuckerberg was fraudulent. If that allegation is proven at trial, *Noerr-Pennington* immunity would not apply. Accordingly, and as the Court has already correctly determined, dismissal of the Indictment is not warranted.[5]

## II.  The Indictment Is Not Duplicitous.

Ceglia also moves to dismiss the Indictment as impermissibly duplicitous on the grounds that (1) multiple mailings and wires are included in a single count of mail fraud and a single count of wire fraud, respectively; and (2) each count charges both a substantive offense and aiding and abetting under 18 U.S.C. § 2. Second Circuit precedent forecloses both

---

[5] Nor is there any basis for Ceglia's renewed request that the Court hold an evidentiary hearing on the *Noerr-Pennington* issue. Unsurprisingly, Ceglia cites no authority for holding such a hearing, which is entirely contrary to the practice in civil actions where *Noerr-Pennington* is implicated. *See, e.g., California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 515-516 (1972) (overturning district court dismissal of antitrust action and remanding "for trial"); *In re DDAVP Direct Purchaser Antitrust Litigation*, 585 F.3d at 692-694 (overturning district court dismissal based on sufficiency of the complaint's allegations); *Shetiwy* 980 F.Supp.2d at 475-476 (denying motion to dismiss based on sufficiency of the complaint's allegations). Where it applies, *Noerr-Pennington* provides immunity from *liability*, not from litigation; it is not a threshold issue to be resolved prior to a trial on the merits.

of these arguments. Accordingly, Ceglia's motion should be denied.

"An indictment is impermissibly duplicitous where (1) it combines two or more distinct crimes into one count in contravention of the requirement of Federal Rule of Criminal Procedure 8(a) that there be 'a separate count for each offense,' and (2) the defendant is prejudiced thereby." *United States* v. *Sturdivani*, 244 F.3d 71, 75 (2d Cir. 2001) (*quoting United States* v. *Murray*, 618 F.2d 892, 896 (2d Cir. 1980)). Duplicitous counts pose three types of potential prejudice: (1) a potential lack of notice of the crime charged and its maximum penalty; (2) the potential that a second trial on the same offense would not be barred by the Double Jeopardy Clause; and (3) the potential uncertainty with respect to the crime of which the jury convicted the defendant, and the attendant sentencing implications of the verdict. *See Sturdivani*, 244 F.3d at 77. Applying these principles, the Second Circuit has long held that "acts that could be charged as separate counts of an indictment may instead be charged in a single count if those acts could be characterized as a single continuing scheme." *United States* v. *Tutino*, 883 F.2d 1125, 1141 (2d Cir. 1989).

More particularly, in *United States v. Margiotta*, the Second Circuit explicitly ruled that it is not impermissibly

-14-

duplicitous to incorporate multiple mailings in a single count charging mail fraud under 18 U.S.C. § 1341 because "the essence of the alleged wrong is the single scheme to defraud and the various mailings, though they are technically the acts that violate the federal statute, are really the jurisdictional bases for federal prosecution." 646 F.2d 729, 732–33 (2d Cir. 1981). The same rationale applies equally to wire fraud under 18 U.S.C. § 1343, and, following *Margiotta*, the Second Circuit and various district courts have repeatedly rejected the precise argument raised by Ceglia with respect to both mail and wire fraud. *See, e.g., United States v. Robinson*, 294 Fed.Appx. 630, 632 (2d Cir. 2008) (summary order) (mail and wire fraud); *United States v. Fruchter*, 104 F.Supp.2d 289, 298–300 (S.D.N.Y. 2000) (mail fraud); *United States v. Zandstra*, No. 00 CR 209(RWS), 2000 WL 1368050, at *5 (S.D.N.Y. Sept. 20, 2000)(mail fraud); *United States v. Upton*, 856 F.Supp. 727, 741–742 (E.D.N.Y. 1994)(wire fraud); *see also United States v. Chalmers*, 410 F.Supp.2d 278, 284–286 (S.D.N.Y. 2006)(recognizing, as conceded by parties, that multiple mailings or wires may be charged in a single count under Second Circuit law). Here, there is no dispute that the Indictment alleges a single scheme to defraud by Ceglia involving various mailings and wires.   Therefore, it is not

impermissibly duplicitous under controlling Second Circuit precedent.

Ceglia's argument regarding the inclusion of aiding and abetting in each count of the Indictment is equally unavailing. As noted above, a count is duplicitous if it incorporates "two or more distinct crimes." *Sturdivani*, 244 F.3d at 75. The Second Circuit has held, however, that aiding and abetting "does not constitute a discrete criminal offense[.]" *United States v. Smith,* 198 F.3d 377, 383 (2d Cir. 1999). "In fact, 'when a person is charged with aiding and abetting the commission of a substantive offense, the "crime charged" is ... the substantive offense itself.'" *Id.* (*quoting United States v. Oates,* 560 F.2d 45, 55 (2d Cir. 1977).) Because aiding and abetting is not a distinct crime, a count charging both the substantive offense and aiding and abetting that offense is not duplicitous. *See United States v. Ulbricht*, No. 14-cr-68 (KBF), 2014 WL 5410049, at *2 (S.D.N.Y. Oct. 24, 2014); *United States v. Gonzalez*, No. 08 Cr. 363(BSJ), 2010 WL 1924703, at *10-11 (S.D.N.Y. May 12, 2010); *Novak v. United States,* No. CV-07-4361(DGT), 2009 WL 982429, at *4 (E.D.N.Y. April 13, 2009).

The Court should, therefore, deny Ceglia's motion to dismiss the Indictment as duplicitous.

**III. The Omnibus Motions Are Baseless, Premature or Moot.**

In his Omnibus Motion, Ceglia makes a series of requests that are variously baseless, premature, or moot. For example, he seeks the suppression and exclusion of non-existent statements. He also seeks to obtain information to which he is not entitled, through a number of means, including improper requests for particulars, grand jury materials, witness identification and prior witness statements. He further prematurely seeks a *Daubert* hearing and other procedures for as-yet unidentified Government experts. All of his Omnibus motions should be denied, as set forth below.

A. Motions to Exclude and Suppress Statements

Ceglia curiously moves to suppress non-existent post-arrest statements. (Omnibus Mot. 4). To date, the Government has complied with its discovery obligations pursuant to Federal Rule of Criminal Procedure 16, which requires that the Government disclose to the defendant "the substance of any relevant oral statement made by the defendant before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement at trial," as well as any written or recorded statements in the Government's possession and control. Federal Rule of Criminal Procedure 16(a)(1)(A) and (B). As Ceglia well

-17-

knows, with the exception of statements regarding his biographical information made to law enforcement during post-arrest processing (produced and marked with control numbers 35-36), Ceglia did not make post-arrest statements to law enforcement.  As such, Ceglia's motion to suppress statements is baseless and should be denied.

