**Counsel for Defendant**
Robert Ross Fogg, Esq.
Law Office of Robert Ross Fogg, Esq., LL.M.
69 Delaware Avenue, Suite 600
Buffalo, New York 14202
Tel: (716) 853-3644  Fax: (716) 852-6782
rfogg@rfogglaw.com


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                                    *Plaintiff,*

              v.                                    CASE No: 1:12-CR-00876-ALC

PAUL D. CEGLIA

                                    *Defendants.*

---


### DEFENDANT'S REPLY TO GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S PRE-TRIAL MOTION TO DISMISS ON FIRST AMENDMENT GROUNDS


DATED:        January 14, 2014
              Buffalo, New York



To:
Hon. Preet Bharara, United States Attorney
Attorney for the United States of America
for the Southern District of New York

## INTRODUCTION:

Comes now Defendant, Paul Ceglia, by his attorney Robert Ross Fogg, for his Reply to the Government's Memorandum of Law in Opposition to Defendant's Pre-Trial Motions regarding Defendant's Motion to Dismiss on First Amendment Grounds.

The present mail and wire fraud criminal prosecution of Mr. Ceglia arises solely from his civil litigation activities in his lawsuit against Mark Zuckerberg and Facebook, Inc. in the Western District of New York.  Mr. Ceglia asserts that, as a litigant, he is entitled to immunity for bringing and maintaining his civil suit under the *Noerr-Pennington* doctrine of immunity so long as the underlying litigation is not a "sham."  The Government contends that, while the *Noerr-Pennington* doctrine provides immunity for civil litigants, it is inapplicable in the instant case because the underlying civil suit is a "sham."

On March 7, 2014, prior to entry of the undersigned as counsel of record, upon hearing oral arguments, the Court, concerned about Mr. Ceglia's argument as to the right to petition the courts, rendered a decision on the issue of immunity stating:

> "It does appear to me that if *Noerr-Pennington* immunity is something I have to determine, it would be more appropriately raised at the end of trial once all the evidence is in.  It's inappropriate for me to make factual determinations about the government's evidence at this early stage.  Therefore, Ceglia's motion to dismiss the indictment is denied."  March 7, 2014 Tr., pp 29-30.

On October 23, 2014, during a conference hearing, for which the undersigned was present as substitute counsel of record, the Court heard oral arguments relative to the Government's application of the crime-fraud exception.  Relying on *In re Richard Roe, Inc.*, 68 F.3d 38, 39 (2d Cir 1995) ("Roe I"), the Government contends that "a party seeking to invoke the crime-fraud exception must at least demonstrate that there is probable cause to believe that a crime or fraud has been attempted or committed and that the communications were in furtherance thereof."  *Id.*, at 637.  Conversely, Mr. Ceglia, relying on *In re Richard Roe, Inc.*, 168 F. 3d 69 (2nd Cir 1999) ("Roe II"), argued that "[w]here the very act of litigating is alleged as being in furtherance of a fraud, the party seeking disclosure under the crime-fraud exception must show probable cause that the litigation or an aspect thereof had little or no legal or factual

basis and was carried on substantially for the purpose of furthering the crime or fraud.  Absent such a

showing, the requisite finding that an otherwise privileged or immunized communication was intended to

further the fraud cannot be made."  *Id*., at 71.  During the undersigned's exchange with the Court, the

Court stated:

> "You have experts who say one thing about that contract.  The government has experts who will
> say something else.  You say this is a triable issue of fact.  I agree, it is a triable issue of fact, a
> triable issue of fact really doesn't mean a whole lot in the criminal context.  In the civil context,
> that could mean it would be inappropriate to impose some sort of summary judgment but that has
> nothing to do with whether there is probable cause."  October 23, 2014 Tr., p. 15.

> "I know you believe that the contract is genuine.  You have experts who believe that the contract
> is genuine and the jury will decide -- let me rephrase this.  The jury will not decide whether or not
> the contract is actually genuine.  The jury will decide whether or not the government has proven
> its case beyond a reasonable doubt."  October 23, 2014 Tr., p. 16.

