**ROBERT ROSS FOGG, ESQ., LL.M.**
Attorney and Counselor at Law

69 Delaware Ave., Suite 600
Buffalo, New York  14202
(716) 853-FOGG (3644)
Fax:    (716) 852-6782

January 29, 2015

Honorable Vernon S. Broderick, U.S.D.J.
United States District Court
United States Courthouse
Southern District of New York
40 Foley Square
New York, New York 10007

RE:    *United States v. Paul Ceglia*, Case No.: 12 cr 876
            Supplemental Memorandum

Dear Judge Broderick:

I write this letter in response to a passing comment Your Honor made during the telephonic hearing held on January 20, 2015.  As a courtesy to the Court, defense is filing this supplemental memorandum in advance of the status conference on January 30, 2015 to provide the case law Your Honor believed to be lacking.

Your Honor asked if case law exists involving criminal cases that were dismissed on First Amendment grounds.  While precedent is slim for reasons I will explain, it does exist.  This is especially true in the anti-trust context, which are in and of themselves criminal cases.  Beyond anti-trust, the Second Circuit observed in *Hull v Petrillo*, 439 F. 2d 1184 (2d Cir. 1971), "In *Dombrowski*, the Supreme Court ordered the issuance of injunctions against prosecutions under the Louisiana subversive activities law. The reason for so holding rather than remitting *Dombrowski* to a defense of unconstitutionality during a criminal prosecution was the chilling effect which the threat of prosecution had upon the exercise of first amendment rights."  *Id.* at 1186.

The apparent reason there is limited case law related to criminal prosecutions arising out of litigation activities is that the government has not been in the habit of bringing indictments for activities that are clearly protected by the United States Constitution and prohibited by statute. The current prosecution violates the First Amendment to the U.S. Constitution and specifically 42 USC §1985(2), which was historically and specifically designed to protect citizens from constitutional violations under color of law.  There exist no precedents upon which the government can rely to justify the commencement and continuation of the current prosecution. The present prosecution flies in the face of common sense and public policy.  Mere absence of precedents prohibiting criminal prosecution as applied to Mr. Ceglia and the facts and circumstance of this case is not a legally justified green-light for prosecution, especially when the mail and wire fraud statutes have never been used in this context.

US v Ceglia
Supplemental Memorandum
January 29, 2015
Page 2 of 3

The government has no legal basis to argue that engaging in ordinary litigation activities can be a basis for criminal prosecutions for mail or wire fraud, as they have done here.  Charging persons with the crimes of mail fraud and/or wire fraud for filing and serving civil litigation documents by mail or electronically has been uniformly rejected by the federal courts on policy grounds because doing so is considered to be "merely 'artfully pleading claims for mailicious prosecution'" and because "prosecuting litigation activities as federal crimes would undermine the policies of access and finality that animate our legal system."  *United States v. Pendergraft*, 297 F.3d 1198, 1208 (11th Cir. 2002).

As Judge Carter observed, "Both sides seem to agree that the *Noerr-Pennington* doctrine shields litigation activity in a commercial context, except where the litigation is a sham."  Since both sides agree to the applicability of the *Noerr-Pennington* doctrine, the only open question is whether litigation activities can be excluded from immunity.  The only litigation activities that are excluded from *Noerr-Pennington* immunity are those that are a sham, *i.e.*, those that are objectively baseless.

The Supreme Court has warned against defining sham in "inconsistent and contradictory ways" so that sham does not become "no more than a label courts could apply to activity they deem unworthy of [ ] immunity."  *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 55 (1993) ("PRE").  For this very reason, the Supreme Court opened the *PRE* decision by saying, "This case requires us to define the 'sham' exception to the doctrine of antitrust immunity first identified in *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127 (1961)..."  The Court summarized its decision by saying, "We hold that litigation cannot be deprived of immunity as a sham unless the litigation is objectively baseless."  *Id.* at 51.

In the present case, the government has made no claim that the underlying civil litigation was objectively baseless.  Nor can it, as that litigation is supported by the opinions of world-class experts that Zuckerberg and Ceglia's Work for Hire Contract is authentic.  Further, Mr. Zuckerberg acknowledged in the underlying civil action that there is a written contract between the parties and that he accepted money from Paul Ceglia.  The dispute is over whether Facebook was included in the actual terms of the parties' written agreement.

Instead, the government has argued that an allegation of fraud is sufficient to vitiate *Noerr-Pennington* immunity.  Nothing could be farther from the truth or more inconsistent with Supreme Court precedent.  The Supreme Court explicitly declined to carve out a fraud exception when deciding *PRE*.  "We need not decide here whether and, if so, to what extent *Noerr* permits the imposition of antitrust liability for a litigant's fraud or other misrepresentations."  508 U.S. at 61.  While some courts have chosen to recognize a fraud exception, courts in this circuit have not.

US v Ceglia
Supplemental Memorandum
January 29, 2015
Page 3 of 3

The district court in *Jackson Hill Road Sharon CT, LLC v. Town of Sharon*, 2010 U.S. Dist.LEXIS 62908, \*23 (D. Conn. June 24, 2010) illustrates this circuit's position clearly:

> Courts in the Second Circuit have taken a more expansive view of the *Noerr-Pennington* doctrine and a more limited view of the sham exception than other courts have. See *Doron Precision Sys. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 191 (S.D.N.Y. 2006) ('The courts of this District have unanimously held that *Noerr-Pennington* immunity protects all lobbying and solicitation of public entities, including lobbying for commercial gain, as long as the defendants' petition was not sham conduct.'). Conduct that may fit the sham exception elsewhere has not been held to do so within the Second Circuit.

The government seems to be asking Your Honor to make a ruling based on out of circuit precedent without regard to this circuit's position and Supreme Court precedents. They would like Your Honor to make an informal sham determination that flies in the face of the controlling law of *PRE*. To rule that Mr. Ceglia's immunity is lifted because of an alleged fraud in the underlying civil litigation would be to carve an entirely new "fraud exception" that sets new Second Circuit precedent and drastically limits First Amendment rights.

Respectfully submitted,

/s/ Robert Ross Fogg
Robert Ross Fogg, Esq.
Attorney for Defendant, Paul Ceglia

RRF/gc

cc:   Janis Echenberg, AUSA
      Paul Ceglia