```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __2/9/2015__
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                                                        :
UNITED STATES OF AMERICA,                               :
                                                        :
                                    Plaintiff,          :
                                                        :                    12-CR-876 (VSB)
                    - against -                         :
                                                        :              **MEMORANDUM & ORDER**
PAUL CEGLIA,                                            :
                                                        :
                                    Defendant.          :
                                                        :
--------------------------------------------------------X

Appearances:

Alexander Joshua Wilson
Janis Echenberg
Assistant United States Attorneys
New York, NY
*Counsel for Plaintiff*

Robert Ross Fogg
Law Office of Robert Ross Fogg
Buffalo, NY

Gil D. Messina
Messina Law Firm, P.C.
Holmdel, NJ
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

        Before me is the Motion to Dismiss on First Amendment Grounds filed by Defendant

Paul Ceglia ("Ceglia").  (Doc. 111.)  The Indictment, (Doc. 10), effectively alleges the civil

litigation initiated by Ceglia against Facebook, Inc. ("Facebook") and its founder and Chief

Executive Officer Mark Zuckerberg ("Zuckerberg") was a sham and was therefore unprotected

by the First Amendment.[1]  Ceglia's assertion of First Amendment immunity does not entitle him

---

[1] Although the Indictment does not explicitly state that Ceglia's civil litigation was a sham, it does allege that Ceglia

to pretrial fact-finding as to the veracity of the Indictment's allegations.  Accordingly, for the reasons stated below, Ceglia's Motion must be denied.

## I.   Background and Procedural History

Ceglia is charged with one count of mail fraud pursuant to 18 U.S.C. § 1341 and one count of wire fraud pursuant to 18 U.S.C. § 1343.  (*See* Doc. 10 ¶¶ 8, 10.)  The Indictment alleges that Ceglia and Zuckerberg entered into a legitimate contract on April 28, 2003, pursuant to which Zuckerberg agreed to perform computer programming work for Ceglia in exchange for a fee. (Doc. 10 ¶ 5.)  This work was wholly unrelated to Facebook, (*id.*), which officially launched in February 2004, (*id.* ¶ 1).  The Indictment alleges that Ceglia engaged in a scheme to defraud Facebook and Zuckerberg and to "corrupt the federal judicial process."  (*Id.* ¶ 4.)  In furtherance of this scheme, Ceglia allegedly altered his contract with Zuckerberg to make it appear that Zuckerberg had agreed to provide Ceglia with at least a 50 percent ownership interest in Facebook.  (*Id.* ¶ 5.)  In furtherance of the alleged scheme to defraud, Ceglia filed a civil lawsuit against Facebook and Zuckerberg to assert his purported ownership interest in Facebook. (*See id.* ¶ 6.)  The Indictment further alleges that Ceglia manufactured evidence, including purported email exchanges with Zuckerberg, and destroyed evidence inconsistent with the civil lawsuit's false claim.[2]  (*Id.* ¶ 7.)

---

made intentional and material misrepresentations that went to the core of his civil case.  Specifically, the Indictment alleges that Ceglia engaged in a multi-billion dollar scheme to defraud Facebook and Zuckerberg by:  doctoring or otherwise converting a legitimate contract with Zuckerberg to make it appear that he had a 50 percent ownership interest in Facebook; manufacturing evidence, including purported email exchanges with Zuckerberg; initiating a civil lawsuit to falsely and fraudulently assert this ownership interest; and destroying evidence inconsistent with the civil lawsuit's false claim.  (Doc. 10 ¶¶ 5, 6, 7.)

