F1ancegc                    Conference

 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2  ------------------------------x

 3  UNITED STATES OF AMERICA,

 4              v.                        12 Cr. 876 (VSB)

 5  PAUL CEGLIA,

 6              Defendant.

 7  ------------------------------x

 8                                   New York, New York
                                     March 10, 2015
 9                                   11:15 a.m.

10
    Before:
11
                    HON. VERNON S. BRODERICK,
12
                                          District Judge
13

14                           APPEARANCES

15  PREET BHARARA
         United States Attorney for the
16       Southern District of New York
    BY:  JANIS ECHENBERG
17       NIKETH V. VELAMOOR
         Assistant United States Attorneys
18
    LAW OFFICE OF ROBERT ROSS FOGG LLM
19       Attorneys for Defendant
    BY:  ROBERT R. FOGG (Via telephone)
20
    MESSINA LAW FIRM, P.C.
21       Attorneys for Defendant
    BY:  GIL D. MESSINA (Via telephone)
22

23

24

25

1            (In open court)

2            (Case called)

3            MS. ECHENBERG:  Good morning, your Honor.  Janis

4     Echenberg and Nick Velamoor for the government.

5            THE COURT:  Good morning.  On the phone who do we

6     have?

7            MR. FOGG:  Robert Fogg, your Honor.

8            MR. MESSINA:  Gill Messina, your Honor.

9            THE COURT:  Mr. Fogg, Mr. Messina, if at any point in

10    time you can't hear me just let me know.

11           MR. MESSINA:  OK.

12           MR. FOGG:  Will do.

13           THE COURT:  I had called this conference after being

14    notified that Mr. Ceglia had circumvented his electronic

15    monitoring ankle bracelet and that he appears to have vacated

16    his home.

17           Initially, Ms. Echenberg, I want to just confirm, is

18    that correct?  And just what information are you able to

19    provide with regard to that.

20           MS. ECHENBERG:  That is correct, your Honor.  The

21    defendant has not responded to several attempts by his pretrial

22    services officer to contact him.  He is not in his home.  He is

23    not with his electronic bracelet.  That has been located and

24    retrieved by pretrial services.  And your Honor ordered him to

25    appear today.  Obviously he is not here as well.

1          THE COURT:  Yes.  Thank you.

2          Yesterday, having been informed that this might be an

3     issue, I scheduled a conference today and directed that the

4     defendant appear.

5          Let me ask this, Mr. Fogg:  Have you had any contact

6     with Mr. Ceglia in the past day or so?

7          MR. FOGG:  No, I haven't, your Honor.

8          THE COURT:  Mr. Messina, have you had any contact with

9     Mr. Ceglia in the past day or so?

10         MR. MESSINA:  I have not, your Honor.

11         THE COURT:  Mr. Fogg, when was the last time you had

12    contact with Mr. Ceglia?

13         MR. FOGG:  I would probably say it would be through

14    e-mail, Judge, not through phone.

15         THE COURT:  Sorry?  Did you say through e-mail?

16         MR. FOGG:  Yes.  It would have been through e-mail.

17         THE COURT:  OK.  When was that?

18         MR. FOGG:  That would be approximately a week and a

19    half, when we were going through the dance with the subpoena

20    and not having a response from him for that.

21         THE COURT:  OK.  Mr. Messina, the same question:  When

22    was the last contact you had with Mr. Ceglia?

23         MR. MESSINA:  The last contact I had was indirectly,

24    your Honor.  I believe it was last Thursday when I was cced on

25    an e-mail that Mr. Ceglia sent.

F1ancegc                    Conference

1          THE COURT:  OK.

2          Have counsel attempted to reach out to Mr. Ceglia and

3    basically not received a response?

4          Mr. Fogg?

5          MR. FOGG:  Yes, your Honor.  I have three modes of

6    contact.  One is by U.S. mail directed to the house, which I

7    have not done only because of the shortness of time.  The other

8    one is a phone number, which is his cell phone, which I have

9    reached out and received no response; also sent a text using

10   the cell phone.  And the other is by one e-mail account that I

11   have used, and I have not received a response.

12         THE COURT:  Mr. Messina, the same question:  Have you

13   reached out to Mr. Ceglia?

14         MR. MESSINA:  All of the attempts to reach him by

15   phone have been made by Mr. Fogg.  I have not called his cell

16   phone, but I have e-mailed him, and when we received the notice

17   yesterday of this conference ordering him to be in court, I

18   thought it appropriate that I follow up with an e-mail telling

19   him that he needs to be in court and if he got the e-mail to

20   contact Mr. Fogg or myself.  I have had no response.

21         THE COURT:  OK.

22         In light of Mr. Ceglia's removal of the ankle bracelet

23   and in light of the fact he has not maintained contact with

24   pretrial services or his counsel, does the government have an

25   application?

1    MS. ECHENBERG:  Yes, your Honor.  The government moves

2 to revoke his bail.

