

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 27, 2015

**BY ECF and E-MAIL**

The Honorable Vernon S. Broderick
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square
New York, New York 10007

     Re:    **United States v. Paul Ceglia,**
            **12 Cr. 876 (VSB)**

Dear Judge Broderick:

     Pursuant to the Court's request at the conference in this matter on March 24, 2015, the parties have conferred regarding Mr. Fogg's proposals seeking (i) the production of materials by Facebook and Mark Zuckerberg pursuant to Federal Rule of Criminal Procedure 17 ("Rule 17") and (ii) the continuation of discovery to the defendant pursuant to Federal Rule of Criminal Procedure 16 ("Rule 16"). Although the parties were in agreement that the trial should be adjourned *sine die*, as ordered by the Court earlier today, the parties' views differ on how to proceed with regard to ongoing Rule 16 discovery to the defendant and the pending Rule 17 subpoenas. It is the Government's view that both should be held in abeyance as a result of the defendant's flight from prosecution three weeks ago.[1] Defense counsel have informed the Government that they believe certain discovery should proceed in the defendant's absence and we understand they will be submitting a separate letter to the Court today setting forth their position.

     Continued Rule 16 discovery to the defendant is inappropriate because it will reward Ceglia's flouting of the judicial process while unreasonably drawing on the resources of the Government and the authority of the Court. The fugitive disentitlement doctrine provides trial courts the authority to refuse to grant relief to defendants, like Ceglia, who flee from justice. *United States v. Mann*, No. S4 00 CR. 632 (WHP), 2003 WL 1213288, at *1 (S.D.N.Y. Mar. 17, 2003) (internal citations omitted) (noting the four rationales of the fugitive disentitlement doctrine: "1) assuring the enforceability of any decision that may be rendered against the fugitive; 2) imposing a penalty for flouting the judicial process; 3) discouraging flight from

---

[1] To date, the Government has produced voluminous discovery in compliance with its Rule 16 obligations, including hundreds of relevant documents and emails as well as forensic analyses of the defendant's electronic media and the contract at issue.

Honorable Vernon S. Broderick
March 27, 2015
Page 2

justice and promoting the efficient operation of the courts; and 4) avoiding prejudice to the other side caused by the defendant's escape."); *United States v. Gayatrinath*, No. 02 CR. 673 (RMB), 2011 WL 873154, at *3 (S.D.N.Y. Mar. 11, 2011); *United States v. Gorcyca*, No. 08-CR-9 (FB), 2008 WL 4610297, at *2 (E.D.N.Y. Oct. 16, 2008) (citing *United States v. Awadalla*, 357 F.3d 243, 245 (2d Cir. 2004)). Under the fugitive disentitlement doctrine, a defendant may not call upon the resources of the Government and the Court, while remaining outside the Court's reach. *United States v. Stanzione*, 391 F. Supp. 1201, 1202 (S.D.N.Y. 1975) (denying a motion to dismiss while the defendant was a fugitive because "until [defendant] is willing to submit [defendant's] case for complete adjudication— win or lose— [defendant] should not be permitted to call upon the resources of the court") (internal citation omitted).

Allowing the defendant to obtain Rule 16 discovery and demand compliance with Rule 17 subpoenas while he remains a fugitive will reward the defendant's flight. While the defendant remains beyond the reach of the Court, his defense team would be permitted to continue to gather and evaluate the evidence against him, allowing Ceglia to ultimately decide whether to return or not based on his view of his chances of acquittal.[2] The Second Circuit has condemned this type of "heads I win, tails you'll never find me" posture. *See Gao v. Gonzales*, 481 F.3d 173, 175, 177 (2d Cir. 2007), *cert. denied*, 128 S.Ct. 959 (2008); *see also Gorcyca*, 2008 WL 4610297, at *2 ("Gorcyca's refusal to return to the jurisdiction prejudices the government because it must expend time and resources executing an arrest warrant and initiating extradition proceedings. In attempting to litigate his criminal case by mail from Canada, Gorcyca is trying to secure a favorable decision without risking the consequences of an unfavorable decision."). While the Government has not found any cases directly addressing the continuance of Rule 16 or Rule 17 discovery after a defendant has fled, the decision in *United States v. Nabepanha*, 200 F.R.D. 480 (S.D. Fla. 2001) is instructive. There, considering a request for discovery from a defendant who fled before being charged, the district court found that:

> [t]o accept Defendant's position that the fugitive disentitlement doctrine does not apply to a discovery request in a criminal matter by a fugitive is to invite all criminals to flee . . . This would allow the fugitive to preview or test the strength of the government's evidence without being subject to the court's jurisdiction. If the evidence is weak, the fugitive could elect to return . . . If the government's evidence is strong, the fugitive could simply remain outside the reach of the court. The fugitive would receive potential benefits while risking nothing, thereby obtaining an advantage.

