F3OSCEGC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4                v.                        12 CR 876 (VSB)

5    PAUL CEGLIA,

6                Defendant.

7    ------------------------------x

8                                          New York, N.Y.
                                           March 24, 2015
9                                          10:00 a.m.

10
     Before:
11
                      HON. VERNON S. BRODERICK,
12
                                           District Judge
13

14                         APPEARANCES

15   PREET BHARARA
          United States Attorney for the
16        Southern District of New York
     JANIS ECHENBERG
17   ALEXANDER WILSON
          Assistant United States Attorney
18
     MESSINA LAW FIRM, P.C.
19        Attorneys for Defendant
     BY:  GIL D. MESSINA
20
     ALSO PRESENT:
21   Brendan Ceglia
     Veronica Ceglia
22   Carmine Ceglia

23

24

25

F3OSCEGC

1          (Case called)

2          THE COURT:  Good morning.  Just in terms of

3   housekeeping, Mr. Messina, am I correct that Mr. Fogg is not

4   going to be appearing today?

5          MR. MESSINA:  He will not be here today.  It was our

6   understanding neither of us could be here.  I wanted to be

7   here.

8          THE COURT:  Although the proceedings are related to

9   the criminal case, it really doesn't involve the defendant,

10  except for it is the bond that he signed.

11         Let me just make sure that everyone is here.

12  Mr. Carmine Ceglia.

13         MR. CARMINE CEGLIA:  Yes.

14         THE COURT:  Ms. Veronica Ceglia and Mr. Brendan

15  Ceglia.

16         MR. BRENDAN CEGLIA:  Yes.

17         THE COURT:  The first thing I want to do is to make

18  sure that each of you have all of the documents that I believe

19  are related to the bond that you signed, as well as the

20  government's proposed forfeiture order that they have provided

21  to me.

22         First, my deputy clerk will hand you first a copy of

23  the appearance bond, which is a bond that you signed at the

24  time, it looks like back in 2012, at various times in October

25  on November.

F3OSCEGC

1      There is also the agreement to forfeit real property

2   to obtain your son and your brother's release, which my deputy

3   is handing to you.

4      There is also a letter from your son's and your

5   brother's prior attorney, Mr. Patton, requesting that certain

6   of the security, certain of the properties be released because,

7   as I understand it, the bond was $250,000 and the equity in the

8   properties, at least at that time, my understanding was, was in

9   excess of that.

10      Mr. Patton requested that the equity, that the

11   properties, the number of properties be reduced to match the

12   $250,000 personal recognizance bond.  He so ordered that on

13   September 17.  Thereafter, there was a release of lien, I

14   believe that is what this is, which the government prepared,

15   which released certain of those properties as security for the

16   bond.

17      The last document that my deputy is going to hand to

18   you is the bail forfeiture order, which is the proposed order

19   that the government has provided to me for today's proceedings.

20      I know that is a lot to absorb, but do any of you have

21   any initial questions for me?  Mr. Ceglia?

22      MR. BRENDAN CEGLIA:  What if my son comes back before

23   the court date --

24      THE COURT:  If you could just pull that microphone a

25   little closer to you so the court reporter can hear.  Go ahead.

F3OSCEGC

<pre>
 1              MR. BRENDAN CEGLIA:  If my son comes back before the

 2    May hearing, what?

 3              THE COURT:  I can't provided you with legal advice,

 4    but I will provide you with what I understand the law to be.

 5    The law is that, upon a defendant's failure to abide by any of

 6    the terms of a bond, that the government can seek forfeiture of

 7    that bond whether or not the defendant comes back or not in

 8    advance of any court appearance.

 9              What I am saying is that the government is moving to

10    forfeit the bond today, and that under the law, that they have

11    a right to do that.  I will go through some of the details on

12    the basis of your son's failure to appear at a conference, as

13    well as apparently his cutting off of his ankle bracelet and

14    some other things.

15              His return, although it could have -- again, this

16    isn't up to me, but it is not directly linked to the bond, as I

17    understand it.

18              MS. ECHENBERG:  Just to add to that, everything your

19    Honor said is absolutely correct.  I would just note that Rule

20    of Criminal Procedure 46(f)(2) and (4) does allow the court, if

21    the sureties were to present the defendant back to custody,

22    there is the ability to set aside the forfeiture.  Obviously,

23    to the extent that they can be helpful in bringing their son

24    back to the jurisdiction, there would be some potential result

25    from that.
</pre>

F3OSCEGC

1        THE COURT:  Yes.  What the government has indicated is

2    that your son's returning of itself may not impact necessarily

3    the bond, but your assistance in connection with his return

4    would be something that I could take into consideration.  In

5    other words, if the bond is forfeited and we proceed today

6    under the law, there is certain considerations that I can take

7    into account on whether to, in essence, reverse that decision

8    in whole or in part.  By whole or part, I mean it could be

9    portion of the $250,000 or less.

