F46cegc

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4               v.                          12 CR 876(VSB)

5    PAUL CEGLIA,

6                    Defendant.

7    ------------------------------x

8                                      New York, N.Y.
                                       May 4, 2015
9                                      11:30 a.m.

10

     Before:
11
                        HON. VERNON S. BRODERICK,
12
                                          District Judge
13

14                         APPEARANCES
     PREET BHARARA
15        United States Attorney for the
          Southern District of New York
16   JANIS ECHENBERG
     ALEXANDER WILSON
17        Assistant United States Attorney

18   ROBERT ROSS FOGG
          Attorney for Defendant
19
     ALEXANDER SOUTHWELL, ESQ.
20   ONIN SNYDER, ESQ.
          Attorneys for Facebook

21

22

23

24

25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

F46cegc

```
 1                 (Case called; in open court)

 2                 THE DEPUTY CLERK:  Good morning.

 3                 MS. ECHENBERG:  Janis Echenberg and Alex Wilson are

 4      here from the government.

 5                 MR. FOGG:  Robert Fogg for Paul Ceglia.

 6                 MR.  SNYDER:  Orin Snyder and Alex Southwell for

 7      Facebook and Mark Zuckerberg.

 8                 THE COURT:  Counsel, we're here in my chambers.  I

 9      have a court reporter here.  So when you speak, please identify

10      yourself before speaking.  So we're here to talk about the

11      subpoena response by Facebook and Mr. Zuckerberg.  The first

12      issue I want to deal with is, Mr. Fogg, I don't believe there

13      is a requirement that Mr. Zuckerberg perform any of the

14      searches himself.  There is no legal basis that I am aware of

15      for that.  So I just wanted to dispense with that issue right

16      off.  If you have anything to add, I will hear you on it; but

17      otherwise I am going to move on to the next issue.

18                 Do you have anything to add?

19                 MR. FOGG:  Well, Judge, I think what traditionally

20      attorneys do and clients do, just as Mr. Snyder pointed out in

21      his letter to some degree, is they seek assistance of their

22      attorneys to submit and comply with subpoena.  However, whether

23      or not I think in my letter is what I spoke to and what I

24      mentioned to the Court is whether or not the consequences of

25      noncompliance can be bestowed upon a client when the attorney
```

F46cegc

1   is recalcitrant.  That is an issue that needs to be addressed.

2   With regard to production in this particular case, I think it

3   also goes to the possibility of qualifications of the attorney

4   who actually do adequate search but then requires some sort of

5   certification.  I think that is more likely where I am going.

6          THE COURT:  The subpoenas were directed to

7   Mr. Zuckerberg and Facebook.  So with regard to any

8   ramifications down the line, if that is what you are referring

9   to, it was served on them.  So I don't think there is really an

10  issue there.

11         Now, with regard to some form of certification, I am

12  not inclined to do that but I will as the call progresses want

13  to hear generally about the searches and/or the search for the

14  documents just to get a better sense in my own mind what was

15  done.

16         The next issue I want to deal with is the issue of the

17  redacted documents.  I just want to confirm, Mr. Fogg, that the

18  documents that Mr. Snyder has pointed out that have been

19  redacted are documents that previously had been produced I

20  believe by the government.  I just want to confirm you are in

21  agreement with that?

22         MR. FOGG:  That's what I see, Judge.  I gave you the

23  chart and it lists 99 redactions all coming within the

24  previously produced documents that the government produced here

25  in this criminal case.

F46cegc

1          THE COURT:  The next issue I want to deal with,

2     Mr. Snyder and Mr. Southwell, is whether or not from a

3     technical standpoint -- this is with regard to the new

4     e-mails -- to produce them in native format.

5          MR. SNYDER:  I am not sure whether it will be

6     difficult or not, but we can certainly find the answer to that.

