```
H5Q7CEGC

 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2  ------------------------------x

 3  UNITED STATES OF AMERICA,

 4              v.                              12 Cr. 876 (VSB)

 5  PAUL CEGLIA,

 6              Defendant.

 7  ------------------------------x
                                                New York, N.Y.
 8                                              May 26, 2017
                                                11:00 a.m.
 9

10  Before:

11                      HON. VERNON S. BRODERICK
                                             District Judge
12

13                    APPEARANCES (via telephone)

14  PAUL ARGENTIERI, ESQ.
```

1        (Case called)

2        (In chambers)

3        MR. ARGENTIERI:  My name for the record is Paul
4   Argentieri.  Presently I'm at my dad's home in Hornell, New
5   York, 215 Main Street.  I do have a house out in California
6   too, but presently I'm in Hornell, New York, where my office is
7   located.

8        THE COURT:  This is Judge Broderick.  I see on the top
9   of your letterhead that that's your location of your office.

10        MR. ARGENTIERI:  Yes.  I have been in Hornell since
11   1979, continuously practiced, because of this case maybe not a
12   lot since that time.

13        THE COURT:  So, Mr. Argentieri, I've read your letter
14   and reviewed the exhibits attached to it.  I think the main
15   issue is, as you acknowledge in your letter, you are no longer
16   Mr. Ceglia's attorney; is that correct?

17        MR. ARGENTIERI:  Well, no, I'm not his defense
18   attorney.  I'm not his criminal defense attorney.  I'm not
19   admitted into the Southern District.  I am only admitted in
20   Buffalo and Syracuse, but for all practical purposes I really
21   never practiced in federal court.  But, no, I'm attorney of
22   record in the civil case for sure, yes.  And I had an
23   injunction, that's true too.

24        THE COURT:  Yes.  So, in connection with this case,
25   since you don't represent Mr. Ceglia -- and, quite frankly the

1   other issue is that since he is currently a fugitive and the

2   case is in essence on hold, you know, I -- and I'm not exactly

3   sure -- well, let me ask you this:  What specifically were you

4   seeking from your application?

5            MR. ARGENTIERI:  Well, my application, if I understand

6   the process in the criminal case, I believe -- and from reading

7   the transcripts -- you want attorneys to write a letter to you,

8   make a written application first.  In order for you to provide

9   permission to go on the record, it's my understanding in the

10  federal court system you have to file everything

11  electronically.

12           Well, because of the protective orders -- and I'm not

13  literally a defense attorney, except that the federal

14  prosecutors and the Gibson Dunn lawyers said I'm a fact witness

15  in the case, which is true.  I thought the only practical way

16  to communicate what I have would be to send you a letter in

17  camera in chambers, because I don't want to violate any order

18  or be accused of violating any order, or having any attempt to

19  have me arrested for violating any order.

20            So having done that, what I would like to do is move

21  forward with a formal am application on the record, and I can

22  submit all what I've submitted presently what you're reading or

23  have read in a formal application on the record if I have your

24  permission, and see what the responses are.

25           THE COURT:  OK.  All right.  So I think what makes

1   sense at this stage -- you know, it's not entirely clear to me,
2   Mr. Argentieri, that necessarily you have standing in
3   connection with this to file, but I will -- and we can take
4   care of having your letter and the exhibits filed on the
5   docket.
6            MR. ARGENTIERI:  OK.
7            THE COURT:  And in connection with that, I will issue
8   a -- you know, again I'm not sure -- you know, the standing
9   issue is one thing.  I will ask whether the government and Mr.
10  Ceglia's criminal attorney, whether they want to solicit a
11  response -- you know, submit anything in connection with this
12  before I make a ruling.  And then if I get any papers from
13  them, you know, after that, I will make a ruling.
14           MR. ARGENTIERI:  All right.  I think that's more than
15  fair.  Yeah, Gil Messina -- and, for the record, I had a
16  lawsuit in California for defamation.  Gil is also my attorney
17  in that case.
18           THE COURT:  I am aware that Mr. Messina -- because in
19  part Mr. Messina I think filed a notice of appearance in the
20  criminal matter, and there was an issue that came up with
21  regard to whether or not -- and I think it was even in
22  connection with you mentioned that the government indicated
23  that you would be a fact witness.  In fact, I think that
24  occurred shortly before Mr. Ceglia fled prosecution, I think.
25  The government had submitted something on that.