Ceglia also preemptively moves to exclude statements by unidentified, non-testifying co-conspirators. (Omnibus Mot. 4).  This motion is similarly elusive, and premature at best. Ceglia is charged with substantive counts of mail and wire fraud.  He has not been charged with, nor does the Government currently allege that he participated in, a conspiracy to commit fraud.   To the extent the Government intends to admit oral statements of *any* non-testifying witnesses, it will move *in limine* for a pretrial ruling on the admission of such statements.  At this time, however, Ceglia's motion is premature and should be denied.

B.   Motion for a Bill of Particulars

Ceglia moves, for the second time, for a bill of particulars in this case. (Omnibus Mot. 5).  Under well-settled law of this Circuit, Ceglia is not entitled to the information he requests.   Furthermore, his instant request overlaps

significantly with his original request for particulars, which the Court denied almost in its entirety on July 22, 2014.

As the Court is aware, on or about May 23, 2014, Ceglia, through his then-counsel David Patton and Annalisa Miron, sought a bill of particulars (the "Original Particulars Motion") demanding that the Government identify, among other things, (i) the alleged "real" contract; (ii) the nature of the alleged fraud, and specifically whether the Government alleges that one or both pages of the contract were altered; and (iii) the targets of the alleged fraud.   Following motions and oral argument on the Original Particulars Motion, the Court denied all but one of the defendant's requests for particulars.   (July 22, 2014 Tr. 3-11.)

Ceglia now asserts – without any justification for his renewed motion -- that he is entitled to detailed information regarding the Government's proof and theory of its case, including additional specificity regarding the mechanics of the alleged fraud (requests a-d), the manner in which Ceglia committed the fraud (requests h-k), and identification of every mailing and wire in furtherance of the scheme (requests l-s). (Omnibus Mot. 7-8).[6]   This is not what the law requires.   As set

---

[6] Also, again peculiarly, Ceglia requests detail regarding co-conspirators despite the fact that no conspiracy has been alleged.   (*Id.*, requests t-y and aa).   In any event, courts

forth in the Government's June 6, 2014 response to Ceglia's Original Particulars Motion, Ceglia is entitled to sufficient information to understand the charge against him, prepare a defense, and protect against double jeopardy.  The detailed Indictment and Complaint, extensive discovery and accompanying index, and other voluntary disclosures by the Government, via the various motions to which it has responded in this case, including its response to Original Particulars Motion, do just that.

---

"routinely den[y]" demands for bills of particulars setting forth the identities of co-conspirators. *Trippe*, 171 F. Supp. 2d at 240; *see also United States v. Bin Laden*, 92 F. Supp. 2d 225, 242 (S.D.N.Y. 2000) ("[R]equests, such as those made by the Defendants here, for particulars as to when, where, how, and with whom each individual defendant joined an alleged conspiracy have 'almost uniformly been denied.'") (citation omitted); *Torres*, 901 F.2d 205, 233-34 (2d Cir. 1990)(demands for "whens" and "wheres" and "by whoms" within charged conspiracy are improper attempts at general pre-trial discovery).  Similarly oddly, Ceglia requests specificity regarding the sale of counterfeit obligations, even though this portion of 18 U.S.C. § 1341 has not been charged.  (*Id.*, request g). Ceglia further demands that the Government select a single theory for several sections of the statutory allegation charged in the conjunctive (e.g., "state with specificity whether the defendant devised or intended to devise a scheme or artifice"; "state with specificity whether the defendant is alleged to have obtained money or property," requests e, f ). It is entirely appropriate that the Government used conjunctive language in the Indictment. The Government need not now, or at trial, limit its proof in support of the various parts of the charge. It is well-settled that "when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive…the verdict stands if the evidence is sufficient with respect to any one of the acts charged." *United States  v. Droms*, 566 F.2d 361, 363 (2d Cir. 1997) (citations omitted).

-20-

As set forth in the Government's response to the Original Particular's motion,

> The Indictment specifies the contract and e-mails alleged to be fraudulent, and also identifies several dates during which the Government alleges the fraud was conducted and furthered. (*See* Indictment at ¶¶ 6-9).  In addition, the Defendant has been provided with voluminous discovery relating to the allegations and the Government's evidence, with detailed cover letters identifying the source of most items and/or describing the items' relevance. . . For example, among other things, the discovery [  ]: (i) specifically references the Defendant's "purported e-mail communication with Mark Zuckerberg" (3476-3484); (ii) provides contemporaneously dated e-mails identified as sourced from Harvard University (740-2200) and from Karin Petersen, a former StreetFax.com employee (397-443), (iii) includes a forensic analysis of the Alleged Contract,  noting inconsistencies between pages 1 and 2 ([4]431-[4]432); (iv) identifies the two-page StreetFax Contract between Ceglia and Zuckerberg, dated the same day as the Alleged Contract, which contains no reference to Facebook, "The Face Book," or "The Page Book" (39-40); and (v) also includes a 74-page computer forensic analysis of some of Ceglia's computer hard drives and other electronic media, noting various indications of files being deleted and overwritten, and identifying the location where a copy of the StreetFax Contract was found.

June 6, 2014 Government Response to Original Particulars Motion at 11-12.  The Government further clarified at oral argument that the "StreetFax Contract," is "what the Government is claiming is the actual contract between Mark Zuckerberg and Mr. Ceglia." (July 22, 2014 Tr. 3.)  The Court then went on to determine, "now that the defense knows clearly which contract

-21-

the government claims is the real contract, the defense can determine what has been allegedly forged or altered." *Id.*

It is well-established that the proper scope and function of a bill of particulars is to provide sufficient information about the nature of the charge, to enable a defendant to prepare for trial, to avoid unfair surprise, and to preclude a second prosecution for the same offense. *See* Fed. R. Crim. P. 7(f); *United States* v. *Torres*, 901 F.2d 205, 234 (2d Cir. 1990), *abrogated on other grounds, United States* v. *Marcus*, 628 F.3d 36 (2d Cir. 2010); *United States* v. *Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). A bill of particulars is required only when the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused. *Torres*, 901 F.2d at 234 (internal citation omitted); *see also United States* v. *Cephas*, 937 F.2d 816, 823 (2d Cir. 1991); *United States* v. *Panza*, 750 F.2d 1141, 1148 (2d Cir. 1984). In addition, if the information needed to serve those purposes is provided through some other means, a bill of particulars is not necessary. *See Bortnovsky*, 820 F.2d at 574; *United States* v. *Morales*, 280 F. Supp. 2d 262, 274 (S.D.N.Y. 2003); *United States* v. *Sattar*, 314 F. Supp. 2d 279, 318-319 (S.D.N.Y. 2004).