On December 17, 2014, with permission of the Court, Mr. Ceglia filed pre-trial motions that

included, *inter alia*, his Motion to Dismiss on First Amendment Grounds.  Mr. Ceglia argued that he has a

First Amendment Right Not to Stand Trial and that the Court's decision on his previous motion to dismiss

was not a definitive denial, but rather a deferral.  Mr. Ceglia further argued that pursuant to Rule 12(d),

"the court must decide every pretrial motion before trial unless it finds good cause to defer a ruling.  The

court must not defer ruling on a pretrial motion if the deferral will adversely affect a party's right to

appeal.  When factual issues are involved in deciding a motion, the court must state its essential findings

on the record."  F. R. Crim. Pro.  Rule 12(d).  In response, the Government characterized Mr. Ceglia's

December 17, 2014 pre-trial Motion to Dismiss on First Amendment Grounds as an attempt to relitigating

Mr. Ceglia's previous Motion to Dismiss, which the Court denied and as an untimely motion for

reconsideration.  In addition, the Government shifted its argument and asserted a "fraud exception" to the

immunity as a new basis in support of the lawfulness of the instant indictment.

WHEREFORE, Mr. Ceglia submits the instant Reply and, for the reasons stated herein,

respectfully requests that this Court grant his motion to dismiss, pursuant to Rule 12(b)(3)(B)(v), for

failure to state offense.  In the alternative, Defendant requests that the Court preclude from use at trial all

litigation related documentation and activity.

## ARGUMENT:

**Failure To Make A Pre-Trial Ruling Regarding Immunity Violates Defendant's Due Process Rights, Right Not To Stand Trial And Would Cause Undue Irreparable Harm And Adversely Affect Defendant's Right To Appeal, A Clear Err For Which The Court Is Obligated To Prevent.**

There is no dispute that the instant criminal prosecution presents genuine constitutional issues, which are also currently on appeal before the Court of Appeals for the Second Circuit. In the face of that, the Government's arguments in opposition to Mr. Ceglia's First Amendment Motion to Dismiss is that the motion is an untimely motion to reconsider and that the Court forbade counsel from making a motion on the same issues. The Government wants to dispense with zealous advocacy and send a man to the gallows on creative novel prosecution and mere perceived technicalities as opposed to ensuring that the proper administration of justice is done.

Contrary to the Government's contention, Mr. Ceglia's December 17, 2014 motion to dismiss was not in sum and substance a motion to reconsider or an attempt to relitigate a previous decision. Mr. Ceglia's motion was an attempt to bring to the Court's attention, in the first instance, that the Court must make the determination now before commencement of trial, because the Court's prior decision to defer this issue of immunity until after a jury hears the Government's prove will adversely affect Mr. Ceglia's right to appeal and cause irreparable harm. In the second instance, that the Court has subsequently recognized that there are triable issues of fact (e.g., there exists a legal and factual basis for bringing the litigation and that it was not objectively baseless or a sham), which precludes both the application of the crime-fraud exception and, most importantly, continued criminal prosecution relative to Mr. Ceglia's litigation activity.

At the March 7, 2014 hearing, the Government agreed with Mr. Ceglia's assertion that the *Noerr-Pennington* doctrine shields litigation activity, except where the litigation is a sham. March 7, 2014 Tr., pp. 2, 4. The Government does not contend that *Noerr-Pennington* immunity is inapplicable in criminal cases in general or in the present case in particular. The Government merely states "that the litigation is,

in fact, a sham and that Ceglia is not entitled to immunity as a result." March 7, 2014 Tr., p. 29. Accordingly, the parties agree that this case provides such a context, although the parties disagree as to whether the elements of the doctrine have been met. March 7, 2014 Tr., p2. Consequently, the Court held that "it would be more appropriately raised at the end of trial once all the evidence is in." March 7, 2014 Tr., p. 30. The Court reasoned it would be inappropriate for the Court "to make factual determinations about the government's evidence at this early stage." *Id*. Here, the Court did not deny Mr. Ceglia's First Amendment Motion to Dismiss the Indictment, but rather deferred entertainment of the motion only after the Government's case-in-chief.

Here, if, as the Court stated, "a jury will not have to decide whether the contract is actually genuine," October 23, 2014 Tr., p. 16, then Mr. Ceglia is presumed not to have immunity at all and the factual issues of whether Mr. Ceglia has immunity from prosecution or whether the underlying litigation falls within the "sham exception" would never be resolved—an abhorrent result.