[2] Ceglia's civil action was initially filed in the Supreme Court of the State of New York and was removed to the United States District Court for the Western District of New York.  The district court granted Facebook and Zuckerberg's motion to dismiss for fraud on the court, finding that "clear and convincing evidence establishes" that the purported contract introduced by Ceglia "is a recently created fabrication."  *Ceglia v. Zuckerberg*, No. 10-CV-569A, 2013 WL 1208558, at *4 (W.D.N.Y. Mar. 26, 2013), *report and recommendation adopted in full*, 2014 WL 1224574 (W.D.N.Y. Mar. 25, 2014).  Ceglia is currently appealing the civil action's dismissal to the Second Circuit.  *See* No. 14-1365 (2d Cir. filed Apr. 30, 2014).  Ceglia also filed a federal civil action in the Western District of New

This case was originally assigned to the Honorable Andrew L. Carter, Jr.  On November 27, 2013, Ceglia, who was at that time represented by the Federal Defenders of New York, filed a motion to dismiss the indictment.  (Doc. 35.)  The motion argued, *inter alia*, that the Indictment violated Ceglia's First Amendment right to petition the government for redress of grievances.  (*Id.* at 30-34.)  Specifically, Ceglia argued that he was immune from prosecution under the so-called *Noerr-Pennington* doctrine, which generally shields private persons from liability for their litigation activities unless the litigation was a sham.[3]  (*See id.* at 31-32.)

After full briefing, (*see* Docs. 38, 39), Judge Carter denied Ceglia's motion to dismiss in an oral ruling from the bench on March 7, 2014.  With respect to the *Noerr-Pennington* issue, Judge Carter concluded that any finding as to whether the civil litigation was a sham and whether Ceglia was immune from liability would need to wait until trial.  Judge Carter ruled:

> Both sides seem to agree that the *Noerr-Pennington* doctrine shields litigation activity in a commercial context, except where the litigation is a sham.  The government asserts that the litigation is, in fact a sham and that Ceglia is not entitled to immunity as a result.  Ceglia, in return, has urged me to hold a hearing, and I have determined that I am not going to hold such a hearing.  It does appear to me that if *Noerr-Pennington* immunity is something I am going to have to determine, it would be more appropriately raised at the end of trial once all the evidence is in.  It's inappropriate for me to make factual determinations about the government's evidence at this early stage.  Therefore, Ceglia's motion to dismiss the indictment is denied.

(Doc. 42 at 29:19-30:6.)

On September 15, 2014, Ceglia relieved the Federal Defenders of New York as counsel and retained private counsel.  (*See* Docket Entry of Sept. 15, 2014.)  On December 18, 2014,

_____

York seeking to enjoin this criminal prosecution on First Amendment grounds.  That action was also dismissed, *see* Doc. 71, *Ceglia v. Holder*, No. 13-CV-256-A (W.D.N.Y. Mar. 25, 2014), and Ceglia is also currently appealing its dismissal before the Second Circuit, *see* No. 14-1752 (2d Cir. filed May 21, 2014).

[3] The name derives from *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961), and *United Mine Workers of America v. Pennington*, 381 U.S. 657 (1965).  I will discuss the *Noerr-Pennington* doctrine in greater detail below.

Ceglia filed this Motion, (Doc. 111), again arguing that he is immune from prosecution under the *Noerr-Pennnington* doctrine.  The Government filed a memorandum of law in opposition on January 7, 2015.  (Doc. 118.)  Judge Carter then transferred this case in an exercise of his discretion to manage his docket, and the case was reassigned to me on January 8, 2015.  (*See* Docket Entry of Jan. 8, 2015.)  Ceglia filed a reply memorandum on January 15, 2015, (Doc. 120), as well as a letter citing supplemental authority on January 29, 2015, (Doc. 124).

I heard argument on the Motion at a conference on January 30, 2015.[4]  During this conference, I explained that this Motion is, in substance, a motion for reconsideration of Judge Carter's previous ruling on the *Noerr-Pennington* issue.  I further explained that the Motion did not comply with the requirements of Local Criminal Rule 49.1, which requires that all motions for reconsideration be filed within fourteen days of the original decision and "set[] forth concisely the matters or controlling decisions which counsel believes the Court has overlooked." S.D.N.Y. Local Crim. R. 49.1(d); *see, e.g.*, *United States v. Almonte*, No. 14-CR-86, 2014 WL 3702598, at *1-2 (S.D.N.Y. July 24, 2014) (denying motion for reconsideration of denial of motion to suppress for failure to identify legal authority overlooked in previous decision). However, I advised the parties that I intended to reach the merits of Ceglia's Motion and would set forth my conclusions in a written decision.

## II.    <u>Legal Standard</u>

An indictment must provide "a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c).  Pursuant to Rule 12, the defendant may raise by pretrial motion any defense, objection, or request that I may resolve

---

[4] During the conference, I also denied various other defense motions.  I stated the reasons for those denials on the record.