3    THE COURT:  OK.  I will grant that application to

4 revoke Mr. Ceglia's bail.  To the extent there are further

5 proceedings with regard to -- let me actually ask these

6 questions about the bond.  As I understand it, the bond was for

7 $250,000 secured by various parcels of real property, that that

8 bond was amended on consent around September 5 of last year.

9 Because the properties, as I understand it, had an equity value

10 in excess of $250,000, the security was reduced so that it

11 would at least be $250,000 worth of equity in the properties

12 but no less.

13    Ms. Echenberg, is that an accurate statement.

14    MS. ECHENBERG:  Yes, your Honor.  The defendant

15 requested that certain of the profits be released so that he

16 could retain counsel.

17    THE COURT:  Yes.

18    MS. ECHENBERG:  He had previously been represented by

19 the federal defenders, and he asked that that those properties

20 be released because they did exceed the value of the bond so

21 that he could use that money to secure the counsel that he now

22 has.

23    THE COURT:  OK.  As I understand it, Mr. Fogg, I

24 believe you were present at the conference before Judge Carter

25 when this was discussed on September 5, is that accurate?

F1ancegc                    Conference

1          MR. FOGG:  If I am not mistaken I think it was

2     September 6.  I am not too sure, but I was present.

3          THE COURT:  Let me see.  I'm sorry.  It looks like the

4     date it was discussed was September 15 where the bail was

5     modified.

6          MR. FOGG:  That would be subsequent to my appearance,

7     and that was through discussions with the government and the

8     PD's office to verify and confirm the value, and it was later

9     amended, Judge.

10          THE COURT:  Let me ask this, Mr. Fogg:  I know that

11     certain properties were released.  I take it that that those

12     properties were monetized in some way.  Do you know anything

13     about that?

14          MR. FOGG:  Were those properties monetized?  No,

15     Judge.  I do know that the properties that were being secured,

16     some of the properties were taken off the list as secured.  The

17     remaining property was left on the bond, which was to be in the

18     amount of the bond, which was $250,000.  That's my

19     understanding.  But my direct involvement in that wasn't -- I

20     wasn't directly involved with that at that point.

21          THE COURT:  OK.

22          MR. FOGG:  It was still the PD's office and

23     Mr. Ceglia.

24          THE COURT:  Rather than getting into the details, this

25     is the issue that I have, and it's something that I will ask

F1ancegc                    Conference

 1    actually the government as they're going through various

 2    matters to look into.

 3         The request to remove the properties from his bail,

 4    obviously he retained counsel and my interest is sort of

 5    whether or not to the extent it appears he has fled and to the

 6    extent that that is the case whether basically his request to

 7    have those properties removed, whether that was part of his

 8    plan all along.

 9         In other words, I would like to know whether some of

10    that money that was freed up to retain counsel, whether there

11    was money left over that basically he may be using in

12    connection with his flight.

13         I'm trying to determine at what point in time he may

14    have made the determination to flee, because it is not

15    something that that's easy to do, my understanding, to tamper

16    with an ankle bracelet, so it's something that seems like took

17    a fair amount of planning.

18         There are several things that we have outstanding that

19    I would like to discuss with the parties at this stage.

20         Let me ask this:  Mr. Fogg, Mr. Messina, do you have

21    anything you would like to inform me about before I move on to

22    the next issues I would like to discuss, which will be the

23    amended protective order, the issue related to Paul Argentieri,

24    the Facebook subpoena, and issues related to the crime fraud

25    exception.

1       Before we discuss the crime fraud exception, I will

2   say this, I do not want to discuss any substantive information

3   with regard to that.  It's really questions about timing that I

4   would like to discuss.

5       Before we get there, Mr. Fogg, Mr. Messina, do you

6   have anything you would like to discuss?

7       MR. MESSINA:  All I was going to say, I am away.  I

8   came south for a family wedding, and the first notification I

9   received of this was right after I guess Ms. Echenberg had

10  called Mr. Fogg and then he called me I guess late on Sunday

11  night to advise me of this.

12      We don't know the status of the properties although

13  we're trying to find that out.  So there's nothing that I can

14  add to what your Honor already knows.  I wasn't involved in

15  that process.  I came on the case after Mr. Fogg, so there is

16  nothing that I can add that would be helpful to the Court.

17      THE COURT:  Mr. Fogg?

18      MR. FOGG:  Your Honor, of course, I can't state as to

19  what his state of mind was or is.  I don't know.

20      THE COURT:  Yes.

21      MR. FOGG:  Whether or not there was a plan from the

22  beginning when I was first retained, of course, I don't know

23  that.  But I can say that the property that was released

24  remained in his possession, under his control, and that at one

25  time I did go down to visit him, and that was still the fact.

1  It's my understanding -- of course, I don't have a direct

2  knowledge of this, it is my understanding even as of last month

3  the properties weren't able to be sold based on the I guess the

4  financial climate down there and I guess the fact of his case,

5  and I guess it's that's problem there with regard to the

6  property.