---

[2] To the extent defense counsel may seek to assert that they will not communicate this evidence to the defendant if he contacts them, such a position is not viable and may run afoul of their attorney-client obligations. Any communication with the defendant will necessarily implicate their view of the case as informed by the evidence, and barring defense counsel from communicating altogether with their own client is similarly unfeasible.

*Id.*, 200 F.R.D. at 483-84  The Court should likewise prevent the defendant here from continuing to obtain discovery until he is willing to return and face that evidence at trial.

Allowing the defendant to continue to enforce the Rule 17 subpoenas would similarly run counter to the principles underlying the fugitive disentitlement doctrine because, in doing so, he would be using the Court's own authority to compel action by third parties while simultaneously rejecting the Court's authority himself.  If the defendant will not submit to the Court's judgment, he cannot rightly be permitted to call upon its authority when he believes it will benefit him.  Nor does it matter how important defense counsel believes the materials in question are to the defense.[3]  Even if Ceglia had a viable argument for full dismissal of the Indictment, he would not be entitled to seek such a dismissal while a fugitive. *Stanzione*, 391 F. Supp. at 1202 (denying fugitive defendant's motion to dismiss with leave to file again when defendant returns to jurisdiction because "defendant is willing to enjoy the benefits of a legal victory, but is not at all prepared to accept the consequences of an adverse holding."); *Gorcyca*, 2008 WL 4610297, at *1 (same).

In addition to the general principles of fugitive disentitlement, requiring the Government to continue to produce Rule 16 discovery here could jeopardize the Government's ongoing search for the defendant.  Rule 16 discovery obligations will arise as the Government identifies documents it will use at trial to prove the defendant's intentional flight from justice – either as consciousness of guilt on the present charges or as direct evidence of additional bail jumping

---

[3] There is no basis upon which to conclude that the production of material from Facebook or Mr. Zuckerberg will include any exculpatory evidence or additional contract, as defense counsel has suggested.  Ceglia has always maintained that *Ceglia* prepared the terms of the contract at issue. *See e.g.,* Declaration of Paul Ceglia, dated June 12, 2011, *Ceglia v. Zuckerberg and Facebook¸* 10 Civ. 569 (RJA) (WDNY), Docket No. 65. His more recent assertion, that there is "another contract" that Mr. Zuckerberg sent to Ceglia, is in opposition to his long-held position, and makes no sense in the context of the evidence in this case.  Although Ceglia now claims that Mr. Zuckerberg's reference in an email to having sent Ceglia "the contract with all the penalty provisions," somehow implies the existence of another contract, both Ceglia's (fraudulent) version of the contract (the "Work-For-Hire" contract), which references Facebook, and the true contract found on Ceglia's computer and sent by Ceglia to his then-lawyer (the "StreetFax" contract), which does not reference Facebook, contain penalty provisions.  Accordingly, there is no basis whatsoever to believe that the email in question refers to yet another contract. And indeed, Facebook's counsel have asserted on numerous occasions, including in response to the defendant's request for a Rule 17 subpoena, that "there is no other contract between Mr. Zuckerberg and Ceglia."  Facebook Br. dated January 7, 2015 at 3.  Finally, it is plain that the defendant himself does not share his counsel's unsupported view that the materials subpoenaed from Facebook would somehow "demonstrate Mr. Ceglia's innocence," (Fogg March 19 Ltr. at 3), because he chose to flee a mere 10 days before such evidence was to be produced.  The defendant's decision to flee from justice rather than await disclosure of the subpoenaed materials strongly suggests his knowledge that those materials would not demonstrate his innocence.

Honorable Vernon S. Broderick
March 27, 2015
Page 4

charges – or documents that are material to the defense on those issues.  Production of such materials could expose the details of its ongoing investigation into the whereabouts of Ceglia and his family, and could thwart the Government's efforts to apprehend him.[4]

Accordingly, the Government respectfully requests that the Court order that the production to the defendant of ongoing Rule 16 discovery and the Facebook and Zuckerberg Rule 17 subpoena responses be held in abeyance until Ceglia's return to the jurisdiction.

        Respectfully submitted,

        PREET BHARARA
        United States Attorney

By:    ____/s/ Janis Echenberg_____
        Janis M. Echenberg / Alexander J. Wilson
        Assistant United States Attorneys
        (212) 637-2597 / 2453

cc:  Robert Ross Fogg, Esq.
      Gil Messina, Esq.

---

[4] The Government further notes that one of Ceglia's lawyers, Gil Messina, has a potential conflict that cannot be addressed while Ceglia remains a fugitive.  Mr. Fogg's suggestion that he be treated as a "Wall Attorney," while his criminal co-counsel is prevented from "receiving, viewing or otherwise coming to know what is produced pursuant to the Rule 17 subpoenas," is problematic at best.  In addition, such a procedure has not and cannot be approved by Ceglia, who might well object to having his two lawyers separately prepare his case without being able to discuss the evidence or any case strategy that turns on the contents of that evidence.