10        There are certain factors that are considered in

11    connection with that and certain cases that sort of outline

12    that.  The main case with regard to that is the Gambino case,

13    which is 17 F.3d 572, which sort of sets forth some of the

14    processes by which I would remit the forfeiture.

15        What the government is indicating is that if, under

16    certain circumstances, you're helpful in whatever regard to

17    your son or your brother's return to the jurisdiction, that

18    would be something that I could take into consideration

19    concerning whether or not to remit any forfeiture that already

20    has gone forward.

21        MR. BRENDAN CEGLIA:  Thank you.

22        THE COURT:  Let me just review briefly the terms of

23    the bond just to make sure that everybody is on the same page.

24    It was a $250,000 appearance bond co-signed by Carmine Ceglia,

25    Veronica Ceglia, and Brendan Ceglia.  It was secured by the

F3OSCEGC

1    following real property.  This listing of properties I am about

2    to give are the listings after the government released certain

3    other properties.  I just want to make sure that everybody

4    understands.

5         The first property is 2395 Merservey Hill Road in

6    Wellsville.

7         MR. BRENDAN CEGLIA:  Merservey.

8         THE COURT:  The second property is 44 and a half South

9    Brooklyn Avenue in Wellsville.

10        MR. BRENDAN CEGLIA:  Yes.

11        THE COURT:  The third property is 20 Clark Street in

12   Wellsville.

13        MR. BRENDAN CEGLIA:  Yes.

14        THE COURT:  The fourth property is 50 South Broadway

15   Avenue in Wellsville.

16        MR. BRENDAN CEGLIA:  Brooklyn Avenue.

17        THE COURT:  Brooklyn, sorry.  Brooklyn Avenue.  Well,

18   there is a 40 --

19        MR. BRENDAN CEGLIA:  44 four and a half Brooklyn.

20        THE COURT:  Is there a 50 South Broadway.

21        MR. CARMINE CEGLIA:  That is also Brooklyn.  The

22   44 and a half is a smaller house built on a portion of that.

23        THE COURT:  It is 50 South Brooklyn Avenue.  I

24   apologize.  My mistake.

25        146 Scott Avenue in Wellsville.

F3OSCEGC

1          MR. BRENDAN CEGLIA:  Yes.

2          THE COURT:  And 11 East Washington in Hornell.

3          MR. BRENDAN CEGLIA:  Hornell.

4          THE COURT:  Those are the financial terms of the bond,

5    as I understand it.  Does that comport with the government's

6    understanding?

7          MS. ECHENBERG:  Yes, your Honor.

8          THE COURT:  Does that comport with the bondholders'

9    understanding?

10         MR. BRENDAN CEGLIA:  Yes.

11         THE COURT:  I scheduled a hearing today after being

12   advised that the defendant had removed his electronic

13   monitoring ankle bracelet and that he was not at home.  The

14   defendant failed to respond to numerous attempts by pretrial

15   services to contact him.  When I was informed of that, I set a

16   conference for March 10, which I directed that the defendant

17   appear.

18         At that conference on March 10, I was advised of the

19   following:  That neither of Mr. Ceglia's attorneys, neither

20   Mr. Fogg or Mr. Messina had heard from him, despite making

21   various attempts to contact him in advance of the March 10

22   conference.  Specifically, it is my understanding from that

23   conference that Mr. Fogg attempted to contact the defendant by

24   phone, text, and e-mail, but he did not get a response.

25         Mr. Messina, as I recall, you had e-mailed Mr. Ceglia,

F3OSCEGC

1    the defendant, and received no response?

2           MR. MESSINA:  Correct.

3           THE COURT:  Prior to that, neither counsel had heard

4    from or communicated with their client for approximately a

5    week, give or take.  I think Mr. Fogg may have been about a

6    week and a half.  Mr. Messina, you may have had an e-mail

7    exchange or something like that with him the Thursday before

8    the March 10 appearance.

9           At that time, the government moved to revoke

10   Mr. Ceglia's bail, and I granted that application.  After the

11   March 10 proceedings, I also directed that an arrest warrant be

12   issued out of this district.