7     I would just say that we obviously produced responsive

8     documents in the same PDF format that both the government and

9     our clients have used throughout the criminal case and which

10    never before prompted a complaint.  Neither Rule 17(c) nor the

11    subpoenas themselves require production of records in any

12    particular format.  The case law makes clear that the

13    obligation is to produce in reasonably usable format, which we

14    did, and so we believe we complied with that obligation and

15    certainly we can look into it today and let the Court know if

16    it has been a standard practice in this case and that is why we

17    did it in that way.

18         THE COURT:  Look, the subpoena doesn't specifically

19    say native format, and I understand the process that had been

20    in place with the government; but if they can be produced in

21    native format, I would like that to be done.

22         As I understand it, Mr. Snyder, you referenced

23    something in the civil case.  Were items produced in native

24    format from Mr.Ceglia?  I think you mentioned it took an order

25    in order to get that done.  Have native documents been

F46cegc

1    produced?

2           MR. SNYDER:  In the civil case because of the

3    authenticity of the e-mails and because the expedited discovery

4    there focused on the authenticity of the purported contracts

5    and the fake e-mails, we did seek specifically production of

6    all records in native format from Ceglia.  The Court ordered

7    native filed production by all parties accordingly.

8           THE COURT:  As I understand your letter, the new

9    e-mails that were produced by Facebook and Mr. Zuckerberg, I

10   take it those were not produced, that these are new to both

11   cases?

12          MR. SNYDER:  Yes.

13          THE COURT:  So if you could check that that would be

14   appreciated.

15          MR. SNYDER:  I think there were 16 in total new

16   e-mails -- new documents rather.  We indicated Bates number.

17   We'll see how onerous, if at all, they are to produce in native

18   format.

19          THE COURT:  Mr. Fogg had raised the issue of various

20   locations where data might have been stored.  I constantly see

21   these references to these 28 devices.  I guess my question is,

22   Mr. Snyder and Mr. Southwell, would you be able to provide me a

23   sense of what was searched I guess for lack of a better term?

24          MR. SNYDER:  Sure.  I would say once again without

25   meeting and conferring, Mr. Fogg raised these first with you

F46cegc

1     and then with the press and had he called us, we would have

2     told him he had no basis to suggesting that our firm didn't

3     search all of our client's electronic devices.  We have been

4     handling this matter now for more than five years and have full

5     familiarity with and access to all locations of possible

6     responsive materials in Mr. Zuckerberg's various media and

7     sources of electronic communications since 2003.  We've ensured

8     and can represent to the Court that we diligently searched all

9     of the locations and produced all responsive documents in

10    response to this subpoena.

11         THE COURT:  I guess Mr. Fogg had referenced some

12    material analyzed by Stroz Friedberg, which I guess is the 28

13    devices or hard drives or whatever?

14         MR. SNYDER:  Everything has been searched, your Honor.

15    In our diligent search for data and responsive information and

16    carefully, thoroughly reviewed and we produced what was

17    responsive.

18         THE COURT:  Okay.  Let me just take a look.  I guess

19    one question I have because I don't know what was produced in

20    the civil case, I don't have any sense that.  Were there drafts

21    of the contract, the street facts contract that were produced

22    in the civil case or in the criminal case?

23         MR. SNYDER:  Of the street facts contract?

24         THE COURT:  Yes.

25         MR. SNYDER:  The copy of the street facts contract we

F46cegc

found was of course on Mr. Ceglia's computer on an Adelphia

account and also on the Sidley and Austin server and there was

only one version of it.

THE COURT:  I guess there weren't any in the Harvard

archives?  There wasn't anything in there I take it?

MR. SNYDER:  No, your Honor.

THE COURT:  Since you mentioned Sidley and Austin, as

I read your letter, and I think this makes sense, the only

thing that was in essence requested of Sidely and Austin was

this specific e-mail exchange; am I correct?  It wasn't a

request for any other documents other than the e-mail exchange

between, and I apologize, the lawyer at Sidle and Austin and

Mr. Ceglia?