1     But in connection with that, you know, there was an
2 issue -- and I don't remember necessarily whether it was
3 resolved -- it may have been -- you know, about the possibility
4 of a conflict, and I don't think it was a hundred percent
5 resolved.
6     So, yeah, I'm aware that Mr. Messina represents you.
7 I wasn't aware that it was in connection -- if I was aware, I
8 forgot -- in relation to a defamation suit in California.
9     MR. ARGENTIERI:  He was also my defense attorney when
10 I was sued in New York City with Judge Rakower.  So he is my
11 defense counsel there.  Simultaneously he is my wife's pro hac
12 vice attorney in California.
13     But I think that's meritorious -- I guess I'm not used
14 to your practice.  So I understand, you're going to allow me to
15 formally file in the court system a record what I submitted to
16 you and then communicate with Mr. Messina and/or -- well, Mr.
17 Fogg and the federal prosecutors.
18     THE COURT:  Well, actually what I propose is something
19 slightly different, which is that I, myself and my staff, would
20 take care of having the letter filed on the docket as well as
21 the exhibits.  We would issue an order indicating that we
22 received the letter in camera and that we decided to file it
23 and solicit any comments from the government and from the
24 defense related to the contents of your letter.
25     I suspect -- and I haven't thought this through -- but

1  I suspect that I will probably get some filing from the folks
2  at Gibson Dunn.  And then once that is done, I will make a
3  ruling.
4          So, I don't think you need to do anything.  By
5  anything, I just mean we'll take care of getting it filled, and
6  we will take care of notifying the parties that they have an
7  opportunity, should they choose to, to respond.
8          I mean it's a little tricky from -- well, I mean I
9  will leave it to the defense attorneys, but it's a little
10 tricky for the defense attorneys because they don't have a
11 client with whom they can consult about this, so they may not
12 have too much of a reaction one way or the other.  But I think,
13 you know, on balance, rather than me ruling without their
14 input, I will give the parties an opportunity to have their
15 input.
16         MR. ARGENTIERI:  Judge Broderick, would that be a
17 public record then when it is filed?
18         THE COURT:  It will be, yes.
19         MR. ARGENTIERI:  OK.  And the second question is is it
20 possible, if they want to, the criminal defense lawyers to join
21 in the application?  Or is that something --
22         THE COURT:  Well, I mean I will leave that up to them,
23 you know, based upon whatever they think their obligations are
24 to Mr. Ceglia.
25         The other thing I should say is, obviously, since the

1    letter is going to be filed on the public docket, this
2    conference is also something that -- although it's not clear
3    that the transcript necessarily will be on the docket, but it
4    will be something that's publicly available.
5             MR. ARGENTIERI:  That's fine with me.  I mean if there
6    is any other questions you want to ask me, I'm probably the
7    only attorney that can recite pretty much chapter and verse
8    what has gone on for the past seven years.  I didn't know if
9    you have any other questions for me.
10            THE COURT:  I do not.  Well, the one question, since
11   you mentioned Mr. Messina, and since you are represented in
12   some other matters by Mr. Messina, is about the defamation
13   case.  Is that an active case right now?
14            MR. ARGENTIERI:  No, it happened -- I guess two days
15   ago the Supreme Court of California denied -- the SLAPP motion
16   was granted.  We appealed.  The appellate division there denied
17   us, and now the Supreme Court of California denied us, and now
18   I think that case is dead.
19            And New York City, with the malicious prosecution
20   case, for the record, no judgment of dismissal of the complaint
21   has been formally filed, so that case technically is open.  But
22   just to be clear, I mean all of these cases are the same case
23   that originated that I started in Belmont, New York in 2010.
24            THE COURT:  Yes.
25            MR. ARGENTIERI:  I really appreciate the fact that --

1    I guess you read my letter and my contents.

2    THE COURT: And just to be clear, I'm not obviously
3    opining one way or the other with regard to the substance of
4    the letter.

5    MR. ARGENTIERI: No, I understand.

6    THE COURT: Obviously I will give the parties an
7    opportunity to submit whatever they want to submit, if
8    anything. Then once I see that, I will make a decision. I
9    don't believe -- well, I will make a decision about whether I
10   want to have any kind of oral argument, but if I decide not to
11   have oral argument, I will just issue an order from that after
12   I get their papers. OK?