A bill of particulars is not appropriate where the bill is sought to obtain evidentiary detail useful to the defendant but not necessary to apprise him of the charges. *See Torres*, 901 F.2d at 234. "A bill of particulars is not a general investigative tool, a discovery device or a means to compel the government to disclose evidence or witnesses to be offered prior to trial." *United States* v. *Gibson*, 175 F. Supp. 2d 532, 537 (S.D.N.Y. 2001) (citation omitted). The Government is not required to "particularize all of its evidence," *Cephas*, 937 F.2d at 823, disclose the precise manner in which the crimes charged in the indictment were committed, *see Torres*, 901 F.2d at 233-34, or provide a preview of the Government's case or legal theory, *see United States* v. *Muyet*, 945 F. Supp. 586, 599 (S.D.N.Y. 1996); *United States* v. *Taylor*, 707 F. Supp. 696, 699 (S.D.N.Y. 1989). The ultimate test is whether the information sought is necessary to give notice of the charge against the defendant, not whether it would be helpful to him. *See United States* v. *Trippe*, 171 F. Supp. 2d 230, 240 (S.D.N.Y. 2001); *United States* v. *Conley*, 2002 WL 252766, at *4 (S.D.N.Y. Feb. 21, 2002). Applying these principles, courts routinely deny requests like Ceglia's which are, at bottom, demands for additional details of the manner in which the offense was committed. *See United States* v. *Mitlof*, 165 F. Supp. 2d 558,

569 (S.D.N.Y. 2001) (noting that Government may not be compelled to provide a bill of particulars disclosing the manner in which it will prove charges, the manner in which the defendant committed the crime charged, or a preview of Government's evidence or legal theories).

The charging documents, combined with the discovery and other disclosures made in this case, give the defendant more than sufficient notice of the nature of the charge, and enable him to prepare for trial, avoid unfair surprise, and preclude a second prosecution for the same offense. See Fed. R. Crim. P. 7(f); *Torres*, 901 F.2d at 234, *Marcus*, *Bortnovsky*, 820 F.2d 572 at 574. With regard to the allegedly fraudulent contract, the Indictment plainly alleges that Ceglia doctored or otherwise fraudulently converted a real contract that he had with Zuckerberg concerning programming work for StreetFax.com to make it appear as though Zuckerberg had agreed to provide Ceglia with at least a 50% interest in Facebook (the "Alleged Contract"). (Indictment at ¶ 5). The Government has made clear, on multiple occasions, its allegation that the contract referred to as the "StreetFax" contract, which can be found at control numbers 39-40 in the discovery, represents the true contractual relationship between Ceglia and Zuckerberg, in which there was no agreement regarding Facebook. The Government has further

-24-

made plain its allegation that the first page of the Alleged Contract contains fabricated contract terms – the false representations intended to defraud – which purport to give Ceglia "a half interest (50%) in the software, programming language and business interests" derived from the expansion of "The Face Book" or "The Page Book."[7]  With regard to the use of the mail and wires, the charging documents specifically allege that Ceglia, on numerous occasions, including on or about April 11, 2011, caused various legal documents, including motions and declarations, to be transmitted both by mail and by e-mail from the Southern District of New York, among other places, to counsel for the defendants in his civil case, located in, among other places, Washington, D.C.   Similarly, at various times, including on or about July 14, 2011, November 1, 2011 and

_____

[7] The Government has not taken a position, nor need it take a position at this stage (or at any point), regarding the authenticity of the Alleged Contract's page two -- standing alone.  It is the Alleged Contract as a whole which the Government alleges was used, along with fraudulent emails, to commit mail and wire fraud.  Nor is the defendant entitled to the Government's specific theory of how Ceglia created the Alleged Contract, should the Government even intend to present such a theory at trial.  *United States v. Sindone*, No. 01 Cr. 517 (MBM), 2002 U.S. Dist. LEXIS 388, at *3 (S.D.N.Y. Jan. 14, 2002) ("The stakes in a criminal case are high, and temptations of perjury, subornation and intimidation are ever present.  Accordingly, the Government is not required to turn over information that will permit a defendant to preview the government's case and tempt him to tailor proof to explain it away, or see to it that the government's proof is not presented.")

December 8, 2011, Ceglia's attorneys located in California and Ohio have transmitted legal documents in furtherance of the Defendant's fraudulent scheme via e-mail to counsel for the civil defendants in Manhattan, New York.  (Indictment at ¶¶ 6, 8-9; *see also* Compl. at ¶¶ 6-11).   Further clarification is not required at this point. *United States v. Chalmers*, 410 F. Supp. 2d 278, 285 (S.D.N.Y. 2006) (finding no authority to require Government to limit its proof at trial to the wires specified in the indictment nor to require it to specify, and then be limited to, additional wires in a bill of particulars).

As set forth above, and in the Government's response to the Original Particulars Motion, the defendant has more than sufficient notice of the charges against him, and is not entitled to the additional detail he seeks. *United States* v. *Trippe*, 171 F. Supp. 2d 230, 240 (S.D.N.Y. 2001); *United States* v. *Conley*, 2002 WL 252766, at *4 (S.D.N.Y. Feb. 21, 2002); *Bortnovsky*, 820 F.2d at 574 (bill of particulars required where indictment did not have a single reference to dates or documents alleged to be fraudulent).  Accordingly, his renewed motion for a bill of particulars should be denied.

C.   Motions to Identify Witnesses and for Disclosure of
     *Brady*, *Giglio* and *Jencks Act* Material

Although Ceglia acknowledges that the "discovery has not revealed [the existence] of informants," he nonetheless seeks to reserve his right to seek an order requiring disclosure of their identity.  (Omnibus Mot. 10).  He further seeks the identity and location of all prospective government witnesses. (*Id*. at 11-12).  Also, contained within at least four separate motions, Ceglia seeks immediate -- or very early -- disclosure of exculpatory and/or impeachment material.  (Omnibus Mot. 12, 18, 24, 29).  First of all, the Government fully recognizes its continuing obligations to produce exculpatory material under *Brady v. Maryland*, 373 U.S. 83 (1963), has complied with those obligations, and will continue to do so.  With regard to the remaining requests, Ceglia does not come close to establishing a need for the disclosures he seeks.