As this Court is well aware, defense counsel's failure to bring a perceived error to the attention of the tribunal in which the error occurred, so that it could be properly addressed, may constitute waiver. Moreover, abdicating to the Government's whimsical treatment of motion practice most assuredly results in waiver of appealable rights on salient issues—a true miscarriage of justice and ineffective assistance of counsel.

Consequently, in his pre-trial motion to dismiss, Mr. Ceglia points to controlling decisions and facts within the case itself that the Court overlooked, upon which due consideration would alter the Court's previous decisions and trepidations. Mr. Ceglia also points to the need to correct a clear error and to prevent manifest injustice. Mr. Ceglia does not simply wish to re-litigate prior decisions, but rather requests a definitive decision based upon appropriate analysis. Doc #111.

**The Government Erroneously States That A "Fraud Exception"**
**Precludes Immunity And A Mere Allegation Of Fraud Is Sufficient.**
**However, The Second Circuit Has Rejected The "Fraud Exception"**
**Used In Other Jurisdictions And Maintains That The "Sham**
**Exception" Is The Only Exception To Immunity, Which Requires A**
**Determination That The Litigation Is Objectively Baseless And An**
**Inquiry Into Subjective Motive of the Litigant.**

In his First Amendment Motion to Dismiss, Mr. Ceglia's makes the valid point that the Court's finding that there are triable issues of fact precludes a finding that Mr. Ceglia's immunity should be lifted for the "sham exception" based on objective baselessness.  In response, the Government shifted its argument to suggest that there should be a "fraud exception" to the immunity.  However, the Supreme Court has explicitly declined to make such an exception and while some other circuits have made such an exception, the Second Circuit has not.  The Government's desire to either: 1) convince the Court that such an exception exists in the Second Circuit; or 2) convince the Court to set new precedent and create such a new fraud exception, is nothing more than wishful thinking.

"While the Noerr-Pennington doctrine originally arose in the antitrust context, it is based on and implements the First Amendment right to petition and therefore, with one exception [covering sham litigation], applies equally in all contexts.  *See Manistee Town Center,* 227 F.3d at 1092 ("The immunity is no longer limited to the antitrust context . . . .")  (citing *Boulware v. Nevada Dep't of Human Resources,* 960 F.2d 793, 800 (9th Cir.1992); *Evers v. County of Custer,* 745 F.2d at 1204); *ONRC v. Mohla,* 944 F.2d at 533-34 ("The protection has been expanded to apply to petitions to courts and administrative agencies, as well as to preclude claims other than those brought under the antitrust laws.")."  *Matsushita Electronics Corp. v. Loral Corp.*, 974 F. Supp. 345, at 355 fn. 17 (S.D.N.Y. 1997).  With respect to petitions brought in the courts, the Supreme Court has held that a lawsuit is unprotected only if it is a 'sham' —*i.e.*, 'objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits.'"  *White v. Lee*, 227 F.3d 1214, 1231-1232 (9th Cir. 2000), citing *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 60 (1983); *California Motor Transport*, 404 U.S. 508, 513 (1972).

In response to defendant's motions, it appears the Government has yet again shifted their position and argument.  The Government now espouses an innovative fiction that a "fraud exception" strips Mr. Ceglia of the protection of immunity and that, under *Noerr-Pennington*, Mr. Ceglia does not deserve immunity because of a "fraud" exception, rather than a "sham" exception.  Doc #118, p. 12.  This "fraud" theory is in reality simply the removal of the first prong of the "sham" test—the requirement that the litigation is objectively baseless—leaving only the need for a subjective allegation of fraudulent intent.  This novel theory would effectively remove all immunity from every suit since all that would be required is for the government to state that they believe the subjective motivation of a litigant to be fraudulent and the "immunity" disappears.  This would result in no immunity at all, an outcome that runs afoul of the *Noerr Pennington* doctrine of immunity.

The Government wants this Honorable Court to believe that Mr. Ceglia is not entitled to immunity simply because the Government, without more, makes the mere allegation of fraud, which is sufficient to place Mr. Ceglia's underlying civil suit under the "sham exception" of *Noerr-Pennington* Doctrine.  In support of their incongruous interpretation, the Government cites several cases, all of which are inapposite.  In fact, a fair reading of the cases cited supports Mr. Ceglia's position that the Court must first make a legal determination of whether the underlying civil lawsuit is a "sham."  In particular, in all of the cases cited by the Government, the courts first made a legal determination of "sham" and in two of the cases the courts either determined that the "sham exception" of the *Noerr Pennington* Doctrine was inapplicable (*Mercatus Group, LLC v. Lake Forest Hosp.*, 641 F.3d 834; ) or refused to apply the "sham exception."  (*Shetiwy v. Midland Credit Management*, 980 F. Supp. 2d 461).  Consequently, this Court cannot simply rest upon the Government's mere assertion of "fraud" or even "sham," and must first make a legal determination of "sham" before continuing with the criminal prosecution.