without a trial on the merits, including the indictment's failure to state an offense. Fed. R. Crim. P. 12(b)(1), 12(b)(3)(B)(v). However, motions to dismiss indictments are disfavored, as the dismissal of an indictment is an "extraordinary remedy reserved only for extremely limited circumstances implicating fundamental rights." *United States v. De La Pava*, 268 F.3d 157, 165 (2d Cir. 2001) (internal quotation marks omitted); *see United States v. Laurent*, 861 F. Supp. 2d 71, 109 (E.D.N.Y. 2011). The Second Circuit has "consistently upheld indictments that do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000) (internal quotation marks omitted). Unless the Government has made a full proffer of the evidence it intends to present at trial, the validity of an indictment is determined only by the sufficiency of its allegations, not the sufficiency of the Government's proof. *See United States v. Perez*, 575 F.3d 164, 166 (2d Cir. 2009). Thus, in considering a motion to dismiss, "the Court relies on the Indictment and accepts the allegations of the Indictment as true." *United States v. Heicklen*, 858 F. Supp. 2d 256, 261 (S.D.N.Y. 2012) (citing *United States v. Goldberg*, 756 F.2d 949, 950 (2d Cir. 1985)). Here, Judge Carter determined after oral argument that the Indictment was sufficiently detailed to provide Ceglia with notice of the charges against him. (Doc. 42 at 25-29.) The applicability of the *Noerr-Pennington* doctrine is discussed below.

## III.  Discussion

### A.  *The* Noerr-Pennington *Doctrine*

The First Amendment provides that "Congress shall make no law respecting . . . the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. amend. I. The *Noerr-Pennington* doctrine arose to protect this First Amendment right in the context of antitrust law. Under *Noerr-Pennington*, individuals and firms that petition the government for

redress are "generally immune from antitrust liability" for any anticompetitive effect of their petitioning. *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus. Inc.*, 508 U.S. 49, 56 (1993) ("*PRE II*"). The doctrine originally protected petitioning in the form of efforts to persuade the legislature or the executive to adopt a particular policy. *See E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 136-37 (1961). It then expanded to include petitioning of the courts in the form of a lawsuit, as "the right to petition extends to all departments of the Government, and . . . 'the right of access to the courts is but one aspect of the right to petition.'" *BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 525 (2002) (quoting *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972)) (alterations omitted).

"[W]hile genuine petitioning is immune from antitrust liability, sham petitioning is not." *BE & K Constr.*, 536 U.S. at 525-26. Sham petitioning includes sham litigation. *See Primetime 24 Joint Venture v. Nat'l Broad. Co., Inc.*, 219 F.3d 92, 100-01 (2d Cir. 2000). The Supreme Court has adopted a two-part definition of sham litigation. A lawsuit is a sham, and the person who filed it is not immune from liability for the consequences of doing so, only if the suit is both objectively meritless and subjectively a pretext for an improper motive:

> First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under *Noerr*, and an antitrust claim premised on the sham exception must fail. Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation.

*PRE II*, 508 U.S. at 60 (footnote omitted); *see In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 686 (2d Cir. 2009) ("*In re DDAVP*"); *Primetime 24*, 219 F.3d at 100-01.[5] The

---

[5] This test applies to determine whether a single lawsuit constitutes sham petitioning. Where the defendant is alleged to have initiated a series of legal proceedings, a different test determines whether that larger course of litigation was a sham. *See Primetime 24 Joint Venture v. Nat'l Broad. Co., Inc.*, 219 F.3d 92, 101 (2d Cir. 2002). Because the Indictment alleges that Ceglia initiated one lawsuit, (Doc. 10 ¶ 6), the test for determining whether a single lawsuit constitutes sham petitioning applies here.