7           THE COURT:  OK.

8           MR. FOGG:  My understanding is the properties are

9  still intact.  That's my understanding, but I don't have

10  personal knowledge of that.

11          THE COURT:  I didn't by my questions -- and it was

12  really for the government as they look into this -- I didn't

13  mean to suggest either, Mr. Fogg or Mr. Messina, that you had

14  any knowledge about what Mr. Ceglia may or may not have been

15  planning.  If it came across that way, I apologize.  I was not

16  suggesting that that at all.

17          MR. FOGG:  I didn't take it that way, your Honor.

18          THE COURT:  With regard to the amended protective

19  order, as I understand it, and I don't believe there is anyone

20  from Facebook who is here today, but as I understand it, Mr.

21  Fogg, Mr. Messina, I believe, and Facebook signed off on the

22  amendment to the protective order.

23          Is that accurate?

24          MR. FOGG:  We have not signed off yet, but we intend

25  to do that without complication or problem.  I believe what

1   will happen is that Mr. Messina will sign off, print it up,

2   sign it off, and somehow scan it to me.  I will then sign it

3   and then scan it to the Court and cc Facebook.

4            THE COURT:  OK.

5            MR. MESSINA:  If I can interject, your Honor.

6            THE COURT:  Yes.

7            MR. MESSINA:  As I said, I am out of state.  I was

8   able to sign, scan, and e-mail it to Mr. Fogg yesterday, but

9   he's been tied up in court, so he's probably not aware that he

10  has it, which led to my e-mail to the Court yesterday I believe

11  saying that he will be signing, and he has my signature and, he

12  will sign and scan it and send it to the Court as well as to

13  the U.S. Attorney's Office and to Gibson Dunn.

14           THE COURT:  OK.  I wanted to make sure that that was

15  in process.  I take it, as I understood it, the government has

16  no objection to the protective order.

17           MS. ECHENBERG:  That's correct, your Honor.

18           THE COURT:  OK.  Great.  So we'll get that in place in

19  the next few days.  Now, I will hear from the parties with

20  regard to my order related to Mr. Argentieri –– I'm not sure if

21  I'm pronouncing his name correctly, if I am mispronouncing it,

22  I apologize.  I specifically directed that the parties submit

23  letters to me by March 12 concerning whether either party had

24  an intention of call Mr. Argentieri as a witness and also

25  whether or not any other current or former clients of either

1   Mr. Fogg or Mr. Messina who may have been represented in

2   matters related to this case.  In light of the current

3   situation, I will hear from the parties and get their views

4   about that current deadline.  First I will hear from the

5   government.

6            MS. ECHENBERG:  Your Honor, we would like to still

7   move forward on this issue and all issues related to the case

8   to the extent it makes sense as we continue to look for

9   Mr. Ceglia.  It would be helpful if we could have another day,

10  possibly until Monday, because obviously other things have

11  taken precedence over the last 48 hours.

12           THE COURT:  Sure.

13           MS. ECHENBERG:  But we would like to move forward on

14  that issue.

15           THE COURT:  OK.  Mr. Fogg, Mr. Messina?

16           MR. MESSINA:  This is Mr. Messina, your Honor.  I

17  didn't hear all that Ms. Echenberg said, but it sounded like

18  she wanted a few more days to respond, is that correct?

19           THE COURT:  Correct.

20           What I was going to do is give the parties until

21  Monday to provide me with letters relating to Mr. Argentieri or

22  any other individuals who may have been represented by either

23  yourself or Mr. Fogg in matters relating to the criminal case.

24           MR. MESSINA:  So that the Court and the government

25  knows, I believe the only -- of course, Mr. Fogg can speak for

1    himself, but the only client involved in any of these

2    proceedings of his is Paul Ceglia.

3              I, of course, represent Mr. Ceglia in the civil action

4    pending in the Supreme Court in New York County; I represent

5    Mr. Argentieri.  So those are the only two individuals involved

6    in the universe of litigation that I represent.  I will tell

7    the Court now that we have no current intention of calling

8    Mr. Argentieri as a witness in the criminal case.

9              THE COURT:  OK.

10             MR. FOGG:  Your Honor?

11             THE COURT:  Yes.

12             MR. FOGG:  If I may?

13             THE COURT:  Yes.

14             MR. FOGG:  Of course, we all recognize that the

15    defense does not have to put on a defense or present evidence.

16             THE COURT:  Absolutely.  Yes.

17             MR. FOGG:  We have not broached that issue just yet.

18             THE COURT:  Yes.

19             MR. FOGG:  However, I would join with Mr. Messina with

20    regard to the intention to call Mr. Argentieri.  However,

21    seeing that things are I guess very flexible and moving at the

22    present time and very fluid, I would like to at least reserve a

23    possible decision on that.