13          I understand, am I correct, Ms. Echenberg, Mr. Wilson,

14   that an arrest warrant had also been issued out of the Western

15   District of New York?

16          MS. ECHENBERG:  That's correct, your Honor.

17          THE COURT:  At the end of the March 10 proceeding, as

18   I set this conference relating to the forfeiture and I directed

19   that the bondholders, the Ceglias, appear today.  I appreciate

20   you appearing here personally.  I thought it was important that

21   you be here personally so that you could hear and understand

22   exactly what is going on.

23          Mr. Messina, have you had any contact with Mr. Ceglia

24   since March 10?

25          MR. MESSINA:  Neither I nor Mr. Fogg have had any

F3OSCEGC

1    contact whatsoever, your Honor.

2              THE COURT:  All right.  Thank you.

3              I assume I am correct that Mr. Ceglia has not been

4    apprehended at this time?

5              MS. ECHENBERG:  That's correct, your Honor.  He

6    remains a fugitive.

7              THE COURT:  Under 46(f)(1), I must declare bail

8    forfeited if a condition of the bond has been breached.  As I

9    have outlined, Mr. Ceglia failed to respond to pretrial

10   services, which was one of the conditions of his bond.  He

11   removed his electronic ankle bracelet from his ankle, which was

12   also a condition of his bond that he should wear that.  He left

13   his home and has not returned, which is also a condition of his

14   bond.  He failed to appear as directed at the March 10

15   conference, which also is a condition of his bond.

16             As I understand it, he has failed to make contact with

17   his attorneys.  And as I understand it, am I correct, I assume

18   that no one from pretrial services either here in New York or

19   up in the Western District of New York have heard from

20   Mr. Ceglia?

21             MS. ECHENBERG:  That's correct, your Honor.

22             THE COURT:  Therefore, I do find that Mr. Ceglia has

23   willfully violated multiple conditions of his bond and

24   therefore it does appear that forfeiture of the bond would be

25   appropriate.

F3OSCEGC

1      Now I will hear from the Ceglias concerning the

2  government's application.  If you want a few moments to look at

3  what is called the bail forfeiture order, I know this is -- am

4  I correct, Ms. Echenberg and Mr. Wilson, this is the first time

5  the Ceglias are seeing that?

6      MS. ECHENBERG:  That's correct.

7      THE COURT:  If you want a few moments to look that

8  over to see if you have any questions, you should feel free to

9  do that.  If you have any questions at this point, you should

10  feel free to ask me about them.

11      Do you want some time to take a look at that?

12      MR. CARMINE CEGLIA:  Actually, we have had a copy of

13  this for a few days.  I think it was delivered to your house.

14      THE COURT:  Actually, it is a different document.

15      MR. CARMINE CEGLIA:  It looks identical.

16      THE COURT:  Unfortunately, a lot of court documents do

17  look very similar.  I think this one is a little bit different.

18  The initial document I believe that you may have referred would

19  have been the order to show cause which was directing your

20  appearance here today to discuss, in essence, what this order

21  is about.  This order, in essence, is about forfeiting the

22  bond, specifically with regard to the pieces of property and

23  also forfeiting with regard to your signature on the bond.

24      MS. ECHENBERG:  I just want to clarify, your Honor, as

25  we noted in our application, we are not seeking at this time

F3OSCEGC

 1   the judgment on the properties, just a judgment against the

 2   cosigners and the defendant.

 3        THE COURT:  What Ms. Echenberg has just indicated is

 4   that, pursuant to the order, the government isn't at this time

 5   seeking to forfeit the property, but the property is, as you

 6   know, listed here.  That doesn't mean that they are not going

 7   to proceed and forfeit that property, it just means they need

 8   time to assess and evaluate the value of the property and also

 9   assess exactly what the next steps would be.

10        What they are seeking today is to have an order

11   entered forfeiting the bond in connection with the three

12   cosigners, with the three of you, which would, in essence, mean

13   that pursuant to the bond that was signed, the appearance bond

14   that you signed, that you would be responsible for -- again,

15   this is subject to any potential or future forfeiture of the

16   property -- subject to and responsible for the $250,000, that

17   is the face value of the bond.

18        Do you want just a few moments just to look over the

19   order?

20        MR. BRENDAN CEGLIA:  I have one question.  She is

21   saying it is going to be a judgment.  So should we be keeping

22   the property up or is it --

23        THE COURT:  The property is still in your hands.  The

24   government has not moved to forfeit it.  The property is your

25   responsibility.  The judgment itself is, in essence, a default

F3OSCEGC

1   judgment that will be entered.  It will be entered with regard

2   to today -- well, it may not be specifically today, but within

3   a few days -- with regard to the three cosigners, each of you,

4   but not with regard to the property.  Okay?