MR. SOUTHWELL:  Yes, your Honor.  This was a matter of

discussion before the district court in the Western District of

New York and specifically authorized a subpoena on behalf of

Facebook and Mark Zuckerberg to Sidley for one very specific

thing and that was the e-mail exchange on a particular date,

which is street facts contract.  That was the only thing

produced to us and it was produced to Mr. Ceglia simultaneously

as it was produced to us because of privilege, etc.  It is the

only thing we sought and were authorized by the court to

obtain.  We assume there is more, but we don't have it.

THE COURT:  I assume that is why that one of the

nature of the requests was so targeted because of the fact that

F46cegc

the privilege issues?

MR. SOUTHWELL:  Yes, your Honor.

THE COURT:  I think that's all I have.

Mr. Fogg.

MR. FOGG:  Yes, your Honor.  First, the request for native forms, Judge, I understand that the government has produced documents for the subpoena requires or at least requests that Facebook and Zuckerberg -- (in audible) -- whether it was produced in a civil suit or whether or not the government.  Therefore, I request the native documents, the native form of the documents that even the government produced particularly since they have possession, custody and control of them.  That is an issue, Judge.

THE COURT:  Let's back up a second because the government has produced various documents already.  Are you suggesting or requesting that the government produce or reproduce all the documents they produced to you in native format?

MR. FOGG:  I am requesting that Facebook produce their documents, whatever documents they are.  Not to assume that I already have or they were given to Ceglia on another case.  I am asking them to produce their documents.

THE COURT:  Well, I would say this:  With regard to these new e-mails, as long as it is not something that is onerous or technically extremely difficult, I would ask that,

F46cegc

1    Mr. Southwell and Mr. Snyder, that your clients do produce the

2    new e-mails in native format.

3        MR. FOGG:  Judge, I see there are 76.  There are 60

4    miscellaneous e-mails of unknown source.  That is Bates stamped

5    from 2003 to 2062.  There is also 15 retyped excerpts of

6    instant messages, which looks like one conversation.  Those are

7    the ones that would have to be produced in native forms that I

8    see.  There are approximately 99 from the government that if

9    they had in -- if they had possession of those, those are the

10   ones I will be requesting.  I request them to produce rather

11   than reproduce what the government already produced.  Instead

12   of regurgitating what the government produced, they will

13   produce it in native form.

14       THE COURT:  But the subpoena, right, as I understand

15   it they reproduced stuff and they weren't required to reproduce

16   it.  You have the new documents that are going to be produced

17   in native format.  Are you requesting that documents that they

18   have already produced that they be produced in native format?

19       MR. FOGG:  Yes, Judge.

20       THE COURT:  Look, to me that is a separate issue.  I

21   would like to hear from you what the volume you are talking

22   about is and why you believe with regard to these other

23   documents native format is something that is necessary when it

24   hasn't been heretofore something that either the government or

25   you quite frankly have requested.

F46cegc

1              MR. FOGG:  The production was made prior to my entry

2      into the case.  Upon reviewing the production, I believe it is

3      over a thousand pages of e-mails.  They are all in PDF form.

4      The one e-mail I saw, which is the August 2003, August 18,

5      2003, e-mail, where Zuckerberg says that he hasn't sent my

6      client this since he sent him the contract.  The problem is

7      Mr. Zuckerberg also gave a statement where Paul gave him the

8      contract.  Now, in that e-mail he is saying that he gave the

9      contract.

10             Metadata is very important.  But I would say that the

11     metadata that is associated with these documents are very

12     important because we're also talking about time frame,

13     contracts.  It is my understanding that Paul and Zuckerberg --

14     Ceglia met in Boston face-to-face and they each signed

15     documents face-to-face.  If in fact Zuckerberg sent him a

16     contract, that had to be a proposed contract because they

17     didn't sign it face-to-face.  It is one that he sent.

18     Therefore there has got to be some sort of document that he

19     sent.  He could have not sent the actual signed contract.  That

20     is not possible.  So therefore any document that they are

21     talking about, even if they want us to believe that that is a

22     one in the same, and the document that he sent was a proposed

23     contract because you cannot send him a document without him

24     signing it first.  So the metadata is important.  Give me time

25     frame, give me certain information that is essential to see if

F46cegc

1    in fact it was fabricated.