13   MR. ARGENTIERI: If I could ask a question. Is it
14   ever possible -- you see, in New York when we practice in New
15   York, we call hearings when you actually take testimony, so in
16   order to get that, you would have to order that after the
17   papers rather than making a decision on the papers.

18   THE COURT: Well, in other words, if I think I need
19   additional information, in particular that I need testimony
20   with regard to the matter, I could ask for a hearing. I could
21   schedule oral argument where I would take a proffer from the
22   attorneys of what the factual testimony might be. So, there
23   are a number of options. And again I'm not saying one way or
24   the other what I'm going to decide, but, yeah, if I felt there
25   was a need for an evidentiary record, you know, I could

1  schedule a hearing or direct the parties to submit affidavits.

2  MR. ARGENTIERI: Yeah, the best evidence in this case
3  has been kept in real-time back in 2003 and 2004 in these
4  e-mails. So, with all due respect to these other attorneys,
5  rather than writing these briefs and affidavits, it's amazing
6  to me we can't read the literal evidence in real time.

7  But having said that, I appreciate you calling me and
8  having the conference matter. And I'm on the record, and I
9  told the prosecutors that if I didn't have to give up
10 attorney/client privilege, they could interview me all they
11 wanted. Maybe I will have an opportunity now. I don't know.
12 So thank you very much.

13 THE COURT: OK. Well, obviously in connection with
14 the privilege, you know, Mr. Ceglia would have to waive the
15 privilege.

16 MR. ARGENTIERI: That's correct.

17 THE COURT: But --

18 MR. ARGENTIERI: I will state this on the record
19 that's not waiving attorney/client privilege. There is no
20 attorney who has ever interviewed Paul Ceglia, or any expert we
21 ever hired that ever indicated he was a fraud or anything of
22 that nature, so that I can state on the record.

23 THE COURT: OK.

24 MR. ARGENTIERI: Well, thank you, Judge, and thank you
25 to your staff. I appreciate it.

1           THE COURT:  All right.  So we will take care of --

2           MR. ARGENTIERI:  Do you think that will be filed
3    today, do you think?

4           THE COURT:  Well, it depends.  The letter certainly is
5    short enough that we could get it on the docket.  The real
6    issue is going to be getting the exhibits and putting them on
7    the docket.  We will have to see.  We have PDFs that you sent
8    to us.  It depends if they're in the right format.  So we're
9    going to try and get it on the docket.  I think it might not be
10   until next week, but it might hit the docket today.

11          MR. ARGENTIERI:  OK.  I guess one last question.  At
12   this point in time do I have to wait for the letter to be
13   published to talk to Mr. Messina or Mr. Fogg?

14          THE COURT:  The answer is -- since Mr. Messina
15   represents you arguably at least in the New York case -- and I
16   know the California case seems as if it's dead -- I mean you
17   can speak to them as you see fit.

18          MR. ARGENTIERI:  OK.

19          THE COURT:  They may -- I mean they may want to wait
20   until they see all of the paperwork.

21          MR. ARGENTIERI:  Sure.

22          THE COURT:  But, yeah, no, I'm not precluding you from
23   speaking with them.

24          MR. ARGENTIERI:  OK.

25          THE COURT:  If you choose to do so.

1        MR. ARGENTIERI: Yeah. And I don't think I sent the
2   exhibits in PDF form; I just sent a hard copy.
3        THE COURT: OK. So, we will have to make PDFs of
4   that, so that will take time, so it won't hit the docket until
5   next week.
6        MR. ARGENTIERI: All right. But the letter will be
7   hopefully filed today. Well, thank you very much, Judge. I
8   appreciate it.
9        THE COURT: Well, the letter may not be filed, because
10  we would want to file the letter at the same time we file the
11  exhibits.
12       MR. ARGENTIERI: Sure. OK. Well, I appreciate you
13  calling, and I think this is going to be very interesting from
14  here on out.
15       THE COURT: OK. All right. Thank you very much.
16       MR. ARGENTIERI: Thank you, Judge.
17       THE COURT: Take care.
18                            - - -