Nothing in Rule 16, or any other statute or rule, obligates the Government to disclose the identity of its prospective witnesses.  As the Second Circuit has explained, "Fed. R. Crim. P. 16 does not require the Government to furnish the names and addresses of its witnesses."  *United States v. Bejasa*, 904 F.2d 137, 139 (2d Cir. 1990).  *United States v. Cannone* makes clear that a defendant is entitled to disclosure

of the Government's witnesses only if he makes "a *specific* showing that the disclosure [is] both material to the preparation of his defense and reasonable in light of the circumstances surrounding his case." 528 F.2d 296, 301 (2d Cir. 1975*); see also United States v. Fields*, 113 F.3d 313, 324 (2d Cir. 1997) (defendant bears the burden of establishing that, absent disclosure of informant's identity, he will be deprived of his right to a fair trial); *United States v. Biaggi*, 675 F. Supp. 790, 810-11 (S.D.N.Y. 1987); *United States v. Feola*, 651 F. Supp. 1068, 1138 (S.D.N.Y. 1987). Because this "heavy burden," *United States v. Alvalle*, 1985 WL 2348, at *1 (S.D.N.Y. Aug. 22, 1985), can rarely be met, requests for witness lists are routinely denied in this District. *See, e.g., United States v. Palermo,* 2001 WL 185132, at *3 (S.D.N.Y. 2001) (finding no authority to support request for defense access to interview witnesses); *United States v. Ahmad*, 992 F. Supp. 682, 685 (S.D.N.Y. 1998); *United States v. Perez*, 940 F. Supp. 540, 552 (S.D.N.Y. 1996). In this case, the defendant has made no showing that disclosure of the Government's witnesses is both material to his defense and reasonable in light of the circumstances surrounding his case

The defendant has similarly not made any showing to justify immediate production of impeachment material. *Giglio*

material must be produced "in sufficient time that the defendant
will have a reasonable opportunity to act upon the information
efficaciously."  *United States v. Rodriguez*, 496 F.3d 221, 226
(2d Cir. 2007). Specifically, the Second Circuit has held

> (1) as a general rule, *Brady* and its progeny *do not require
> immediate disclosure of all exculpatory and impeachment
> material upon request by a defendant;*
>
> (2) material required to be disclosed
> by *Brady* and *Giglio* is material, which, if not disclosed,
> creates a reasonable probability of altering the outcome;
>
> (3) the Government "suppresses" evidence within the meaning
> of *Brady* only if it fails to
> disclose *Brady* and *Giglio* material *in time for its
> effective use at trial or at a plea proceeding;* and
>
> (4) the time required for the effective use of a particular
> item of evidence will depend on the materiality of that
> evidence as defined by the Supreme Court
> in *Agurs* and *Bagley*, as well as the particular
> circumstances of the case."

*United States v. Coppa*, 267 F.3d 132, 146 (2d Cir. 2001)
(emphasis added).

      Immediate disclosure of impeachment material is not
warranted merely because the defendant has requested it.  *See
United States v. Hernandez*, 2010 WL 26544, at *6 (S.D.N.Y. 2010)
(declining to order immediate disclosure of *Giglio* material, as
the Government stated it would provide both *Giglio* and Jencks
Act material "shortly before trial"); *see also United States v.
Davis*, 2009 WL 637164, at *14 (S.D.N.Y. 2009) ("[t]he Second

-29-

Circuit has held that a request for immediate or early disclosure [of *Giglio* material] has no basis in the law."). Courts in the Southern District of New York have recognized that "*Giglio* material is customarily produced in this District with Section 3500 material in recognition of the fact that this type of *Brady* material does not ordinarily require any independent investigation in order to use it effectively at trial." *United States v. Jacques Dessange*, Inc., 2009 WL 280050, at *9 (S.D.N.Y. 2000) (denying request for immediate disclosure of *Giglio* material before the disclosure deadline for 3500 material). Under the circumstances of this case, there is no need for disclosure of impeachment material under *Giglio* four months in advance of trial.

Ceglia's motion for early disclosure of Jencks Act "3500" material flies in the face of controlling Second Circuit law. Section 3500 provides that "[i]n any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case." Rule 16(a)(2) also makes clear that there is no entitlement under Rule 16 to the

-30-

discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. §3500. In light of these provisions, requests for discovery of such "3500 material" in advance of trial are uniformly denied. Indeed, there is no legal basis to order the disclosure of statements of Government witnesses before their direct testimony at trial. *See United States ex rel. Lucas v. Regan*, 503 F.2d 1, 3 n.1 (2d Cir. 1974); *United States v. Sebastian*, 497 F.2d 1267, 1268-69 (2d Cir. 1974); *United States v. Percevault*, 490 F.2d 126, 132 (2d Cir. 1974). The Government of course consistently produces §3500 material prior to the witness's testimony -- and typically prior to trial -- particularly as doing so also serves to disclose any *Giglio* material in such prior statements. The Government's present intention is to produce substantially all such statements, barring any special circumstances, such as issues with witness safety, no later than the Friday prior to trial, which will provide the defendant more than sufficient time to make effective use of the materials at trial.

Accordingly, the defendant's motions to require the Government to identify and locate its witnesses, and provide impeachment material well in advance of trial, should be denied.[8]

---

[8] Ceglia also makes requests for information and documents that do not necessarily fall within the confines of Federal Rule of Evidence 16, *Brady*, *Giglio* or 18 U.S.C. §3500 (*e.g.*, the name

D.    Motion for Discovery

In his motion for discovery, Ceglia requests, essentially, that the Government comply with its obligations set forth in Federal Rule of Criminal Procedure 16. (Omnibus Mot. 13). As the Government has stated on many occasions, both directly to counsel and at court conferences, the Government has thus far complied with its discovery obligations, and will produce supplemental discovery as necessary. To the extent Ceglia moves for an order requiring the Government to provide advance notice of any expert witnesses, the Government will of course do so, consistent with the requirements of Federal Rule of Evidence 702 and Federal Rule of Criminal Procedure 16(a)(1)(G), should it choose to call an expert. Accordingly, the defendant's motion should be denied as moot.

E.    Motion for Disclosure of 404(b), 608 and 609 Evidence

Ceglia requests notification of Rule 404(b) evidence. (Omnibus Mot. 29). Again, there is not apparent dispute here.