Particularly controlling is *Matsushita Electronics Corp. v. Loral Corp.*, 974 F. Supp. 345, at 354 355 (S.D.N.Y. 1997), where the District Court states that the *Noerr-Pennington* doctrine has expanded to provide immunity from liability for bringing suit in contexts other than the antitrust arena.  *Id*., at 355, fn. 17, citing, e.g., *Hirschfeld v. Spanakos*, 104 F.3d 16, 18 (2d Cir. 1997) (section 1983 case).  The Court

goes on to warn against *post hoc* reasoning and states that that unlike the granting of summary judgment, "[r]esolution of the objective prong under the *Noerr-Pennington* doctrine, meanwhile, involves an inquiry into whether a reasonable litigant could reasonably expect success on the merits." *Id.* at 356.  The Court states:

> A lawsuit constitutes "improper means" if the litigant has no belief in the merit of the litigation, or having some belief in the merit, institutes or threatens to institute the litigation in bad faith, intending only to harass third parties and not to bring the claim to adjudication.  *Hubbell Inc. v. Pass & Seymour, Inc.*, 883 F. Supp. 955, 963 (S.D.N.Y.1995) (citing *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 428 N.Y.S.2d 628, 406 N.E.2d 445 (Ct.App. 1980)); *Universal City Studios v. Nintendo Co., Ltd.*, 797 F.2d 70, 75 (2d Cir.1986) (citing Restatement (Second) of Torts) cert. denied, 479 U.S. 987, 107 S.Ct. 578, 93 L.Ed.2d 581 (1986).
>
> Regardless of whether a lawsuit constitutes "improper means," parties who maintain civil suits are entitled to immunity for doing so under the *Noerr-Pennington* doctrine of immunity so long as the litigation is not a "sham."  *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 60-61, 113 S.Ct. 1920, 1928-29, 123 L.Ed.2d 611 (1993) (Thomas, J.); *Hirschfeld v. Spanakos*, 104 F.3d 16, 18 (2d Cir. 1997).
>
> Litigation is a "sham" if it satisfies a two-part test:
>
> > First, a lawsuit must be objectively baseless so that no reasonable litigant could reasonably expect success on the merits.  If an objective litigant could conclude that a lawsuit is reasonably calculated to obtain a favorable outcome, the suit is immunized under *Noerr*, and ... [a] claim premised on the sham exception must fail.  Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation.  Under this second part of our definition of sham, the court should focus on whether the baseless lawsuit conceals an attempt to interfere directly with the business relationships of a competitor through the use of the governmental process — as opposed to the outcome of that process....
>
> *Columbia Pictures*, 508 U.S. at 60-61, 113 S.Ct. at 1928.
>
> Thus, a determination that a lawsuit was a sham involves both a finding that the challenged litigation was objectively baseless and an inquiry into the litigant's subjective motive.  *Id.* at 60-61, 113 S.Ct. at 1928-29.  Sham litigation is litigation that is both (1) objectively baseless and (2) not "sincerely and honestly felt or experienced," i.e., brought in bad faith.  *Id.* at 61, 113 S.Ct. at 1929.

*Id.*, at 354, 355.

"Good faith litigation clearly falls within the parameters of the *Noerr* doctrine.  Given that fact, courts and commentators consistently have recognized that conduct or communication which is incident to or attendant upon effective litigation should also receive *Noerr* immunity."  *PRIMETIME 24 JOINT v. National Broadcasting Co.*, 21 F. Supp. 2d 350, at 356 (S.D.N.Y. 1998) citing *Professional Real Estate*

*Investors, Inc. v. Columbia Pictures Indus., Inc.,* 508 U.S. 49, 58-60, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993); 1 Areeda & Hovenkamp § 202 ("`Litigation' has a *Noerr* immunity ... that cannot be taken away, no matter what the claimant's motive, `unless it is objectively baseless.'")  (internal quotes omitted).