dual requirements that litigation be objectively baseless and subjectively motivated to inflict harm are designed to afford "breathing space" to the First Amendment right to petition.  *Sosa v. DirecTV, Inc.*, 437 F.3d 923, 934 (9th Cir. 2006).  In other words, the two-part definition of sham litigation "overprotects baseless petitions so as to ensure citizens may enjoy the right of access to the courts without fear of prosecution."  *Id.*

   The *Noerr-Pennington* doctrine has been extended beyond antitrust law.  *See, e.g.*, *BE & K Constr.*, 536 U.S. 516 (immunity from liability for unfair labor practices under the National Labor Relations Act); *Sosa*, 437 F.3d 923 (immunity from liability under the Racketeer Influenced and Corrupt Organizations (RICO) Act); *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 701 F. Supp. 2d 568 (S.D.N.Y. 2010) (immunity from liability for civil rights claims under 42 U.S.C § 1983); *Eurotech, Inc. v. Cosmos European Travels Aktiengesellschaft*, 189 F. Supp. 2d 385, 392 (E.D. Va. 2002) ("It is now clear that the doctrine has been extended to confer immunity from a variety of [state] tort claims, including claims of tortious interference and abuse of process.").  Courts have also concluded that *Noerr-Pennington* immunity can attach to actions beyond the filing of a lawsuit, such as demand letters, threats of litigation, and settlement offers.  *See Primetime 24*, 219 F.3d at 100 (collecting cases).

   Whether a criminal defendant can invoke the *Noerr-Pennington* doctrine at all is an open question.[6]  Neither party has identified a criminal case in which a court has concluded that *Noerr-Pennington* applies, or has even considered the issue.  It does appear that *Noerr-Pennington* immunity can be asserted in actions initiated by the Government.  For instance, in *United States v. Philip Morris USA Inc.*, 566 F.3d 1095 (D.C. Cir. 2009), a civil RICO action

---

[6] Ceglia argues that it can.  The Government takes no position on whether *Noerr-Pennington* can ever apply in a criminal case and simply contends that Ceglia is not entitled to immunity in this one.

initiated by the Government against large tobacco companies, the D.C. Circuit concluded that the companies were not entitled to immunity because *Noerr-Pennington* "does not protect deliberately false or misleading statements," *id.* at 1123, but did not question whether the *Noerr-Pennington* doctrine could apply in principle.  Furthermore, the doctrine originated in cases brought under the Sherman Act, which provides for both criminal and civil penalties, *see* 15 U.S.C. § 1.  In addition, if the purpose of *Noerr-Pennington* is to provide "breathing space" for the First Amendment right to petition, *BE & K Constr.*, 536 U.S. at 531, there would seem to be no principled reason why it could not shield persons from criminal as well as civil penalties.  For purposes of this Motion, however, I need not decide whether *Noerr-Pennington* can ever apply in criminal prosecutions.

> **B.**     *Application*

Assuming *arguendo* that a criminal defendant can assert *Noerr-Pennington* immunity, Ceglia is not entitled to dismissal of the Indictment because the conduct alleged in the Indictment is not protected by the First Amendment as a matter of law.

> **1.**     **Preliminary Fact-Finding**

Ceglia argues that I must make a factual determination now whether his civil lawsuit against Facebook and Zuckerberg was a sham.  (Doc. 111 at 4, 9.)  He further argues that the suit cannot possibly have been "objectively baseless" because there are competing expert opinions and a legitimate factual dispute as to whether the contract purportedly granting him partial ownership of Facebook was forged or authentic.[7]  (*See id.*)  The Government contends that the

---

[7] I note that Ceglia is apparently referencing experts he retained in his civil case.  Whatever their opinions or conclusions may have been, they are not before me.  Neither the Government nor Ceglia have yet provided notice of their intent to call experts in this case.  I also note that the opinions of these experts were before Magistrate Judge Leslie G. Foschio when Judge Foschio issued the 155 page Report and Recommendation dismissing Ceglia's civil litigation against Facebook and Zuckerberg based in part on the ground that the purported contract on which the lawsuit was based was a fabrication.  District Judge Richard J. Arcara agreed with Judge Foschio's recommendation

Indictment alleges that Ceglia initiated a fraudulent lawsuit and that, if this allegation is proven

at trial, the Government would also have proven that Ceglia is not entitled to *Noerr-Pennington*

immunity.  (*See* Doc. 118 at 12-13 & n.5.)  I conclude, as Judge Carter previously did, that it

would be unnecessary and improper for me to make any factual findings in resolving Ceglia's

Motion to Dismiss.