24             THE COURT:  In fact, as a matter of process, Mr. Fogg,

25    Mr. Messina, obviously I just wanted to know current intentions

1   at this stage and obviously that could change.  If Mr. Ceglia

2   either turns himself in or is apprehended and we proceed with

3   the case in the future, obviously you can make a decision about

4   who to call.

5        The issue that I was trying to surface is potential

6   conflicts and whether or not it was going to need to have a

7   Curcio hearing.  Obviously, I heard Ms. Echenberg indicate that

8   the government would like to proceed as much as possible on

9   matters relating to the criminal case.  There is a limit to

10  that obviously because the defendant is entitled to be present

11  at various points of his prosecution.  I don't know and I

12  haven't researched the extent to which or what types of actions

13  can be taken in the defendant's absence.

14       I think legal matters like we have discussed, like the

15  letters the initial letter that we have discussed are probably

16  appropriate.  I do think, though, obviously we couldn't hold a

17  Curcio hearing and there are certain things that we would be

18  required to have him here for.

19       I think with regard to at least the letters, I will

20  extend the time to Monday to get the letters.  Mr. Fogg,

21  Mr. Messina, if you could submit a short note just confirming

22  what you have indicated today with the understanding that the

23  defendant obviously need not put on any defense and that it

24  could change, but I just want to get what the current state of

25  affairs is.

1          MR. MESSINA:  Understood.  Thank you, your Honor.

2          MR. FOGG:  Thank you, your Honor.

3          THE COURT:  Sure.  With regard to the next issue,

4    which is the subpoenas to Facebook and to Mr. Zuckerberg, have

5    any documents been produced in connection with those subpoenas?

6          MR. MESSINA:  Not to the defense, your Honor.

7          THE COURT:  This is what my intention is and then I

8    will hear from the parties.

9          In light of the fact and we will have the protective

10   order in place fairly soon, but in light of the fact that the

11   defendant is not available even to review these documents that

12   the documents, as the parties know, get into a place where we

13   have the protective order that it was highly contested, my

14   current intention is to notify Facebook and Mr. Zuckerberg that

15   they should have the documents collected, ready to be produced,

16   but that production be held in abeyance until such time as

17   Mr. Ceglia is apprehended or turns himself in.

18         So first I will hear from Mr. Fogg and Mr. Messina on

19   that.

20         MR. FOGG:  Judge, that sounds fair.  However, if in

21   fact he is returned or he is somehow apprehended three days

22   before the trial that would be very problematic for me.

23         THE COURT:  No.  Let me say, and I should have stated

24   this at the outset, currently I am not moving the trial date.

25   We are going to keep the trial date.  I am I guess cautiously

1    optimistic that he will return to the jurisdiction in the near

2    future.  So we will maintain the current dates which I think is

3    April 1 is the motions in limine.  I will hear from the

4    parties.  I will ask for a status update from the parties and

5    the parties' views by the end of next week.

6            Mrs. Williams, the end of next week, Friday?

7            THE DEPUTY CLERK:  March 20.

8            THE COURT:  So by March 20 I will hear from the

9    parties concerning the status and their views with regard to

10   the dates that are outstanding and principally the motions in

11   limine and the trial date.  But at this stage I'm not going to

12   move the trial date.

13           Mr. Fogg, I understand what you are saying, and

14   obviously I will take that into consideration if this situation

15   persists and there does become a need to move the trial date,

16   but I will give you sufficient time to review the documents

17   that are produced in advance of any trial here.  OK?

18           MR. FOGG:  Your Honor, thank you very much.  Just to

19   be clear, Judge, I did not ask for a trial date here to be

20   somehow altered, changed, or moved back and forth.  That wasn't

21   my concern.  My concern was, as you have just last stated,

22   getting those documents in advance so that I can be prepared.

23   I just want to be ready.  That's it.

24           THE COURT:  Yes.

25           MR. FOGG:  I'm ready to review it with or without

1  Mr. Ceglia.  That is the intention of Mr. Messina and I no

2  matter what.  I just thank the Court for consideration on that

3  timing issue.

4          MR. MESSINA:  If I may interject something, your

5  Honor.

6          THE COURT:  Yes.

7          MR. MESSINA:  I propose this perhaps as a potential

8  compromise, although I don't intend to compromise with the

9  Court on this order, but as a possible alternative, if those

10  documents could be produced perhaps at the U.S. Attorney's

11  Office, and Mr. Fogg and I could just have an opportunity to

12  review them there and not copy them or take them or have them

13  produced to Mr. Fogg's office as the subpoena says, I think

14  that would alleviate a lot of concerns that we have.

15          We will, of course, be subject to the protective order

16  and nothing will be disclosed, of course, but at least that

17  would afford us some comfort that we have an idea about what

18  may be there in terms of, you know, other contracts or contract

19  formulations and that sort of thing.