5            MR. BRENDAN CEGLIA:  Okay.

6            THE COURT:  I would advise, again, with regard to the

7   property, if you do have questions, that you should take the

8   contact information of the government attorneys and speak with

9   them about that.  Okay?

10           MR. BRENDAN CEGLIA:  Okay.  Thank you.

11           THE COURT:  Any other questions?

12           MR. CARMINE CEGLIA:  I just want to make sure I

13  understand.  Certainly, it is a $250,000 judgment placed

14  against myself and against them each?

15           THE COURT:  That's correct.

16           MR. CARMINE CEGLIA:  You are basically saying you owe

17  us $250,000.  We don't care how you pay us, you owe us $250,000

18  right now?

19           THE COURT:  That's correct, with one caveat, we don't

20  care how you pay it.  The government did --

21           MR. CARMINE CEGLIA:  If I was to give you $250,000

22  right now, the property would be off the table, right?  Just as

23  the way I understand it.  Ms. Echenberg, maybe you can answer

24  it for me.

25           THE COURT:  I think that that is correct.

F3OSCEGC

1          MR. CARMINE CEGLIA:  What about if the property is

2     forfeited and sold and either is below or exceeds $250,000?

3          THE COURT:  If it is below the $250,000, each of you

4     is responsible for the delta, in other words, the difference.

5          MR. CARMINE CEGLIA:  The judgment would then be

6     amended to the amount that was owed, essentially?

7          THE COURT:  Correct.  The government is only entitled

8     to the amount of the bond, which is $250,000.

9          MR. CARMINE CEGLIA:  I am trying to understand how

10    that process works.  It makes sense for me.  That is typically

11    the way anybody would do that.

12         THE COURT:  To answer the opposite question,

13    obviously, if it turns out that the equity is greater than

14    $250,000, any amount in excess of that is monies that would be

15    whoever the owners of the property are.

16         MR. CARMINE CEGLIA:  Right.  Just like I said, I want

17    to make sure -- that is typically the way something like this

18    would work in a judgment for money secured, my property.  I

19    want to make sure that it was the same way here essentially.

20         THE COURT:  That's my understanding, yes.

21         Any other questions?

22         MR. CARMINE CEGLIA:  No.

23         THE COURT:  Again, this is an opportunity for you to

24    raise any arguments that you believe are appropriate concerning

25    the forfeiture order and whether or not I should sign that at

F3OSCEGC

1    this time.

2              MR. BRENDAN CEGLIA:  No, that was our agreement.

3              MS. VERONICA CEGLIA:  Yes.

4              MR. BRENDAN CEGLIA:  We were under that agreement.

5              THE COURT:  I know at the time did you sign up in

6    Upstate New York, or were you down here?

7              MR. BRENDAN CEGLIA:  We were down here, I believe.

8              MR. CARMINE CEGLIA:  I was in the Western District at

9    the time.

10             THE COURT:  As Ms. Echenberg mentioned, there is a

11   possibility that in the future, if your son returns and you are

12   helpful in that, that a certain portion of the sum or all of

13   the forfeited amount might be remitted, but there is no

14   guarantee in that.  In fact, the law is pretty clear, the law

15   favors forfeiture in these circumstances because there is a

16   reason for a bond being put in place, that is to secure a

17   defendant's appearance in court.  Unfortunately that did not

18   occur here, and as a consequence, you're left in the position

19   that you are in.

20             Any other questions?

21             MR. BRENDAN CEGLIA:  Now, can I just make a comment

22   other than on the forfeiture?

23             THE COURT:  If you want, sure.

24             MR. BRENDAN CEGLIA:  Well, you know, it is like, I

25   don't know why he did this, but I feel I have a good idea why

F3OSCEGC

1    he did it.  It's like all along, you know, I know it has been a

2    five-year thing with this lawsuit, and the one lawyer

3    Ms. Echenberg, Mr. Schneider has been interfering.  It's like

4    he has never got anything to go his way, and I think this last

5    thing we heard that really was upsetting to Paul was that

6    Lawrence Schneider was getting permission to work with the

7    prosecution on this criminal case, which to me was very unfair.

8         You know, from the beginning, we caught the

9    prosecution.  They said that Lawrence Schneider didn't

10   collaborate with them, when in the Buffalo courthouse, I think

11   it was Mr. Arcara, he said that, no, your Honor, I had nothing

12   to do with this.  And two of the prosecutors down in this

13   court, wherever he was at the time, said oh, yeah, we had some

14   information from Lawrence Schneider.