2              MR. SNYDER:  Your Honor, Mr. Fogg, keeps repeating

3    untruths in the hope that in the hope that somehow--

4              MR. FOGG:  It is not untruths.

5              THE COURT:  Counsel, one at a time.

6              MR. SOUTHWELL:  Mr. Fogg keeps on mischaracterizing

7    the August 18th e-mail.  This has been covered ad nauseam in

8    prior submissions and correspondence.  There is no record

9    evidence in this case that Mr. Zuckerberg wrote or sent an

10   original contract to Mr. Ceglia.  To the contrary the e-mail of

11   August 18 made clear that what Mr. Zuckerberg did is when Paul

12   Ceglia refused to pay for services rendered, Mr. Zuckerberg

13   transmitted a copy of the then executed street facts agreement

14   reminding him that he is owed money and in fact Mr. Ceglia owes

15   penalties for late payment.  Far from confirming any

16   fantastical theories of Mr. Fogg, the August 18th e-mail firmly

17   corroborates the fraud because it refers to terms of the street

18   facts contract, the authentic contract, that are not present in

19   Mr. Ceglia's fraudulent contract, which is why Mr. Fogg's

20   continuous reference to it is perplexing at best.

21             In any event, there is no evidence of any kind that

22   there is anything amiss about our PDF productions.  And

23   Mr. Fogg's statement that he only came in after the production

24   in the civil case is frivolous because he has had these PDF

25   documents for many months and didn't even bother to pick up the

F46cegc

1    phone and raise the issue with us before he ran to the press

2    and wrote to this Court.

3          THE COURT:  Well, also as I understand it, and let me

4    just ask this question, because I think it implicates the

5    government's production, because as I understand it the

6    documents that were produced or I guess reproduced by Facebook

7    were documents that the government had produced.  They may have

8    initially come from Facebook, but they are documents produced

9    by the government.

10          MS. ECHENBERG:  I think I can bring some clarity if

11   you --

12          THE COURT:  Absolutely.  If you could also discuss

13   what apparently I guess is Mr. Fogg's now request for certain

14   documents in native format.

15          MS. ECHENBERG:  Yes, absolutely.  Just so your Honor

16   is aware, the production of the Harvard e-mails was done after

17   substantial discussion with David Patton, prior counsel, as to

18   how we would do this and in what format.

19          To take a step back, the government received three

20   sets of e-mails from Harvard, and this is has been explained in

21   several briefings including in response to Mr. Ceglia's first

22   request for a Rule 17 subpoena from Harvard.  So Harvard had

23   backed up Mr. Zuckerberg's e-mail at three points.  Once in

24   2003, once in 2010, and once in 2012.  So Harvard provided the

25   government those three sets of e-mails.  There are some

F46cegc

1    overlap.  Those were provided to the government in data format.

2    They of course contain every single e-mail that Harvard had in

3    its custody at that time for Mr. Zuckerberg.  Of course many,

4    many of those e-mails are not relevant to this case at all.  So

5    after discussions with David Patton, we agreed that the

6    government as we do in all cases would review the e-mails for

7    relevance e-mails that should be produced under Rule 16 and we

8    would produce those e-mails.  We did so in PDF format because

9    we had to pull out the e-mails that were relevant and in many

10   cases redact portions of e-mails or parts of strings of e-mails

11   that were not relevant and so that is what we produced.  Those

12   e-mails, at least the 2003 set, have e-mails going back as

13   early as I believe July of 2003.  That is just the earliest set

14   that Harvard had.

15       So that is why we produced them in PDF format.  I

16   believe it would be onerous on the government to produce them

17   in a different way.  Frankly, I am not sure how we would given

18   the volume that is not relevant or not appropriate to be

19   produced at this stage of the case.  Just for context, those

20   three sets of e-mails were produced in December of 2012.