_____

and address and written or oral statement of *any witness* "to the offense charged in the indictment whom the government does not intend to call as a witness is this case," "a list of *any and all requests, demands or complaints* made of the government by any witness…regardless of whether the government has a agreed to provide such favorable action," complete criminal histories of the *immediate family* of any government witnesses, and *all records* of disciplinary action against any testifying law enforcement agent). (Omnibus Mot. 18-22). The Government will comply with its obligations under the Federal Rules of Evidence, *Brady, Giglio* and 18 U.S.C. §3500, but is not required to make any further disclosures requested by the defendant.

-32-

Rule 404(b) requires that the Government provide the defense "reasonable notice in advance of trial" that it plans to introduce such evidence.  Fed. R. Evid. 404(b). The Government will provide such advance notice, to the extent then known, so that Rule 404(b) issues can be raised in accordance with the *in limine* motion schedule which the Government expects the Court will set in advance of trial.  That is more than sufficient to satisfy the notice requirements of Rule 404(b).  *See, e.g., United States v. Groezinger*, 625 F. Supp. 2d 145, 159 (S.D.N.Y. 2009) ("The Government has indicated that it will make the required disclosure two weeks prior to trial, a practice that typically comports with Rule 404(b)"); *United States v. Ojeikere*, 299 F. Supp. 2d 254, 257 (S.D.N.Y. 2004) ("Courts in this Circuit have routinely found that at least ten business days provides reasonable notice to a defendant under Rule 404(b)."); *United States v. Heredia*, No. 02 Cr. 1246 (SWK), 2003 WL 21524008, at *10 (S.D.N.Y. Jul. 3, 2003) (noting that "courts deem notice afforded more than ten working days before trial as reasonable notice within the meaning of Rule 404(b)").

Ceglia further requests pretrial disclosure of "any other evidence the government intends to use to impeach the defendant's credibility should he choose to testify," and also requests a pretrial hearing to determine admissibility.

(Omnibus Mot. 29). Admission of such evidence is governed by
Federal Rules of Evidence 608 and 609. To the extent a
determination by the Court is required in advance of trial
regarding cross-examination of the defendant (and such
determination has not already been addressed by motions
regarding potential 404(b) evidence), the Government intends to
make an appropriate motion *in limine*.

Accordingly, to the extent the defendant seeks an
order directing disclosure of such materials,[9] it should be
denied.

F.    Motion for Preservation of Rough Notes
      and Other Evidence

Ceglia seeks an order "requiring all government agents
and officers who participated in the investigation of the
defendants (sic) in this case to retain and preserve all rough
notes taken as part of their investigation whether or not the
contents of the notes are incorporated in official records."
(Omnibus Mot. 30). To the extent Ceglia is even entitled to
agent notes, he would be entitled only to notes containing
*Brady*, *Giglio* or *Jencks Act* material. The Government will
produce such material, to the extent it exists, as discussed at
length above. A preservation order is unnecessary as the

---

[9] The defendant does not actually appear to request any relief
from the Court with respect to these materials, as opposed to
simply making a request of the Government.

agents involved in this case have been advised, pursuant to the policies of this Office, that they must preserve handwritten notes of interviews even when the notes have been transformed in to a formal report.

### G.   Motion for Grand Jury Transcripts

Ceglia asks the Court to compel the disclosure of "transcripts of all testimony before and all exhibits considered by the grand jury that indicted" in order to be "informed of what evidence actually exists against him." (Omnibus Mot. 31). Ceglia's request is utterly without merit and should be denied as frivolous.

Grand jury proceedings are afforded a "presumption of regularity" that may be dispelled only by particularized proof of irregularities in the grand jury process. *United States v. Leung*, 40 F.3d 577, 581 (2d Cir. 1994); *see Torres*, 901 F.2d at 232-33. Rule 6(e)(2) of the Federal Rules of Criminal Procedure provides that matters occurring before the grand jury are secret. *United States v. Johnson*, 319 U.S. 503, 513 (1943). Rule 6(e)(3)(E)(ii) permits disclosure of grand jury proceedings "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." However, a party seeking grand jury material must demonstrate a "particularized need" for the

-35-

material sought.  *See United States v. Sells Engineering*, 463 U.S. 418, 443 (1983) ("[w]e have consistently construed [Rule 6(e)] . . . to require a strong showing of particularized need for grand jury materials before any disclosure will be permitted"); *see also Dennis v. United States*, 384 U.S. 855, 870 (1966).  Even *in camera* inspection of grand jury minutes by the District Court is inappropriate absent specific factual allegations of Government misconduct.  *See Torres*, 901 F.2d at 233; *United States v. Kalevas*, 622 F. Supp. 1523, 1525 (S.D.N.Y. 1985).  "Mere '[s]peculation and surmise as to what occurred before the grand jury are not sufficient to overcome th[e] presumption' of regularity."  *United States v. Scott*, 624 F. Supp. 2d 279, 291 (S.D.N.Y. 2008) (*quoting United States v. Jailall*, No. 00 Cr. 069 (RWS), 2000 WL 1368055, at *2 (S.D.N.Y. Sept. 20, 2000)); *see also United States v. Brown*, No. 95 Cr. 168 (AGS), 1995 WL 387698, at *7 (S.D.N.Y. Jun. 30, 1995) ("[A] defendant's mere speculation as to what occurred in front of the grand jury does not warrant inspection of the minutes, either by disclosure to defense counsel ... or through in camera inspection by the Court.").

Here, Ceglia has not made a particularized showing of any kind.  He offers no evidence or factual allegations of any impropriety, irregularity or misconduct.  He merely seeks

-36-

another avenue to gain early disclosure – to which he is not entitled – of the Government's witnesses and theory of the case. Again, he has come nowhere near the showing required for his requested disclosure.

H.   Motion to Voir Dire Government Experts Outside the Presence of the Jury and for a *Daubert* Hearing

Before the Government has provided expert notice with regard to any proposed expert, Ceglia moves for an order allowing him to *voir dire* government experts at trial outside the presence of the jury. (Omnibus Mot. 31). Ceglia further claims that Curtis Rose, who conducted computer forensic analyses of some of Ceglia's computer hard drives and other electronic media, cannot be qualified as an expert and that a *Daubert* hearing is necessary. (Omnibus Mot. 32). These motions should be denied as premature.

The Government has not yet provided notice of its intent to rely on expert testimony at trial. To the extent the Government intends to call Mr. Rose, or any other witness, to provide expert testimony, it will provide a written summary of the witness's opinions, the bases and reasons for those opinions, and the witnesses' qualifications, as required by Federal Rule of Criminal Procedure 16(a)(1)(G), in sufficient time for the defendant to challenge such expert(s) and propose

-37-

procedures for their testimony in accordance with the *in limine* motion schedule the Government expects the Court will set in advance of trial.    Accordingly, the defendant's motion concerning the *voir dire* of expert witnesses outside the presence of the jury should be denied as premature.