It is clear that the law in the Second Circuit, particularly in the Southern District of New York, is that "good faith" litigation and its attendant activities, e.g., service of and filing of a complaint along with associated pleadings, receive *Noerr* immunity with only one exception—"sham" litigation.  Equally well settled in this district is that the *Noerr-Pennington* doctrine protects "allegedly false statements," *Tuosto v. Philip Morris USA Inc.*, 2007 U.S. Dist. LEXIS 61669 (S.D.N.Y. Aug. 21, 2007).  "Courts in the Second Circuit have taken a more expansive view of the *Noerr-Pennington* doctrine and a more limited view of the sham exception than other courts have.  Conduct that may fit the sham exception elsewhere has not been held to do so within the Second Circuit."  *Jackson Hill Road Sharon Ct, LLC v. Town of Sharon*, No. 3:07-cv-1445 (WWE) (D. Conn. June 24, 2010).  "Thus, in this district, the only conduct excluded from *Noerr-Pennington* coverage is conduct that never genuinely intended to influence government action." *Id*. citing *Doron Precision Sys. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 191 at 192 (S.D.N.Y. 2006), *cf with Whelan v Abell*, 48 F.3d 1247, 1255 (D.C. Cir. 1995)).  Therefore, even the mere allegation or assertion of fraud or sham is insufficient to remove immunity.

Therefore, to successfully raise the "sham exception" to immunity the contending party must establish a two prong test: (1) objectively baseless and (2) not "sincerely and honestly felt or experienced," i.e., brought in bad faith, and the Court must make a finding that the challenged litigation was objectively baseless and an inquiry into the litigant's subjective motive.

The government asserts that adherence to this well-settled rule means that the Government would not be able to prosecute "skilled forgers."  However, the government's concern is ill conceived and grossly misperceived.  The rule prohibits, as in this case, the Government from dragging citizens exercising their constitutionally protected right to enforce authentic contracts through the vexation of criminal prosecution merely because the Government, either on their own or with the encouragement of

influential citizens, claims that they are "skilled forgers."  Any other outcome would be the true
"perversion of justice."

> **Mr. Ceglia has Immunity from criminal prosecution, for which he
> has no burden.  The Government has the Burden to establish that
> the underlying litigation falls under the "sham exception."  Absent
> this showing the indictment must be dismiss.**

The Government attempts to turn the placement of the parties' respective burdens on its head.
The Government states that Mr. Ceglia argues that the underlying civil litigation was "objectively
reasonable."  Doc # 118, p. 12.  This statement is not only a mischaracterization, but also a burden-
shifting profound misunderstanding of the standard applicable in a *Noerr-Pennington* analysis in the
Second Circuit.  Contrary to the Government's assertion, Mr. Ceglia does not seek a hearing relative to
immunity because under the law of our land he has no such burden.  At the top, Mr. Ceglia has immunity
unless and until the Government can establish by a preponderance of the evidence that the underlying
civil lawsuit was objectively baseless.  In that vein, clearly the Government should be seeking hearing to
establish that immunity is inapplicable because Mr. Ceglia's underlying civil lawsuit is a sham.

Absent a legal determination by the Court on the issue of immunity, the instant criminal
prosecution cannot continue and must be dismissed immediately.

### CONCLUSION:

WHEREFORE, Mr. Ceglia requests that the Court dismiss all charges relating to allegations of
criminal liability based upon the litigation activities on the grounds that the government has failed to meet
its burden to establish that there exists an exception to the immunity under his First Amendment right to
petition.

Dated:   January 14, 2014
         Buffalo, NY                                  Respectfully submitted,

                                          By:    */s/ Robert Ross Fogg*
                                                 Robert Ross Fogg, Esq.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,
                                                    *Plaintiff,*

                    v.                                      CASE No: 1:12-CR-00876-ALC

PAUL D. CEGLIA
                                              *Defendant.*

## CERTIFICATE OF SERVICE

        I HEREBY CERTIFY that the foregoing Reply, dated January 14, 2015 is being served via

transmission of Notice of Electronic Filing generated by CM/ECF on all counsel of record who are

authorized to receive electronically Notices of Electronic Filing in this criminal case on January 15, 2015.


Dated:    January 15, 2015                          Respectfully Submitted,

                                                     By: /s/ Robert Ross Fogg