Some forms of immunity, such as tribal sovereign immunity and qualified immunity for

state officers, provide immunity from suit.  *See, e.g.*, *Oneida Indian Nation of N.Y. v. Madison

Cnty.*, 665 F.3d 408, 414 (2d Cir. 2011); *Toussie v. Powell*, 323 F.3d 178, 182 (2d Cir. 2003).

*Noerr-Pennington* immunity, by contrast, only provides immunity from "liability."  *E.g.*, *PRE II*,

508 U.S. at 56; *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 495, 499, 509

n.11 (1988) (characterizing *Noerr-Pennington* as immunity "from antitrust liability"); *Mercatus

Grp., LLC v. Lake Forest Hosp.*, 641 F.3d 834, 837, 838, 841, 842, 845 (7th Cir. 2011) (same);

*In re DDAVP*, 585 F.3d at 685, 686 (same); *T.F.T.F. Capital Corp. v. Marcus Dairy, Inc.*, 312

F.3d 90, 92, 93 (2d Cir. 2002) (per curiam) (same); *Suburban Restoration Co., Inc. v. ACMAT

Corp.*, 700 F.2d 98, 99 (2d Cir. 1983) ("Because we find that Connecticut would interpret its law

to exempt from liability activities excluded from the ambit of the Sherman Act by the *Noerr-

Pennington* doctrine, we affirm the dismissal."); *Landmarks Holding Corp. v. Bermant*, 664 F.2d

891, 895-96 (2d Cir. 1981) (characterizing the central issue on appeal as whether defendants'

"conduct, as alleged in the complaint and revealed through discovery, is immunized by the First

Amendment from antitrust liability under the Noerr-Pennington doctrine").  In other words, the

doctrine does not provide immunity from being sued.  Translated to the criminal context, even if

Ceglia were entitled to *Noerr-Pennington* immunity, it would only shield him from being

---

and granted Facebook's motion to dismiss.

convicted, not from being prosecuted.

When civil defendants invoke the *Noerr-Pennington* doctrine, courts routinely evaluate their claim to *Noerr-Pennington* immunity as they would evaluate any other issue in the given procedural posture of the case. Thus, when a defendant moving to dismiss a civil complaint for failure to state a claim under Rule 12(b)(6) claims *Noerr-Pennington* immunity, the reviewing court asks whether the complaint alleges sufficient facts to support a reasonable inference that the defendant's challenged conduct constituted sham petitioning. *See, e.g.*, *Primetime 24*, 219 F.3d at 101; *Shetiwy v. Midland Credit Mgmt.*, 980 F. Supp. 2d 461, 475-76 (S.D.N.Y. 2013); *Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413, 429 (S.D.N.Y. 2010). Similarly, a civil defendant invoking *Noerr-Pennington* is entitled to summary judgment in its favor if it shows that there is no genuine dispute of material fact and it is entitled to judgment as a matter of law that its challenged conduct was not a sham. *See, e.g.*, *PRE II*, 508 U.S. at 62-65; *Krasnyi Oktyabr, Inc. v. Trilini Imports*, 578 F. Supp. 2d 455, 475 (E.D.N.Y. 2008). The fact-finder can also determine at trial whether the defendant's challenged conduct constituted sham petitioning. *See Cal. Motor Transp.*, 404 U.S. at 515-16. Accordingly, there is no authority to suggest that I should engage in special preliminary fact-finding on the *Noerr-Pennington* issue. Any factual determination as to whether Ceglia's civil suit was a sham can and should wait until evidence has been presented at trial.[8] Indeed, under Rule 12(b)(2), if a motion to dismiss an indictment raises an as-applied constitutional challenge that depends upon the resolution of disputed facts, that motion *cannot* be resolved until after trial. *See United States v. Pope*, 613 F.3d 1255, 1258-61 (10th Cir. 2010); *see also United States v. Doe*, 63 F.3d 121, 125 (2d Cir. 1995).

---

[8] This is perhaps especially so in the criminal context, where there are particular concerns about requiring the government to provide the defendant with a full preview of the case it will present at trial. *See United States v. Morgan*, 690 F. Supp. 2d 274, 285 (S.D.N.Y. 2010).