20          THE COURT:  OK.

21          MR. FOGG:  Or it could be produced to the Court.

22          THE COURT:  Probably, for ease of review, it would

23  probably be easier at the U.S. Attorney's Office rather than

24  have you sitting in my chambers reviewing them.  Let me ask

25  this, because it does raise an issue that is a matter of

1    concern to me.  That relates to Mr. Argentieri.  The subpoenas

2    were subpoenas that were issued in this case, in the criminal

3    case.  They have nothing to do with the civil case.

4    Mr. Argentieri, at least according to the press reports, was

5    talking about these subpoenas as if he was going to get those

6    documents.

7          I know that, Mr. Messina and Mr. Fogg, you indicated

8    that neither of you were involved in that.  But it raises an

9    issue concerning Mr. Messina.  He is your client.  The simple

10   fact is that, and this raises the issue of my concern relating

11   to the conflict, in part because it may be that these documents

12   are documents that when you look at them, you say, Oh, boy,

13   this might help in Mr. Argentieri's case.  But in connection

14   with this case there is a protective order in place, and you're

15   representing Mr. Ceglia and those documents aren't supposed to

16   be used for any other purpose.

17          So one of the rationales, quite frankly, behind my

18   desire to sort of delay their production -- and I'm not saying

19   I would delay it indefinitely -- is to stave off any delay, a

20   delay in connection with any --

21          MR. FOGG:  Hello?

22          THE COURT:  Go ahead.

23          MR. FOGG:  I think we missed you, and right now I

24   can't hear you that well.

25          THE COURT:  OK.  I will.

1          MR. MESSINA:  I can hear a little bit.

2          THE COURT:  What I was saying is, in connection with

3     the request to have the documents produced to the U.S.

4     Attorney's Office, my concern was with the comments that had

5     been made by Mr. Argentieri relating to the subpoena and the

6     potential use of those documents.  Rather than have an issue

7     surface when currently the defendant is not in the jurisdiction

8     I thought that temporarily holding off on the production of

9     those documents would make sense.  But I will hear from you on

10    that.

11         I know that, Mr. Messina, you just proposed having

12    them produced to the U.S. Attorney's Office and that you could

13    review them there.  That might be a solution, but I want to

14    hear some more about that and also about the issue of the use

15    in the end of the day that the documents are going to be put to

16    at this stage, if at this stage Mr. Ceglia really isn't

17    participating in the case.

18         MR. FOGG:  Your Honor, if I may address first, only

19    because the larger issue is an issue that Mr. Messina has to

20    address, I believe our concern was with production, period.  As

21    you can see through the communications that I have had with the

22    Court, in my election not to get into some hot debate and just

23    simply procedurally go forward, production is an issue.  So if

24    the Court would require production and had a designated time

25    and place but not release to the defense team, that would be

1    fine.

2              THE COURT:  OK.

3              MR. FOGG:  At least the comfort would be that

4    production was made.  If the Court were to accommodate us as

5    far as review, but not to retain, possess, copy, duplicate, but

6    just review, that would be great for us as well.  At least we

7    will have a mindset as far as a strategy going forward, and

8    that will be fine, until the Court could decide release of the

9    production to us.

10             With regard to Mr. Argentieri, I don't represent

11   Mr. Argentieri nor any other person nor any other related case.

12   As I've already said, my interest and my representation falls

13   squarely and only upon Mr. Ceglia and in this case as it rests.

14             I do believe that the protective order would satisfy,

15   and that's the reason we are happy to sign it, and my intention

16   is, no, Mr. Argentieri would not be receiving any information

17   with regard to that.  And, no, this information would not be

18   used in any other case unless we followed the procedures in the

19   protective order and sought permission, but I have no interest

20   in using these documents past where we are.

21             With regard to Mr. Argentieri's press release or the

22   news, I did review that.  Breaking that down, what I did see

23   was that most of it was based upon the public information.  The

24   public came to him, and they actually tried to reach out to me

25   as well with regard to this Court's ruling.  I haven't spoken

1   to them with regard to that, but most of it was based on that

2   and on some past statements.

3          However, he did make a current statement, and that

4   current statement was basically the obvious, that

5   Mr. Zuckerberg and Facebook have never been ordered to produce

6   any documents in any case, and that is true, and that's

7   something that I have placed in my motions, in my papers, and

8   that was the basis for my request.

9          But he did make some statements that the two cases are

10  on parallel tracks, which to tell you the truth, Judge, anybody

11  can see that.  That is truly the case.  I didn't see where he

12  would receive any documents, and I don't believe he made that

13  statement.  That is something that Mr. Messina and I have

14  spoken about, and we have vowed to each other, to the case and

15  the protective order, not to allow that to happen at all.

16         I will defer to Mr. Messina.

17         THE COURT:  OK.  Just to clarify.

18         MR. MESSINA:  Well, I agree with everything Mr. Fogg

19  just said.

20         I did speak to Mr. Argentieri when that article came

21  to my attention.  It was not anything that we were aware of.