15         You know, it is like when Paul heard that there was a

16   good chance of this case being turned around, we were all very

17   happy.  Then we get the news they are starting a second grand

18   jury to redo it.  Well, at this point, we have no more money to

19   help bail him out.  I think he was just afraid for his life

20   that he wasn't going to get a fair shot.

21         THE COURT:  Okay.

22         MR. BRENDAN CEGLIA:  That is my opinion and, you know,

23   from talking to Paul, I would have coffee with him every

24   morning, and I never saw this coming, you know, but I have a

25   feeling this has a lot to do with his decision.

F3OSCEGC

```
1              THE COURT:  I'm sorry.  Were you done?

2              MR. BRENDAN CEGLIA:  Yes.

3              THE COURT:  Let me make several things clear.  The

4    government is the government and Mr. Zuckerberg's lawyers are

5    lawyers for a witness in the case.  To the extent that the

6    government has subpoenaed documents or anything, they have

7    gotten documents from Facebook, Mr. Schneider and any of the

8    lawyers working with him are not part of the government.  They

9    represent a witness.  I will say that they won't be questioning

10   in any trial here any witnesses.  They won't be communicating

11   with me during the trial, except for matters that relate to

12   Facebook and relate to Mr. Zuckerberg and his potential

13   testimony.  They are not a party to this litigation.

14             Having said that, there have been issues relating to

15   subpoenas and other things that have been issued to them, so

16   they are a party to this.  They are appropriately here to

17   respond to subpoenas that have been issued.

18             In addition, this courtroom is open to the public.

19   That means that members of the public, whether they are

20   attorneys for witnesses or not, can come here and watch

21   proceedings.  I understand your sentiments, Mr. Ceglia, but all

22   I can tell you is that it is my job to make sure that this

23   process is fair for your son and fair for the government.  I

24   intend to do that whenever he is brought back here.

25             MR. BRENDAN CEGLIA:  We have felt that since you have
```

F3OSCEGC

1   been brought on the case that, you know, it was more fair for

2   my son.  So he was quite happy when you were brought on to the

3   case.

4           When Mr. Carter was on, we didn't feel, you know, then

5   we were getting a fair shot at justice.  I mean, I have always

6   believed that in America, you know, like when you go to court,

7   it is a fair thing.  But when you find out Mr. Schneider was

8   part of the federal prosecutor's office and they are good old

9   friends and you see judgments that we have seen come up, I have

10  lost a lot of faith in our justice system.

11          It is like it was -- I guess I am gullable enough, I

12  was gullable enough to believe that when Paul had this

13  contract, oh, we are going to court, we had forensic experts,

14  we had this, we had that, you know, it is a legal case.  There

15  was no lying or nothing or the paper, the this, we had to go

16  through with forensic experts.

17          Then Paul gets to the gentleman in California -- I

18  can't think of his name right now -- but he was the top CIA

19  forensic expert.  Judge Fascia wouldn't even entertain it, but

20  Mr. LaPorte gets up, who works like under whoever it was in

21  California, I can't think of his name right now, Larry Stuart,

22  and he was the head CIA forensic --

23          THE COURT:  Secret service.

24          MR. BRENDAN CEGLIA:  Yeah, secret service.  They just

25  blow his aside, Mr. LaPorte, who was a urine tester.  Oh, yes,

F3OSCEGC

```
 1   this is very credible.  I find this very amazing.  He didn't
 2   want to see our side.
 3            THE COURT:  Look, let me just address one thing.  The
 4   civil case, again, I am not involved in that.
 5            MR. BRENDAN CEGLIA:  Right.
 6            THE COURT:  It is a separate matter that is being
 7   dealt with, I think, currently pending in the Second Circuit.
 8   With regard to this case, and this goes with regard to me or
 9   Judge Carter or anyone in this courthouse, our job is to make
10   sure that things are fair.  That doesn't mean necessarily that
11   you will agree with all of our decisions.  That is also the
12   nature of our job.  There is always going to be folks that
13   don't agree with us.  But in the end, we are here to make sure
14   that both the defense and the government get a fair trial and
15   that your son had an opportunity to present his case in front
16   of 12 jurors that are going to be in this box in this
17   courtroom.  Again, the only thing I can say is that what I
18   intend to do going forward.  It the reason why I am sitting
19   here today, and I wouldn't be doing this unless I believed in
20   the system.
21            Is there anything else?
22            MR. BRENDAN CEGLIA:  No.
23            THE COURT:  From the government?
24            MS. ECHENBERG:  Not with relation to the forfeiture,
25   your Honor, no.
```

F3OSCEGC

1            THE COURT:  Mr. Messina?

2            MR. MESSINA:  I have nothing with respect to the

3       forfeiture proceeding, your Honor.  We do owe the court a

4       letter with regard to how we expect the proceeding to go from

5       here on out.  I spoke with Ms. Echenberg before your Honor

6       convened today, and we are going to try to set a conference

7       call with Mr. Fogg, the four of us, today.  We can get that

8       letter to you today, your Honor.