21       In order for Facebook to respond to the Rule 17

22   subpoena that they received, they wanted to know what had

23   already been produced.  So we provided Facebook with a set of

24   the Harvard e-mail that we had produced so that they could

25   compare that against what they had.  They then determined that

F46cegc

```
1    there was a small set of Harvard e-mails that they had that we
2    hadn't produced.  They identified those for us.  We went back
3    to our set and we confirmed that I couple of e-mails
4    inadvertently had not been produced.  So those were parts of
5    strings or attachments that had not been produced.  So we
6    produced those in January of 2015.  At no time between December
7    of 2012 and presently has Mr. Fogg ever raised this issue of
8    native e-mail.  Then I believe but Facebook can confirm is what
9    they did in their production was to reproduce the set of
10   Harvard e-mails that we had provided them though of course it
11   was the same set we had provided to Mr. Ceglia in December of
12   2012.
13             THE COURT:  Mr. Snyder.
14             MR. SNYDER:  Thank you, Judge.  I just want to point
15   out, and I am going this because I know we're on the record
16   here and it is important that we create this record, we
17   obviously appreciate the Court's allowing us to participate in
18   these proceedings as the crime victim; but as the crime victim,
19   here I just want to note the obvious, which is that Mr. Fogg's
20   series of never-ending requests for broad civil discovery would
21   be under any circumstance since it has been 30 months since his
22   client was indicted and mostly if not all of these issues have
23   been thoroughly discussed with prior counsel.
24             Of course broad discovery is even more appropriate in
25   this case because as the Second Circuit stated in its decision
```

F46cegc

```
1    just last Monday, Mr. Ceglia is a fugitive who has, and this is
2    the Second Circuit's language, "repeatedly demonstrated total
3    disregard for our judicial system."  That is a quote from the
4    Second Circuit.  I would note that to say that Mr. Ceglia comes
5    to this Court with unclean hands would be a gross
6    understatement and we believe as crime victims here that any
7    further obligations on us under those circumstances is unfair
8    and not appropriate.  I just wanted to make that point for the
9    record, Judge.
10        MS. ECHENBERG:  Your Honor, if I could just add along
11   those lines.  It is the government's view as well that to ask
12   the government to take on any sort of additional burden with
13   respect to discovery is not appropriate right now while the
14   defendant is a fugitive.  In addition, we don't see anything in
15   the metadata that would be at all relevant.  There is nothing
16   that Mr. Fogg said that relates to metadata.  On the face of
17   the e-mails or the dates of the e-mails are the subject and of
18   course the content of the e-mail.  There is nothing about the
19   metadata that relates to anything that Mr. Fogg says he is
20   looking for.
21        MR. FOGG:  Judge, I guess first and foremost the
22   problem that it we've had so far is that, and I have spoken to
23   Mr. Snyder and Mr. Southwell, I don't trust their production.
24   I think it is self-serving.  I was that plain and simple.  That
25   is the reason why I requested subpoenas.  Now, they have not
```

F46cegc

1      been subpoenaed before.  They have not actually been producing

2      under an order other than the one that they created, which is

3      specifically designed to limit the production which I sought.

4      This production here is very important because it goes to the

5      heart of the matter and it goes to the issue of whether or not

6      there was a contract signed, whether or not the original

7      contract was Paul's, whether or not the original contract was

8      that one contract they produced and actually resized it because

9      it was smaller than a business card and you cannot read it.

10             What is remarkable in this particular case is that the

11     government after so many years just tested the contract and

12     their expert had said nothing about it being fraudulent.  They

13     support what our experts say.  Now, that would say that Paul's

14     contract is legitimate.  Now, no one could every test the image

15     they produced.  No one can ever test that.  As far as being

16     crime victims, I disagree with that.