Ceglia's theory as to why Mr. Rose would not qualify as an expert is similarly premature, and also misguided.  It is unclear what he relies upon to claim that Mr. Rose "came to a conclusion born of pure conjecture unsupported by proven method recognized by the scientific community." (Omnibus Mot. 32).  As set forth in the six-page resume provided to Ceglia in discovery produced in December 2012 (marked with control numbers 703-708), Mr. Rose has more than twenty years of experience in the field of computer forensic analysis, has authored more than half a dozen publications on the topic, and has served as an expert in other federal cases.  Mr. Rose's 74-page report, with numerous attachments (also provided in discovery), sets forth in great detail the procedures and methodology applied during his analysis.  The Government is also not sure what Ceglia means when he asserts that a

> true independent examination would entail Curtis Rose comparing data of one computer with a suspected or probable computer that received, transmitted, created or altered data rather than actually making criticizing data before him without considering as many hypothesis as possible and using the details of another report for his own report.

-38-

(*Id*. at 33).   To the extent that Mr. Rose testifies, the Government expects his testimony to cover his analysis of computer hard drives and electronic media (the "Electronic Assets"), the source of which should be undisputed.   The Electronic Assets were produced by Ceglia, in his civil case against Facebook and Mark Zuckerberg, in response to a July 1, 2011 civil court order requiring that Ceglia provide all computers and electronic media in his possession, custody, or control.   It is unclear what further comparison would be necessary for Mr. Rose to testify about what he found on computer hard drives and other media provided by the defendant himself.

And certainly nothing in Ceglia's motion supports the need for a *Daubert* hearing.   With respect to the admissibility of expert opinion testimony under Rule 702, the Supreme Court has adopted a two-step inquiry to determine "whether the reasoning or methodology underlying the [expert's] testimony is . . . valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue."   *Daubert*, 509 U.S. at 592-93.   Before admitting such testimony, the district court must determine: (1) that the proffered testimony is scientifically based and therefore reliable; and (2) that the

proffered testimony will be relevant and helpful to the trier of fact. *See United States* v. *Kwong*, 69 F.3d 663, 668 (2d Cir. 1995) (*Daubert* standard requires that "the proffered scientific evidence is both relevant and reliable"). In *Kumho Tire Co.* v. *Carmichael*, the Supreme Court emphasized that *Daubert* is to be applied flexibly and that "*Daubert*'s list of specific factors," however, "neither necessarily nor exclusively applies to all experts or in every case." 526 U.S. 137, 141 (1999).

The Second Circuit uses a particularly broad standard in determining the admissibility of expert opinion testimony under Rule 702. *See*, *e.g.*, *Boucher* v. *United States Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) (holding that testimony is to be admitted unless purely conjectural or based on totally unfounded assumptions). In carrying out its gatekeeper function, a district court should keep in mind the Supreme Court's admonition in *Daubert* that, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking . . . admissible evidence." *Daubert*, 509 U.S. at 596. Whether the proponent of the expert testimony has satisfied the requirements of Rule 702 is to be determined by the trial judge, Fed. R. Evid. 104, and the Second Circuit applies "an abuse of discretion standard when it

-40-

review[s] a trial court's decision to admit . . . expert testimony." *Kumho Tire Co.*, 526 U.S. at 152 (quotation omitted); *accord United States* v. *Salameh*, 152 F.3d 88, 129 (2d Cir. 1998).

As has repeatedly been made clear, while the gatekeeping function requires the district court to ascertain the reliability of an expert witness's methodology, there is no requirement that a separate hearing be held in order to do so. *Kumho Tire*, 526 U.S. at 152 (district courts possess "latitude in deciding *how* to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability"); *United States* v. *Williams*, 506 F.3d 151, 161 (2d Cir. 2007) (separate hearing not necessarily required to determine reliability of methodology); *United States* v. *Alatorre*, 222 F.3d 1098, 1102 (9th Cir. 2000) ("Nowhere . . . does the Supreme Court mandate the form that the inquiry into . . . reliability must take . . ."); *see also United States* v. *Crisp*, 324 F.3d 261, 268 (4th Cir. 2003) ("Under *Daubert*, a trial judge need not expend scarce judicial resources reexamining a familiar form of expertise every time opinion evidence is offered. In fact, if a given theory or technique is "so firmly established as to have attained the status of scientific law," then it need not be examined at all, but instead may properly be

subject to judicial notice); *United States* v. *Nichols*, 169 F.3d 1255, 1263 (10th Cir. 1999) (pre-trial hearing not required because "the challenged evidence does not involve any new scientific theory and the testing methodologies are neither new or novel").

To the extent the Government calls Mr. Rose as an expert, the Government does not expect that his methodologies, which have been time-tested throughout his career and vast experience in the industry, will be new or novel. The Court need only address this issue, however, if and when the Government provides expert notice for Mr. Rose, and to the extent the defendant then makes a timely and appropriately-tailored motion regarding Mr. Rose's qualifications as an expert. At this juncture, his motion remains premature and should be denied.

I. Motion for an Audibility Hearing

In another curious motion, Ceglia moves for an "audibility hearing," regarding as-of-yet-unidentified recordings. (Omnibus Mot. 34). This motion, too, is premature if not entirely unnecessary. To the extent the Government identifies any recordings as proposed trial exhibits,[10] and the

_____

[10] The only recordings in this case are recorded phone calls made by Ceglia to friends and family while he was in custody prior to satisfying his bail conditions.

defendant determines that there is a potential issue with a particular recording's audibility, the parties can address those issues at that time – likely in the first instance by endeavoring to enhance the quality of the recordings.

J.   <u>Motion for Leave to Make Other Motions</u>

Ceglia seeks leave to make additional motions. (Omnibus Mot. 34). To the extent he seeks to make additional pretrial motions based on documents or other information in his possession on or before December 17, 2014 -- the (second) deadline for pretrial motions -- that request should be denied. The Court required Ceglia's initial counsel to file all pretrial motions by May 23, 2104, which he did.   At new counsel's request, the Court set a new deadline of December 17, 2014.   The defendant has now had ample time, and the assistance of two different sets of counsel, to make pretrial motions.   To the extent he seeks to make (i) motions regarding additional discovery which post-dates the pretrial motions deadline; (ii) motions *in limine*; or (iii) other motions properly made just before or after trial (*e.g.*, requests to charge and Rule 29 motions), no order should be necessary for leave to file such motions as long as they are within any relevant deadlines set by the Court.