I will therefore treat Ceglia's Motion as I would treat any other motion to dismiss an indictment advancing an as-applied constitutional challenge where the government has not made a full proffer of the evidence it intends to present. I may not analyze the Government's proof, but must simply analyze whether the allegations of the Indictment state a criminal offense under a statute whose application to the alleged conduct is not unconstitutional. *See Perez*, 575 F.3d at 166; *Heicklen*, 858 F. Supp. 2d at 261-62. Dismissal is not proper unless the conduct alleged in the Indictment is protected by the First Amendment as a matter of law. *See, e.g.*, *United States v. Smith*, 985 F. Supp. 2d 547, 587-606 (S.D.N.Y. 2014) (assuming the truth of the indictment's allegations and concluding that honest services fraud statute was not unconstitutionally void for vagueness as applied); *United States v. Robitaille*, No. 12-CR-76, 2012 WL 5306179, at *2 (D. Vt. Oct. 26, 2012) (denying motion to dismiss indictment alleging "threats" because the meaning of the word excludes constitutionally protected speech, although the government would later need to prove that the defendant had the requisite intent to make his speech unprotected); *United States v. Larson*, 807 F. Supp. 2d 142, 165-66 (S.D.N.Y. 2011). Thus, the only relevant question at this stage is whether, assuming the allegations of the Indictment to be true, the conduct alleged by the Indictment is shielded by *Noerr-Pennington* immunity as a matter of law.

### 2.    Sufficiency

The Indictment alleges that Ceglia engaged in conduct unprotected by *Noerr-Pennington* immunity by filing a sham lawsuit.

#### a.    Objective Baselessness

"First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *PRE II*, 508 U.S. at 60; *see In re DDAVP*, 585 F.3d at 694. Other Circuits have recognized that this definition of "objectively baseless"

litigation contains a "sizable loophole":  if a sophisticatedly fraudulent lawsuit succeeds or comes close, it cannot be said that no reasonable litigant realistically could have expected the suit to succeed on the merits.  *Mercatus Grp.*, 641 F.3d at 834.  Accordingly, these Circuits have recognized that the sham petitioning exception to *Noerr-Pennington* immunity must also encompass fraudulent but winnable litigation.  In these Circuits, litigation involving an intentional and material misrepresentation that deprives the proceedings of legitimacy qualifies as "objectively baseless," even if it actually succeeds or stands a realistic chance of success.  *See Mercatus Grp.*, 641 F.3d at 834; *Phillip Morris Co.*, 566 F.3d at 1123; *Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 123-24 (3d Cir. 1999); *Kottle v. Nw. Kidney Ctrs.*, 146 F.3d 1056, 1060-62 (9th Cir. 1999).  This particular variant of the sham petitioning exception is sometimes called the "fraud exception" to *Noerr-Pennington* immunity.  *E.g.*, *Balt. Scrap Corp. v. David J. Joseph Co.*, 237 F.3d 394, 402 (4th Cir. 2001).

Ceglia argues that there is no fraud exception to *Noerr-Pennington* immunity in the Second Circuit, and that his civil suit was not objectively baseless because a fact-finder could have agreed with his expert witnesses that the contract purportedly granting him partial ownership of Facebook was authentic.  (*See* Doc. 111 at 8-9; Doc. 120 at 7-10; Doc. 124 at 2-3.) It appears that the Second Circuit has never directly held whether winnable lawsuits premised upon intentional and material misrepresentations can qualify as objectively baseless under *Noerr-Pennington*.  Although some cases provide inferential support for Ceglia's view that our Circuit would part company with the others if it were to address this question, I am persuaded by more recent case law to the contrary.

On the one hand, the Second Circuit has explained that "[i]t is generally true that a winning lawsuit is a reasonable effort at petitioning for redress and therefore not a sham,"

without acknowledging any exception for winning lawsuits premised upon intentional and material representations. *T.F.T.F. Capital*, 312 F.3d at 94 (internal quotation marks omitted); *see also Mosdos Chofetz Chaim*, 701 F. Supp. 2d at 597 ("[D]enying [*Noerr-Pennington*] protection to *any* viable lawsuit, initiated even for allegedly improper reasons, would unnecessarily undermine First Amendment principles . . . ." (emphasis added)). Some District Judges have observed that the Second Circuit interprets the sham petitioning exception to *Noerr-Pennington* immunity more narrowly than other Circuits do. *See, e.g.*, *Jackson Hill Road Sharon CT, LLC v. Town of Sharon*, No. 3:07-CV-1445, 2010 WL 2596927, at *9 (D. Conn. June 24, 2010); *Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 191-92 (S.D.N.Y. 2006).