22  It was inaccurate to this extent:  There is a comment in there

23  that is attributable to him as being part of the defense team

24  in the criminal case.  He said that that is not what he told

25  the reporter.  In fact, he told the reporter that he was not

F1ancegc                    Conference

1    part of the defense team.

2            It is certainly not my intention to share any

3    documents that are produced in the criminal case with him

4    except in accordance with whatever the Court would permit or

5    the protective order allows, you know, such as we did with the

6    August 18, 2003 e-mail, which the government agreed we could

7    use in the civil action.

8            One of the things that I was sure to confirm with

9    Mr. Wilson was that when that happened we would be free to

10   share it with any of the other attorneys who were involved in

11   the civil action, and that included Mr. Argentieri.  That may

12   have been the genesis for his statements, but I told him that

13   that was certainly not the case.  He told me about the

14   correction to the article.

15           As a matter of fact, he asked me if he shouldn't

16   notify the reporter that that was an incorrect statement.  I

17   said I don't think that matters now.

18           That's where that is.  I will say this, your Honor:

19   In the other civil case where I represent Mr. Argentieri, we

20   have our own discovery going on there.  Whatever discovery is

21   produced in that case will be used in the civil case.

22           I have confidence based on where the process is going

23   through that we are going to get what we need in that case.  So

24   I don't think there would even be a need to rely upon anything

25   produced in the criminal case if it was pertinent to the civil

1    case I think it's going to be produced there.

2             THE COURT:  I just want to make two points of

3    clarification.  Mr. Fogg, you had mentioned that you are not

4    part of the civil case.

5             As I understand it, although you are not part of

6    Mr. Argentieri's case or Mr. Ceglia's case that was dismissed

7    in the Western District, am I correct that you had appeared in

8    connection with the injunction proceeding that was filed in

9    that Court?

10            MR. FOGG:  That's correct, Judge.  Yes.

11            THE COURT:  I'm sorry, Ms. Echenberg, did you want to

12   say something?

13            MS. ECHENBERG:  Yes.  Maybe you're getting to this,

14   but I understand that piece is on appeal.  So to the extent Mr.

15   Fogg is involved in that, we would like to know.

16            THE COURT:  Yes.

17            Mr. Fogg, are you still involved in the injunction

18   proceeding that's currently on appeal?

19            MS. ECHENBERG:  Yes, Judge.  Just to clarify, when I

20   referred to the civil case, I referred to the initial civil

21   case.  My reference was to the initial civil case and to any of

22   the attorneys that had been, I guess that are being prosecuted.

23   That was my reference.

24            THE COURT:  OK.

25            MS. ECHENBERG:  Just to be clear, it is my

1    understanding that all of those cases have been joined into a

2    single appeal to the Second Circuit.

3              THE COURT:  Mr. Fogg, Mr. Messina, have those cases

4    been consolidated for purposes of the appeal, and are they

5    going to be heard together?

6              MR. MESSINA:  Your Honor, the cases have been ordered

7    to be argued in tandem.  So they have not been consolidated,

8    but they will be heard together.

9              THE COURT:  So any hearing or oral argument will occur

10   on the same day, is that correct?

11             MR. MESSINA:  That's correct.  April 16, your Honor.

12             THE COURT:  OK.

13             A question I have, I don't know what the answer is

14   quite frankly, I know that Mr. Fogg, Mr. Messina, you had filed

15   an appeal in connection with my decision related to the First

16   Amendment claim with regard to the use of materials in

17   connection with the antitrust.  I apologize --

18             MS. ECHENBERG:  The *Noerr-Pennington* doctrine.

19             THE COURT:  The *Noerr-Pennington* doctrine.  Thank you.

20             I don't know what the impact is, if any, of the fact

21   that your client has absented himself from this case.  I don't

22   know whether that impacts the appeal or not.

23             Quite frankly, I don't need to know that.  My

24   intention was, and we are going to proceed as far as we can on

25   this case within the bounds of the law in light of the fact

F1ancegc                    Conference

1    that the defendant is not present.

2              Let me ask this of the government:  Does the

3    government have any objection were I to direct that Facebook

4    produce the documents to the U.S. Attorney's Office, so that

5    the U.S. Attorney's' Office can review them and they can

6    arrange times when Mr. Messina and Mr. Fogg might be able to

7    review these documents.

8              MS. ECHENBERG:  Your Honor, in light of the potential

9    conflict issue with Mr. Argentieri, it may make sense for us to

10   give you our view on this, and then to bring this issue up

11   again after we have addressed that.

12             THE COURT:  OK.

13             MS. ECHENBERG:  I also would note there had been some

14   discussion of a phone conference tomorrow that would have

15   involved Facebook.  That is not happening, as I understand it.

16             THE COURT:  That will not happen, yes.

17             MS. ECHENBERG:  Although they, too, may want to weigh

18   in on this particular issue.