9            There have been some developments in the last few

10      days.  We received a secret service report which we believe

11      corroborates the reports that we submitted in the civil case.

12      There was also a letter that Mr. Wilson sent to Mr. Fogg

13      yesterday indicating he was enclosing some additional

14      disclosure we haven't seen yet.

15           We do want to discuss that.  And as Mr. Ceglia alluded

16      to, there also have been subpoenas issued with attorneys in the

17      case with respect to the grand jury, which we discussed

18      yesterday.  Those are the latest developments.  We will have

19      that letter to you this afternoon, if that is okay with your

20      Honor.

21           THE COURT:  That is fine.

22           MS. ECHENBERG:  If I can just respond briefly.  I did

23      speak to Mr. Messina before the conference.  It remains the

24      government's position, but we will have a conversation

25      obviously, that at this stage, because the defendant remains a

F3OSCEGC

1   fugitive, while we can certainly be ready for a trial May 4,

2   that does not seem like the best use of the government's

3   resources at this point, especially with motions in limine and

4   other things coming up quite quickly.

5          I would also note that the government intends to

6   supersede with a charge or charges related to the flight, so

7   that may have implications on deadlines as well.  When we

8   supersede, we also intend to add factual allegations to the

9   underlying charge related to an additional victim of the fraud,

10  and that is the investors we had referenced in a letter last

11  week.  Approximately $650,000, at least, was collected from a

12  variety of investors who believed they were investing in this

13  lawsuit and were given a piece of any return.  We intend to

14  supersede to allege fraud on those investors as well.

15         THE COURT:  One of the things is that there is a bail

16  note now, since Mr. Ceglia has failed to appear, and that the

17  government intends to proceed with charging him with.

18         Mr. Messina, just for purposes, from my perspective,

19  at the last conference, I did indicate that I wasn't going to

20  move the trial.  To the extent I know that the indication was,

21  I believe, in the letter that I received that the defense was

22  considering possibly requesting holding off on any

23  determination of putting the trial off until sometime later in

24  April.  I would say that my initial thought on that is I might

25  wait another week or so, but that I would not wait any longer

F3OSCEGC

1    than that, because both from the government's perspective, the

2    need to prepare the case, but also from the perspective of the

3    defense, you know, should Mr. Ceglia be apprehended and be back

4    in the jurisdiction, I would want to give the defense time to

5    prepare for trial.  I think waiting until the end of April

6    would make that more difficult for the defense.

7         Yes, Mr. Messina?

8         MR. MESSINA:  I appreciate that, your Honor.  Our hope

9    has always been to get this case to trial by May 4.  Without

10   the defendant, obviously, that is problematic.  The only thing

11   that is imminent right now, this is what I want to discuss with

12   my colleagues this afternoon and Mr. Fogg is we have an April 1

13   deadline for motions in limine, which I think Ms. Echenberg is

14   alluding to the government's resources might be better spent if

15   we waited on that for a period of time.

16        THE COURT:  I apologize.  Again, I haven't looked at

17   the schedule in particular.  I wouldn't have a problem pushing

18   that off a little so that people aren't jammed up by that.  But

19   I do think that we are at the end of March, it is not really

20   too much time.

21        MR. MESSINA:  Understood.  I will tell you that our

22   hope and our expectation is that Mr. Ceglia will be here.  I

23   have no reason to know that.  As I said, we have had no

24   contact.  I hope that if there is an ability to get him here

25   voluntarily, if his family can prevail upon him, we want him

F3OSCEGC

1    here.  We think he has a good defense and we are prepared to go

2    to trial.

3              MR. BRENDAN CEGLIA:  Your Honor?

4              THE COURT:  Yes.

5              MR. BRENDAN CEGLIA:  I think a couple lawyers

6    expressed to us that if we can get ahold of Paul and tell him

7    to come back, but we feel our hands are tied, because I don't

8    believe Paul will call me because he knows I would get in

9    trouble.  The marshals already told me, if you talk to him, I

10   am an accessory, something or other.  It's like we are trying

11   to figure out a way to get ahold of him.