17             As far as producing in a civil case, our two issues

18     that we have here that I feel production was insufficient, the

19     first is where there was 20 electronic devices.  They were

20     identified Zuckerberg attorneys, by Mark Zuckerberg as being

21     potentially relevant and that was in a civil case.  The second

22     is the Harvard e-mail server backup.  Now, that Mr. Zuckerberg

23     had access to.  Now, Mr. Zuckerberg and Facebook searched these

24     two groups, these assets as part of the subpoena issued by the

25     Court.  They did and they should have.

F46cegc

1            Now, in a civil case,  Zuckerberg used that data

2       forensics from Stroz Friedberg to search 20 devices and they

3       were identified by Mr. Zuckerberg's counsel as being

4       potentially relevant.  However, under oath with the deposition

5       of Mr. Gallon from Stroz Friedberg, he explained that they

6       never produced a report or their search and they didn't take

7       any notes.  I can only assume because they were told not to,

8       but they never did that.

9            Now, if that the case then there are e-mails present

10      on that server from that time that are relevant that were never

11      produced, no notes taken, no reports made.  If they are, that

12      means that they didn't produce that in a civil case.  So if no

13      reports are made, then I would have to say that no search was

14      done of the 28 hard drives.  If that is the case, those 28

15      devices, this subpoena covers that.

16           Now, they have explained numerous times to this Court

17      that in the civil case it was a different subpoena issued in

18      this case.  Well, the civil case is a civil case.  This is a

19      criminal case.  Like I said, I do believe that was specifically

20      designed to limit their search criteria.  This was something

21      that they drafted and it wasn't in spirit of what Mr. Snyder

22      said in court.

23           THE COURT:  Let me deal with this in this way:  As I

24      understand what Mr. Snyder said, they have searched all of the

25      devices that they are aware of and I assume that means hard

F46cegc

 1    drives and whatever electronic devices that Mr. Zuckerberg had

 2    and that they produced e-mails from those device to the extent

 3    they existed.

 4            Mr. Snyder, am I mischaracterizing what you guys have

 5    done?

 6            MR. SNYDER:  That's correct, your Honor.

 7            MR. FOGG:  When was that done?

 8            THE COURT:  Was that done in connection with the

 9    subpoena that was issued?

10            MR. SNYDER:  In this case?

11            THE COURT:  I am asking Mr. Snyder.  I think that is

12    what he had indicated earlier.

13            MR. SNYDER:  Yes, your Honor.

14            THE COURT:  Mr. Fogg, I think that answers your

15    question.  Again, you may not believe that, but unless you can

16    point to something concrete, in other words, something that

17    shows that somehow something has not been done, I have no

18    reason to doubt Mr. Snyder and Mr. Southwell that they have

19    undertaken their obligation to respond to the subpoena on

20    behalf of their client and that they have searched the devices

21    that they are aware of.

22            So with regard to the request for native format, I am

23    not at this time going to direct that the government or

24    Facebook or Mr. Zuckerberg, with the limited exception of these

25    new e-mails that we were discussing, that they get produced in

F46cegc

1    native format.  Now, in part because as I understand it some of

2    these things were produced back in 2012 and there hasn't been a

3    specific showing as to why that would be necessary at this

4    stage.  So I am not going to direct that either the government

5    or Facebook go back to the prior productions they have made and

6    produce documents in native format.

7              Mr. Fogg, at some future time there are for whatever

8    reasons specific e-mails that you believe you need to get the

9    metadata, I will hear you on those specific e-mails and I will

10   hear you on what short of showing you should make with regard

11   to that; but I am not going to do that now and certainly

12   because I wanted to complete the subpoena production but with

13   regard to any other issues, we can address that when your

14   client is back in custody.

15             MR. FOGG:  Understood, your Honor.

16             THE COURT:  Is there anything else that we need to

17   deal with?

18             MS. ECHENBERG:  Nothing from the government's

19   perspective.

20             MR. SNYDER:  Nothing from us, your Honor.

21             THE COURT:  Mr. Fogg?

22             MR. FOGG:  Thank you, Judge.

23             THE COURT:  Thank you everybody for jumping on the

24   phone.

25             Mr. Snyder, if it turns out that you can produce them,

F46cegc

1    just notify me and then get them over to Mr. Fogg when you can.

2              MR. SNYDER:  Certainly, your Honor.  Thank you.

3              THE COURT:  Thank you.  Take care.

4                              o0o

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25