## IV.   The Subpoenas Motion

Ceglia has renewed his motion for trial subpoenas to Zuckerberg and Facebook, but now seeks slightly different information than he did previously. (Subpoenas Motion, Appendix A.)  The Government has no objection to two of his requests, but opposes his final request as over broad and beyond the scope of Federal Rule of Criminal Procedure 17(c) ("Rule 17(c)").

As set forth above, on or about June 9, 2014, Ceglia's then-counsel sought trial subpoenas, pursuant to Rule 17(c), for documents from Harvard University and from Mark Zuckerberg and Facebook.  After briefing and oral argument, the Court denied the requests to Harvard – for being overly broad or premature -- with the exception of a request to Harvard University for email retention policies from 2003 to the present (which was also unopposed by the Government).  With regard to the requests to Zuckerberg and Facebook, the Court denied three requests (seeking all emails, electronic storage devices and cell phones used by Zuckerberg and Facebook in 2003 and 2004) as overbroad. With regard to the remaining two requests, which the Government did not oppose, the Court agreed with Facebook's suggestion that it would voluntarily turn over to the defendant the following materials: (1) agreements, drafts and copies of agreements between Mark Zuckerberg and Paul Ceglia, or between companies

-44-

managed or owned by either Zuckerberg or Ceglia and (2)
communications between Zuckerberg or companies he owned or
managed, on the one hand, and Ceglia or companies he owned or
managed, on the other hand. The Court then denied those two
requests without prejudice to revisit them after counsel for
Zuckerberg and Facebook made its voluntary production.  On or
about September 6, 2014, counsel for Zuckerberg and Facebook
made a production of approximately 525 pages of documents (a
copy of which was also sent to the Government).[11]

Ceglia has now renewed his motion for trial subpoenas
to Zuckerberg and Facebook, seeking the following:

(1) All written contracts, agreements and addendums
thereto, whether proposed, contemplated or in draft
form, whether signed or not, endorsed or not, executed
or not, including copies thereof, in whatever format,
including electronic, paper, email or images thereof,
between Mark Zuckerberg/Facebook, Inc. and Paul Ceglia
or between companies managed or owned, in whole or
part, by either Zuckerberg/Facebook or Ceglia dating
from November 1, 2002 through, up to and including
July 29, 2004, without regard to the intended purpose
or project covered therein.

(2) The specific contract referenced in Zuckerberg's
Monday, August 18, 2003, email 04:20:11, bates stamp
000760-761, wherein Mr. Zuckerberg states "He's [Mr.
Ceglia's] only gotten this pissed once before, and
that's when I sent him the contract with all the
penalty stipulations for if he didn't pay on time,"
and all copies thereof, no matter where the contract
and its copies may reside and no matter what forms in
which they may exist.

---

[11] These materials were provided again to Ceglia's new counsel on
or about November 26, 2014.

(3)   All   email   communications   of   Mr.
Zuckerberg/Facebook  to  and  from  other  third  party
recipients,  with  their  attachments,  between  November
1,  2002  to  July  29,  2004,  that  relate  or  make
reference  to  Mr.  Ceglia  or  the  relationship  between
Ceglia  and  Zuckerberg  or  Ceglia  and  Facebook,  and  all
copies  thereof,  no  matter  where  the  contract  and  its
copies  may  reside  and  no  matter  what  forms  in  which
they  may  exist.

As  an  initial  matter,  to  the  extent  there  are
documents  responsive  to  requests  (1)  and  (2)  that  have  not
already  been  produced,  the  Government  does  not  oppose  these
requests.   The  Government  does,  however,  oppose  request  (3)
because  it  seeks  documents  well  beyond  the  scope  of  Rule  17(c).

As  set  forth  in  detail  in  the  Government's  June  30,
2014  response  to  Ceglia's  initial  motion  for  Rule  17  subpoenas,
and  incorporated  by  reference  herein,  Rule  17(c)  does  not
provide  an  additional  means  of  gathering  discovery.   *See Bowman
Dairy Co. v. United States*,  341  U.S.  214,  220  (1951);  *United
States v. Cherry*,  876  F.  Supp.  547,  552  (S.D.N.Y.  1995);  *see
also United States v. Cuthbertson*,  651  F.2d  189,  192  (3d  Cir.
1981)  ("Rule  17(c)  was  not  intended  to  be  a  broad  discovery
device,  and  only  materials  that  are  'admissible  as  evidence'  are
subject  to  subpoena  under  the  rule.").   Rather,  Rule  17(c)  may
be  used  only  to  obtain  evidentiary  materials.   *See United States
v. Murray*,  297  F.2d  812,  821  (2d  Cir.  1962)  (subpoenaed

-46-

materials must themselves be admissible evidence); *see also United States v. Hutchinson*, 1998 WL 1029228, at *1 (E.D.N.Y. December 23, 1998).

"Courts must be careful that Rule 17(c) is not turned into a broad discovery device, thereby undercutting the strict limitation of discovery in criminal cases found in [Rule 16]." *Cherry*, 876 F. Supp. at 552 (*quoting Cuthbertson*, 630 F.2d at 146). Nor are Rule 17(c) subpoenas to be used to obtain statements of prospective witnesses. *See* Fed. R. Crim. P. 17(h); 18 U.S.C. § 3500 (b); Fed. R. Crim. P. 16(a)(2); and Fed. R. Crim. P. 26.2(a)

The party seeking the documents "must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." *United States v. Nixon*, 418 U.S. 683, 700 (1974). Under *Nixon* and its progeny -- which the Court has already determined is the appropriate standard (July 22, 2104 Tr. 14) -- the defendant must demonstrate that the requested materials are admissible as evidence at trial. *See, e.g., United States v. R. Enterprises, Inc.*, 498 U.S. 292, 299 (1991); *United States v. Marchisio*, 344 F.2d 653, 669 (2d Cir. 1965). Materials sought "cannot be potentially relevant or admissible, they must meet the test of relevancy and admissibility at the time they are sought." *Marchisio*, 344 F.2d at 669. Thus, Rule 17(c) is different from

-47-

the civil rules, which permit the issuance of subpoenas to seek production of documents or materials which, although themselves not admissible, may lead to admissible evidence. *See Cherry*, 876 F. Supp. At 547; *see also United States v. Gross*, 24 F.R.D. 138, 141 (S.D.N.Y. 1959).