On the other hand, however, more recent authority suggests that, here as elsewhere, a fraudulent but winnable lawsuit can be considered objectively baseless. The most notable case is *In re DDAVP*, 585 F.3d 677. There, drug purchasers asserted antitrust claims against the drug's manufacturer, based in part on the manufacturer's lawsuit against a competitor in which the manufacturer attempted to enforce a patent it had allegedly procured by fraud. *See id.* at 681-83. The Second Circuit held that the purchaser plaintiffs had validly stated an antitrust claim based upon the manufacturer's allegedly fraudulent procurement of the patent. *See id.* at 692-94. It also concluded that the plaintiffs had adequately alleged that the manufacturer's patent lawsuit was objectively baseless sham litigation not entitled to *Noerr-Pennington* immunity. *See id.* at 694. In reaching this conclusion, the Second Circuit relied entirely on the allegations of intentional and material fraud associated with the underlying patent application. *See id.* It did not require the plaintiffs to separately allege that no reasonable litigant could have realistically expected the manufacturer's patent lawsuit to succeed in spite of its fraudulent premise. Thus, at least for the purposes of pleading, *In re DDAVP* strongly suggests that allegations of a lawsuit's

13

materially and intentionally fraudulent premise suffice to allege its objective baselessness under *Noerr-Pennington*. Similarly, two recent District Court decisions have concluded that material, intentional misrepresentations in litigation are not shielded by *Noerr-Pennington* from liability under the Fair Debt Collection Practices Act—without considering whether those misrepresentations stood a realistic chance of succeeding. *See Shetiwy*, 980 F. Supp. 2d at 475-76; *Fritz v. Resurgent Capital Servs., LP*, 955 F. Supp. 2d 163, 175-77 (E.D.N.Y. 2013).

Accordingly, I am not persuaded that winnable lawsuits based upon intentional and material misrepresentations cannot fall within the sham petitioning exception to *Noerr-Pennington* immunity in this Circuit. To the contrary, I am convinced that a lawsuit with an intentionally fraudulent premise is "objectively baseless" even if the fraud is sophisticated enough that it stands some realistic chance of duping the fact-finder. After all, it is axiomatic that the First Amendment does not protect fraud. *See, e.g.*, *Illinois ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600, 612 (2003); *United States v. Konstantakakos*, 121 F. App'x 902, 905 (2d Cir. 2005) (summary order); *United States v. Rowlee*, 899 F.2d 1275, 1279 (2d Cir. 1990). I therefore conclude that there is a valid "fraud exception" to *Noerr-Pennington* immunity in this Circuit.

The Indictment alleges that Ceglia doctored a legitimate contract with Zuckerberg to make it appear that he had a 50 percent ownership in Facebook, and that Ceglia subsequently initiated a civil lawsuit to falsely and fraudulently assert this ownership interest. (Doc. 10 ¶¶ 5, 6). In other words, the Indictment alleges that Ceglia's civil lawsuit against Zuckerberg and Facebook involved intentional and material misrepresentations that went to the core of the case. *See, e.g.*, *Balt. Scrap Corp.*, 237 F.3d at 401-02; *Cheminor Drugs*, 168 F.3d at 123-24. Accordingly, under the "fraud exception," the Indictment alleges that Ceglia initiated objectively

14

baseless litigation.