19             THE COURT:  Sure.

20             In one of their letters they reference something about

21   Mr. Argentieri.  That is fair.  I will hear from the parties in

22   writing, from the government in writing on Monday.  I am not

23   sure exactly what Facebook's standing would be with regard to

24   Mr. Argentieri's potentially being a witness here if Facebook

25   signs off on the protective order, but I will have to think

F1ancegc                    Conference

1   about that.  I will reserve any decision about the production

2   of the documents, but I will issue an order indicating that

3   production will be held in abeyance until such time as I issue

4   a further order.

5          Now I would like to discuss -- and this is an issue of

6   timing, and again I don't want to talk about the substance of

7   the crime fraud exception or the specific documents that I have

8   reviewed, but let me ask this question:  Mr. Fogg and

9   Mr. Messina, it sounds as if the answer to this is no in light

10  of the timing of your last contact with Mr. Ceglia, without

11  disclosing the substance, have you had an opportunity to

12  discuss with him the issue about the documents that might be

13  subject to the crime fraud exception.

14         By documents I am actually referring more to sort of

15  specific documents.  Again, Mr. Fogg, Mr. Messina, do not

16  reference any substantive documents or ruling that I may have

17  made in connection with those documents.  I just want to know

18  if you are in a position to provide me with your thoughts on

19  specific documents that might be subject to the crime fraud

20  exception.

21         MR. MESSINA:  Your Honor, the answer to that is yes.

22  I believe I can provide you with our position.

23         THE COURT:  OK.

24         MR. MESSINA:  The answer to your first question is

25  that, no, although we have done the review of the more limited

1   production that was submitted for your Honor's in camera

2   review, I have not discussed with and did not have an

3   opportunity to discuss with Mr. Ceglia the details of those

4   documents except to the extent that they already have been

5   known to us and we have had discussions about them in different

6   contexts, but not in the context of the crime fraud exception.

7           THE COURT:  OK.  Let me hear from the government.

8           Mr. Velamoor, I had indicated that I would like to get

9   something from the parties by Monday.  It sounds as if Mr. Fogg

10  and Mr. Messina intend on providing me with something.  Whether

11  I rule finally on those issues or not I will have to think

12  about, but I will hear from the government about whether or not

13  they are in a position to provide me with any objections that

14  they might have.

15          MR. VELAMOOR:  Yes, your Honor.  We are in a position

16  to provide objections.  I don't expect there to be very many.

17  If we submit a letter, it will be brief.

18          THE COURT:  OK.

19          MR. VELAMOOR:  I am addressing a few documents at the

20  most.

21          Just as a matter of commentary, I did note earlier,

22  the Court pointed out that it may be OK to proceed on narrow

23  legal questions.  I think, without going into the substance of

24  the order or the documents themselves, I think the Court has

25  set forth a very limited analysis at this point.  The Court's

F1ancegc                    Conference

1   made it clear what we are not supposed to argue in terms of the

2   general issues about the application of the crime fraud.  It's

3   really now a matter of applying the principles that the Court

4   has outlined in that order to very specific documents.

5           It seems to me, and I will let perhaps have to do some

6   more research to be sure, but it seems to me that that ought to

7   be something that could go forward even in this context.  I

8   would note also that at this point the only people now who have

9   not had an opportunity to see or learn the substance of these

10  documents are the AUSAs who are responsible for prosecuting the

11  case.

12          THE COURT:  That's right.

13          MR. VELAMOOR:  So to the extent the trial date goes

14  forward, and I think everyone hopes that it does, for them to

15  have the opportunity and do any follow-up work that may be

16  appropriate, that is another interest I think going forward, as

17  quickly as possible.

18          THE COURT:  Mr. Velamoor, Mr. Messina, Mr. Fogg, I

19  look forward to getting your submissions on Monday with regard

20  to those specific documents.

21          MR. MESSINA:  Your Honor?

22          THE COURT:  Yes.

23          MR. MESSINA:  I hate to do this, but I'm in the

24  process of traveling with my family now and I actually won't be

25  back to my office where those documents are until -- I will be

1    back in the office on Tuesday.  Would it be possible to move

2    that to Tuesday?  I don't want to delay things.

3              THE COURT:  That's fine.  Thursday, Mrs. Williams is?

4              THE DEPUTY CLERK:  March 19.

5              THE COURT:  March 19 I'll get the letters from the

6    parties.  Again, Mr. Fogg, Mr. Messina, Mr. Velamoor, obviously

7    those letters are just to come to me.  Don't copy members of

8    the prosecution team, OK?