12             MS. VERONICA CEGLIA:  We don't know where he is.

13             MR. BRENDAN CEGLIA:  It's like I am sure he won't call

14   me while I am in the United States.  He knows we have good

15   friends in Ireland.  I thought if he found out I was in

16   Ireland, he might get ahold of me where I can at least talk to

17   him and try to talk to him.  But it's like I understand the

18   marshals are doing their job, what they have to do, but it's

19   like, if I say, well, we are going to fly to Ireland to our

20   friend's house, they are going to --

21             MS. VERONICA CEGLIA:  Be on their footsteps.

22             MR. BRENDAN CEGLIA:  -- it's like we know where he is.

23   They already told me I am going to be subject to arrest,

24   because in their mind, they just think I know where he is, and

25   I don't.

F3OSCEGC

1      I mean, I guess what I would like to know is, if my

2   wife and I go to Ireland to try to reach him --

3      MS. VERONICA CEGLIA:  Would we be followed by a

4   barrage?

5      MR. BRENDAN CEGLIA:  -- are we going to be charged

6   with something for -- I mean, I don't know where he is.  I

7   doubt that he is in Ireland, but he knows where we go in

8   Ireland.  He knows friends we have had for life.  Would this be

9   breaking the law if we went to Ireland to try to reach him?

10      THE COURT:  Again, I can't give you legal advice about

11   that.

12      MR. BRENDAN CEGLIA:  Yeah.

13      THE COURT:  The issue that you are talking about is

14   whether you are assisting your son in some way in his flight.

15   Obviously there are cases where family members, usually it is

16   family members, do help in having their family member returned.

17   So what I would suggest is that you speak with Mr. Messina and

18   Mr. Fogg and arrange that.

19      With regard to your travel to Ireland, I can't, again,

20   give you any advice about that.  There may be, besides actually

21   speaking directly to your son, there may be other ways that you

22   could assist the government.  Let me say this, obviously at

23   least the most productive thing to happen is for Mr. Ceglia,

24   for your son, to return on his own.

25      You are right, the marshals are doing their job, and

F3OSCEGC

 1   it is their job to find him.  They will do everything they can

 2   within the law to do that.

 3          MR. BRENDAN CEGLIA:  Right.

 4          THE COURT:  But that also entails him being

 5   rearrested, wherever that may be.

 6          MR. BRENDAN CEGLIA:  Right.

 7          THE COURT:  To the extent that your son may be

 8   traveling with his family, that is something that I don't think

 9   his family needs to necessarily witness.

10          MR. BRENDAN CEGLIA:  Right.

11          THE COURT:  Again, I can't give you any advice about

12   that.  I think you should be in touch with the prosecutors and

13   if you want to, again, this is up to you through either with

14   Mr. Messina and Mr. Fogg's assistance or not, to find out what

15   assistance you could be, if at all.  That would be my only

16   suggestion.

17          MR. BRENDAN CEGLIA:  Thank you.

18          THE COURT:  Is there anything else?

19          Let me say this with regard to the bail forfeiture

20   order.  In light of the proceedings here today, I am going to

21   sign that.  Again, it doesn't relate to forfeiting the pieces

22   of real estate, the property, but that is something that in the

23   future is something that is likely to happen.

24          In other words, this doesn't mean that that property

25   is still not subject to being forfeited, but it does mean,

F3OSCEGC

1    though, that the bond with regard to each of you, there is

2    going to be forfeiture with regard to that and a subsequent

3    judgment that will be entered.

4            MR. BRENDAN CEGLIA:  Thank you.

5            THE COURT:  Just some housekeeping matters.  Mr. Fogg

6    had suggested in a letter, Ms. Echenberg, Mr. Wilson, that the

7    defense would create a wall, whatever that may be.  I will

8    leave that to, if you are in agreement, you and the defense,

9    with regard to what I will call the Facebook judgments.  In

10   other words, that only Mr. Fogg would review those.

11           The initial suggestion was that the government would

12   retain them and that the defense would come, be available to

13   come and look at them there.  Does the government have a view

14   with regard to the proposal that the documents only be made

15   available to Mr. Fogg?

16           MS. ECHENBERG:  Can we have one moment, your Honor?

17           THE COURT:  Yes.  There is a letter I just got that my

18   deputy clerk is passing out to the government and to

19   Mr. Messina.  What I will say is that it does relate to the

20   issues that the government and Mr. Messina were just

21   discussing.

22           Why don't we do this.  You guys should still have your

23   conference call, because I am not sure that this has been fully

24   vetted, so to speak, in light of our conversation here today.