The defendant must establish that the defense's "application is made in good faith and is not intended as a general 'fishing expedition.'" *Nixon*, 418 U.S. at 700. Ceglia has not done so with respect to request (3). To the extent responsive communications even exist beyond those already produced, it is not the case that every single email communication that "makes reference to Mr. Ceglia or the relationship between Ceglia and Zuckerberg or Ceglia and Facebook," is either discoverable under Federal Rule of Criminal Procedure 16 or necessarily admissible evidence, as required by *Nixon*. Instead, Ceglia is impermissibly seeking to engage in a general fishing expedition or obtain prospective witness statements. Accordingly, request (3) of his renewed motion for subpoenas should be denied.

## V.    Ceglia's Request for Return of Documents

In a letter dated December 17, 2014, Ceglia asserts that certain documents obtained by the Government from Ceglia's former lawyers, through the use of post-indictment grand jury

-48-

subpoenas, should be returned to Ceglia and the Government should be precluded from using them for any purpose. As the Court is aware, these documents were reviewed (pursuant to an agreement with Ceglia's then-counsel) by an Assistant United States Attorney not part of the prosecution team, who made a motion, dated September 15, 2014, for an order finding that the crime-fraud exception to the attorney-client privilege applies to these documents. That motion has been fully briefed and argued, and is currently under consideration by the Court. The Court is also conducting an *in camera* review of the relevant documents.

Ceglia now claims that the Government improperly used the grand jury process to obtain the documents at issue. This argument is without merit. Ceglia's claim rests solely on *In re Grand Jury Subpoena Duces Tecum* ("*Simels*"), 767 F.2d 26, 28 (2d Cir. 1985), in which the Government first issued a trial subpoena for certain evidence and then, after the trial subpoena was challenged, issued a grand jury subpoena for the same evidence. *Id*. 29-30. The Second Circuit quashed the subpoena, finding that "[t]he timing of the subpoena casts significant light on its purposes . . . [as the] evidence was initially sought in October 1984 through a trial, not a grand jury subpoena." *Id.* The Second Circuit rested its holding on the fact

-49-

that the Government in *Simels* had attempted to circumvent the potential adverse ruling on the challenged trial subpoena by issuing a grand jury subpoena for the same evidence. *Id*. at 30 (noting "the defendant's strong showing that the government's dominant purpose . . . was pretrial preparation."). There is no such indication of improper purpose in this case. Accordingly, the Court must find that the Government acted properly.

The use of the grand jury power is permitted post-indictment "to identify or investigate other individuals involved in criminal schemes or to prepare superseding indictments against persons already charged." *United States v. Meregildo*, 876 F. Supp. 2d 445, 449 (S.D.N.Y. 2012) (*quoting United States v. Jones*, 129 F.3d 718, 723 (2d Cir.1997)). The grand jury may not be used, however, "for the sole or dominating purpose of preparing an already pending indictment for trial." *United States v. Bin Laden*, 116 F. Supp. 2d 489, 491 (S.D.N.Y. 2000); *see also Jones*, 129 F.3d at 723; *United States v. Leung*, 40 F.3d 577, 581 (2d Cir.1994). There is a presumption, though, of regularity and proper purpose that attaches to grand jury proceedings. *Id.; see also United States v. Sasso*, 59 F.3d 341, 352 (2d Cir.1995) ("There is a presumption that [a post-indictment] subpoena had a proper purpose."). To overcome this presumption, the burden is on the defendant to show that the

Government had an improper purpose in issuing the grand jury subpoena. *See, e.g. United States v. Punn*, 737 F.3d 1, 6 (2d Cir. 2013) ("[t]he defendant has the burden of proving that the grand jury subpoenas were issued for an improper purpose, as the subpoenas are otherwise presumed to have a proper purpose."); *United States v. Ohle*, 678 F. Supp. 2d 215, 234 (S.D.N.Y. 2010) (denying hearing on grand jury subpoena when defendant "simply failed to point to any aspect of the Government's actions that [was] questionable."). To satisfy this burden, the defendant "must present particularized proof of an improper purpose." *Punn,* 737 F.3d at 6 (*quoting United States v. Salameh*, 152 F.3d 88, 109 (2d Cir.1998).

In support of his request to quash the subpoenas and ban the Government's use of these documents, Ceglia offers only that the subpoenas were issued post-indictment and that, through its crime-fraud motion, the Government seeks to make the documents "available to the prosecution team."  These facts hardly indicate an improper purpose. Nor does the defendant cite any case law – because there is none – to support his proposition that documents obtained through a grand jury subpoena properly issued for further investigation post-indictment may not also be used for trial preparation.

None of the suspicious circumstances at issue in *Simels* exist in this case. The Government did not seek the grand jury subpoenas to circumvent a hearing or avoid an adverse ruling on a challenged trial subpoena. To the contrary, in its letter dated November 20, 2014, the Government explained that it sought the subpoenas, in or around December 2012, as part of the "Government's then-ongoing investigation into potential additional charges and defendants." The fact that there is now a trial date in this case does not change the analysis. To the extent the Court grants the Government's crime-fraud motion – which notably does not rely on a single document obtained via the challenged grand jury subpoenas, but rather contends that *all* attorney-client communications in furtherance of Ceglia's fraudulent lawsuit are subject to the crime-fraud exception -- the Government is free to use those documents for any prosecutorial purpose. It can both use the documents to continue its investigation into additional charges and defendants, the purpose for which they were initially sought, and to prepare for trial.

## CONCLUSION

For the foregoing reasons, Ceglia's motions should be denied, except that the Subpoenas Motion should be granted in part and denied in part.

Dated: New York, New York
       January 7, 2015
                              Respectfully submitted,


                              PREET BHARARA
                              United States Attorney
                              Southern District of New York


                  By:     _____
                              Janis M. Echenberg
                              Alexander J. Wilson
                              Assistant United States Attorneys
                              Telephone: (212) 637-2597/2453

<u>AFFIRMATION OF SERVICE</u>

ALEXANDER J. WILSON hereby affirms pursuant to Section 1746 of Title 28, United States Code:

1.   I am an Assistant United States Attorney in the office of Preet Bharara, United States Attorney for the Southern District of New York.

2.   On January 7, 2015, I caused a true and correct copy of the foregoing Government's Memorandum of Law in Opposition to Defendant Ceglia's Motion to Dismiss the Indictment, via the Court's Electronic Case Filing system on:

Robert Ross Fogg, Esq.
*Counsel for Paul Ceglia*

3.   I declare under penalty of perjury that the foregoing is true and correct.  28 U.S.C. § 1746.

Dated:  New York, New York
        January 7, 2015

_____
ALEXANDER J. WILSON

-54-