Even if the "fraud exception" did not exist in this Circuit,[9] I still could not conclude that Ceglia's civil suit was not objectively baseless as a matter of law, and dismissal would still not be warranted.  By arguing that a reasonable litigant could have realistically expected success in his civil suit because expert witnesses opined that his version of the contract was legitimate, (*see* Doc. 111 at 9; Doc. 128 at 2-3), Ceglia challenges the sufficiency of the Government's proof rather than the Indictment's allegations.  The Indictment simply alleges that Ceglia doctored a legitimate contract signed on April 28, 2003, to make it appear as though Zuckerberg had granted him at least a 50 percent ownership interest in Facebook, which officially launched in February 2004.  (*See* Doc. 10 ¶¶ 1, 5.)  Taking these allegations as true, in the absence of the fraud exception, I could not conclude as a matter of law that a reasonable litigant could expect this litigation to succeed.  Nor could I conclude as a matter of law that *no* reasonable litigant could realistically expect this lawsuit to succeed.  The answer would simply depend upon the proof at trial of additional facts not alleged in the Indictment.  Therefore, even in the event that winnable fraudulent litigation were entitled to *Noerr-Pennington* immunity in the Second Circuit, which I conclude it is not, Ceglia's as-applied First Amendment challenge to the Indictment can only be determined after a trial on the merits.  *See* Fed. R. Crim. P. 12(b)(1). Under these circumstances, I would be required to wait until trial to resolve the Motion, and dismissal at this stage would still be improper.[10]  *See Pope*, 613 F.3d at 1258-59; *Doe*, 63 F.3d at

---

[9] Again, the "fraud exception" is merely a variant of the sham petitioning exception.  *See Mercatus Grp.*, 641 F.3d at 843.

[10] I assume the *Noerr-Pennington* motion would be made as part of Defendant's motion pursuant to Rule 29(a) "[a]fter the government closes its evidence or after the close of all the evidence," and "a judgment of acquittal" would be entered for "any offense for which the evidence is insufficient to sustain a conviction."  I reach no conclusions at this time as to the appropriate burden of proof on the *Noerr-Pennington* issue, or as to whether the jury would need to decide it.

125.

**b.**     Subjective Intent To Harm

Second, the litigation must have been subjectively intended to harm the defendant

through the use of the governmental process, as opposed to the outcome of that process.  *See*

*T.F.T.F. Capital*, 312 F.3d at 93; *Shetiwy*, 980 F. Supp. 2d at 475.  In other words, the litigation

must have been brought in bad faith.  *See Matsushita Elecs. Corp. v. Loral Corp.*, 974 F. Supp.

345, 355 (S.D.N.Y. 1997).  The Indictment amply alleges that Ceglia's civil lawsuit against

Zuckerberg and Facebook was brought in bad faith and was intended to harm Zuckerberg and

Facebook through use of the judicial process.  For instance, the Indictment alleges that the

lawsuit was an integral part of a multi-billion dollar scheme to defraud Zuckerberg and

Facebook.  (*See* Doc. 10 ¶¶ 4, 6.)

Because the Indictment alleges that Ceglia initiated sham litigation that was objectively

baseless, subjectively intended to harm Facebook and Zuckerberg, and not protected by the

*Noerr-Pennington* doctrine, Ceglia's Motion to Dismiss on First Amendment Grounds must be

denied.

**IV.     Interlocutory Appeal and Stay**

At the conference on January 30, 2015, counsel suggested that, if I denied the Motion,

Ceglia might move to stay the proceedings pending an interlocutory appeal of my decision.  If

Ceglia files an interlocutory appeal of this Order, the Second Circuit will determine for itself

whether it has jurisdiction over that appeal.  As I made clear during the conference, with the

exception of motions in limine, if the parties wish to make additional pre-trial motions, they must

first file pre-motion letters of no more than three pages with letters in opposition due three

business days after the initial letter.  Because it is my current view that this Order cannot be

appealed on an interlocutory basis, a motion seeking a stay of this case would likely be denied. However, a motion for a stay is not before me and I need not decide that issue now.  I do note, however, that trial has already been delayed from November 2014 to May 2015 at Ceglia's request to accommodate his change of counsel.  (*See* Doc. 87 at 7:10-11:20.)  Ceglia's Motion to Dismiss has now received a full hearing on the merits by two different District Judges.  It is time for this case to proceed to trial.

### V.    Conclusion

For the foregoing reasons, Ceglia's Motion to Dismiss on First Amendment Grounds is DENIED.  The Clerk of Court is respectfully directed to terminate the pending motion.  (Doc. 111.)

SO ORDERED.

Dated: February 9, 2015
       New York, New York

Vernon S. Broderick
United States District Judge