9              MR. FOGG:  I understand, your Honor.

10             MR. MESSINA:  Yes, your Honor.

11             THE COURT:  OK.

12             MR. FOGG:  Your Honor, one last thing.  I just wanted

13    to be clear, the last communication I had with Mr. Ceglia was

14    last week.  I do believe what I did was I forwarded the Court's

15    order to him, and that was within the last week, also based on

16    Mr. Zuckerberg's and Facebook's comments with regard to

17    Mr. Argentieri's article.  That was it.

18             THE COURT:  OK.

19             So, in connection with the revocation of Mr. Ceglia's

20    bail, I will schedule a --

21             MS. ECHENBERG:  Your Honor?

22             THE COURT:  Yes.

23             MS. ECHENBERG:  Just so we can have a better sense of

24    timing, what order is he referring to that he forwarded to

25    Mr. Ceglia?

1          Is it the order regarding the crime fraud?

2          THE COURT:  Well, let me ask.

3          MS. ECHENBERG:  Also, if he can clarify whether he got

4   any response from Mr. Ceglia or whether it was merely that he

5   had reached out.

6          THE COURT:  OK.

7          MR. FOGG:  The order was document No. 143, Judge.  I

8   have also sent out e-mails with regard to his appearance today.

9          THE COURT:  Oh.

10         MR. FOGG:  I had not received a notice back on whether

11  he's received them or reviewed them.

12         THE COURT:  143 relates to Mr. Argentieri and the

13  potential conflict and the Curcio-related issues.

14         So, in connection with the revocation of Mr. Ceglia's

15  bail, I will order a hearing in two weeks, on March 24.

16         Mrs. Williams?

17         THE DEPUTY CLERK:  10 a.m.

18         THE COURT:  At 10 a.m. with regard to the properties

19  that are part of the security for Mr. Ceglia's bail, for his

20  bond I should say.

21         OK.  Yes?

22         MS. ECHENBERG:  Your Honor, is that hearing also with

23  regard to the cosigners.

24         THE COURT:  Yes.  I'm sorry.  The hearing is with

25  regard to the property and the cosigners who signed for

F1ancegc                    Conference

1    Mr. Ceglia's bond who I understand is his brother, Brendan?

2    His father I believe?

3           MS. ECHENBERG:  His father, Carmine Ceglia, and his

4    mother, Veronica Ceglia.

5           THE COURT:  OK.  So that hearing is scheduled for

6    March 24 at 10 a.m.

7           MR. FOGG:  Judge, will our appearance, Mr. Messina and

8    I, permitted to be telephonically.

9           THE COURT:  It relates to the criminal case.  It's

10   specifically, though, related to the bond.  You're welcome to

11   participate.  You're welcome to listen in if you like.  I don't

12   know whether any of the folks -- that is fine.  You can

13   participate by phone.  That is fine.

14          MR. FOGG:  Will there be notice provided to the

15   parents?

16          THE COURT:  Yes.  I believe --

17          MR. FOGG:  Or the interested parties in the

18   properties?

19          THE COURT:  Just so that you know, I have signed an

20   order.  That order will be provided to the people who have

21   signed the bond, who I believe also are, with the exception of

22   Mr. Ceglia, also the people who have ownership interest in the

23   property as I understand it.

24          MR. FOGG:  Yes.

25          THE COURT:  OK.  It will also be something that will

1    be entered on the docket.

2              So, Mr. Fogg, Mr. Messina, to the extent you are in

3    contact with them, you should feel free to share it with them

4    also if you like.  OK?

5              MR. FOGG:  Yes, your Honor.

6              THE COURT:  OK.

7              Are there any other issues that we need to deal with

8    today?

9              Mr. Fogg, Mr. Messina?

10             MR. FOGG:  Nothing that comes to my mind, your Honor.

11             MR. MESSINA:  Nor to mine, your Honor.

12             THE COURT:  Thank you.

13             Ms. Echenberg?

14             MS. ECHENBERG:  Nothing, your Honor.

15             THE COURT:  Mr. Velamoor, anything?

16             MR. VELAMOOR:  Nothing further, your Honor.

17             THE COURT:  Mr. Messina, did you want to say

18    something?

19             MR. MESSINA:  Yes, I just wanted to make sure that I

20    have all these dates right.  Your Honor will be, I assume,

21    entering a text order with regard to the additional schedule?

22             THE COURT:  Yes, either a text order or an actual

23    order.  There is already an order prepared which will be up on

24    the docket with regard to the individuals who signed the bond

25    and the properties.

F1ancegc                    Conference

1          With regard to the other scheduling issues that we

2     have discussed today, the extension until next Thursday for the

3     document-specific objections related to the crime fraud and the

4     other issues that we have discussed, yes.  They will be part of

5     an order, either a text order or an actual order that will be

6     on the docket.

7          MR. MESSINA:  OK.  Great.  Thank you very much, your

8     Honor.

9          THE COURT:  If there's nothing further -- anything

10    further from anyone?

11         OK.  All right.  Then we will stand adjourned.  Thank

12    you very much for coming in.

13         MS. ECHENBERG:  Thank you, your Honor.

14         MR. MESSINA:  Thank you, your Honor.

15         MR. FOGG:  Thank you, your Honor.

16         (Adjourned)

17

18

19

20

21

22

23

24

25