25   Why don't you have your conference call and then would you be

F3OSCEGC

 1    able to provide me with a joint status update by the end of the

 2    week?

 3            MR. MESSINA:  Absolutely, your Honor.  I don't think

 4    that is a problem.  I spoke to Mr. Fogg this morning.  I didn't

 5    know that this letter was going to be coming in before the

 6    hearing.

 7            THE COURT:  I imagine that it was a surprise to

 8    everybody.

 9            MS. ECHENBERG:  In relation to your question, I think

10    it really is all bound up in the trial and deadlines related to

11    that.  If we can give you our opinion on that either jointly or

12    our own opinion at the end of the week as well.

13            THE COURT:  That would be great.  I appreciate if you

14    could work together.  If you can't, I'll take separate letters,

15    that is fine.

16            MS. ECHENBERG:  We will do our best.

17            THE COURT:  The other thing I will mention, in your

18    consideration of this in going forward, is that this is a

19    criminal case.  The defendant has a right to be present at

20    various points in the process.  As you're considering things

21    that we can accomplish, consider that.  I haven't looked at the

22    law in connection with that.  Obviously that relates to court

23    appearances.  Some of the things we are talking about are sort

24    of behind the scenes legal matters.  I want the parties to be

25    cognizant of that when they are thinking about going forward.

F3OSCEGC

```
 1              That is fine.  Ms. Echenberg, do you want more time to
 2    think about the documents?
 3              MS. ECHENBERG:  Yes.  That is, in part, because the
 4    proposal is essentially that only Mr. Fogg would look at them
 5    because they only relate to the criminal case.  But to the
 6    extent that we are going to adjourn the trial and we are going
 7    to adjourn all the related deadlines, there doesn't seem to be
 8    that need.
 9              THE COURT:  No, that is fine.  Although what I will
10    say is, then neither party will get the documents.  In other
11    words, they will remain in Facebook's hands.
12              MS. ECHENBERG:  Understood.  We want to consider that
13    with whatever proposal Mr. Fogg has, and hopefully we can make
14    a proposal that encompasses all of it.
15              THE COURT:  That sounds fine.  I think in connection
16    with that, again, as you are considering whether the proposal
17    of having Mr. Fogg review it, if you consider if that is
18    something that the government is amenable to, obviously
19    consider what the procedures might be with regard to that and
20    whether or not you want to document that in some way so that
21    everybody is on the same page with regard to that.
22              Mr. Messina, one additional question, and it relates
23    to -- again, I don't want to discuss the substance of the
24    documents, but it relates to the crime fraud exception and the
25    three documents that were still outstanding.
```

F3OSCEGC

1          Do you have any specific objections with regard to

2    those?

3          MR. MESSINA:  Your Honor, I think two of the three

4    have been resolved.

5          THE COURT:  Correct.  There were typos.

6          MR. MESSINA:  The other was a stack.

7          THE COURT:  Correct.

8          MR. MESSINA:  I have not gone through them line by

9    line.  I will go blind if I do that.  They are barely legible

10   as it is.  My expectation is I will not have a

11   document-by-document objection and I will get a letter out to

12   your Honor today indicating that I don't object.

13         THE COURT:  That is fine.  Obviously that just tees up

14   the issue.  It is still going to await the parties'

15   conversation with regard to the documents and what the parties

16   want to do as well as the timing of the trial.

17         Is there anything else that we need to deal with

18   today?  From the government?

19         MS. ECHENBERG:  No, your Honor.

20         THE COURT:  Mr. Messina?

21         MR. MESSINA:  No, your Honor.

22         THE COURT:  Any additional questions, Mr. Ceglia,

23   Ms. Ceglia?

24         MR. BRENDAN CEGLIA:  No.

25         MR. CARMINE CEGLIA:  No.

F3OSCEGC

| 1 | THE COURT:  Again, the only thing I would say to you |

1    THE COURT:  Again, the only thing I would say to you

2    is that the best way to learn to be advised on what the

3    contours might be concerning what assistance you might be able

4    to provide is to speak to the government.  Obviously you can

5    communicate with Mr. Fogg and Mr. Messina and they can help you

6    sort of parse through and understand various things.

7    Obviously, they represent your son in this matter.

8    MR. BRENDAN CEGLIA:  Right.

9    THE COURT:  They don't represent you.

10   MR. BRENDAN CEGLIA:  No.

11   THE COURT:  If there is nothing else, then we will

12   stand adjourned.

13   MS. ECHENBERG:  Thank you, your Honor.

14   MR. MESSINA:  Thank you, your Honor.

15   (Adjourned)